# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

## COMPLAINT AND DEMAND FOR DAMAGES

**Case No.:** N/A
**Judge:** N/A
**DOC ID:** 0727-JES-V-OUAG-AOC-COMP-2026
**Date:** 07-27-2026

FILED
2026 JUL 28 AM 10:50
CLERK
U.S. DISTRICT COURT

**JOHN EARLE SULLIVAN,**
*Plaintiff,*

Case: 2:26−cv−00704
Assigned To : Parrish, Jill N.
Assign. Date : 7/28/2026
Description: Sullivan v. Dirkmaat et al

v.

**PAUL J. DIRKMAAT**,
*in his individual and official capacities*;

**JOEL A. FERRE**,
*in his individual and official capacities*;

**KATHRYN L. WHITE**,
*in her individual and official capacities*;

**LARON J. LIND**,
*in his individual and official capacities*;

**ALEXIS WALKER**,
*in her individual and official capacities*;

**CURTIS BRITLAND**,
*in his individual and official capacities*;

**HOUNG "KIM" CHHOUR**,
*in her individual and official capacities*;

**DEREK NELSON**,
*in his individual and official capacities*;

**OFFICE OF THE UTAH ATTORNEY GENERAL**,
*(sued strictly under Title II of the ADA and Title VI of the Civil Rights Act of 1964)*;

and

**ADMINISTRATIVE OFFICE OF THE COURTS**,
*(sued strictly under Title II of the ADA and Title VI of the Civil Rights Act of 1964)*,

*Defendants,*

## ORIGINAL CIVIL ACTION

# TABLE OF CONTENTS

**ARTICLE I. PRELIMINARY STATEMENT** .................................... **5**

**ARTICLE II. JURISDICTION AND VENUE** .................................... **7**

**ARTICLE III. PARTIES** ................................................ **10**

**ARTICLE IV. FACTUAL ALLEGATIONS** .................................... **15**

RULE 8(b) Reservation of Rights and General Denial of Third-Party Tax Data ............... 15

I. Pre-Litigation and Corporate/Administrative Context (2014–2025) ....................... 16

II. Initial Litigation Actions and Preliminary ADA Accommodation Notices (May 2026) ........ 19

III. Coordinated Docket Manipulation, ESI Spoliation, and Discovery Traps (June 2026) ........ 23

IV. Coordinated Service Fraud, Subpoena Blockades, and Stay Violations (July 2026) .......... 33

**ARTICLE V. CLAIMS FOR RELIEF** ........................................ **44**

COUNT I: Deprivation of Fourteenth Amendment Due Process and Equal Protection Under Color of Law (42 U.S.C. § 1983) ... 44

COUNT II: Violation of Title II of the Americans with Disabilities Act (28 C.F.R. § 35.160) ...... 47

COUNT III: Civil Conspiracy to Deprive Civil Rights Under Color of Law (42 U.S.C. § 1983) .... 49

COUNT IV: Violation of First Amendment Right to Access the Courts (42 U.S.C. § 1983) ....... 53

COUNT V: Unauthorized Disclosure of Tax Return Information (26 U.S.C. § 7431) ........... 55

COUNT VI: Violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d) .......... 56

**ARTICLE VI. PRAYER FOR RELIEF** ........................................ **57**

**ARTICLE VII. VERIFICATION** ............................................ **66**

**CERTIFICATE OF COMPLIANCE** .......................................... **67**

**CERTIFICATE OF SERVICE** .............................................. **68**

**ADDENDUM** .......................................................... **5**

INDEX OF APPENDED ENCLOSURES (EXHIBIT LEDGER) .......................... 77

# TABLE OF AUTHORITIES

## Constitutional Provisions

1. U.S. Const. amend. XIV, § 1 . . . . . . 6, 50, 70

## Statutes, Codes, Rules, and Policies

1. 26 U.S.C. § 6103 . . . . . . 55, 70
2. 26 U.S.C. § 7431 . . . . . . 55, 56
3. 28 C.F.R. § 35.160(a)(1) . . . . . . 22, 58, 70
4. 28 U.S.C. § 1331 . . . . . . 7
5. 28 U.S.C. § 1341 . . . . . . 7
6. 28 U.S.C. § 1343(a)(3) . . . . . . 7, 71
7. 28 U.S.C. § 1367 . . . . . . 7
8. 28 U.S.C. § 1391(b) . . . . . . 8, 71
9. 28 U.S.C. § 1746(2) . . . . . . 66
10. 28 U.S.C. § 1920 . . . . . . 65
11. 28 U.S.C. § 1961(a) . . . . . . 65
12. 28 U.S.C. § 2201 . . . . . . 72
13. 28 U.S.C. § 2202 . . . . . . 73
14. 42 U.S.C. § 1983 . . . . . . 44, 45, 46, 49, 63
15. 42 U.S.C. § 1988(b) . . . . . . 57, 65
16. 42 U.S.C. § 1988(c) . . . . . . 65
17. 42 U.S.C. § 2000d . . . . . . 6, 40, 56, 61
18. 42 U.S.C. § 2000d-7 . . . . . . 56
19. 42 U.S.C. § 12205 . . . . . . 65
20. Fed. R. Civ. P. 37(e) . . . . . . 23
21. Fed. R. Civ. P. 54(d)(1) . . . . . . 65
22. Utah Admin. Code R861-1A-26(A) . . . . . . 36
23. Utah Code § 59-1-403 . . . . . . 55
24. Utah Code § 67-16-4(1) . . . . . . 7, 18, 59
25. Utah Code § 78A-2-105 . . . . . . 75
26. Utah Code of Judicial Administration Rule 3-306.04 . . . . . . 61, 75
27. Utah R. Civ. P. 45(a)(2) . . . . . . 41, 42, 43
28. Utah R. Civ. P. 63(c)(1) . . . . . . 7, 37, 45, 50, 59

**Judicial Precedents and Case Law**


1. *A.L.A. v. West Valley City*, 26 F.3d 989 (10th Cir. 1994) . . . . . 44
2. *Antoine v. Byers & Anderson*, Inc., 508 U.S. 429 (1993) . . . . . 13, 38, 43
3. *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119 (10th Cir. 1994) . . . . . 49
4. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) . . . . . 35
5. *Carey v. Piphus*, 435 U.S. 247 (1978) . . . . . 46, 64
6. *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1 (2015) . . . . . 7
7. *Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . 65
8. *Herring v. Keenan*, 218 F.3d 1171 (10th Cir. 2000) . . . . . 44
9. *Hibbs v. Winn*, 542 U.S. 88 (2004) . . . . . 7
10. *Hoffer v. Tellone*, 128 F.4th 433 (2d Cir. 2025) . . . . . 27
11. *KUTV*, Inc. v. Conder, 668 P.2d 513 (Utah 1983) . . . . . 54, 58
12. *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018) . . . . . 35
13. *Lawrence v. Intermountain*, Inc., 2010 UT App 313, 243 P.3d 508 . . . . . 7, 49, 52
14. *Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986) . . . . . 46
15. *Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) . . . . . 35
16. *Smith v. Wade*, 461 U.S. 30 (1983) . . . . . 64
17. *Stump v. Sparkman*, 435 U.S. 349 (1978) . . . . . 38
18. *United States v. Janis*, 428 U.S. 433 (1976) . . . . . 54, 59
19. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977) . . . . . 39, 51
20. *Whalen v. Roe*, 429 U.S. 589 (1977) . . . . . 44

[redacted]
**Email** [redacted]
*Plaintiff Pro Se*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **JOHN EARLE SULLIVAN,**<br>*Plaintiff.*<br>**v.**<br>**PAUL J. DIRKMAAT; JOEL A. FERRE; KATHRYN L. WHITE; LARON J. LIND; ALEXIS WALKER; CURTIS BRITLAND; HOUNG "KIM" CHHOUR; AND DEREK NELSON,**<br>*EACH IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,*<br>and<br>**OFFICE OF THE UTAH ATTORNEY GENERAL; AND ADMINISTRATIVE OFFICE OF THE COURTS,**<br>*EACH SUED STRICTLY UNDER TITLE II OF THE ADA AND TITLE VI OF THE CIVIL RIGHTS ACT OF 1964,*<br>*Defendants.* | **COMPLAINT AND DEMAND FOR DAMAGES**<br>**CASE NO.: N/A**<br>**JUDGE: N/A**<br>**DOC ID: 0727-JES-V-OUAG-AOC-COMP-2026**<br>**DATE: 07-27-2026** |

## COMPLAINT AND DEMAND FOR DAMAGES

---

## ARTICLE I. PRELIMINARY STATEMENT

1. This action arises from a coordinated, bad-faith civil rights conspiracy that Utah state prosecutors, a state district court judge, and court clerical administrators orchestrated to systematically dismantle a disabled citizen's constitutional

rights. Operating under color of law, Defendants actively blockaded electronic filing channels, whited-out and concealed digital medical disability notices, manipulated docket queues, executed signature-evasion mailing loops, and entered void judicial orders to force administrative default. Pursuant to 42 U.S.C. § 1983[1], the Fourteenth Amendment's Due Process and Equal Protection Clauses (U.S. Const. amend. XIV, § 1)[2], and Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d)[3], Plaintiff John Earle Sullivan seeks redress for these constitutional deprivations.

2. The co-conspirators forged this conspiracy to shield and enforce a fabricated, estimated tax deficiency assessment that the Utah State Tax Commission (*"USTC"*) issued without a single base income record. To prevent Plaintiff from challenging this groundless assessment, Defendants executed an administrative blockade: they programmatically whited-out and concealed digital medical disability notices, manipulated electronic court docket queues, executed signature-evasion mailing loops, and entered void court orders while stripped of jurisdiction under an active statutory stay. Because Defendants executed these unconstitutional actions in their individual capacities, Plaintiff targets their personal assets and demands compensatory damages and punitive damages in an amount according to proof at trial. Additionally, Plaintiff sues Defendants in their official capacities representing the Administrative Office of the Courts, the Office of the Utah Attorney General, and the Utah State Tax Commission to enforce compliance with Title II of the Americans with Disabilities Act and dismantle this pattern of institutional collusion.

[1] 42 U.S.C. § 1983 Civil Action for Deprivation of Rights: 'Every person who, under color of any statute, ordinance, regulation...
[2] U.S. Const. amend. XIV, § 1 Equal Protection and Due Process Clauses: 'No State shall make or enforce any law which shall...
[3] Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d Prohibition Against Discrimination in Federally Assisted Programs: 'No person in the United States shall, on the ground...

## ARTICLE II. JURISDICTION AND VENUE

3. This Court possesses subject-matter jurisdiction over Plaintiff's federal constitutional and statutory claims pursuant to 28 U.S.C. § 1331[4] and 28 U.S.C. § 1343(a)(3)[5]. 28 U.S.C. § 1367[6] vests this Court with supplemental jurisdiction over Plaintiff's state statutory and common law claims, as they arise from the same case or controversy under Article III of the United States Constitution[6]. These state claims encompass violations of the Utah Public Officers' and Employees' Ethics Act, Utah Code § 67-16-4(1)[7]; the state mandatory stay mandate under Utah R. Civ. P. 63(c)(1)[8]; and state common law civil conspiracy under *Lawrence v. Intermountain, Inc.*[9].

4. Plaintiff does not seek to enjoin, suspend, or restrain the assessment, levy, or collection of any state tax under 28 U.S.C. § 1341[10], nor does he seek damages measured by the tax liability. Instead, this action asserts independent federal constitutional and statutory claims arising from Defendants' collateral, administrative actions-specifically electronic notification blockades, docket manipulation, document alteration, and stay violations. Under *Hibbs v. Winn*, 542 U.S. 88, 107-08 (2004)[11], the Tax Injunction Act (*"TIA"*) does not bar federal jurisdiction over civil rights actions challenging state tax administration practices when the plaintiff does not seek to enjoin tax collection. Similarly, *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 11-12 (2015)[12] establishes that the TIA's prohibition does not bar federal jurisdiction over lawsuits challenging collateral information-gathering, notification, or administrative procedures.

---

[4] 28 U.S.C. § 1331 Federal Question Jurisdiction: 'The district courts shall have original jurisdiction of all civil...

[5] 28 U.S.C. § 1343(a)(3) Civil Rights Jurisdiction: 'The district courts shall have original jurisdiction of any civil...

[6] 28 U.S.C. § 1367 Supplemental Jurisdiction: 'Except as provided in subsections (b) and (c) or as...

[7] Utah Code § 67-16-4(1) Utah Public Officers and Employees Ethics Act - Prohibited Conduct: pendence of judgment or ethical performance -- Exception. (...

[8] Utah R. Civ. P. 63(c)(1) Motion to Disqualify Judge - Mandatory Stay: 'Upon the filing of a motion to disqualify a judge...

[9] Lawrence v. Intermountain, Inc., 2010 UT App 313, ¶ 12, fn. 4, 243 P.3d 508 Elements of Civil Conspiracy and Fraudulent Intent: 'Holding that a civil conspiracy requires a combination of two...

[10] 28 U.S.C. § 1341 Tax Injunction Act: 'The district courts shall not enjoin, suspend or restrain the...

[11] Hibbs v. Winn, 542 U.S. 88, 107-08 (2004) Tax Injunction Act Exception for Civil Rights Actions: 'Holding that the Tax Injunction Act (28 U.S.C. § 1341)...

[12] Direct Marketing Ass'n v. Brohl, 575 U.S. 1...

Because Plaintiff's claims target these collateral procedures and the State's failure to provide a *"plain, speedy and efficient remedy"* in its courts due to systemic ADA violations and due process blockades, neither the TIA nor the Tax Comity Doctrine bars this action.

5. Venue lies in the United States District Court for the District of Utah under 28 U.S.C. § 1391(b)[13] because all Defendants reside in this district, and the substantial events and omissions giving rise to these claims occurred here.

6. The Utah Long-Arm Statute, Utah Code § 78B-3-205[14], and the Due Process Clause of the Fourteenth Amendment vest this Court with personal jurisdiction over each Defendant because they established minimum contacts in Utah and purposefully availed themselves of the privilege of conducting activities in this State:

a. **Defendant Paul J. Dirkmaat** resides in Utah, maintains his principal place of business in Salt Lake City, and serves as a Utah Assistant Attorney General. Dirkmaat purposefully availed himself of the forum by litigating tax disputes in Utah courts and executing unconstitutional actions-including the physical alteration of digital medical evidence and service of flat, inaccessible image scans-targeting Plaintiff, a Utah resident, causing direct constitutional and tortious injury in Utah.

b. **Defendant Joel A. Ferre** resides in Utah, maintains his principal place of business in Salt Lake City, and serves as a Judge of the Third Judicial District Court of Utah. Ferre purposefully availed himself of the forum by presiding over litigation in Salt Lake County and issuing void, stay-violating orders that targeted Plaintiff, a Utah resident, causing severe constitutional injury in Utah.

c. **Defendant Kathryn L. White** resides in Utah, maintains her principal place of business in Salt Lake City, and serves as a Utah Assistant Attorney

[13] 28 U.S.C. § 1391(b) Venue Generally: 'A civil action may be brought in (1) a judicial...
[14] Utah Code § 78B-3-205: 'Utah Code Title 78B Chapter 3 Part 2 Section 205...

General. White purposefully availed herself of the forum by litigating tax disputes in Utah courts, operating a private law firm in Utah, and executing the signature-evasion service loop targeting Plaintiff, a Utah resident, causing injury in Utah.

d. **Defendant Laron J. Lind** resides in Utah, maintains his principal place of business in Salt Lake City, and serves as a Utah Assistant Attorney General. Lind purposefully availed himself of the forum by litigating tax disputes in Utah courts and serving flat, inaccessible scans targeting Plaintiff, a Utah resident, causing injury in Utah.

e. **Defendant Alexis Walker** resides in Utah, maintains her principal place of business in Salt Lake City, and serves as a Judicial Assistant for the Third Judicial District Court. Walker purposefully availed herself of the forum by managing case files and dockets in Salt Lake County and executing docket queue holds and service blockades targeting Plaintiff, a Utah resident, causing injury in Utah.

f. **Defendant Houng *"Kim"* Chhour** resides in Utah, maintains her principal place of business in Salt Lake City, and serves as a Tax Auditor III for the Utah State Tax Commission. Chhour purposefully availed herself of the forum by conducting auditing activities in Salt Lake City and fabricating estimated deficiency assessments targeting Plaintiff, a Utah resident, causing injury in Utah.

g. **Defendant Derek Nelson** resides in Utah, maintains his principal place of business in Salt Lake City, and serves as a Tax Audit Examiner Manager for the Utah State Tax Commission. Nelson purposefully availed himself of the forum by managing auditing activities in Salt Lake City and certifying deficiency assessments targeting Plaintiff, causing injury in Utah.

h. **Defendant Office of the Utah Attorney General**, an executive agency of the State of Utah headquartered in Salt Lake City, maintains continuous and systematic contacts with Utah and operates its principal offices and administrative staff in Salt Lake City.

i. **Defendant Administrative Office of the Courts**, a judicial administrative agency of the State of Utah headquartered in Salt Lake City, maintains continuous and systematic contacts with Utah, administers all electronic court systems (CORIS, MyCase) within the state, and operates its principal offices in Salt Lake City.

## ARTICLE III. PARTIES

7. Plaintiff John Earle Sullivan resides i [redacted] s an African American citizen, Plaintiff suffers from severe cognitive and physiological impairments, includin [redacted] nd Raynaud's phenomenon. These medical conditions severely restrict his ability to process print documents, read small fonts, or navigate complex administrative systems. Plaintiff is indigent, proceeds *pro se*, and possesses extremely limited financial and technical resources compared to the state apparatus.

8. Defendant Paul J. Dirkmaat serves as an Assistant Attorney General in the Tax Division of the Office of the Utah Attorney General. Plaintiff sues Dirkmaat in his individual capacity for damages and in his official capacity (representing the Office of the Utah Attorney General and the Utah State Tax Commission) for Title II ADA liability and prospective injunctive and declaratory relief. As a highly trained state prosecutor, Dirkmaat commands the state's vast legal, investigative, and financial resources, and wields specialized knowledge of tax

law, civil procedure, and electronic database systems to execute the state's litigation strategies.

9. Defendant Joel A. Ferre operates as a Judge of the Third Judicial District Court for Salt Lake County, State of Utah. Plaintiff sues Ferre in his individual capacity for damages and in his official capacity (representing the Administrative Office of the Courts and the Utah State Courts system) for Title II ADA liability and prospective injunctive and declaratory relief. As a former Deputy Division Chief of the Tax Division of the Office of the Utah Attorney General, Ferre possesses years of experience representing state agencies in tax disputes. He commands the administrative and judicial resources of the state court system, including clerical staff, specialized research assets, and database access systems.

10. Defendant Kathryn L. White serves as an Assistant Attorney General in the Tax Division of the Office of the Utah Attorney General. Plaintiff sues White in her individual capacity for damages and in her official capacity (representing the Office of the Utah Attorney General and the Utah State Tax Commission) for Title II ADA liability and prospective injunctive and declaratory relief. Concurrently with her state duties, White operated a private commercial law firm, Bleazard Legal, PLLC, utilizing public state resources and state-paid hours to conduct her private legal business, and concurrently worked as a classified employee and hourly food services worker for the Canyons School District, thereby demonstrating high administrative capacity and direct knowledge of state employment database structures.

11. Defendant Laron J. Lind serves as an Assistant Attorney General in the Tax Division of the Office of the Utah Attorney General. Plaintiff sues Lind in his individual capacity for damages and in his official capacity (representing the Office of the Utah Attorney General and the Utah State Tax Commission) for Title II ADA liability and prospective injunctive and declaratory relief. As a

seasoned state prosecutor, Lind manages complex state tax litigation and deploys the vast administrative and compliance resources of the Office of the Utah Attorney General.

12. Defendant Alexis Walker serves as a Judicial Assistant and Clerk of the Third Judicial District Court for Salt Lake County, State of Utah. Plaintiff sues Walker in her individual capacity for damages and in her official capacity (representing the Administrative Office of the Courts and the Utah State Courts system) for Title II ADA liability and prospective injunctive and declaratory relief. Walker holds a Master's degree in Mathematics from Western Governors University (2021) and a Paralegal Certification from Weber State University (2023). Crucially, from April 2019 to August 2023, Walker worked as a full-time Adapted Physical Education Teacher at Spectrum Academy, where she designed, implemented, and evaluated physical and cognitive accommodation programs for medically fragile and disabled students. Walker possesses actual, subjective knowledge of physical and cognitive accessibility needs, meaning she acted with full *scienter* when she executed docket queue holds and service blockades that denied Plaintiff necessary accommodations.

13. Defendant Curtis Britland serves as a Judicial Assistant and Clerk of the Third Judicial District Court for Salt Lake County, State of Utah. Plaintiff sues Britland in his individual capacity for damages and in his official capacity (representing the Administrative Office of the Courts and the Utah State Courts system) for Title II ADA liability and prospective injunctive and declaratory relief. Britland holds a Bachelor of Science in Psychology from Brigham Young University (2019) and a Master of Arts in History from Missouri State University (2022). In fiscal year 2025, Britland received public state compensation and benefits for his services as a Judicial Assistant. Because Britland performs strictly ministerial tasks-including processing electronic filings, issuing blank subpoenas, and sending filing confirmations-he cannot

claim absolute quasi-judicial immunity under *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993)[15], as his duties remain mechanical and require no discretionary judicial decision-making. Britland acted under color of law and with full *scienter* when he actively blockaded discovery and rejected Plaintiff's blank subpoenas on July 13, 2026, in direct violation of Utah Rule of Civil Procedure 45(a)(2)[16].

14. Defendant Houng *"Kim"* Chhour serves as a Tax Auditor III and Examiner in the Auditing Division of the Utah State Tax Commission. Plaintiff sues Chhour in her individual capacity for damages and in her official capacity (representing the Utah State Tax Commission) for Title II ADA liability and prospective injunctive and declaratory relief. As a professional tax auditor, Chhour utilizes her training in accounting, tax compliance, and automated database auditing systems to execute audits. She accesses state tax databases (including GenTax and VADRS) and deploys the resources and authority of the Utah State Tax Commission.

15. Defendant Derek Nelson serves as a Tax Audit Examiner Manager and Supervisor in the Auditing Division of the Utah State Tax Commission. Plaintiff sues Nelson in his individual capacity for damages and in his official capacity (representing the Utah State Tax Commission) for Title II ADA liability and prospective injunctive and declaratory relief. Nelson manages tax compliance, automated auditing, and database administration, and deploys the administrative power and resources of the Utah State Tax Commission.

16. Defendant Office of the Utah Attorney General operates as an executive department and agency of the State of Utah established under Article VII, Section 16 of the Utah Constitution, maintaining its principal office at 350 North State Street, Suite 230, Salt Lake City, Utah 84114. Plaintiff sues the Office of the Utah Attorney General in its official capacity strictly for Title II

---

[15] Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-36 (1993) Judicial Immunity Standards for Ministerial Acts: 'Holding that court reporters, clerks, and judicial personnel do not...

[16] Utah Rule of Civil Procedure 45(a)(2) Subpoena - Issuance by Clerk: 'The clerk will issue a subpoena, signed but otherwise in...

ADA and Title VI civil rights liability and prospective injunctive and declaratory relief. As a recipient of federal financial assistance, the Office has waived its Eleventh Amendment immunity from Title VI claims pursuant to 42 U.S.C. § 2000d-7[17]. Under *United States v. Georgia*[18], 546 U.S. 151, 159 (2006), the Fourteenth Amendment abrogates the Office's sovereign immunity for Title II ADA claims because its underlying conduct violates the Fourteenth Amendment. The Office commands a multi-million-dollar state budget, employs hundreds of attorneys and specialized investigators, and maintains direct access to advanced legal databases, litigation-hold systems, and state-wide network architectures.

17. Defendant Administrative Office of the Courts operates as an administrative agency of the Utah State Judiciary established under Article VIII, Section 12 of the Utah Constitution, maintaining its principal office at 450 South State Street, Salt Lake City, Utah 84111. Plaintiff sues the Administrative Office of the Courts in its official capacity strictly for Title II ADA and Title VI civil rights liability and prospective injunctive and declaratory relief. As a recipient of federal financial assistance, the Administrative Office of the Courts has waived its Eleventh Amendment immunity from Title VI claims pursuant to 42 U.S.C. § 2000d-7[17]. Under *United States v. Georgia*[18], 546 U.S. 151, 159 (2006), the Fourteenth Amendment abrogates the agency's sovereign immunity for Title II ADA claims because its underlying conduct violates the Fourteenth Amendment. The AOC manages the administrative, human resource, and electronic database systems (CORIS, MyCase) of the Utah State Judiciary, utilizing a multi-million-dollar budget and directing all judicial support staff, technology services, and court database systems throughout the State of Utah.

[17] 42 U.S.C. § 2000d-7 Civil Rights Remedies Equalization Act (Sovereign Immunity Waiver): 'A State shall not be immune under the Eleventh Amendment...

[18] United States v. Georgia, 546 U.S. 151 (2006) ADA Title II Sovereign Immunity Abrogation: 'Holding that Title II of the ADA validly abrogates state...

# ARTICLE IV. FACTUAL ALLEGATIONS

## RULE 8(B) RESERVATION OF RIGHTS AND GENERAL DENIAL OF THIRD-PARTY TAX DATA

Plaintiff John Earle Sullivan explicitly disclaims, denies, and refuses to adopt or authenticate any Form W-2s, Form 1099s, IRS account transcripts, state wage database entries, or Federal Adjusted Gross Income (*"FAGI"*) figures that Defendants allege exist or attribute to Plaintiff.

All references in this Complaint or its exhibits to tax returns, W-2 forms, 1099 forms, wage summaries, or IRS transcripts refer strictly and exclusively to unverified, unauthenticated third-party records that Defendants *allege* or *claim* formed the basis of their administrative actions.

Nothing in this pleading, its exhibits, or any associated filings shall be construed as an admission by Plaintiff regarding the ownership, accuracy, truthfulness, relevance, or authenticity of any third-party tax data or state-managed wage record. Plaintiff reserves all rights to challenge, object to, and demand strict proof of any document or data entry asserted by Defendants.

# I. PRE-LITIGATION AND CORPORATE/ADMINISTRATIVE CONTEXT (2014-2025)

18. Defendants committed these unconstitutional and discriminatory acts not within an administrative vacuum or through localized clerical errors, but through the coordinated misuse of the State of Utah's centralized, modernized, and highly integrated information technology infrastructure.

19. Pursuant to Utah Code § 63A-16-104[19], the Division of Technology Services (DTS), a division of the Department of Government Operations, State of Utah, operates as the centralized IT service provider for all executive branch agencies, including the Utah State Tax Commission and the Office of the Utah Attorney General.

20. In June 2022, DTS completed a comprehensive, state-wide migration of all Atlassian software applications from physical, state-run data centers onto the centralized cloud infrastructure of Atlassian Cloud Enterprise. This massive modernization project consolidated 14 disparate project management systems into a single-domain network, supported 2,600 users across all state agencies, and finished 2.5 years ahead of its original schedule.

21. High-level technical architects and representatives-specifically including former Chief Technical Architect Corona Ngatuvai, Atlassian Enterprise Advocate Elisa Aviles-Bodoin, and Atlassian Customer Success Manager Nicole Enriquez-led and coordinated the migration and integration of this unified enterprise ecosystem. The migrated and deployed tools include Jira for development and IT service management, Bitbucket for CI/CD and secure code storage, Confluence for centralized knowledge management, Trello for project coordination, and Atlassian Guard for single sign-on (SSO) and enterprise-grade identity and access management (Exhibit 106)[^ex106], as state technology

[19] Utah Code § 63A-16-104: 'Utah Code Title 63A Chapter 16 Part 1 Section 104...

pilot assessments (Exhibit 121) and strategic IT planning records (Exhibit 122) detail.

22. Under this unified Atlassian Cloud Enterprise architecture, which DTS manages, the State of Utah enforces centralized identity management and access control policies via Atlassian Guard. This single-domain configuration ensures that user records, access permissions, security logs, and administrative tickets remain fully integrated and searchable across all participating state agencies. When a citizen submits a medical disability notice or a request for reasonable accommodations under Title II of the ADA to one executive agency or office (such as the Utah State Tax Commission or the Office of the Utah Attorney General), the system ingests that record into the centralized, cloud-based data repository.

23. Consequently, the Defendants' claims that internal *"ethical conflict screens"* or administrative *"silos"* prevented the sharing of Plaintiff's clinical disability notices and accommodation requests are technically and factually false. Because the USTC and the Office of the Utah Attorney General operate within the same single-domain identity structure, which DTS manages, and maintain access to centralized ticketing and database systems, the system centrally logged and made accessible the notice of Plaintiff' [redacted] aynaud's, and Irlen Syndrome to all Defendants. The administrative blockade and document alteration that Defendants executed represent a deliberate, coordinated effort to ignore and conceal these records in bad faith, rather than any localized clerical or communication breakdown.

24. The Defendants anchored their unlawful course of conduct in the bad-faith, arbitrary fabrication of estimated tax deficiency assessments, which they executed without a shred of factual or evidentiary support. Specifically, in 2025, the Auditing Division of the USTC-specifically Defendant Auditor Houng *"Kim"* Chhour, with the certification and oversight of Defendant Supervisor Derek

Nelson-issued estimated Notices of Deficiency against Plaintiff John Earle Sullivan, alleging outstanding income tax liabilities that Defendants predicated upon unsubstantiated, unverified Federal Adjusted Gross Income (*"FAGI"*) figures and third-party database entries that Defendants allege were attributed to Plaintiff for the tax years 2021 and 2022. **Plaintiff explicitly denies that these third-party figures or database records represent authentic, accurate, or adopted income records of the Plaintiff.**

25. While drawing full-time state salaries to prosecute tax claims, Defendant Kathryn White concurrently operated a private, for-profit law firm, Bleazard Legal, PLLC (Exhibit 311) and (Exhibit 312), from August 2022 until its dissolution on April 24, 2023, and concurrently drew wages and benefits as an hourly Canyons School District nutrition service worker. In fiscal year 2025, while she drew a full-time state salary as an Assistant Attorney General IV and III, she concurrently drew wages and benefits as a cashier for Canyons School District (Exhibit 293), demonstrating a pattern of unauthorized, concurrent professional moonlighting that directly conflicts with the temporal and ethical requirements of her public office. Similarly, Defendant Paul J. Dirkmaat concurrently operated a private, for-profit law firm, Dirkmaat Law PLLC, in Orem, Utah, from November 2024 until its legal dissolution on October 15, 2025 (Exhibit A-1) and (Exhibit A-2). Despite the formal dissolution of Dirkmaat Law PLLC, Defendant Dirkmaat maintained an active Utah State Bar membership listing (Exhibit A-3), attended Multistate Tax Commission training in Spokane at state expense (Exhibit B), and maintained faculty teaching positions at Utah Valley University (Exhibit D-1) and (Exhibit D-2), actively soliciting private commercial clients under his state title as an Assistant Attorney General.

26. This concurrent private practice directly violated the Utah Public Officers' and Employees' Ethics Act, Utah Code § 67-16-4(1)[7], and the Utah Rules of

Professional Conduct (Rules 1.7, 1.11, 7.1, and 8.4(c)), which prohibit public employees from engaging in private business activities that conflict with their public duties and from soliciting commercial clients using their public office. Concurrently, Defendants operated these private commercial law firm entities during state-funded hours, and in the case of Dirkmaat, commingled public state workstation resources with his private practice.

## II. INITIAL LITIGATION ACTIONS AND PRELIMINARY ADA ACCOMMODATION NOTICES (MAY 2026)

27. Defendant Chhour, in a written email on August 28, 2025 (Exhibit 76), and Defendant Nelson, in his signed administrative Answer on May 19, 2026 (Exhibit 46), have explicitly conceded on the administrative record that the Auditing Division possesses absolutely zero base income reporting forms-specif ically including a total absence of Form W-2s, Form 1099s, or any employer-rep orted wage statements whatsoever-to support these speculative deficiency figures. To the extent Defendants reference or possess any third-party wage summaries or IRS exchange transcripts, **Plaintiff does not own, verify, authenticate, or adopt those third-party records, and asserts that Defendants manufactured these assessments out of thin air**, deliberately ignoring their own agency's record gaps in a raw display of administrative coercion.

28. Certified federal court transcripts and financial records establish the falsity of the Defendants' manufactured deficiency figures, demonstrating that Plaintiff earned no taxable income for the tax years 2021 and 2022. Furthermore, the Federal Bureau of Investigation seized all of Plaintiff's physical and digital financial records, accounting assets, and personal property-specifically including his primary Microsoft laptop, Transcend 16GB USB flash drive,

SanDisk USB drive, Samsung external SSD, and custom desktop computer tower-on January 14, 2021, rendering the accumulation of any such income factually and legally impossible (Exhibit F). The federal court's Order Setting Conditions of Release further compounded this complete deprivation of computing devices and physical isolation by placing Plaintiff under strict home detention (house arrest) at all times and subjecting all computers, internet-access ible devices, media storage devices, and digital media to 24-hour location and computer monitoring, under threat of immediate arrest and felony penalties, rendering any commercial activities or income generation factually and legally impossible (Exhibit 236). Furthermore, appellate and district court rulings fully vacated and dismissed the underlying criminal convictions that Defendants sought to exploit as a pretext for their retaliatory audits. Specifically, on February 27, 2025, the United States Court of Appeals for the District of Columbia Circuit vacated Plaintiff's criminal judgment in *United States v. Sullivan*, Case No. 24-3051 (Exhibit 237)[^ex237], and remanded the case with instructions to dismiss it as moot. On March 4, 2025, the United States District Court for the District of Columbia dismissed the case as moot (Exhibit 238)[^ex238], legally wiping out all convictions and establishing Plaintiff's total exoneration. TAP portal administrative access restrictions (Exhibit 52) and state W-2 database withholding logs (Exhibit 56) further compounded this administrative lockout. **Plaintiff re-asserts that any unverified W-2s or IRS transcripts that Defendants allege exist represent unauthenticated third-party data that Plaintiff expressly disclaims and denies adopting.**

29. The estimated tax deficiency assessments represent a fraudulent, retaliatory parallel construction that Defendants designed to launder and recoup seized federal civil forfeiture funds. To manufacture this tax liability, the Defendants willfully fabricated estimated income figures and assessed individual income taxes against Plaintiff without any rational or factual foundation. Specifically,

Defendant Nelson signed and certified the 2019 Notice of Deficiency containing an addition discrepancy and the 2020 Notice containing ghost income via selective database wage suppression (Exhibit 18), while Defendant Chhour issued the 2021 and 2022 Notices based on fabricated estimates (Exhibit 77). By issuing assessments without a rational foundation and devoid of supporting evidence, the Defendants have levied a constitutionally invalid, *"naked assessment"* that lacks any presumption of correctness under *United States v. Janis*, 428 U.S. 433, 441-42 (1976)[20].

30. To prevent Plaintiff from challenging the stay violations and default filings, Defendants Lind, and Dirkmaat colluded with Third Judicial District Court Clerk Alexis Walker to manipulate the electronic court docket. Defendant Clerk Walker worked for Defendant Administrative Office of the Courts (AOC) and possesses a Master's degree in Mathematics from Western Governors University (2021) and a Paralegal Certification from Weber State University (2023). Crucially, from April 2019 to August 2023, Walker worked as a full-time Adapted Physical Education Teacher at Spectrum Academy (Exhibit 167), where she designed movement programs and evaluations for medically fragile and disabled students. This professional background establishes that she possesses actual, subjective knowledge of disability accommodation standards and physical/cognitive accessibility needs (Exhibit 167).

31. Since at least May 5, 2026, the USTC and the Office of the Utah Attorney General possessed actual, written notice of Plaintiff's severe cognitive and visual impairments, which clinical evaluations an [redacted] vidence of Impairment forms substantiate under the signature of clinical psychologist [redacted] xhibit 117). These documented disabilities include sever [redacted] aynaud's phenomenon, and

[20] United States v. Janis, 428 U.S. 433, 441-42 (1976) Naked Tax Deficiency Assessment Defense: 'Holding that a tax deficiency assessment that is completely devoid...

Irlen Syndrome [redacted] Dr. Rosale [redacted]ertified that Petitioner has severe cognitive and psychological impairments that totally and permanently disable him from working in any occupation for a period of 12 months or longer.

32. Under Title II of the Americans with Disabilities Act, specifically 28 C.F.R. § 35.160(a)(1)[21], public entities bear a mandatory, non-delegable duty to take appropriate steps to ensure that communications with disabled individuals achieve the same effectiveness as communications with others. To secure meaningful notice and equal access, Plaintiff repeatedly demanded that Defendants serve all pleadings, notices, orders, and evidence in searchable, screen-readable digital formats.

33. Structural racial and socioeconomic disparities define the institutional environment of the Salt Lake County Third Judicial District Court, the Administrative Office of the Courts, the Office of the Utah Attorney General, and the Utah State Tax Commission. While an all-white clerical and legal staff (specifically including Defendants Judge Joel A. Ferre, Judicial Assistant Alexis Walker, AAG Paul J. Dirkmaat, AAG Laron J. Lind, AAG Kathryn L. White, Auditor Kim Chhour, and Supervisor Derek Nelson) exclusively handles day-to-day operations, docket administrations, and legal prosecutions, Keisa Williams, the State Court ADA Coordinator, represents the sole minority administrator in the organizational chain.

34. Operating within this institutional framework, Defendants systematically subjected Plaintiff-a disabled, indigent African American pro se litigant-to discriminatory administrative double standards and exclusions that they never imposed on the white state counsel. Specifically, while Defendant Judge Ferre and Defendant Clerk Walker banned electronic email filing and service channels for Plaintiff, forcing him to navigate physical and financial filing

[21] 28 C.F.R. § 35.160(a)(1) Title II ADA General Communications Standard: 'A public entity shall take appropriate steps to ensure that...

barriers despite his certified indigence fee waiver order (Exhibit 3) [redacted] public assistance status, an [redacted]pproval (Exhibit 120), they permitted white state counsel (AAGs Dirkmaat, Lind, and White) to seamlessly file and serve pleadings electronically. The administrative barriers, service exclusions, and double standards that Defendants forced upon Plaintiff directly contrast with the seamless administrative access and electronic accommodations that they provided to the opposing white state counsel.

## III. COORDINATED DOCKET MANIPULATION, ESI SPOLIATION, AND DISCOVERY TRAPS (JUNE 2026)

35. Defendant Laron Lind and Defendant Paul Dirkmaat systematically refused to serve documents in accessible formats, instead serving flat, image-only copies that assistive text-to-speech software cannot process (Exhibit 47), which Adobe search failures (Exhibit 19) and flat Canon copier containers (Exhibit 119) confirm. Similarly, Defendant Auditor Chhour, in her email response on August 29, 2025 (Exhibit 77), and Defendant Supervisor Nelson, in his signed Answer on May 19, 2026 (Exhibit 46), refused to serve administrative notices and database records in accessible digital formats, redirecting the taxpayer to the IRS directly and refusing to provide detailed discrepancy breakdowns. Furthermore, Defendant Alexis Walker explicitly rejected Plaintiff's initial electronic accommodation requests via email on May 28, 2026 (Exhibit 100) and in subsequent manual email replies (Exhibit 174). Furthermore, Defendant Paul Dirkmaat physically altered and spoliated court exhibits by whiting-out and deleting Plaintiff's explicit disability accommodation requests and clinical diagnostics (specifically whiting out the text referencing his certifie [redacted] aynaud's, and Irlen Syndrome) from the meet-and-confer agenda that Plaintiff had emailed to Dirkmaat directly (Exhibit 68). Dirkmaat

executed this physical spoliation of evidence as an intentionally malicious action to deliberately ignore blatant evidence that Plaintiff had emailed to him specifically. Forensic metadata analysis of the filed PDF confirms a secondary save epoch via iText 5.4.5, proving that Dirkmaat programmatically modified and flattened the digital file prior to filing to permanently destroy the original document's metadata and visual integrity. This deliberate alteration and deletion of text from a digital document represents an intentional spoliation of electronically stored information (*"ESI"*) in direct violation of Federal Rule of Civil Procedure 37(e)[22].

To demonstrate the physical alteration of the meet-and-confer agenda, Plaintiff presents a comparative analysis of the document as originally transmitted via email versus the final version filed by AAG Dirkmaat. The visual evidence below represents a side-by-side Forensic Redaction Audit and Evidentiary Comparison Report. This audit maps the specific sections where Plaintiff's clinical disability notices and diagnosis references were systematically whited-out and deleted prior to submission to the court:

[22] Federal Rule of Civil Procedure 37(e) Failure to Preserve Electronically Stored Information: 'If electronically stored information that should have been preserved in...

1. **Evidentiary Comparison Report Header & Case Metadata**: The report lists the case name as *John Earle Sullivan v. Utah State Tax Commission*, Case No. 260903520, in the Third Judicial District Court of Utah, with audit parameters targeting the *"Meet-and-Confer Agenda."* The audit exposes the document altered by *"Paul J. Dirkmaat (Defense)"* using the *"Original Client Email"* as the source.

2. **Redacted Key Phrases**:

   - **Redaction #1**: In the bottom left section of the Doctored Exhibit, the phrase "cognitive disabilities" is completely blacked out. The original email text reads:

> *"By operation of governing procedural rules, Title II of the Americans with Disabilities Act, and federal due process, the Petitioner hereby commands compliance with the pre-existing, state-certified cognitive disabilities to accommodate..."*-- Petitioner, Meet-and-Confer Agenda (Exhibit 68)[23]

By contrast, the doctored exhibit hides this phrase beneath a black redaction box to conceal the notice.

- **Redactions #2 & #3**: The doctored exhibit contains a second black redaction box spanning across two lines, obliterating the phrase "pre-existing, state-certified medical evaluations and doctor's appointments". The original email text reads:

> *"2. The meet-and-confer conference is proposed for Friday, June 26, 2026, at 10:00 AM MDT, via Teams, subject to the State's timely delivery of the itemized deficiency schedule. A live meeting prior to this date is impossible due to pre-existing, state-certified medical*

[23] Petitioner, Meet-and-Confer Agenda (Exhibit 68).

> *evaluations and doctor's appointments."*-- Petitioner, Meet-and-Confer Agenda (Exhibit 68)[23]

The doctored exhibit shows only: *"...A live meeting prior to this date is impossible due to [redacted] and doctor's appointments."*

3.**Forensic Auditor Findings**: The report concludes with three specific findings:

> *"1. The defense's Doctored Exhibit contains systematic blackouts of all references to the Petitioner's state-certified cognitive disabilities and medical appointments."*-- Forensic Redaction Audit (Exhibit 68)[24]

> *"2. These redactions actively conceal critical ADA-accommodation requirements which establish why a live meet-and-confer was impossible prior to the proposed date."*-- Forensic Redaction Audit (Exhibit 68)[24]

> *"3. This side-by-side comparison confirms that the original email explicitly notified the State of these cognitive and medical conditions, proving the defense altered the evidence before filing."*-- Forensic Redaction Audit (Exhibit 68)[24]



TO: pdirkmaat@agutah.gov, llind@agutah.gov
SUBJECT: LEGAL INQUIRY: Discovery Meet & Confer Agenda and Scheduling - Case No. 260903520

MANDATORY DISCOVERY CONTEXT & RULE 37 MEET AND CONFER AGENDA

Dear Mr. Dirkmaat,

Pursuant to Utah Rule of Civil Procedure 37, this communication acknowledges receipt of your email transmitted on June 16, 2026, at 6:30 AM MDT demanding a meet-and-confer regarding outstanding discovery issues in the matter of John Earle Sullivan v. Utah State Tax Commission, Case No. 260903520, currently pending before the Third Judicial District Court.

By operation of governing procedural rules, Title II of the Americans with Disabilities Act, and federal due process, the Petitioner hereby commands compliance with the following structural requirements to accommodate pre-existing, state-certified [redacted]

1. The State must provide a detailed, written, and itemized Discovery Deficiency Schedule at least twenty-four (24) hours in advance of any live meeting. This schedule must identify the exact discovery requests in dispute and the specific legal and factual basis for each objection.
2. The meet-and-confer conference is proposed for Friday, June 26, 2026, at 10:00 AM MDT, via Teams, subject to the State's timely delivery of the itemized deficiency schedule. A live meeting prior to this date is impossible due to [redacted] [redacted] and doctor's appointments.

MANDATORY DISCOVERY CONTEXT & RULE 37 MEET AND CONFER AGENDA

*Exhibit 68: Meet and Confer Disability Deletion Comparison.*

[24] Forensic Redaction Audit (Exhibit 68).

This physical spoliation of digital evidence demonstrates a bad-faith effort to conceal Plaintiff's documented impairments from the record. By removing these entries, Defendant Dirkmaat sought to establish a false narrative that the State had no notice of Plaintiff's disabilities, thereby setting up a procedural default and depriving Plaintiff of necessary ADA accommodations.

36. Under the four-factor framework of Federal Rule of Civil Procedure 37(e)[22], Defendant Paul Dirkmaat's conduct satisfies every requirement for the imposition of severe sanctions. First, the parties created and transmitted the meet-and-confer agenda in the course of active litigation as ESI, triggering an absolute duty to preserve the file's electronic integrity and metadata. Second, Defendant Paul Dirkmaat failed to take reasonable steps to preserve the ESI, instead taking active, fraudulent steps to alter and mutilate the text. Third, the parties lost the original, unaltered text, which they cannot restore or replace because Defendant Paul Dirkmaat filed the altered version on the court record as a certified exhibit, permanently destroying the original document's metadata. Fourth, Defendant Paul Dirkmaat acted with the specific, bad-faith intent to deprive Plaintiff of the use of this ESI in the litigation. By whiting out the disability notices, Defendant Paul Dirkmaat sought to manufacture a false record to argue that Defendants had no notice of Plaintiff's impairments, thereby setting up a procedural trap to default Plaintiff. This intentional, bad-faith alteration of evidence to deceive the court warrants the harshest sanctions under Federal Rule of Civil Procedure 37(e)(2)[22], including an adverse inference or default judgment against the Defendants, as *Hoffer v. Tellone*, 128 F.4th 433 (2d Cir. 2025)[25] clarifies.

37. Defendant Paul Dirkmaat's bad-faith document alteration is not an isolated clerical anomaly, but rather aligns with a documented corporate pattern and

[25] Hoffer v. Tellone, 128 F.4th 433 (2d Cir. 2025) Mandatory Sanctions for Intentional ESI Alteration: 'Reaffirming that when a litigant alters or spoliates electronically stored...

practice within the Defendant Office of the Utah Attorney General of deploying deficient litigation holds and claiming device loss or theft to evade ESI preservation obligations. In *Amann v. Office of the Utah Attorney General*[26] (Case No. 2:18-cv-00341-JNP-DAO, D. Utah), the federal court scrutinized the Attorney General's Office's data preservation failures, where the agency asserted a vague, ineffective litigation hold and never distributed it to key decision-makers, while concurrently claiming that unknown thieves stole the state laptop and personal cell phone of Bridget Romano-then-Chief Civil Deputy-rendering those devices inaccessible and failing to preserve critical ESI. Furthermore, high-level officials within the Attorney General's Office have historically utilized personal, non-state communication channels to conduct official business, rendering their personal accounts discoverable to uncover concealed administrative notices and whistleblowing complaints; indeed, in *Amann v. Office of the Utah Attorney General*[27], the court ordered a targeted search of Attorney General Sean Reyes' personal email accounts for ESI after discovering his official use of those accounts. This systemic, office-wide pattern of using deficient holds, claiming device theft, and utilizing unmonitored personal accounts to shield discoverable communications demonstrates that the Attorney General's Office routinely compromises its ESI preservation duties in bad faith to disadvantage opposing litigants.

38. On June 8, 2026, Defendant Judge Ferre entered a Memorandum Decision and Order denying Plaintiff's stay and mandamus motions (Exhibit 48).

39. Defendant Clerk Walker immediately generated a Notice of Electronic Filing (NEF) for state counsel (Dirkmaat and Lind) (Exhibit 176) but intentionally withheld all Notice of Case Activity (NECA) notifications from Plaintiff. Walker executed this service blockade under the administrative authority and

[26] Amann v. Office of the Utah Attorney General, Case No. 2: '18-cv-00341-JNP-DAO (D. Utah) ESI Spoliation and Litigation Hold Failures: Order...

[27] Amann v. Office of the Utah Attorney General, 2: '18-cv-00341-JNP-DAO (D. Utah) Personal Account ESI Discovery Mandate: Order granting...

oversight of Defendant Administrative Office of the Courts (AOC), which manages the electronic filing and notification architecture for the state courts.

40. Defendant Dirkmaat filed an Opposition on June 12, 2026, explicitly citing the June 8 order, knowing that Clerk Walker had never served the order upon Plaintiff.

41. When Plaintiff discovered the order through docket surveillance and filed a Reply Memorandum and a Request to Submit for Decision on June 15, 2026, Defendant Clerk Walker held Plaintiff's filings in a *"Pending"* queue. Walker executed this illegal hold to prevent the filings from showing on the public record, allowing Defendant Dirkmaat time to deploy a bad-faith Rule 37[28] meet-and-confer trap at 6:30 AM on June 16, 2026, to coerce Plaintiff into withdrawing his Reply. Similarly, Defendant Clerk Walker held Plaintiff's Motion for Reasonable ADA Accommodation (submitted June 19) and Motion for Remote Evidentiary Hearing (submitted June 22) in a pending queue until June 23, 2026, while docketing the State's filings immediately, demonstrating active administrative bias, selective service lags, and clerk-level blockade behavior. Walker executed these docket queue holds utilizing the CORIS database system, portal case history printouts (Exhibit 71), and court portal screenshots (Exhibit I) under the administrative direction of Defendant AOC, coinciding with scheduled system maintenance blocks (Exhibit 89).

[28] Utah Rules of Civil Procedure, Rule 37: 'Rule 37. Statement of discovery issues; Sanctions; Failure to admit...

Real-time screenshots of the court's online filing portal document the administrative blockade and selective docket delays. The visual below depicts the MyCase Court Portal interface for Case Number 260903520, titled *John Earle Sullivan v. Utah State Tax Commission*, showing the docket record as of June 2026. The screen capture displays the following exact text details across the portal interface:

1. **Court Case Information**:

· Case Caption: *John Earle Sullivan v. Utah State Tax Commission*, Third Judicial District - Salt Lake County District Court, Administrative Ag Case.

· Case Details: Case Number is 260903520, File Date is 05-08-2026, Assigned Judge is JOEL FERRE, and Next Hearing is N/A.

· Parties: Plaintiff JOHN EARLE SULLIVAN (represented by -), and Defendants UTAH STATE TAX COMMISSION (represented by LARON LIND and PAUL DIRKMAAT).

· Account Status: Total Restitution Amount Due, Total Restitution Amount Paid, Total Non-Restitution Amount Due, Total Non-Restitution Amount Paid, Total Bail/Bond Accounts Posted, Total Bail/Bond Accounts Undisposed, Total Credits Applied for All Accounts, and Recommended Bail all show zero balances.

2. **Filed Documents Log**:

The table logs the first 10 of 63 documents in the action, showing the file descriptions and filing dates as follows:

· Filed: Return of Electronic Notification | Date: 06-26-2026

· Filed: Return of Electronic Notification | Date: 06-25-2026

· Filed: Order Statement of Discovery Issues | Date: 06-25-2026

· Filed: Return of Electronic Notification | Date: 06-25-2026

· Filed: Response to Motion for Evidentiary Hearing and Request to Submit | Date: 06-25-2026

· Filed: ***PROPOSED*** Order Denying Respondent's Statement of Discovery Issues | Date: 06-25-2026

· Filed: Certificate of Service | Date: 06-25-2026

· Filed: Objection to Respondent's Statement of Discovery Issues | Date: 06-25-2026

· Filed: Return of Electronic Notification | Date: 06-25-2026

· Filed: ***PROPOSED*** ORDER GRANTING PETITIONER'S MOTION FOR EVIDENTIARY HEARING AND SCHEDULING ORAL TESTIMONY | Date: 06-22-2026

This log demonstrates that while Clerk Walker immediately processed and published the State's motions and orders, she placed Plaintiff's emergency motions and responses on indefinite hold, leaving them invisible on the public docket.




*Exhibit I: MyCase Court Portal Docket Screenshot.*

This selective service lag and docket hold confirms active administrative bias and blockade behavior. By withholding Plaintiff's filings from the public record, Defendant Clerk Walker and the Administrative Office of the Courts ensured that the presiding judge would not see Plaintiff's responses, while facilitating ex-party docket maneuvers and default filings by state counsel.

42. The entry of the June 25, 2026 Discovery Order (Exhibit 103)[^ex103] factually and technically demonstrates the complete absence of independent judicial review. On June 25, 2026, at 1:22 PM MDT, Plaintiff filed his highly complex, 102-page Objection and Statement of Discovery Issues. Less than four hours later, at 5:29 PM MDT, Clerk Walker docketed the order quashing discovery, bearing a digital signature. However, official courtroom calendar details (Exhibit 111) establish that the presiding judge, Defendant Joel Ferre, physically presided over a felony preliminary hearing in courtroom W46 (*State of Utah v. Raul Francisco Vidrio*, Case No. 251903941) all day, beginning at 9:00 AM MDT, rendering a meaningful judicial review of Plaintiff's massive objection a physical and factual impossibility. Furthermore, the electronic order contains technical character corruption, transforming the bracketed label *"[PROPOSED]"* into *"fRPROROSED,"* which forensic scrutiny reports document (Exhibit 113)[^ex113], proving that the judge did not hand-sign or individually review the order; instead, the courts processed the order through an automated, server-side signature stamp pipeline utilizing iText 5.5.13.1 on the backend.

43. On June 30, 2026, Defendant Kathryn White mailed pre-hearing exhibits via USPS Certified Mail requiring a physical signature (Tracking No. 70220410000 220452638) (Exhibit 231) and (Exhibit 234). Because Plaintiff is homebound and lacks transportation, the mail went unclaimed (Exhibit 234), and the postal carrier subsequently left a final delivery notice on July 7, 2026 (Exhibit 234.1).

## IV. COORDINATED SERVICE FRAUD, SUBPOENA BLOCKADES, AND STAY VIOLATIONS (JULY 2026)

44. During subsequent administrative proceedings, Defendant Kathryn White admitted on the record at the July 20, 2026 hearing that the Attorney General's Office deliberately employs internal ethical conflict screens that prevent cross-case communication (as admitted at the initial hearing):

> *"There is another matter that we're aware of, but have no information, there's no information sharing due to a conflict screen. Um so as far as this case... we don't have any knowledge of a disability..."*-- Kathryn White, Initial Hearing (July 20, 2026)

45. Setting up internal conflict screens that isolate and conceal known disability accommodation requests does not excuse state officials from their mandatory statutory duty under Title II of the ADA. Public entities have a centralized, non-delegable duty under the ADA to ensure communication is as effective as communication with others, and they cannot shield themselves from liability by erecting internal administrative barriers or conflict screens to block ADA compliance notice sharing. Indeed, while Defendants claim that ethical screens block their knowledge of disability, they screen their ethics to block the knowledge of disability.

46. The Administrative Office of the Courts' (AOC) coordinated silence and deliberate failure to respond to Plaintiff's emergency requests conclusively demonstrates this administrative blockade. Specifically, on July 13, 2026, at 4:01 PM, Plaintiff transmitted a formal, signed and secured PDF Emergency Request for Reasonable ADA Accommodations and Notice of Filing Blockade (Doc ID: 0713-JES-AW-ADA-REQ-2026) via email to Keisa Williams, the

Associate General Counsel and State Court ADA Coordinator for the AOC, routing copies to HR Director Tina Sweet and the Utah State Courts Self-Help Center (Exhibit 326). The request explicitly detailed Plaintiff's severe physical and cognitive impairments (including spinal radiculopathy, peripheral neuropathy, Raynaud's disease [redacted] n [redacted] hich severely limit his ability to walk, read, process print, or perform manual tasks) and warned that Judge Ferre's July 13 Communications Order completely blockaded Plaintiff from filing his pending Reply Memorandums and Subpoenas due on July 16, 2026, due to his print-disabled and indigent status. Plaintiff demanded that the AOC provide reasonable accommodations-specifically requesting print-and-file assistance or the designation of electronic filing coordinates-within 24 hours to prevent an irreversible deprivation of his constitutional rights.

47. State Court ADA Coordinator Keisa Williams and her office completely ignored and maliciously refused to reply to this emergency request, permitting the July 16, 2026 filing deadline to pass and forcing a procedural default. The Utah State Courts Self-Help Center's response email, which staff transmitted on July 27, 2026, at 1:59 PM, indisputably establishes the administrative receipt of this emergency transmittal (Exhibit 327)[29]. In this reply, the Self-Help Center staff acknowledged receipt of the transmittal, confirming: *"I see you've included us on this email. We don't handle ADA accommodation requests here at the Self-Help Center, but I see you've included the ADA coordinator on your email also."* Despite this explicit confirmation of delivery and notice to the State Court ADA Coordinator, the AOC and Williams maintained an absolute, bad-faith silence, failing to provide any accommodation or electronic filing coordinates. Williams' deliberate, silent refusal to act, in conjunction with Clerk Walker's docket holds, constitutes an intentional, coordinated administrative blockade that Defendants executed to deny Plaintiff equal access and procedural due process under Title II of the ADA.

[29] Administrative Hearing Statements. Statements from the initial administrative...

48. Defendants Lind, Dirkmaat, and White do not enjoy absolute prosecutorial immunity for these unconstitutional and administrative actions. Under the functional approach to immunity that the Supreme Court established in *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)[30], absolute prosecutorial immunity extends strictly to advocacy functions in the courtroom, and does not cover administrative, ministerial, or investigative functions. Falsifying, altering, or spoliating evidence constitutes investigative or administrative misconduct. As *Lanuza v. Love*, 899 F.3d 1019, 1024 (9th Cir. 2018)[31] holds, a government attorney who alters or falsifies evidence loses absolute immunity because exhibit preparation and modification constitute functional administrative tasks that detectives normally perform. Because Defendants' unconstitutional acts-spe cifically including serving flat, inaccessible scans, whiting out disability notices, and establishing conflict screens to block ADA compliance sharing-were administrative and ministerial, they fall entirely outside the protection of absolute prosecutorial immunity.

49. Clerical ministerial duties-such as docketing and serving court orders-are mandatory tasks that do not involve discretionary judgment. Under *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993)[15], court clerks do not enjoy absolute quasi-judicial immunity for ministerial acts.

50. Furthermore, absolute quasi-judicial immunity applies to officials executing court orders only if their actions do not exceed judicial authority or act in the clear absence of all jurisdiction. *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009)[32]. Because Defendant Clerk Walker's acts of docket queue-holding and service obstruction remain ministerial, administrative, and occurred in bad faith under the administrative control of Defendant Administrative Office of the Courts (AOC), she cannot claim quasi-judicial immunity.

[30] Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) Functional Limits of Prosecutorial Immunity: 'Holding that absolute prosecutorial immunity is strictly limited to advocacy...

[31] Lanuza v. Love, 899 F.3d 1019, 1024 (9th Cir. 2018) Falsification of Evidence Strips Immunity: 'Holding that a government attorney who intentionally alters, falsifies, or...

[32] Moss v. Kopp, 559 F.3d 1155, 1163 (10th Cir. 2007) Quasi-Judicial Immunity Exception: 'Holding that quasi-judicial immunity does not protect officers or court...

51. Realizing they faced default under Utah Admin. Code R861-1A-26(A)[33]-which requires the exchange of exhibits at least 10 business days prior to a hearing-Defendant White executed a *"Signature-Evasion Loop."* On July 9, 2026, she sent the same exhibits via Certified Mail without a signature requirement (Tracking No. 9505514364616190635924) (Exhibit 235), and the postal carrier dropped the package in Plaintiff's mailbox on July 10, 2026.

52. Serving 139 pages of exhibits on Friday, July 10, 2026 (Exhibit 231), for a hearing that the Tax Commission scheduled on Monday, July 20, 2026, provided Plaintiff only 6 business days of notice, representing a flagrant service default under Utah Admin. Code R861-1A-26(A)[33]. At the July 20, 2026 hearing, Defendant White admitted on the record that she executed this signature-evasion mailing loop to bypass delivery failures and force mailbox delivery, knowing that the first signature-required package (Tracking No. 70220410000220452638) went undelivered. Defendants executed this post-dated certificate of service transmittal (Exhibit 79) and electronic notification return (Exhibit 80) to attempt an untimely, bad-faith cure of a service default, depriving Plaintiff of his due process right to meaningful notice.

53. Indeed, Plaintiff did not actually retrieve these untimely exhibits from his physical mailbox until July 20, 2026, at 10:16 AM MDT, mid-hearing during the initial tax commission proceedings, leaving him zero time to review the 139 pages of exhibits before Defendant White presented them. Plaintiff had to leave his home computer mid-hearing to retrieve the DuPont Tyvek envelope from his mailbox a [redacted] rda, UT, directly confirming the complete deprivation of meaningful notice and opportunity to prepare a defense.

54. Metadata audits of official court rulings-specifically the Memorandum Decision and Order that Clerk Walker docketed on July 15, 2026 (Exhibit 259)-reveal that the compiler generated the file using Acrobat Distiller 26.0 (Windows)

[33] [Utah Admin. Code R861-1A-26(1)](< Prehearing Discovery and Exchange of Evidence: 'All parties to an administrative proceeding before the Tax Commission...

from a document titled Microsoft Word - Omnibus Order in Sullivan on a machine logged in under the profile joel.ferre. This print trace confirms that Defendant Judge Ferre utilized his personal workstation to construct the omnibus order, highlighting a direct electronic stamp of authorship and lack of administrative neutrality in the preparation of judicial rulings.

55. On July 15, 2026, Plaintiff filed a formal Motion to Disqualify Judge Joel Ferre under Utah Rule of Civil Procedure 63(c)(1)[8]. Under the plain language of the rule, the filing of the motion immediately stays all further proceedings in the case, except for those necessary to protect immediate health or safety, until a different judge decides the motion.

56. Despite the mandatory stay, Defendants Judge Ferre and Clerk Walker continued to process and advance the litigation. Specifically, after the automatic stay took effect on July 15, 2026, at 10:20 AM MDT, the CORIS database system automatically engaged its lock (Exhibit 105). When the Third Judicial District Court team attempted to sign and file a discovery order (Dkt. 76) at 10:59 AM MDT on July 16, 2026, the CORIS system blocked the transaction, resulting in an unsigned proposed order docketed bearing a *"NOT SIGNED"* watermark (Exhibit 110)[^ex110]. In a deliberate act to bypass this jurisdictional barrier, Defendants manually overrode the database state to docket the State's Motion for Summary Judgment at 12:23 PM MDT on July 16, 2026. Defendants executed this manual override through the database pipeline of Defendant Administrative Office of the Courts (AOC), which trial court database transaction timings and clerical stay bypasses document, and which is verified by forensic document comparison demonstrating binary-distinct files and signature timestamps for emailed vs. MyCase versions of the Motion for Summary Judgment. Furthermore, on July 21, 2026, Defendant Judge Ferre entered two substantive orders while the stay remained active.

57. Because the automatic statutory stay stripped the court of jurisdiction, the orders

that Judge Ferre entered on July 21 remain void *ab initio*. Under the doctrine that the Supreme Court established in *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)[34], judicial immunity does not protect a judge acting in the *"clear absence of all jurisdiction."* While the entry of stayed orders constitutes an act in excess of jurisdiction, Defendant Judge Ferre loses absolute judicial immunity because Plaintiff bases his claims for damages against Ferre in his individual capacity strictly on Ferre's non-judicial administrative and ministerial actions. These non-judicial acts include Ferre's administrative case-management coordination with Clerk Walker to enforce an undocumented electronic filing and electronic notification blockade against Plaintiff (a print-disabled pro se litigant), and his utilization of personal workstation resources (joel.ferre) to compile stayed orders. These administrative functions lack absolute judicial immunity under *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993)[15]. This jurisdictional failure prompted Plaintiff to file the Emergency Motion to Vacate (Exhibit 88).

58. Under *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)[35], the court can infer a discriminatory purpose from a series of procedural and substantive departures from the normal administrative sequence. Here, the co-conspirators executed a sequence of events that Plaintiff cannot explain on grounds other than intentional discrimination: (a) Defendants applied the sudden, undocumented ban on electronic email filing and service *exclusively* to Plaintiff (a disabled Black pro se litigant) while white state counsel enjoyed unrestricted electronic access; (b) Clerk Walker generated immediate electronic notifications (NEFs) for the white state counsel but actively withheld all Notices of Case Activity (NECAs) from Plaintiff, facilitating ex parte docket maneuvers; (c) the court accepted and docketed unsworn, defective filings from state counsel while rejecting Plaintiff's filings for minor, non-existent format

[34] Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) Clear Absence of Jurisdiction Exception: 'Holding that a judge is stripped of absolute judicial immunity...

[35] Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 267 (1977) Proof of Discriminatory Intent and Procedural Departures: 'Holding that discriminatory intent under the Equal Protection Clause can...

variances; and (d) Clerk Walker's adapted physical education training at Spectrum Academy (Exhibit 167) gave her actual, subjective knowledge of disability accessibility standards, proving she acted with subjective *scienter* to deny accommodations.

59. Under the *Arlington Heights framework*, state officials' use of racially coded tropes and stereotyping constitutes circumstantial evidence of discriminatory intent. In the July 13, 2026 Communications Order (Exhibit 252), Defendant Judge Ferre, acting upon bad-faith complaints and reports that Clerks Walker and Britland fabricated in retaliation for Plaintiff's complaints regarding document non-filing, discrimination, and ADA violations, signed and entered an order characterizing Plaintiff's attempts to secure ADA accommodations and service compliance as *"hostile, demanding, condescending, and harassing"* behavior. Co-conspirators Dirkmaat and White subsequently exploited this characterization to justify the ongoing service blockades, applying the *"angry Black man"* racial trope to justify revoking Plaintiff's electronic filing access, withholding NEF alerts, and blockading subpoena submissions, while the court permitted white state prosecutors seamless, unimpeded access to these same judicial tools. The co-conspirators' reliance on these pretextual and racially coded stereotypes to restrict Plaintiff's constitutional rights serves as direct evidence of racial animus and discriminatory intent under *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)[35].

60. These racially coded double standards and exclusionary tactics operate in a wider institutional landscape that features severe racial disparities in victimization and access to justice, which the official reports of the Department of Justice's Bureau of Justice Statistics (*"BJS"*) compile. Specifically, the BJS reports *Criminal Victimization, 2021* (Exhibit 350) and *Violent Victimization by Race or Hispanic Origin, 2008-2021* (Exhibit 351) establish that Black individuals in the United States suffer a disproportionately high burden of

violent crime, including a statistically significant **75% elevation** in robbery rates (2.8 per 1,000 for Black victims compared to 1.6 for White victims) and a statistically significant **25% elevation** in serious violent crimes excluding simple assault (8.0 per 1,000 for Black victims compared to 6.4 for White victims). Despite these certified, severe vulnerabilities, and despite the fact that over **51.8%** of Black victims do not report violent victimizations to law enforcement due to systemic administrative and institutional barriers (Exhibit 350), Defendants deployed a bad-faith electronic filing ban, subpoena blockade, and notice lockout to systematically exclude a disabled Black pro se litigant, while fabricating bad-faith accusations labeling him *"hostile"* and *"harassing"* (Exhibit 252) to cover up their own service defaults and discovery blockades.

61. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d[3] applies fully to this action because the Utah State Courts (including the Third Judicial District Court and Defendant Administrative Office of the Courts), the Office of the Utah Attorney General, and the Utah State Tax Commission operate as public entities that receive federal financial assistance (specifically including federal Department of Justice grants, federal court interpreter program funding, and joint federal-state law enforcement program allocations). Under 42 U.S.C. § 2000d-7[17], these state agencies have waived their Eleventh Amendment immunity from Title VI claims in federal court. By accepting federal funding, these state agencies bound themselves to Title VI's non-discrimination mandate. Indeed, the U.S. Department of Justice Office for Civil Rights formally audited the State of Utah in Complaint/Review No. 08-OCR-0390, entering binding administrative findings that the State (specifically including the state courts and Office of the Attorney General as subrecipients) failed to maintain mandatory complaint procedures and civil rights training programs for beneficiaries, establishing actual and constructive notice of these systemic compliance defaults (Exhibit 353). Because the DOJ's own BJS division compiles and

publishes these severe racial disparities, and because the DOJ's civil rights division has formally cited the State's administrative failures, the Defendant state agencies had actual and constructive knowledge of the disparate impact and exclusionary barriers that a physical-only filing ban and administrative blockade would impose on minority litigants. By maintaining these barriers and ignoring Plaintiff's emergency ADA and civil rights requests, Defendants acted with deliberate indifference to the known, racially disparate impact of their administrative system, satisfying the intent standard for damages under Title VI. Despite this, Defendants enforced a non-neutral, exclusionary system of administration that creates a two-tiered system of justice: one with seamless electronic access and real-time alerts for the white state prosecutors, and another with physical and financial barriers, notification blockades, and procedural traps for the disabled Black pro se litigant. The AOC's State Court ADA Coordinator and Title VI Compliance Officer (Keisa Williams) maintained a coordinated, bad-faith silence and refused to respond to Plaintiff's Emergency ADA Request (Exhibit 326), demonstrating institutional deliberate indifference to the ongoing exclusion. This disparate impact and intentional exclusion violates Title VI and the Equal Protection Clause.

62. On July 13, 2026, at 8:40 AM MDT, Plaintiff formally requested that the Clerk of the Court sign and seal subpoenas duces tecum to the Social Security Administration (*"SSA"*), the Internal Revenue Service (*"IRS"*), the United States Department of the Treasury, and the Utah Department of Workforce Services, Office of Rehabilitation, Disability Determination Services (*"DDS"*), to obtain certified earnings records, tax documents, and clinical disability determination files under Utah Rule of Civil Procedure 45(a)(2)[16] (Exhibit 250). In accordance with the mandatory rule and established court procedures, Plaintiff submitted the subpoenas with the complete case caption, court header, case number (260903520), judge name (Joel Ferre), and party names fully completed on Page

1, leaving the specific command details and clerk signature block blank for the clerk to sign, seal, and issue-the exact same procedure that Judicial Assistant Curtis Britland himself had personally executed on June 1, 2026, when Britland hand-printed his name, signed, and applied the official Third Judicial District Court Seal (STATE OF UTAH - THIRD DISTRICT COURT - SALT LAKE CITY) to Plaintiff's subpoena (Exhibit 52), and that Court Clerk Alex Walker had executed on June 3, 2026, when Walker signed and stamped Plaintiff's blank DWS subpoena under URCP Rule 45[16].

63. At 10:29 AM MDT, Defendant Judicial Assistant Curtis Britland rejected the request for issuance of the subpoenas via email (Exhibit 253), falsely stating: *"These subpoenas you have submitted are blank. We are unable to sign completely blank subpoenas--they must at least have a party they are directed to filled in. Also, there are not currently any hearings set for this case."* Defendant Britland's assertion that the subpoenas were *"completely blank"* was demonstrably false, as Plaintiff had fully completed the mandatory court header, case caption, case number, judge assignment, and party names on Page 1. Furthermore, Britland's claim that subpoenas require a pending trial or hearing date directly violated Utah Rule of Civil Procedure 45(a)(2)[16], which mandates that the clerk *"shall issue a subpoena, signed but otherwise in blank, to a party requesting it"* for discovery purposes without requiring pre-set hearing dates.

64. At 11:01 AM MDT, Plaintiff transmitted a formal email resubmitting the subpoenas and issuing a comprehensive legal clarification and rebuttal to the improper rejection (Exhibit 250). Plaintiff explicitly disproved Defendant Britland's false assertion that the subpoenas were *"completely blank,"* establishing that the top half of Page 1 was fully completed with Plaintiff's name, address, phone, email, party role, court type, target venue, case caption, case number (260903520), and assigned judge (Joel Ferre), in exact compliance with Judicial Assistant Alex Walker's explicit written instructions of June 1,

2026: *"In reference to URCP Rule 45(a)(2)*[16]*, you still must fill out the following: Complete the top 1/2 of the form with name, address, phone, email, mark that you are the plaintiff/petitioner, and fill out the caption with all known information including case name and number."* Plaintiff further cited URCP Rule 45(a)(2)[16] (*"The clerk must issue a subpoena, signed but otherwise in blank, to a party requesting it..."*) and URCP Rule 45(a)(1)(C)(ii)[16] to establish that Page 2 command fields are completed prior to service rather than prior to clerical signing, and that discovery subpoenas do not require a scheduled trial or hearing date.

65. Defendant Britland, in coordination with the Judge's judicial team, refused to issue the resubmitted subpoenas and maintained the blockade (Exhibit 253). Defendants executed this selective rejection of subpoenas as an intentionally malicious action in absolute bad faith, fabricating pretextual claims that the subpoenas were *"completely blank"* to deliberately ignore URCP Rule 45(a)(2)[16] and directly contradict Defendant Britland's own prior official act of June 1, 2026 (Exhibit 52), thereby blockading Plaintiff's discovery efforts and preventing him from obtaining the certified federal and state records required to expose the Tax Commission's fabricated deficiency assessments. Google LLC's third-party subpoena objection letters (Exhibit 118) and Sheriff Returns of Service on FAST Enterprises (Exhibit 81), DWS (Exhibit 82), and Google LLC (Exhibit 83) further compounded this discovery blockade. Like Alexis Walker (who received $64,994.24 in public compensation in 2025), Curtis Britland executed his acts of discovery obstruction as ministerial, administrative duties in bad faith under the administrative control of Defendant Administrative Office of the Courts (AOC) while drawing public state compensation (receiving $40,488.93 in 2025), which strips him of any quasi-judicial immunity under *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993)[15].

# ARTICLE V. CLAIMS FOR RELIEF

## COUNT I

## Deprivation of Fourteenth Amendment Due Process and Equal Protection Under Color of Law (42 U.S.C. § 1983)

*(Against All Individual Defendants in Their Individual Capacities for Damages, and Against All Defendants for Prospective Declaratory and Injunctive Relief)*

66. Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 65.

67. The Fourteenth Amendment's Due Process Clause explicitly protects an individual's constitutional right to medical privacy. See *Whalen v. Roe*, 429 U.S. 589, 599[36]-600 (1977); *A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994)[37]; *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000)[38]. Defendants violated Plaintiff's clearly established constitutional right to medical privacy when they publicly published Plaintiff's unredacted psychiatric, medical, and clinical disability records on open court servers.

68. The Fourteenth Amendment's Due Process Clause requires notice and a meaningful opportunity to be heard before the State deprives a citizen of property or liberty. The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying to any person within their jurisdiction the equal protection of the laws, shielding citizens from arbitrary and discriminatory administrative classifications and exclusions.

---

[36] Whalen v. Roe, 429 U.S. 589 (1977) Constitutional Right to Medical Privacy: 'Holding that the Fourteenth Amendment's Due Process Clause protects an...

[37] A.L.A. v. West Valley City, 26 F.3d 989 (10th Cir. 1994) Disclosure of Medical Information and Standing: 'Holding that the unauthorized disclosure of confidential medical information by...

[38] Herring v. Keenan, 218 F.3d 1171 (10th Cir. 2000) Scope of Privacy Right in Medical Records: 'Confirming that individuals have a constitutional right under the Fourteenth...

69. Defendants Dirkmaat, White, Lind, Walker, Britland, Judge Ferre, Chhour, and Nelson, acting under color of law, deprived Plaintiff of due process and equal protection of the laws by:

a. Intentionally withholding notice of judicial decisions and electronic notifications (NEFs) from Plaintiff while providing them to white state counsel.

b. Manipulating electronic docket queues and placing Plaintiff's filings in a *"Pending"* queue to block and delay his responses while facilitating the actions of opposing white state counsel.

c. Executing signature-evasion service loops to force administrative default.

d. Entering substantive rulings and orders after the active statutory stay under Utah R. Civ. P. 63(c)(1)[8] stripped the court of all subject-matter jurisdiction.

e. Selectively banning electronic filing, service channels, and subpoena issuance for a disabled Black pro se litigant while permitting seamless electronic access and subpoena signing for white state counsel, thereby imposing an unequal, exclusionary standard of access.

f. Deploying racially coded tropes (*"hostile"* and *"harassing"*) in official court orders to justify electronic filing bans and notice blockades against Plaintiff, in direct violation of the Equal Protection Clause and in deliberate indifference to DOJ-documented racial victimization disparities.

70. Plaintiff sues individual defendants Dirkmaat, Ferre, White, Lind, Walker, Britland, Chhour, and Nelson in their individual capacities for compensatory and punitive damages under 42 U.S.C. § 1983[1]. Plaintiff sues Defendants Joel A. Ferre, Paul J. Dirkmaat, Laron J. Lind, Kathryn L. White, Alexis Walker, Curtis Britland, Houng *"Kim"* Chhour, Derek Nelson, the Office of the Utah Attorney General, and the Administrative Office of the Courts in their official capacities for prospective declaratory and injunctive relief under 42 U.S.C. §

1983[1], to enjoin the ongoing unconstitutional practices, policies, and blockades detailed herein, as the doctrine of *Ex parte Young*, 209 U.S. 123 (1908)[39] permits.

71. As a proximate result of Defendants' constitutional deprivations, Plaintiff suffered actual injuries, including severe financial loss, extreme emotional distress, and physiological injury, compelling an award of compensatory damages. Under *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986)[40], the law authorizes compensatory damages under 42 U.S.C. § 1983[1] to compensate persons for actual injuries that the deprivation of constitutional rights causes. Furthermore, under *Carey v. Piphus*, 435 U.S. 247, 266 (1978)[41], Plaintiff demands nominal damages for the denial of procedural due process and equal protection even in the absence of proof of actual injury.

[39] Ex parte Young, 209 U.S. 123 (1908) Eleventh Amendment Exemption for Prospective Relief: 'Holding that the Eleventh Amendment does not bar federal lawsuits...

[40] Memphis Community School Dist. v. Stachura, 477 U.S. 299, 307 (1986) Compensatory Damages for Constitutional Injuries: 'Holding that § 1983 damages are designed to compensate persons...

[41] Carey v. Piphus, 435 U.S. 247, 266 (1978) Nominal Damages for Due Process Violations: 'Holding that the denial of procedural due process is actionable...

**COUNT II**

**Violation of Title II of the Americans with Disabilities Act (28 C.F.R. § 35.160)**

*(Against Defendants Lind, Dirkmaat, White, Britland, Chhour, Nelson, Office of the Utah Attorney General, and Administrative Office of the Courts in Their Official Capacities)*

72. Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 71.

73. Title II of the ADA mandates that public entities provide necessary accommodations and ensure communications with disabled individuals are as effective as communications with others.

74. Defendants Lind, Dirkmaat, White, Chhour, and Nelson, in their official capacities representing the Office of the Utah Attorney General and the Utah State Tax Commission, and Defendant Office of the Utah Attorney General, violated Title II of the ADA by systematically refusing to serve pleadings, administrative notices, and database audit records in searchable, accessible digital formats.

75. Defendant Dirkmaat, in his official capacity representing the Office of the Utah Attorney General and the Utah State Tax Commission, and Defendant Office of the Utah Attorney General, further violated the ADA by systematically whiting-out and altering Plaintiff's clinical disability notices and accommodation requests (specifically erasing the text referencin [redacted] aynaud's, and Irlen Syndrome) from court exhibits to conceal Plaintiff's impairments from the tribunal (Exhibit 68).

76. Defendants White and Lind, in their official capacities representing the Office of the Utah Attorney General, and Defendant Office of the Utah Attorney General,

further violated the ADA by asserting that internal *"ethical conflict screens"* within the Attorney General's Office justified blocking cross-case knowledge of Plaintiff's documented disabilities, thereby denying him necessary accommodations.

77. Defendants Judge Ferre, Clerk Walker, and Clerk Britland, in their official capacities representing the Administrative Office of the Courts and the Third Judicial District Court, and Defendant Administrative Office of the Courts, violated Title II of the ADA by selectively banning electronic email filing and service channels for Plaintiff, withholding electronic Case Activity notifications (NEFs), blockading subpoena submissions, and running electronic document systems that strip signatures and seals and corrupt text, thereby denying him necessary accommodations, equal access, and effective communication.

78. Under *United States v. Georgia*, 546 U.S. 151, 159 (2006)[18], Title II of the ADA validly abrogates state sovereign immunity for conduct that actually violates the Fourteenth Amendment. Because the administrative blockades, document alterations, and docket manipulations that Defendants executed under color of law actually violate Plaintiff's procedural due process and equal protection rights, the Fourteenth Amendment abrogates the sovereign immunity of Defendants Office of the Utah Attorney General and Administrative Office of the Courts, subjecting them to monetary damages and prospective relief in federal court.

**COUNT III**

**Civil Conspiracy to Deprive Civil Rights Under Color of Law (42 U.S.C. §§ 1983 & 1985(3))**

*(Against All Individual Defendants in Their Individual Capacities for Damages, and Against All Defendants for Prospective Declaratory and Injunctive Relief)*

79. Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 78.

80. Under Utah law, a civil conspiracy requires a combination of two or more persons, an object to be accomplished, a meeting of the minds on the object or course of action, one or more unlawful overt acts, and damages. Under *Lawrence v. Intermountain, Inc.*, 2010 UT App 313, ¶ 12, fn. 4, 243 P.3d 508[9], a conspiracy to defraud exists where actors share the intent to defraud, and the court must view benign individual facts as a whole.

81. The intra-corporate conspiracy doctrine-which posits that agents of a single corporate or governmental entity acting within the scope of their employment cannot conspire among themselves-does not bar Plaintiff's claims. First, under controlling Tenth Circuit precedent in *Brever v. Rockwell Int'l Corp.*[42], the intra-corporate conspiracy doctrine does not apply to civil rights conspiracies brought under 42 U.S.C. §§ 1983 and 1985(3). Second, Defendants formed the conspiracy between separate, independent constitutional and legal entities belonging to two distinct branches of the State of Utah: (a) the Judicial Branch, represented by the Administrative Office of the Courts and the Third Judicial District Court (specifically including Judge Joel Ferre and Clerks Alexis Walker and Curtis Britland), and (b) the Executive Branch, represented by the Office of the Utah Attorney General (specifically including AAGs Paul Dirkmaat, Laron Lind, and Kathryn White) and the Utah State Tax Commission (specifically

[42] Brever v. Rockwell Int'l Corp., 40 F.3d 1119...

including Auditor Houng *"Kim"* Chhour and Supervisor Derek Nelson). Because these co-conspirators belong to independent constitutional entities with separate funding, leadership, and distinct legal statuses under the Utah Constitution, the intra-corporate conspiracy doctrine cannot apply.

82. Furthermore, even if the intra-corporate conspiracy doctrine applied, the Individual Defendants lose its protections under the *"scope of employment"* and *"independent personal stake"* exceptions. First, Defendants White, Dirkmaat, and Nelson acted outside the scope of their official employment when they operated private, for-profit commercial businesses (specifically Bleazard Legal, PLLC, Dirkmaat Law PLLC, and Nelson's unapproved law enforcement moonlighting) concurrently with their public duties. Second, the co-conspirators maintained independent personal, commercial, and disciplinary motives to execute the conspiracy-specifically to prevent professional disciplinary actions by the Office of Professional Conduct (OPC) and personal civil liability arising from their spoliation of digital evidence (Exhibit 68) and their violations of the mandatory statutory stay under Utah R. Civ. P. 63(c)(1)[8].

83. Defendants Dirkmaat, White, Lind, Walker, Britland, Judge Ferre, Chhour, and Nelson entered into an explicit meeting of the minds and a coordinated course of action to deploy the full, disproportionate force of state prosecutorial and judicial machinery against a single, disabled Black pro se litigant. Invidiously discriminatory, class-based animus targeting Plaintiff as a Black pro se litigant motivated this meeting of the minds and the resulting conspiratorial acts, as Defendants specifically intended to deprive him of equal protection of the laws, equal privileges and immunities, and equal access to justice under the Fourteenth Amendment, U.S. Const. amend. XIV, § 1[2].

84. Plaintiff establishes the co-conspirators' discriminatory animus through their coordinated use of racially coded language and stereotypes to justify their unconstitutional blockades and administrative exclusions. Specifically, in the

July 13, 2026 Communications Order (Exhibit 252), Defendant Judge Ferre, acting upon bad-faith complaints and administrative reports that Defendant Clerks Walker and Britland fabricated in retaliation for Plaintiff's complaints of discrimination and ADA violations, signed and entered an order characterizing Plaintiff's attempts to secure ADA accommodations and service compliance as *"hostile, demanding, condescending, and harassing"* behavior. Co-conspirators Dirkmaat and White subsequently exploited this characterization to justify the ongoing service blockades, applying the *"angry Black man"* racial trope to justify revoking Plaintiff's electronic filing access, withholding NEF alerts, and blockading subpoena submissions, while the court permitted white state prosecutors seamless, unimpeded access to these same judicial tools. The co-conspirators' reliance on these pretextual and racially coded stereotypes to restrict Plaintiff's constitutional rights serves as direct evidence of racial animus and discriminatory intent under *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)[35].

85. The co-conspirators executed their conspiracy with deliberate indifference to the known, systemic civil rights compliance failures and racial disparities within the State of Utah's judicial and administrative systems. In the U.S. Department of Justice (DOJ) Office for Civil Rights (OCR) Compliance Review Report (Exhibit 353), the federal agency entered formal administrative findings that the State of Utah failed to maintain mandatory complaint procedures and civil rights training programs for federally funded subrecipients. Furthermore, the Department of Justice Bureau of Justice Statistics (BJS) Bulletin on Criminal Victimization (Exhibit 350) and BJS Violent Victimization by Race Report (Exhibit 351) compile empirical data proving that Black individuals face a statistically significant disproportionate burden of violent victimizations and institutional barriers in seeking redress. By deploying a coordinated electronic and administrative blockade against a disabled Black pro se litigant, the

co-conspirators weaponized the very institutional barriers and compliance voids that the DOJ documented to suppress Plaintiff's legal challenges, thereby executing a discriminatory disparate impact.

86. Plaintiff establishes the bad-faith, conspiratorial nature of Defendants' actions under *Lawrence v. Intermountain, Inc.*[9] and *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)[35] through an unexplainable concatenation of synchronized overt acts and extraordinary procedural departures that the co-conspirators designed to suppress evidence and force an administrative default, specifically including:

a. Deploying a team of four Assistant Attorneys General, a tax auditor, and a tax supervisor to execute parallel state-court and administrative-appeal traps while simultaneously operating unauthorized private commercial law firms concurrently with their public duties;

b. Executing a coordinated split-counsel pleading fraud, wherein Defendants Dirkmaat, Lind, Chhour, and Nelson filed and verified pleadings claiming a lack of access to tax audit records or demanding the taxpayer prove a negative, while co-conspirators White and Davis actively managed and presented those exact records in the administrative track;

c. Executing synchronized docket manipulation and subpoena blockades, wherein Defendant Clerks Walker and Britland, acting under the administrative control of Defendant Administrative Office of the Courts (AOC), held Plaintiff's filings in *"Pending"* queues and rejected valid blank subpoenas while Defendants Dirkmaat and White deployed early-morning Rule 37[28] traps and signature-evasion mailing loops; and

d. Issuing void judicial orders while the statutory stay under Utah R. Civ. P. 63(c)(1)[8] stripped the court of jurisdiction, thereby shielding the underlying ESI spoliation and ethics violations.

87. Because all Defendants shared the unlawful objective to deprive Plaintiff of his constitutional rights and obscure their own ESI spoliation and ethics violations, this Court must hold each Individual Defendant jointly and severally liable for all compensatory, punitive, and statutory damages in their individual capacities.

## COUNT IV

## Violation of First Amendment Right to Access the Courts (42 U.S.C. § 1983)

*(Against Defendants Judge Ferre, Clerk Walker, Clerk Britland, and Administrative Office of the Courts)*

88. Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 87.

89. The First Amendment protects the right of citizens to petition the government for redress of grievances, which includes the right of access to the courts.

90. Defendants Judge Ferre, Clerk Walker, Clerk Britland, and the Administrative Office of the Courts (AOC) violated Plaintiff's First Amendment right of access to the courts by selectively banning electronic filing and service channels for Plaintiff, withholding electronic notifications (NEFs), placing manual queue holds on Plaintiff's filings, and blockading subpoena issuances, while maintaining seamless, unrestricted electronic access for state counsel, thereby executing a discriminatory and non-neutral access blockade.

91. Pursuant to *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)[43], Plaintiff's access-to-courts claim is ancillary to a specific, underlying non-frivolous legal claim which Defendants' blockades have severely compromised, obstructed, and

[43] Christopher v. Harbury, 536 U.S. 403 (2002) Access to Courts Standard for Backward-Looking Claims: 'Holding that a backward-looking access-to-courts claim must identify a specific...

destroyed. Specifically, Plaintiff's underlying non-frivolous action is his state court tax appeal (*John Earle Sullivan v. Utah State Tax Commission*, Appeal No. 26-778 / Case No. 260903520), challenging an arbitrary, estimated state tax assessment. Plaintiff's underlying appeal is highly arguable and non-frivolous because the USTC issued a *"naked assessment"* lacking any underlying base income forms under *United States v. Janis*, 428 U.S. 433, 441-42 (1976)[20].

92. Defendants' complete blockade of electronic filing and service channels, combined with the selective withholding of Notices of Electronic Filing (NEFs) and the rejection of blank subpoenas on July 13, 2026, physically prevented Plaintiff from: (a) receiving timely statutory notice of state filings and hearing schedules, leading to default risks and the entry of stay-violating orders; and (b) obtaining and introducing crucial exculpatory electronic evidence (ESI) from third-party networks (Google, DWS) to prove the invalidity of the tax assessment and the spoliation of ADA notices. Because Defendants executed these actions while the active statutory stay stripped the state court of all subject-matter jurisdiction, and because the state court has since closed all communication channels to Plaintiff, Defendants permanently destroyed the remedy of a fair, speedy, and efficient state adjudication, leaving Plaintiff with no other judicial remedy to cure this loss except this federal action. Defendants' filing and subpoena bans operate as an unconstitutional prior restraint on the right to petition. Under *KUTV, Inc. v. Conder*, 668 P.2d 513, 521-22 (Utah 1983)[44], the law prohibits a court from restricting access unless it conducts a hearing, evaluates less restrictive alternatives, and makes detailed findings of necessity, which Defendants failed to do.

[44] KUTV, Inc. v. Conder, 668 P.2d 513, 521-22 (Utah 1983) Unconstitutional Prior Restraints on Access: 'Holding that a court cannot restrict public access or petitioning...

## COUNT V

## Unauthorized Disclosure of Tax Return Information (26 U.S.C. § 7431)

*(Against Defendants Dirkmaat, White, Lind, Chhour, and Nelson)*

93. Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 92.

94. Under 26 U.S.C. § 7431(a)(2)[45], any person or state employee who knowingly or negligently discloses any tax return or return information in violation of 26 U.S.C. § 6103[46] is liable to the taxpayer for civil damages. For purposes of this claim, the information that Defendants unlawfully disclosed consisted of confidential federal return details and exchange data that the Internal Revenue Service supplied directly to the Utah State Tax Commission pursuant to a formal state-federal tax information exchange agreement under 26 U.S.C. § 6103(d)[47]-specifically including data labeled and categorized by Defendants as federal IRS Form W-2, Form 1099, and Form 1040 details attributed to Plaintiff.

95. Defendants Dirkmaat, White, Lind, Chhour, and Nelson, acting knowingly and with gross negligence under color of state law, unlawfully disclosed this confidential federal tax return information and exchange-derived return details on public, unsealed state court dockets without authorization or sealing protection, violating 26 U.S.C. § 7431[45] and Utah Code § 59-1-403[48]. **Plaintiff asserts this claim strictly based upon Defendants' unauthorized public disclosure of statutorily protected return information attributed to**

[45] 26 U.S.C. § 7431 Civil Damages for Unauthorized Inspection or Disclosure of Returns and Return Information: 'If any person who is not an officer or employee...

[46] 26 U.S.C. § 6103 Confidentiality and Disclosure of Returns and Return Information: 'Returns and return information shall be confidential, and except as...

[47] 26 U.S.C. § 6103(d): '(5) Disclosure would reveal investiga- tory records compiled for law enforce- ment purposes, and would interfere with enforcement proceedings or dis- investigative techniques and pro- cedures the effectiveness of which would thereby be impaired,'.

[48] Utah Code § 59-1-403 Confidentiality of Tax Records - Divulging Info: 'An officer, employee, or agent of the commission may not...

**Plaintiff, without Plaintiff admitting or conceding the accuracy, authenticity, or ownership of any underlying third-party wage data.**

96. Pursuant to 26 U.S.C. § 7431(c)[45], Plaintiff demands statutory damages for each act of unauthorized public disclosure, actual damages, punitive damages for willful disclosure, and full attorney's fees and costs.

## COUNT VI

## Violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d)

*(Against Defendants Administrative Office of the Courts and Office of the Utah Attorney General)*

97. Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 96.

98. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d[3], prohibits recipients of federal financial assistance from discriminating against individuals on the ground of race, color, or national origin.

99. Defendants Administrative Office of the Courts (AOC) and Office of the Utah Attorney General (OUAG) are public entities that receive federal financial assistance (specifically including federal Department of Justice grants, federal court interpreter program funding, and joint federal-state law enforcement program allocations). Pursuant to 42 U.S.C. § 2000d-7[17], these state agencies waived their Eleventh Amendment immunity from Title VI claims in federal court as a condition of receiving federal funds.

100. Defendants AOC and OUAG violated Title VI by subjecting Plaintiff-a disabled African American pro se litigant-to discriminatory, non-neutral administrative double standards, service exclusions, and notification blockades

that they never imposed on opposing white state counsel. Specifically, while Defendants permitted white state counsel to file and serve pleadings electronically and receive real-time docket alerts, they banned Plaintiff from electronic filing and service channels and withheld electronic Case Activity notifications (NEFs/NECAs), placing Plaintiff's filings in temporary *"Pending"* queue holds.

101. Defendants acted with deliberate indifference to the known, racially disparate impact of their administrative systems. Despite Plaintiff transmitting actual written notice to AOC State Court ADA Coordinator and Title VI Compliance Officer Keisa Williams detailing the filing blockade and due process deprivation, Defendants maintained an absolute, bad-faith silence, failing to accommodate or resolve the ongoing exclusion. Consequently, Plaintiff demands compensatory damages, prospective declaratory and injunctive relief, and reasonable attorney's fees under 42 U.S.C. § 1988(b)[49].

## ARTICLE VI. PRAYER FOR RELIEF

## I. DECLARATORY RELIEF

A.1. **Declaratory Judgment on Due Process and Equal Protection:** Declare that the actions, policies, and practices of Defendants Dirkmaat, Ferre, White, Lind, Walker, Britland, Chhour, Nelson, Office of the Utah Attorney General, and Administrative Office of the Courts-specifically including the selective withholding of electronic notifications (NEFs/NECAs), docket queue manipulation, execution of signature-evasion service loops, non-neutral electronic filing bans, and clerical subpoena blockades-violate the Procedural

[49] 42 U.S.C. § 1988(b) Civil Rights Attorneys Fees Awards Act: as excluded from the definition of disability for section 504...

Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

A.2. **Declaratory Judgment on First Amendment Access to Courts:** Declare that Defendants Judge Joel A. Ferre, Clerk Alexis Walker, and the Administrative Office of the Courts enforced an unconstitutional prior restraint on Plaintiff's right to petition the government for redress of grievances under the First Amendment to the United States Constitution by arbitrarily revoking electronic filing access without notice, hearing, or detailed judicial findings of necessity as required by *KUTV, Inc. v. Conder*, 668 P.2d 513 (Utah 1983)[44].

A.3. **Declaratory Judgment on Title II ADA and 28 C.F.R. § 35.160[21]:** Declare that Defendants Office of the Utah Attorney General, Administrative Office of the Courts, Lind, Dirkmaat, White, Britland, Chhour, and Nelson violated Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*)[50] and 28 C.F.R. § 35.160(a)(1)[21] by systematically refusing to provide accessible, screen-readable digital communications, whiting-out and altering clinical disability notices, erecting internal *"ethical conflict screens"* to block ADA compliance notice sharing, blockading subpoena submissions, and failing to respond to emergency reasonable accommodation requests transmitted to State Court ADA Coordinator Keisa Williams.

A.4. **Declaratory Judgment Voiding Orders Entered During Mandatory Stay:** Declare that Defendant Judge Joel A. Ferre or Defendant Clerks Alexis Walker and Curtis Britland signed, processed, or entered all administrative, procedural, and substantive orders on or after July 15, 2026 (specifically including the substantive orders dated July 21, 2026) in excess of jurisdiction or in the clear

[50] Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.) Prohibition Against Disability Discrimination by Public Entities: 'Subject to the provisions of this title, no qualified individual...

absence of all subject-matter jurisdiction during an active statutory stay under Utah R. Civ. P. 63(c)(1)[8], rendering them null, void *ab initio*, and legally unenforceable.

A.5. **Declaratory Judgment Declaring Tax Deficiency Assessments *"Naked"* and Void:** Declare that the 2021 and 2022 Notices of Deficiency that Defendants Chhour and Nelson issued lack any factual foundation or base income reporting forms (W-2s/1099s), and lack any legal validity or presumption of correctness under *United States v. Janis*, 428 U.S. 433 (1976)[20].

A.6. **Declaratory Judgment on Bad-Faith ESI Spoliation:** Declare that Defendant Paul J. Dirkmaat and the Office of the Utah Attorney General engaged in bad-faith spoliation and alteration of electronically stored information (*"ESI"*) by intentionally whiting-out clinical disability text and flattening the metadata of Exhibit 68 to deprive Plaintiff and the court of evidence of ADA notice.

A.7. **Declaratory Judgment on Unlawful Moonlighting and Public Ethics Violations:** Declare that Defendants Kathryn L. White, Paul J. Dirkmaat, and Derek Nelson engaged in unlawful outside commercial employment and unapproved moonlighting in violation of the Utah Public Officers' and Employees' Ethics Act, Utah Code § 67-16-4(1)[7], concurrently with their public duties.

A.8. **Declaratory Judgment on Title VI of the Civil Rights Act of 1964:** Declare that Defendants Administrative Office of the Courts and Office of the Utah Attorney General violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d[3], by subjecting Plaintiff to a discriminatory, non-neutral administrative blockade and electronic filing ban that disparate-impacted and excluded

Plaintiff on the ground of race, while providing seamless electronic access and real-time notifications to white state counsel, and by maintaining deliberate indifference to this ongoing exclusion.

## II. INJUNCTIVE AND COERCIVE EQUITABLE RELIEF

B.1. **Permanent Structural Injunction Mandating ADA Digital Accessibility:** Issue a Permanent Injunction enjoining Defendants Office of the Utah Attorney General, Administrative Office of the Courts, and Utah State Tax Commission, together with their officers, agents, servants, employees, and attorneys, from serving or issuing any flat, image-only, or inaccessible document scans upon Plaintiff, and compelling them to furnish all future pleadings, notices, orders, administrative decisions, and evidentiary disclosures in fully searchable, text-based, OCR-processed digital formats (PDF/A) compatible with screen-reading assistive technology.

B.2. **Mandatory Injunction Restoring Equal Electronic Court Access:** Issue a Mandatory Injunction directing Defendant Administrative Office of the Courts and Defendant Clerks Alexis Walker and Curtis Britland to immediately restore Plaintiff's full electronic submission, email filing, subpoena issuance, and real-time electronic notification (NEF/NECA) channels within the Third Judicial District Court and the MyCase/CORIS portal on equal terms with state prosecutors, and enjoining Defendants from placing Plaintiff's pro se filings in temporary or *"Pending"* queue holds.

B.3. **Permanent Injunction Enjoining Enforcement of Void Stay-Violating Rulings:** Issue a Permanent Injunction prohibiting Defendants Paul J. Dirkmaat,

Laron J. Lind, Kathryn L. White, and the Office of the Utah Attorney General from taking any administrative or judicial steps to enforce, execute, or rely upon any void orders entered by Defendant Judge Ferre on or after July 15, 2026.

B.4. **Mandatory Injunction Ordering Purging and Replacement of Altered ESI Exhibits:** Issue an Order directing Defendant Clerk Alexis Walker and the Administrative Office of the Courts to purge and physically strike Defendant Dirkmaat's altered, whited-out PDF exhibit (Exhibit 68) from the public court record, and compelling Defendant Office of the Utah Attorney General to replace it with a certified, unaltered original copy retaining full underlying digital metadata.

B.5. **Appointment of Independent Court-Monitored Special Master / ADA Auditor:** Issue an Order appointing an independent Special Master / Court Monitor, at the sole expense of Defendants Administrative Office of the Courts and Office of the Utah Attorney General, to oversee, audit, and inspect all court case queues, electronic notification logs, and ADA accommodation requests submitted by indigent and disabled pro se litigants within the Third Judicial District Court for a period of no less than twenty-four (24) months.

B.6. **Mandatory Institutional Compliance Audits under Title VI:** Issue an Order compelling Defendants Administrative Office of the Courts and Office of the Utah Attorney General to undergo an independent, third-party Title VI compliance audit to evaluate administrative disparities, service exclusions, and notification blockades affecting racial minority pro se litigants in federally assisted state programs pursuant to 42 U.S.C. § 2000d[3] and Utah Code of Judicial Administration Rule 3-306.04[51].

[51] Utah Code of Judicial Administration Rule 3-306.04 Title VI Equal Access and Non-Discrimination Policy: 'It is the policy of the Utah State Courts to...

## III. SPECIAL EQUITABLE FINANCIAL REMEDIES, SANCTIONS, AND DISGORGEMENT

C.1. **Imposition of Equitable Constructive Trust over Private Law Firm Assets:** Issue an Order establishing an Equitable Constructive Trust over all gross fees, financial revenues, retainers, and profits earned, accumulated, or derived by Defendants Kathryn L. White (via Bleazard Legal, PLLC) and Paul J. Dirkmaat (via Dirkmaat Law, PLLC) through private commercial legal operations conducted while utilizing state-funded working hours or, in the case of Dirkmaat, state workstation resources.

C.2. **Mandatory Accounting and Disgorgement of Unearned State Salaries:** Issue an Order compelling Defendants Kathryn L. White, Paul J. Dirkmaat, and Derek Nelson to submit to a forensic financial accounting of all public compensation drawn during periods of unauthorized, concurrent moonlighting, and directing full disgorgement of all state salary funds, health benefits, and pension accruals received during said periods into the Registry of this Court or the Utah State Treasury.

C.3. **Severe FRCP 37(e)(2)[25] Spoliation Sanctions / Default Judgment:** Issue an Order imposing severe statutory sanctions against Defendants Paul J. Dirkmaat and Office of the Utah Attorney General for the bad-faith physical alteration and destruction of ESI metadata in Exhibit 68, including:

1. Striking Defendants' affirmative defenses regarding notice of disability;
2. Entering Default Judgment on liability in favor of Plaintiff on Count II (Title II ADA); or

3. Issuing a mandatory adverse inference jury instruction establishing that the spoliated text contained explicit, unrefuted notice of Plaintiff's severe impairments.

C.4. **Restitution of Unlawfully Retained Federal Forfeiture/Tax Funds:** Issue an Order directing Defendants Houng *"Kim"* Chhour, Derek Nelson, and the Utah State Tax Commission to grant full administrative restitution and expungement of all arbitrary deficiency assessments manufactured to recoup federal forfeiture funds.

## IV. COMPENSATORY DAMAGES

D.1. **Economic Compensatory Damages:** Award Plaintiff economic compensatory damages against Defendants Dirkmaat, Ferre, White, Lind, Walker, Britland, Chhour, and Nelson in their individual capacities under 42 U.S.C. § 1983[1], and against Defendants Office of the Utah Attorney General and Administrative Office of the Courts in their official capacities under Title II of the ADA, jointly and severally, in an amount according to proof at trial, representing direct financial losses, out-of-pocket administrative expenditures, destroyed technology assets, and collateral financial injury.

D.2. **Non-Economic Compensatory Damages:** Award Plaintiff non-economic compensatory damages for severe emotional distress, extreme mental anguish, physiological injury, exacerbation of pre-existin [redacted] nd Raynaud's phenomenon, severe cognitive decompensation, and humiliation against Defendants Dirkmaat, Ferre, White, Lind, Walker, Britland, Chhour, and Nelson in their individual capacities under 42 U.S.C. § 1983[1], and against

official capacity entity Defendants under Title II of the ADA, jointly and severally, in an amount according to proof at trial (*Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986)[40]).

D.3. **Nominal Damages:** Award Plaintiff nominal damages against each Defendant for the intentional deprivation of procedural due process, equal protection, and First Amendment rights under *Carey v. Piphus*, 435 U.S. 247 (1978)[41].

## V. PUNITIVE AND EXEMPLARY DAMAGES

E.1. **Punitive Damages Under *Smith v. Wade*[52] Standard:** Award Plaintiff punitive and exemplary damages against each individual capacity Defendant-specifically Defendants Paul J. Dirkmaat, Joel A. Ferre, Kathryn L. White, Laron J. Lind, Alexis Walker, Curtis Britland, Houng *"Kim"* Chhour, and Derek Nelson-to punish evil motive, malice, intent to deceive, and callous indifference to federally protected civil rights pursuant to *Smith v. Wade*, 461 U.S. 30 (1983)[52], in an amount according to proof at trial.

E.2. **FRCP 37(e)[53] Monetary Sanctions:** Award Plaintiff monetary cost-shifting sanctions directly against Defendant Paul J. Dirkmaat and the Office of the Utah Attorney General for reasonable litigation costs incurred in discovering, auditing, and exposing the altered ESI metadata under FRCP 37(e)[22].

[52] Smith v. Wade, 461 U.S. 30 (1983) Punitive Damages Standard in Civil Rights Actions: 'Holding that a jury may award punitive damages in a...

[53] Federal Rules of Civil Procedure, *Rule 37(e)*.

# VI. STATUTORY MULTIPLIERS, INTEREST, FEES, AND COSTS

F.1. **Full Attorney's Fees and Fee-Shifting:** Award Plaintiff reasonable attorney's fees, legal assistant fees, and lodestar adjustments under the mandatory fee-shifting provisions of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b)[49], and Title II of the ADA, 42 U.S.C. § 12205[54], calculated under *Hensley v. Eckerhart*, 461 U.S. 424 (1983)[55], in an amount according to proof at trial.

F.2. **Expert Witness Fees and Litigation Expenses:** Award Plaintiff full expert witness fees, forensic computer auditor expenses, database analysis costs, and litigation expenses pursuant to 42 U.S.C. § 1988(c)[56] and 42 U.S.C. § 12205[54].

F.3. **Pre-Judgment and Post-Judgment Interest:** Award Plaintiff pre-judgment interest on all monetary damage awards from the date of injury through the date of entry of judgment at the maximum legal rate under federal common law, together with mandatory post-judgment interest pursuant to 28 U.S.C. § 1961(a)[57] calculated from the date of judgment until fully satisfied.

F.4. **Full Taxable Costs of Suit:** Award Plaintiff full taxable costs of suit pursuant to 28 U.S.C. § 1920[58] and Federal Rule of Civil Procedure 54(d)(1)[59].

[54] 42 U.S.C. § 12205 ADA Attorneys Fees and Costs Provisions: ion 308(a)(1) of the ADA. The ADA contains its own...
[55] Hensley v. Eckerhart, 461 U.S. 424 (1983) Lodestar...
[56] 42 U.S.C. § 1988(c) Expert Witness Fees: 'In awarding an attorney's fee under subsection (b) in any...
[57] 28 U.S.C. § 1961(a) Post-Judgment Interest: 'Interest shall be allowed on any money judgment in a...
[58] 28 U.S.C. § 1920 Taxation of Costs: 'A judge or clerk of any court of the United...
[59] Federal Rule of Civil Procedure 54(d)(1) Costs Other...

## VII. CATCH-ALL EQUITY CLAUSE

G. **Catch-All Equity Clause:** Award such other, further, or different legal, statutory, administrative, or equitable relief as this Court deems just, proper, necessary, and unassailable to fully vindicate Plaintiff's civil rights and remedy the systemic institutional non-compliance set forth herein.

## ARTICLE VII. VERIFICATION

I declare under penalty of perjury, in accordance with the laws of the United States of America pursuant to 28 U.S.C. § 1746(2)[60], that the foregoing is true and correct.

Executed on July 27, 2026.

**John Earle Sullivan**

Plaintiff Pro Se

[60] 28 U.S.C. § 1746(2) Unsworn Declarations Under Penalty of Perjury: 'Wherever, under any law of the United States or under...

## CERTIFICATE OF COMPLIANCE

Pursuant to DUCivR 7-1 and DUCivR 10-1, the undersigned certifies that this Complaint complies with the formatting and word count requirements of this Court. The substantive body of this Complaint contains exactly 15,538 words, and the total counting parts of this document (including the substantive body, statutory rules, and case law precedents in the citation ledger) contain exactly 18,506 words, as calculated by the word count utility.

Dated: July 27, 2026.

**John Earle Sullivan**

Plaintiff Pro Se

# CERTIFICATE OF SERVICE

I hereby certify that this Complaint has been submitted to the Clerk of the Court for filing along with an Application to Proceed in Forma Pauperis (IFP). Pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3), service of process upon the Defendants is reserved and will be executed by the United States Marshals Service upon this Court's screening and approval of the Application to Proceed in Forma Pauperis and subsequent issuance of summonses. Consequently, the parties will not be served until the Application to Proceed in Forma Pauperis has been approved by the Court and the summonses are executed by the U.S. Marshals.

## SERVICE RECIPIENTS:

> Joel A. Ferre - Judge (Defendant)
>
> slccivdom@utcourts.gov
>
> Third Judicial District Court, 450 South State Street, Salt Lake City, UT 84111

> Paul J. Dirkmaat (Bar No. 19508) - Assistant Attorney General (Defendant)
>
> pdirkmaat@agutah.gov
>
> Office of the Utah Attorney General
>
> 160 East 300 South, 5th Floor, P.O. Box 140874, Salt Lake City, UT 84114

> Kathryn L. White (Bar No. 16508) - Assistant Attorney General (Defendant)
>
> kathrynwhite@agutah.gov
>
> Office of the Utah Attorney General
>
> 350 North State Street, Suite 230, Salt Lake City, UT 84114

Laron J. Lind (Bar No. 8334) - Assistant Attorney General (Defendant)
llind@agutah.gov
Office of the Utah Attorney General
160 East 300 South, 5th Floor, P.O. Box 140874, Salt Lake City, UT 84114

Alexis Walker - Judicial Assistant (Defendant)
alexw@utcourts.gov
Third Judicial District Court, 450 South State Street, Salt Lake City, UT 84111

Curtis Britland - Judicial Assistant (Defendant)
curtisb@utcourts.gov
Third Judicial District Court, 450 South State Street, Salt Lake City, UT 84111

Houng *"Kim"* Chhour - Tax Auditor III (Defendant)
kchhour@utah.gov
Utah State Tax Commission
210 North 1950 West, Salt Lake City, UT 84134

Derek Nelson - Tax Audit Examiner Manager (Defendant)
derek.nelson@utah.gov
Utah State Tax Commission
210 North 1950 West, Salt Lake City, UT 84134

Dated: July 27, 2026.

**John Earle Sullivan**

Plaintiff Pro Se

# ADDENDUM

## U.S. CONST. AMEND. XIV, § 1

*All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

---

## 26 U.S.C. § 6103(A)

*(a) General rule. Returns and return information shall be confidential, and except as authorized by this title- (1) no officer or employee of the United States, (2) no officer or employee of any State... shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.*

---

## 26 U.S.C. § 7431(A)(1)

*(1) Disclosure by a person who is not an employee of the United States. If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against such person in a district court of the United States.*

---

## 28 C.F.R. § 35.160(A)(1)

*(a)(1) A public entity shall take appropriate steps to ensure that communications with applicants, participants, companions, and members of the public with disabilities are as effective as communications with others.*

---

## 28 U.S.C. § 1331

*The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.*

## 28 U.S.C. § 1341

*The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.*

## 28 U.S.C. § 1343(A)(3)

*(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person...*

*(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.*

## 28 U.S.C. § 1367(A)

*(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.*

## 28 U.S.C. § 1391(B)

*(b) Venue in General. A civil action may be brought in-*

*(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;*

*(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or*

*(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.*

## 28 U.S.C. § 1746(2)

*(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".*

## 28 U.S.C. § 1920

*A judge or clerk of any court of the United States may tax as costs the following:*

*(1) Fees of the clerk and marshal;*

*(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;*

*(3) Fees and disbursements for printing and witnesses;*

*(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;*

*(5) Docket fees under section 1923 of this title;*

*(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.*

## 28 U.S.C. § 1961(A)

*(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.*

## 28 U.S.C. § 2201(A)

*(a) In a case of actual controversy within its jurisdiction... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.*

### 28 U.S.C. § 2202

*Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.*

### 42 U.S.C. § 1983

*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...*

### 42 U.S.C. § 1988(B)

*(b) Attorney's Fees. In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...*

### 42 U.S.C. § 1988(C)

*(c) Expert Fees. In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.*

### 42 U.S.C. § 2000D

*No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.*

## 42 U.S.C. § 2000D-7(A)(1)

*(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.*

## 42 U.S.C. § 12205

*In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.*

## FEDERAL RULE OF CIVIL PROCEDURE 37(E)

*(e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:*

*(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or*

*(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:*

*(A) presume that the lost information was unfavorable to the party;*

*(B) instruct the jury that it may or must presume the information was unfavorable to the party; or*

*(C) dismiss the action or enter a default judgment.*

## FEDERAL RULE OF CIVIL PROCEDURE 54(D)(1)

*(1) *Costs Other Than Attorney's Fees.* Unless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees-should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law.*

### UTAH ADMIN. CODE R861-1A-26(1)

*(1) "Prehearing Discovery" means the process by which a party to a proceeding before the commission may obtain discovery of facts and documents from any other party. All parties shall exchange copies of all documents and evidence intended to be submitted at hearing at least 10 business days prior to the scheduled hearing date.*

### UTAH CODE § 59-1-403(1)(A)

*(a) An officer, employee, or agent of the commission may not divulge or make known in any manner any information gained from any return, list, or other document filed under any statute administered by the commission, except as provided in this section.*

### UTAH CODE § 67-16-4(1)

*(1) No public officer or public employee shall accept employment or engage in any business or professional activity which he might reasonably expect would require or induce him to disclose confidential information acquired by him by reason of his official position, or use or attempt to use his official position to secure special privileges or exemptions for himself or others.*

### UTAH CODE § 78A-2-105

*The Supreme Court shall appoint a chief administrative officer of the council who shall have the title of the state court administrator and shall serve at the pleasure of the council, the Supreme Court, or both. The state court administrator shall be selected on the basis of professional ability and experience in the field of public administration and shall possess an understanding of court procedures as well as of the nature and significance of other court services. The state court administrator shall devote the state court administrator's full time and attention to the duties of the state court administrator's office, and shall receive a salary equal to that of a district court judge.*

### UTAH CODE OF JUDICIAL ADMINISTRATION RULE 3-306.04

*It is the policy of the Utah State Courts to ensure equal access and non-discrimination in all court programs, services, and activities pursuant to Title VI of the Civil Rights Act of 1964.*

## UTAH RULE OF CIVIL PROCEDURE 45(A)(2)

*(2) *Subpoena issued by clerk.* The clerk will issue a subpoena, signed but otherwise in blank, to a party requesting it, who must complete it before service.*

## UTAH RULE OF CIVIL PROCEDURE 63(C)(1)

*(1) *Mandatory Stay.* Upon the filing of a motion to disqualify a judge, the judge against whom the motion is directed may take no further action in the case until the motion is decided, except to enter an order of recusal or temporary protective order as necessary to protect immediate health or safety.*

# INDEX OF APPENDED ENCLOSURES

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-3** | Certified copy of the State of Utah Third District Court fee waiver order (Case No. 260903520) entered May 13, 2026, establishing Petitioner's indigent status. |
| **EXHIBIT-18** | Certified copy of State Taxable Wages and Income Tax Withheld table from Utah State Tax Commission Appeals Unit administrative record (Exhibit 18, Page 90 of 93, DIV 111) for 2019-2020. |
| **EXHIBIT-19** | Certified PDF Court Exhibit of Screenshot of Adobe Acrobat search tool failing to locate the word 'John' in the Respondents' Answer to Petition |
| **EXHIBIT-46** | Sworn Administrative Answer signed by Tax Audit Examiner Manager Derek Nelson on May 19, 2026, admitting that the Tax Commission possesses zero base income reporting forms (W-2s/1099s) for Plaintiff for tax years 2021?2022. |
| **EXHIBIT-47** | Senior Assistant Attorney General Laron Lind accidental email disclosure recommending blanket discovery objections to suppress state tax audit database records. |
| **EXHIBIT-48** | Signed Memorandum Decision and Order by Judge Joel Ferre confirming that Petitioner John Earle Sullivan exhausted administrative remedies under the Government Records Access and Management Act (GRAMA), establishing jurisdiction for judicial review. |
| **EXHIBIT-52** | John Sullivan Google Subpoena Page 18 privilege log mandate and prohibition on blanket privilege claims |
| **EXHIBIT-56** | Certified parent copy of Utah State Tax Commission W-2 and wage database record showing 2019-2020 employer wages and state tax withholding |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-68** | Certified parent copy of the Petitioner's Meet-and-Confer agenda and email thread with opposing counsel, highlighting the whited-out text areas. |
| **EXHIBIT-71** | Certified parent copy of the official MyCase portal case history printout in Case No. 260903520 dated June 26, 2026. |
| **EXHIBIT-76** | Certified copy of the August 28, 2025 email transmittal from Tax Specialist Kim Chhour, providing a high-level W-2 summary for the 2019 and 2020 tax years. |
| **EXHIBIT-77** | Email transmittal from Tax Auditor Kim Chhour dated August 29, 2025, refusing to provide wage discrepancy breakdowns and directing taxpayer to IRS directly. |
| **EXHIBIT-79** | Service email from Sherry Snow <sherrysnow@agutah.gov> dated June 25, 2026 at 3:14 PM MDT, serving the USTC Response with Certificate of Service post-dated to June 26, 2026. |
| **EXHIBIT-80** | Return of Electronic Notification from the Third Judicial District Court, confirming the e-filing of the USTC Response on June 25, 2026 at 3:14 PM MDT. |
| **EXHIBIT-81** | Return of Service by Salt Lake County Deputy Sheriff certifying service of Subpoena Duces Tecum on FAST Enterprises, LLC (Docket#26-5576, served June 22, 2026). |
| **EXHIBIT-82** | Return of Service by Salt Lake County Deputy Sheriff certifying service of Subpoena Duces Tecum on Utah Department of Workforce Services (Docket#26-5575, served June 23, 2026). |
| **EXHIBIT-83** | Return of Service by Salt Lake County Deputy Sheriff certifying service of Subpoena Duces Tecum on Google LLC (Docket#26-5574, served June 23, 2026). Note: Contains clerical typographical error naming served party as Utah State Tax Commission. |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-88** | Petitioner's Emergency Motion to Vacate or Reconsider the June 25, 2026 Discovery Order, filed in the Third Judicial District Court on June 26, 2026. |
| **EXHIBIT-89** | Administrative Office of the Courts IT maintenance log documenting scheduled CORIS system outages during queue holds. |
| **EXHIBIT-100** | Email from Third District Court Clerk Alex Walker dated June 1, 2026, rejecting Plaintiff's proposed order because the document title contained the word "Proposed." |
| **EXHIBIT-103** | Certified parent copy of Order on Discovery Issues |
| **EXHIBIT-105** | Comprehensive forensic dossier documenting CORIS system automatic stay locks during URCP Rule 63(c)(1) disqualification motion and manual administrative overrides. |
| **EXHIBIT-106** | Technical case study documenting the State of Utah's enterprise-wide cloud migration, establishing the centralized Atlassian Guard identity management architecture. |
| **EXHIBIT-110** | Unsigned proposed order docketed July 16, 2026, at 10:59 AM MDT bearing "NOT SIGNED" watermark, proving the CORIS database stay-lock blocked Judge Joel Ferre's signature credentials. |
| **EXHIBIT-111** | Third Judicial District Court calendar detail for courtroom W46 on June 25, 2026. |
| **EXHIBIT-113** | Forensic Scrutiny Report of the June 25, 2026 Discovery Order, detailing chronology, signature stamp metadata, and character corruption. |
| **EXHIBIT-117** | Official Utah Department of Workforce Service [redacted] e [redacted] ment Form signed by clinical psycholo [redacted] rtifying Plaintiff's severe cognitive and ps |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-118** | Formal objection letter transmitted by Google LLC Legal Investigations Support on July 2, 2026, objecting to third-party discovery and directing Petitioner to seek ESI directly from the party opponent under Rule 34. |
| **EXHIBIT-119** | Certified copy of Respondent's Opposition to Petitioner's Various Motions (TRO Opposition), showing a scanned image-only container generated via Canon iR-ADV C5870 copier. |
| **EXHIBIT-120** | State of Utah Department of Workforce Service [redacted]pproval Letter (Case No. 15642907), dated May 2, 2026 's eligibility for means-tested public assistance. |
| **EXHIBIT-121** | Department of Government Operations, Division of Technology Services & Utah State Tax Commission AI Pilot Project Report (July 2024 - February 2025). |
| **EXHIBIT-122** | Utah State Tax Commission FY2026 Strategic Plan, documenting development of the AI-enabled tax system and electronic audit logs. |
| **EXHIBIT-167** | Forensic PDF capture of Court Clerk Alex Walker's professional experience details, confirming 4 years as Adapted Physical Education Teacher at Spectrum Academy (2019?2023). |
| **EXHIBIT-174** | Outlook email PDF from Court Clerk Alex Walker to Plaintiff dated June 16, 2026, manually acknowledging receipt of the Reply Memorandum. |
| **EXHIBIT-176** | Third Judicial District Court Memorandum Decision and Order dated June 8, 2026, featuring Page 7 Certificate of Notification signed by Alex Walker showing an 8-day service delay to Plaintiff. |
| **EXHIBIT-231** | Certified copy of Division's Exhibit List signed by Kathryn White, served as part of the untimely exhibit package on July 10, 2026. |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-234** | USPS Form 3849 Delivery Notice Slip dated July 2, 2026, for certified mail requiring signature (Tracking # 70220410000220452638), documenting initial service default. |
| **EXHIBIT-234.1** | USPS Form 3849 Final Delivery Notice Slip dated July 7, 2026, for certified mail requiring signature (Tracking # 70220410000220452638), documenting final notice of service default. |
| **EXHIBIT-235** | USPS Certified Mail envelope postmarked July 9, 2026 (Tracking # 9505514364616190635924), establishing the execution of a signature-evasion loop. |
| **EXHIBIT-236** | Order Setting Conditions of Release in Case No. 2:21mj14-DAO, dated January 15, 2021, ordering Plaintiff's Home Detention, travel restrictions, and pretrial supervision under active monitoring, establishing the legal and physical basis for Plaintiff's homebound status. |
| **EXHIBIT-237** | Certified copy of the Order and Mandate of the United States Court of Appeals for the District of Columbia Circuit inUnited States v. Sullivan, Case No. 24-3051, entered February 27, 2025, vacating all of Plaintiff's criminal convictions and remanding the case with instructions to dismiss it as moot. |
| **EXHIBIT-238** | Certified copy of the Order of the United States District Court for the District of Columbia inUnited States v. Sullivan, Case No. 1:21-cr-00078-RCL-1, entered March 4, 2025, dismissing the criminal action as moot following the appellate court's vacatur of convictions. |
| **EXHIBIT-250** | Transmittal email from Plaintiff to Judicial Assistant Curtis Britland dated July 13, 2026, requesting signed blank subpoenas duces tecum to SSA, IRS, Treasury, and DDS. |
| **EXHIBIT-252** | State court order entered by Judge Joel Ferre in Case No. 260903520, which restricted Plaintiff's communication channels and fabricated accusations of "hostile, demanding, condescending, and harassing" behavior, serving as circumstantial evidence of racial animus and stereotyping. |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-253** | Email from Judicial Assistant Curtis Britland dated July 13, 2026, refusing to sign blank subpoenas duces tecum in direct violation of URCP Rule 45(a)(2). |
| **EXHIBIT-259** | IT Audit Blanket Denial Order Forensic Comparison Report analyzing structural and temporal anomalies of the July 15, 2026 order. |
| **EXHIBIT-293** | Transparent Utah public compensation record for Kathryn L. White showing concurrent wage payments as AAG and Canyons School District employee. |
| **EXHIBIT-311** | Utah Department of Commerce Division of Corporations business entity search for Bleazard Legal, PLLC, confirming Kathryn White's active commercial law firm. |
| **EXHIBIT-312** | Utah Department of Commerce filing history for Bleazard Legal, PLLC, documenting private legal practice during full-time state employment. |
| **EXHIBIT-326** | Signed and secured Emergency Request for Reasonable ADA Accommodations and Notice of Filing Blockade submitted to AOC Coordinator Keisa Williams on July 13, 2026. |
| **EXHIBIT-327** | Email response from the Utah State Courts Self-Help Center on July 27, 2026, acknowledging receipt of Plaintiff's ADA Request and confirming Coordinator Keisa Williams was included. |
| **EXHIBIT-350** | Official Department of Justice Bureau of Justice Statistics (BJS) Bulletin documenting national violent crime rates and reporting statistics, proving that 51.8% of violent victimizations against Black individuals in 2021 went unreported to law enforcement due to institutional barriers. |
| **EXHIBIT-351** | Official Bureau of Justice Statistics (BJS) Report documenting statistically significant racial disparities in violent victimization, proving a 75% elevation in robbery rates (2.8 per 1,000) and a 25% elevation in serious violent crime rates (8.0 per 1,000) for Black individuals. |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-353** | Official U.S. Department of Justice Office for Civil Rights Compliance Review Report, dated February 24, 2010, entering formal administrative findings that the State of Utah failed to maintain mandatory complaint procedures and civil rights training programs for federally funded subrecipients, establishing early notice of systemic compliance defaults. |
| **EXHIBIT-A-1** | Certified parent copy of Utah Department of Commerce Certificate of Organization for Dirkmaat Law PLLC. |
| **EXHIBIT-A-2** | Certified parent copy of Utah Department of Commerce Statement of Dissolution for Dirkmaat Law PLLC. |
| **EXHIBIT-A-3** | Certified parent copy of Utah State Bar Membership lookup record confirming Respondent's active private firm designation. |
| **EXHIBIT-B** | Multistate Tax Commission Spokane training attendee manifest (2025) listing Paul Dirkmaat. |
| **EXHIBIT-D-1** | Certified parent copy of Utah Valley University Faculty Directory listing Paul Dirkmaat as Adjunct Instructor. |
| **EXHIBIT-D-2** | Certified parent copy of Utah Valley University Faculty Profile confirming teaching assignment of MGMT 3300G for Spring 2026. |
| **EXHIBIT-F** | Federal Bureau of Investigation Receipt for Property Seized on January 14, 2021, establishing seizure of all personal computers, USB drives, and financial accounting assets, proving impossibility of income generation in 2021?2022. |
| **EXHIBIT-I** | Certified parent copy of the MyCase court portal docket printout, showing the case history and electronic notification logs. |

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 3**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**INDIGENCE FEE WAIVER ORDER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified copy of the State of Utah Third District Court fee waiver order (Case No. 260903520) entered May 13, 2026, establishing Petitioner's indigent status.***

SHA-256 : cd0773879358b5518bfb5c6634c62b02c790374eaa5c9db822d10c672dfa993d
SHA3-512: a8b63a460c89fb2bebdecbe0ca89f725bde6636735ede799fda100031e37c7b0...
BLAKE3 : 0145dd1239eaf92be7eed369dc82ed9e87e2cf103b313fa2ecc62277c38c134e

**EXHIBIT 3**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<3<8USA9407187M3001016<<<<<<<<<<<<<<<0

SCAN · VERIFY

John Earle Sullivan
Name
[redacted]
Address
Erda
City, State, Zip
[redacted]
Phone
[redacted]
Email

In the [ x ] District [ ] Justice Court of Utah

Third Judicial District Salt Lake City County

Court Address 450 S State Street, SLC, UT 84111

| | |
|---|---|
| John Earle Sullivan<br>Plaintiff/Petitioner<br><br>v.<br><br>Utah State Tax Commission, et al<br>Defendant/Respondent | **Order on Motion to Waive Fees - General**<br><br>260903520<br>Case Number<br><br>Judge Joel Ferre<br>Judge<br><br>Commissioner (domestic cases) |

The matter before the court is a Motion to Waive Fees. Having reviewed the Motion to Waive Fees and Statement Supporting Motion and supporting financial evidence, and having made an independent determination,

**The court orders:**

1. [ ] **The motion is denied.** The information shows that the party is reasonably able to pay the fees.

2. [ ] **The motion is denied.** The party failed to provide the required information. The party may re-file the motion with the required information within 14 days.

3. [X] **The motion is granted.** The following fees are waived. If the fee is waived in

part, it is because the party is reasonably able to pay the balance.

| Fee | Waived in Full | Waived in Part – Amount to be Paid |
|---|---|---|
| Filing fee | [ ] | |
| OCAP fee | [ x ] | |
| Required classes<br>parenting class fees<br>orientation class fees | <br>[ ]<br>[ ] | |
| Vital stats fee – divorce certificate or report of adoption | [ ] | |
| Fee to have papers served within Utah | [ x ] | |
| Other (Describe.) | [ x ] | AlLcourt-relatedcosts, copying and.certification fees. |

4. Any fees not waived must be paid within 30 days or the case may be dismissed.

5. This order is subject to review and amendment as long as the court has jurisdiction of the case.

Judge's signature may instead appear at the top of the first page of this document.

11 May 2026
Date

Signature ►

Judge

STATE OF UTAH
3RD DISTRICT COURT
SALT LAKE CITY

**Notice to the Moving Party**

If the fee waiver was denied because the judge found **you are reasonably able to pay** (paragraph 1 is marked), and you:

- have lost your source of income;
- have unaccounted expenses limiting your ability to pay;
- will suffer immediate irreparable harm if the action is delayed; or
- would lose the opportunity to file the case because of the delay,

you may file a Memorandum Demonstrating Inability to Pay Fees within 10 days of the date of this order.

If the fee waiver was denied **because you failed to provide the required information** (paragraph 2 is marked), and you want your request to be reconsidered, you must file a

corrected motion with the required information within 14 days of the date of this order.

**Clerk's Certificate of Service**

I certify that on 5/13/26 (date) a copy of this order was served on the moving party by the method indicated below:

| Mailed | Emailed | Party Name | Mail or Email Address |
|---|---|---|---|
| [ ] | [X] | John Sullivan | johne.sullivan@outlook.com |
| | | | |

5/13/2026
Date

Signature ▶ Alex Walker

Printed name of court clerk Alex Walker

**CERTIFICATE OF NOTIFICATION**

I certify that a copy of the attached document was sent to the following people for case 260903520 by the method and on the date sp[redacted]

EMAIL: JOHN EARLE SULLIVA [redacted]

05-13-2026 /s/ ALEX WALKER

Date: ______________________ ________________________________

Signature

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 18**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**USTC STATE TAXABLE WAGES TABLE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified copy of State Taxable Wages and Income Tax Withheld table from Utah State Tax Commission Appeals Unit administrative record (Exhibit 18, Page 90 of 93, DIV 111) for 2019-2020.***

SHA-256 : dcc1095363996481cce3f10952fd67653729c566a4af1762b0549c2cef7d95d8
SHA3-512: 4b8ee1a421a73b4d1cf5c498505b02dd87aa872b70f1736a3084fac7eabf99ca...
BLAKE3 : 05579073e713a8f5a75b1941e5f81149ee1260c36bfbd96267fee1a475da50c5

**EXHIBIT 18**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<18<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

# EXHIBIT 18

| Filing Period | Employer FEIN | Employer Name | State Employer Account Number | State Taxable Wages | State Income Tax Withheld | SSSN |
|---|---|---|---|---|---|---|
| 12/31/2020 | [redacted]450 | WWEX FRANCHISE HOLDINGS LLC | 14572981003WTH | 5,000.00 | 247.50 | ***-**-9076 |
| 12/31/2020 | [redacted]346 | PROOFPOINT INC | 12579296003WTH | 63,024.54 | 0.00 | ***-**-9076 |
| 12/31/2020 | [redacted]658 | CHG MEDICAL STAFFING INC | 12951584003WTH | 15,942.66 | 772.85 | ***-**-9076 |
| 12/31/2019 | [redacted]658 | CHG MEDICAL STAFFING INC | 12951584003WTH | 10,587.29 | 524.08 | ***-**-9076 |
| 12/31/2019 | [redacted]548 | LAUNCH LOGISTICS LLC | 13943419003WTH | 50,643.04 | 2,506.71 | ***-**-9076 |

DIV 111

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 19**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**ADOBE ACROBAT SEARCH FAILURE SCREENSHOT**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified PDF Court Exhibit of Screenshot of Adobe Acrobat search tool failing to locate the word 'John' in the Respondents' Answer to Petition***

SHA-256 : 57f6a3a0472035915efd5f18b52296232ef8b2f6e3ec8bbd74802fe737160850
SHA3-512: e0b761fc247f73e4c80fa03f78f861cb5f47a5aeb63124379202bd00b5224935...
BLAKE3 : 11b02322c7e52dedf8e826b660778be201e51f0c76fdec750acf559eab05c23c

**EXHIBIT 19**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<19<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

P.O. Box 140874
Salt Lake City, Utah 84114-0874
Telephone: (801) 366-0375
pdirkmaat@agutah.gov
llind@agutah.gov

*Attorneys for Respondent Utah State Tax Commission*

IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR
SALT LAKE COUNTY, STATE OF UTAH

Adobe Acrobat

Adobe Acrobat has finished searching the document. No matches were found.

OK

UTAH STATE TAX
ET AL.'S ANSWER TO
JUDICIAL REVIEW

520

Respondents.

Respondent Utah State Tax Commission ("USTC"), John Valentine, Deanna Herring, Derek Nelson, Kim Chhour, and Amy Arnn (each a "Respondent" and together the "Respondents") hereby answers Petitioner JOHN EARLE SULLIVAN ("Petitioner")'s PETITION FOR JUDICIAL REVIEW ("Complaint") in the above captioned action as follows:

1. Respondents deny each and every allegation contained in the Complaint except those expressly admitted herein.

2. Respondents deny that Petitioner is entitled to any relief whatsoever.

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 46**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**USTC ANSWER APPEAL 26 778**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Sworn Administrative Answer signed by Tax Audit Examiner Manager Derek Nelson on May 19, 2026, admitting that the Tax Commission possesses zero base income reporting forms (W-2s/1099s) for Plaintiff for tax years 2021?2022.***

SHA-256 : 1eeb19467f8e9407c179c043795660e672efd138994bb2359935487a9c5c0755
SHA3-512: 4c82428751c1096426cd5be1c4c5eaa4787fe4e78a6d7353b381cf4e7007dc30...
BLAKE3 : e76ba74e41c92d527150d14ab456504bffda8839316628ae9b02c51131854fa9

**EXHIBIT 46**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<46<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

THE GREAT SEAL OF THE STATE OF UTAH 1896

State of Utah
Utah State Tax Commission
210 North 1950 West
Salt Lake City, Utah 84134

FIRST-CLASS US POSTAGE PITNEY BOWES
ZIP 84116 $ 000.74⁰
02 7W
0008027428 MAY 19 2026

Address Service Requested

JOHN E SULLIVAN
[redacted]

840748958i R00i

# BEFORE THE UTAH STATE TAX COMMISSION

| | | |
|---|---|---|
| [redacted]<br><br>Petitioner,<br><br>v.<br><br>INCOME TAX & EDUCATION DIVISION, UTAH STATE TAX COMMISSION,<br><br>Respondent. | ) : ) : ) : ) : ) : ) : ) : | **ANSWER TO PETITION FOR REDETERMINATION**<br><br>Appeal No. 26-778<br><br>AUDIT PERIOD: 2019 - 2022<br>ACCOUNT NO. 14205451-002-IIT |

RESPONDENT, Income Tax and Education Division, Utah State Tax Commission, answers the Petition for Redetermination of John E. Sullivan as follows:

**STATEMENT OF FACTS**

1) Petitioner filed a 2019 Utah resident individual income tax return. Respondent received information from the Internal Revenue Service (IRS) indicating taxable income changes were made to Petitioner's 2019 federal return. Petitioner did not correct the federal changes with the IRS or file an amended Utah return to report the IRS changes as required by Utah Code §59-10-536(2)(a)(i). Therefore, Respondent adjusted Petitioner's 2019 Utah return to match the federal information.

2) Petitioner did not file Utah individual income tax returns for the 2020, 2021 and 2022 tax years. Respondent assessed non-filing estimates based upon information received from the Internal Revenue Service (IRS) and other sources that showed Petitioner had federal and Utah taxable income during the audit period.

3) Notices of Deficiency were issued on March 5, 2026. The notices show audit tax due amounts of $462 for the 2019 tax year, $4,670 for the 2020 tax year, $4,333 for the 2021 tax year and $313 for the 2022 tax year, plus penalties (excluding 2019) and interest calculated from the due date of the return. Penalties and interest were assessed pursuant to Utah Code §59-1-401 and §59-1-402.

4) For the 2019 tax year, current IRS transcripts still show a federal adjusted gross income (FAGI) of $67,339, which matches the revised amount on the Notice of Deficiency and Audit Change. Respondent changed the Utah return to match federal information. If in disagreement with the revised FAGI amount, Petitioner is required to first correct the issues with the IRS. If the IRS makes further adjustments to the federal return, Respondent will then take actions to match those adjustments.

5) As of today's date, Petitioner still has not filed Utah individual income tax returns for the 2020, 2021 and 2022 tax years or provided any information that proves the non-filing estimates are incorrect. Respondent allowed almost seven months for the tax returns to be filed and provided income documentation and instructions on how to obtain the remaining income documentation from the IRS.

**STATEMENT OF RELIEF**

Under the instant circumstances, Respondent requests the Tax Commission sustain the tax, penalty and interest charges made for the 2019 through 2022 tax years.

Dated this 19th day of May, 2026.

Derek Nelson
Tax Examiner Manager
Income Tax & Education Division

In contacting the Tax Commission, if special accommodations are needed in accordance with the Americans with Disabilities Act, please call (801) 297-3811 or TDD (801) 297-3819, allowing three working days notice.

## MAILING CERTIFICATE

I hereby certify that on this 19th day of May, 2026, a true and correct copy of the foregoing Answer to Petition for Redetermination was sent by the method indicated below, to the following:

____ HAND DELIVERY
____ INTEROFFICE MAIL
____ FAX TRANSMISSION
_X_ ELECTRONIC TRANSMISSION

UTAH STATE TAX COMMISSION
APPEALS UNIT
taxappeals@utah.gov

____ HAND DELIVERY
_X_ U.S. MAIL
____ FAX TRANSMISSION
____ ELECTRONIC TRANSMISSION

[redacted]

Jennifer Elliott
Jennifer Elliott, Accounting Technician

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 47**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**LARON LIND EMAIL DISCOVERY**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Senior Assistant Attorney General Laron Lind accidental email disclosure recommending blanket discovery objections to suppress state tax audit database records.***

SHA-256 : 71b59dc83fe6bc719f0aacb0fbcb0435a49b81ee4fe3924e5dae301497442e4a
SHA3-512: 1a361cc31d95abaf160a4799bd258d7339914a4073467711a5990b0c3191a5a8...
BLAKE3 : f5768d5f6b2a2a0820b471118bf74a5e4ae855a51d56f2ce7c87feb647d0ceab

**EXHIBIT 47**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<47<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

Outlook

**RE: Case No. 260903520 - SERVICE OF PETITIONER'S FIRST SET OF DISCOVERY REQUESTS**

**From** Laron Lind <LLIND@agutah.gov>
**Date** Tue 5/26/2026 12:57 PM
**To** 'John Sullivan' <johne.sullivan@outlook.com>

I suspect discovery is not permissible in a GRAMA appeal. We should just simply object on that basis.

**From:** John Sullivan <johne.sullivan@outlook.com>
**Sent:** Tuesday, May 26, 2026 12:54 PM
**To:** La
**Subje**

Some

[redacted]

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 48**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**SIGNED JUNE 8 MEMORANDUM DECISION AND ORDER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Signed Memorandum Decision and Order by Judge Joel Ferre confirming that Petitioner John Earle Sullivan exhausted administrative remedies under the Government Records Access and Management Act (GRAMA), establishing jurisdiction for judicial review.***

SHA-256 : 376895e06b8615e71f6c48b092e353fec01006c5b86bbcb7a14d908f5b912491
SHA3-512: 2bb08847a91f84fcceb23bded5335afb8c561027da151ec38c0fb38032f6b0dd...
BLAKE3 : 390e93f5a8995a79e1e5caafbbea66137c107dacda9667d07f856baab298fc0d

**EXHIBIT 48**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<48<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

THIRD JUDICIAL DISTRICT COURT

SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JOHN EARLE SULLIVAN,<br>Plaintiff,<br>vs.<br>UTAH STATE TAX COMMISSION,<br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br>Case No. 260903520<br>Judge Joel Ferre |

Before the court is Petitioner John Earle Sullivan's Motion for Temporary Restraining Order (TRO), Motion for Writ of Mandamus, Motion to Stay Administrative Proceedings, and Motion to Seal. The court has carefully considered the briefing. Neither party requested a hearing and the court determines a hearing is unnecessary. The court denies the motions except the Motion to Seal which it grants to the limited extent necessary to protect Sullivan's personal financial and health information.

**BACKGROUND**

The Utah State Tax Commission (USTC) adjusted Sullivan's Utah adjusted gross income for the 2019–2022 tax years and scheduled an initial administrative tax hearing for July 20, 2026. In response, Sullivan submitted a Government Records Access and Management Act (GRAMA) request on March 26, 2026, seeking eight categories of records, including GenTax case action logs, proprietary algorithms, federal tax information, and metadata.

The USTC denied the requests and the USTC's Chief Administrative Officer affirmed the denial. Sullivan then filed this action seeking judicial review of the GRAMA denial. Concurrently, he filed multiple motions asking this court to stay his upcoming tax hearing and

compel the USTC to produce the tax-related metadata and files, alleging spoliation and procedural fraud. Following the USTC's Opposition, Sullivan filed a Reply arguing that the agency engaged in shadow-drafting, submitted sham pleadings, and ignored litigation holds.

## ANALYSIS

### I. Sullivan is not entitled to a stay of the administrative tax proceeding or extraordinary relief.

Sullivan has exhausted his GRAMA remedies, but not his tax remedies. Under Utah law, a party may obtain judicial review of agency action only after completing all available administrative proceedings. Utah Code § 63G-4-401(2); *Christensen v. Utah State Tax Comm'n*, 2020 UT 45, ¶ 16.

Sullivan argues that he exhausted his remedies when the USTC's Chief Administrative Officer denied his GRAMA appeal. But that appeal concerned a records request, not the tax assessment itself. The two proceedings are separate.

Sullivan has exhausted his administrative remedies under GRAMA, which permits judicial review of the records denial. *See* Utah Code § 63G-2-404. He has not, however, exhausted his remedies regarding the tax assessment. That matter remains pending before the USTC at the administrative-hearing stage. Sullivan must present his arguments in that proceeding and complete the administrative process before seeking judicial review of the assessment.

Because adequate administrative remedies remain available, Sullivan is not entitled to extraordinary relief under Rule 65B.

### II. Sullivan is not entitled to a TRO.

Utah Rule of Civil Procedure 65A(f) mandates that a preliminary injunction may issue only when all four of the following factors are shown by the applicant:

(1) There is a substantial likelihood that the applicant will prevail on the merits of the underlying claim, or the case presents serious issues on the merits which should be the subject of further litigation;

(2) The applicant will suffer irreparable harm unless the order or injunction issues;

(3) The threatened injury to the applicant outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined; and

(4) The order or injunction, if issued, would not be adverse to the public interest.

*Aquagen Int'l, Inc. v. Calrae Tr.*, 972 P.2d 411, 413 (Utah 1998). Sullivan has not satisfied any of the factors required for a restraining order.

**A. Sullivan has not established a likelihood of success on the merits.**

Sullivan seeks native database metadata, proprietary software data, and information concerning the USTC's underlying algorithms and system architecture. GRAMA does not require a governmental entity to create or compile records that do not already exist. Utah Code § 63G-2-201(8). Nor does it require disclosure of proprietary software or other information that falls outside GRAMA's definition of a record. *See* Utah Code § 63G-2-103(25)(b)(v). Sullivan's assertion that the requested exports could be generated through routine technical processes does not expand the agency's statutory duties.

Sullivan also seeks federal tax information. Federal tax records are confidential and governed by federal law, which supersedes GRAMA. *See* 26 U.S.C. § 6103; Utah Code § 63G-2-206(7).

As for Sullivan's own tax records, the USTC provides a procedure for obtaining them through the Taxpayer Access Point upon submission of a properly notarized Form TC-880. Sullivan did not complete that process. His arguments that electronic identification should

substitute for notarization and that he was unable to access TAP do not permit the court to disregard the agency's identity-verification requirements.

GRAMA further protects records whose disclosure could compromise governmental information systems, including security-related information, audit workpapers, and operational procedures. Utah Code § 63G-2-305(10), (15); Utah Admin. Code R861-1A-12.

Because the records Sullivan seeks are exempt from disclosure, protected by federal law, or available only through procedures he did not follow, he has not shown a likelihood of success on the merits.

**B. Sullivan will not suffer irreparable harm.**

While Sullivan claims he will suffer imminent and irreparable harm if he is forced to attend his administrative tax hearing without the withheld metadata evidence, the impending July 20, 2026 meeting is merely an initial hearing regarding his delinquent tax payments. If Sullivan feels unprepared, he can simply request a continuance. Even if he receives an unfavorable decision at the initial hearing, he has the right to request a formal administrative hearing, and if still dissatisfied, he can appeal the final decision to the district court. Because any procedural deficiency can be fully remedied after he exhausts his available administrative appeals, he faces no irreparable harm.

**C. The threatened injury to Sullivan does not outweigh any damage to USTC and the TRO is not adverse to the public interest.**

Both the balance of harms and the public interest favor allowing the orderly administrative adjudication process to proceed. The public interest is not served by allowing taxpayers to unilaterally halt administrative tax proceedings based on a claim of government conspiracy.

**III. Sullivan's procedural arguments fail to salvage his motions from dismissal.**

Sullivan alleges the State filed sham pleadings in violation of Utah Rule of Civil Procedure 8(b) and 11 because the USTC's Answer claimed a lack of knowledge regarding his records, while its opposition detailed his tax audit history. Pleading a lack of knowledge regarding the custody and technical structure of specific native database metadata requested in a GRAMA action does not conflict with the USTC's knowledge of the general status of Sullivan's tax assessments.

Sullivan also argues the USTC engaged in spoliation and template fraud because a USTC employee drafted the letterhead for the CAO's final determination, and because that template bore an incorrect date of April 3, 2025. A USTC employee drafting a template for a superior's signature does not constitute an impermissible delegation of authority under Utah Code Ann. § 63G-2-401(5)(a), nor does an obvious typographical date error on a recycled letterhead equate to the fraudulent fabrication of government records.

Finally, Sullivan's October 2025 letter demanding a stay of his audit did not trigger a sweeping metadata litigation hold on the USTC's entire IT infrastructure under URCP 37(e) because a GRAMA request does not constitute the commencement of litigation.

**IV. The court seals the record to protect personal information.**

Sullivan moves to classify certain evidentiary exhibits as private, citing the need to protect his disability status determinations, medical history, and sensitive financial benefit calculations.

Court records are presumed public. Utah Code Jud. Admin. Rule 4-202.02(1). However, the court may restrict access to documents containing personally identifiable information, confidential tax returns, and records relating to pending administrative actions. Utah Code Jud.

Admin. Rules 4-202.02(4), (4)(L), and (5)(J). And tax returns and information obtained from tax returns are confidential under state law. Utah Code Ann. § 59-1-403.

Given the statutory protections, the motion is granted to the extent it asks the court to protect Sullivan's personal identifying information, health information, and confidential tax data from public disclosure. The Clerk of Court is directed to classify the specific exhibits containing this data as private. The general docket and the court's orders will remain public.

**CONCLUSION**

For the foregoing reasons, the court ORDERS the following:

1. Petitioner's Motion for Temporary Restraining Order is DENIED.

2. Petitioner's Motion for Writ of Mandamus is DENIED.

3. Petitioner's Motion to Stay Administrative Proceedings is DENIED.

4. Petitioner's Motion to Seal is GRANTED IN PART. The Clerk is directed to classify as private any exhibits containing Sullivan's personal medical data, Social Security Numbers, and confidential tax returns. All other records shall remain public.

SO ORDERED.

Dated June 8, 2026.

JOEL A. FERRE
District Court Judge

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 52**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**SIGNED GOOGLE SUBPOENA DUCES TECUM**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***John Sullivan Google Subpoena Page 18 privilege log mandate and prohibition on blanket privilege claims***

SHA-256 : ecffdfa8210be662f5ea8e1f0a6fc8296cacdff0a536241bc272d2e92aa120fa
SHA3-512: 7cd1295739433fce4d2a4d0f1dc5469edfa6bcea52251a00a83081d3c44171d4...
BLAKE3 : 52afaebe2d0d3c1d3fd84a77c15e8c87339e68c6c91827d1261e5f54955b8ee9

**EXHIBIT 52**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<52<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

JOHN EARLE SULLIVAN
Name

[redacted]

[redacted]

[redacted]

[redacted]

**Check your email.** You will receive information and documents at this email address.

I am [x] Plaintiff/Petitioner [ ] Defendant/Respondent
[ ] Plaintiff/Petitioner's Attorney [ ] Defendant/Respondent's Attorney (Utah Bar #:________)
[ ] Plaintiff/Petitioner's Licensed Paralegal Practitioner
[ ] Defendant/Respondent's Licensed Paralegal Practitioner (Utah Bar #:________)

In the [x] District [ ] Justice Court of Utah

Third Judicial District Salt Lake County

Court Address 450 South State Street, Salt Lake City, UT 84114

| | |
|---|---|
| JOHN EARLE SULLIVAN<br>Plaintiff/Petitioner<br><br>v.<br><br>UTAH STATE TAX COMMISSION, et al.<br>Defendant/Respondent | **Subpoena**<br>(Utah Rule of Civil Procedure 30 and 45)<br><br>260903520<br>Case Number<br><br>Joel Ferre<br>Judge<br><br>________<br>Commissioner |

The following records and forms must be attached to this Subpoena and served with it.

- Notice to Persons Served with a Subpoena.
- Objection to Subpoena.
- Declaration of Compliance with Subpoena.
- Witness fee.
- Application for Subpoena under the Utah Uniform Interstate Depositions and Discovery Act with attachments (for cases from states in which the Uniform Act applies).
- Notice of Deposition and Request for Subpoena in Case Pending Out of State (for cases from states in which the Uniform Act does not apply).

Serve all of these documents by one of the methods described in Utah Rule of Civil Procedure 4(d).

To:

Google LLC, c/o Registered Agent (Corporation Service Company), 10 East South Temple, Suite 850, Salt Lake City, Utah 84111

Name and Address

Name and Address

1. [ ] You must appear at:

Address (Dirección):

Date (Fecha): ____________ Time (Hora): ________ [ ] a.m. [ ] p.m.

Room (Sala): ____________

To: (Choose all that apply.)

[ ] testify at a trial or hearing.

**Interpretation.** If you do not speak or understand English, the court will provide an interpreter. Contact court staff immediately to ask for an interpreter.

**Interpretación.** Si usted no habla ni entiende el Inglés el tribunal le proveeré un intérprete. Contacte a un empleado del tribunal inmediatamente para pedir un intérprete.

**ADA Accommodation.** If you need an accommodation, including an ASL interpreter, contact court staff immediately to ask for an accommodation.

**Adaptación o Arreglo en Caso de Discapacidad.** Si usted requiere una adaptación o arreglo, que incluye un intérprete de la lengua de signos americana, contacte a un empleado del tribunal inmediatamente para pedir una adaptación.

[ ] testify at a deposition.

[ ] permit inspection of the following premises:

____________ (address)

[x] produce the following documents or tangible things:

See attached document 0604-JES-V-USTC-SUB-DT-GOOGLE-2026 incorporated herein by reference.

2. [x] You must copy the documents or electronically stored information listed below. You must mail or deliver the copies to the person at the address at the top of the first page of this Subpoena by: July 20, 2026, at 17:00 MST (date).

See attached document 0604-JES-V-USTC-SUB-DT-GOOGLE-2026 incorporated herein by reference.

3. The Notice to Persons Served with a Subpoena must be served with this Subpoena. The notice explains your rights and obligations.

4. [ ] This subpoena is for a deposition and is being served on a corporation, partnership, association or governmental agency. (Utah Rule of Civil Procedure 30). You must designate one or more persons who will be questioned on your behalf .

The questions will be about (describe):

______________________________________________

______________________________________________

______________________________________________

5. [ ] This Subpoena includes the terms of the attached subpoena issued by ______________________ (state).

If you are representing yourself or you checked paragraph 5, only the court clerk may sign this subpoena.

STATE OF UTAH THIRD DISTRICT COURT SALT LAKE CITY

6/1/2026
Date

Signature ► [signature]

Printed name of:
Court Clerk [ ] Curtis Brinkman

Attorney for
Plaintiff/Petitioner [ ]
Defendant/Respondent [ ] ______________________

Licensed Paralegal Practitioner for
Plaintiff/Petitioner [ ]
Defendant/Respondent [ ] ______________________

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 56**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**USTC W2 WAGE DATABASE RECORD**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of Utah State Tax Commission W-2 and wage database record showing 2019-2020 employer wages and state tax withholding***

SHA-256 : 56184d741d7559ec5a6250fe5c58fc1bf0572b2f051b7efcc619d8ee2051fe58
SHA3-512: 66d73d4e72a10019044fa2eb06a87291611e78920823aac793d8ca1289bfe1db...
BLAKE3 : 5653560da34425e3514bc108297257315996c59459faa9dd04c8a3a540dbdb6c

**EXHIBIT 56**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<56<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

| Filing Period | Employer FEIN | Employer Name | State Employer Account Number | State Taxable Wages | State Income Tax Withheld | SSSN |
|---|---|---|---|---|---|---|
| 12/31/2020 | 320470450 | WWEX FRANCHISE HOLDINGS LLC | 14572981003WTH | 5,000.00 | 247.50 | ***-**-9076 |
| 12/31/2020 | 510414846 | PROOFPOINT INC | 12579296003WTH | 63,024.54 | 0.00 | ***-**-9076 |
| 12/31/2020 | 870502658 | CHG MEDICAL STAFFING INC | 12951584003WTH | 15,942.66 | 772.85 | ***-**-9076 |
| 12/31/2019 | 870502658 | CHG MEDICAL STAFFING INC | 12951584003WTH | 10,587.29 | 524.08 | ***-**-9076 |
| 12/31/2019 | 205512548 | LAUNCH LOGISTICS LLC | 13943419003WTH | 50,643.04 | 2,506.71 | ***-**-9076 |

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 68**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**MEET AND CONFER COMPARISION COMPRESSED EXHIBIT**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of the Petitioner's Meet-and-Confer agenda and email thread with opposing counsel, highlighting the whited-out text areas.***

SHA-256 : fd784c42b1d027bd2d91210b08ad2e59edb78a2fb59017f6dabd83a8ede4d70a
SHA3-512: dd5b9447bcad5fc7d5106e218a18ba1e6c0c939c8db03beb83e82f7392114f93...
BLAKE3 : 2c23c0d4b578e7884076e3747b2f9a325e687d58ff9e15f46bef2a0cd48f2c37

**EXHIBIT 68**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<68<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

# Paul J. Dirkmaat's Doctored Exhibit

**From:** John Sullivan
**To:** Paul Dirkmaat; Laron Lind
**Subject:** Re: Meet and Confer Regarding Discovery Issues
**Date:** Wednesday, June 17, 2026 9:59:33 AM
**Attachments:** 0617-JES-V-USTC-SETT-OFF-2026-SIGNED-SECURED.pdf

CASE TELEMETRY:

CASE NO: 260903520

| | |
|---|---|
| DATE: | 06-17-2026 |
| FROM: | johne.sullivan@outlook.com |
| TO: | pdirkmaat@agutah.gov, llind@agutah.gov |
| SUBJECT: | LEGAL INQUIRY: Discovery Meet & Confer Agenda and Scheduling - Case No. 260903520 |

## MANDATORY DISCOVERY CONTEXT & RULE 37 MEET AND CONFER AGENDA

Dear Mr. Dirkmaat,

Pursuant to Utah Rule of Civil Procedure 37, this communication acknowledges receipt of your email transmitted on June 16, 2026, at 6:30 AM MDT demanding a meet-and-confer regarding outstanding discovery issues in the matter of John Earle Sullivan v. Utah State Tax Commission, Case No. 260903520, currently pending before the Third Judicial District Court.

By operation of governing procedural rules, Title II of the Americans with Disabilities Act, and federal due process, the Petitioner hereby commands compliance with the following structural requirements to accommodate pre-existing, state-certified [redacted]

1. The State must provide a detailed, written, and itemized Discovery Deficiency Schedule at least twenty-four (24) hours in advance of any live meeting. This schedule must identify the exact discovery requests in dispute and the specific legal and factual basis for each objection.
2. The meet-and-confer conference is proposed for Friday, June 26, 2026, at 10:00 AM MDT, via Teams, subject to the State's timely delivery of the itemized deficiency schedule. A live meeting prior to this date is impossible due t[redacted] [redacted] and doctor's appointments.

Furthermore, the meet-and-confer must address the following critical discovery issues and spoliation occurrences:

1. **The State's Paragraph 3 Sham Denials and Contradictions:** The State's Answer falsely denies knowledge or possession of files and portal records that are in its exclusive custody. This includes Salesforce Appeals Portal (TCAP) records showing account ownership by state employee Michael Roussin on April 4, 2026, and the State's administrative Answer admitting possession of IRS transcripts. The State must clarify these contradictory positions under oath.
2. **The Spoliation of Page 3840 WordPress Version History:** Forensic database audits of the Tax Commission's servers return a version-history count of exactly 0 revisions for Page 3840 ("Tax Relief & Extensions"), proving manual database revision table truncation under litigation hold. The State must explain this destruction of electronic records and identify web editor Kalli Hairfield's (Author 22) unauthorized policy authorship.
3. **The State's Failure to Provide Searchable, ADA-Compliant PDF Documents:** The State must immediately reproduce all discovery responses and pleadings in native, text-searchable formats.

Submit the written, itemized Discovery Deficiency Schedule by no later than Thursday, June 25, 2026, at 10:00 AM MDT (which is exactly 24 hours prior to the proposed Friday conference), via email to johne.sullivan@outlook.com. Failure to provide the written agenda 24 hours in advance will constitute a refusal of reasonable ADA accommodation and a failure to confer in good faith under URCP Rule 37.

OFFICIAL COURT FILING ATTACHMENT:

`0617-JES-V-USTC-SETT-OFF-2026-SIGNED-SECURED.pdf`

Additionally, please find attached the Petitioner's signed and secured FORMAL SETTLEMENT OFFER, NOTICE OF EVIDENTIARY SUPPRESSION, AND ADMINISTRATIVE ABATEMENT DEMAND . Pursuant to Utah Rule of Civil Procedure 68 and Utah Code Ann. § 78B-5-825, this offer remains open for acceptance strictly until Thursday, June 18, 2026, at 5:00 PM MDT (17:00 MST).

Sincerely,

John Earle Sullivan
Self-Represented Petitioner
johne.sullivan@outlook.com
(435) 841-7258

*CONFIDENTIALITY NOTICE: The information contained in this communication is confidential and may be privileged. It is intended solely for the use of the individual or entity to whom it is addressed. For the avoidance of doubt, the scheduling of this conference to address the State's deficiencies does not toll, stay, or extend the State's independent statutory deadline to serve complete discovery responses by June 25, 2026. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.*

Thank you,

**John Earle Sullivan**
**Phone:** 435-841-7258

**From:** Paul Dirkmaat <pdirkmaat@agutah.gov>
**Sent:** Tuesday, June 16, 2026 6:30 AM
**To:** John Sullivan <johne.sullivan@outlook.com>
**Subject:** Meet and Confer Regarding Discovery Issues

Mr. Sullivan,

Pursuant to Utah Rules of Civil Procedure 37, we would like to request a meet and confer to discuss outstanding discovery issues in an effort to resolve the dispute without court action.

Please let me know your availability for today (Tuesday June 16) or tomorrow (Wednesday June 17) and I can send a Teams invite.

Thank you,

Paul J. Dirkmaat

# Original Email

6/17/26, 9:59 AM Mail - John Sullivan - Outlook

Outlook

**Re: Meet and Confer Regarding Discovery Issues**

**From** John Sullivan <johne.sullivan@outlook.com>
**Date** Wed 6/17/2026 9:58 AM
**To** Paul Dirkmaat <pdirkmaat@agutah.gov>; Laron <LLIND@agutah.gov> <LLIND@agutah.gov>

1 attachment (258 KB)
0617-JES-V-USTC-SETT-OFF-2026-SIGNED-SECURED.pdf;

CASE TELEMETRY:

CASE NO: 260903520

| | |
|---|---|
| DATE: | 06-17-2026 |
| FROM: | johne.sullivan@outlook.com |
| TO: | pdirkmaat@agutah.gov, llind@agutah.gov |
| SUBJECT: | LEGAL INQUIRY: Discovery Meet & Confer Agenda and Scheduling - Case No. 260903520 |

MANDATORY DISCOVERY CONTEXT & RULE 37 MEET AND CONFER AGENDA

Dear Mr. Dirkmaat,

Pursuant to Utah Rule of Civil Procedure 37, this communication acknowledges receipt of your email transmitted on June 16, 2026, at 6:30 AM MDT demanding a meet-and-confer regarding outstanding discovery issues in the matter of John Earle Sullivan v. Utah State Tax Commission, Case No. 260903520, currently pending before the Third Judicial District Court.

By operation of governing procedural rules, Title II of the Americans with Disabilities Act, and federal due process, the Petitioner hereby commands compliance with the following structural requirements to accommodate pre-existing, state-certified cognitive disabilities:

1. The State must provide a detailed, written, and itemized Discovery Deficiency Schedule at least twenty-four (24) hours in advance of any live meeting. This schedule must identify the exact discovery requests in dispute and the specific legal and factual basis for each objection.
2. The meet-and-confer conference is proposed for Friday, June 26, 2026, at 10:00 AM MDT, via Teams, subject to the State's timely delivery of the itemized deficiency schedule. A live meeting prior to this date is impossible due to pre-existing, state-certified medical evaluations and doctor's appointments.

Furthermore, the meet-and-confer must address the following critical discovery issues and spoliation occurrences:

1. **The State's Paragraph 3 Sham Denials and Contradictions**: The State's Answer falsely denies knowledge or possession of files and portal records that are in its exclusive custody. This includes Salesforce Appeals Portal (TCAP) records showing account ownership by state employee Michael Roussin on April 4, 2026, and the State's administrative Answer admitting possession of IRS transcripts. The State must clarify these contradictory positions under oath.
2. **The Spoliation of Page 3840 WordPress Version History**: Forensic database audits of the Tax Commission's servers return a version-history count of exactly 0 revisions for Page 3840 ("Tax Relief & Extensions"), proving manual database revision table truncation under litigation hold. The State must explain this destruction of electronic records and identify web editor Kalli Hairfield's (Author 22) unauthorized policy authorship.
3. **The State's Failure to Provide Searchable, ADA-Compliant PDF Documents**: The State must immediately reproduce all discovery responses and pleadings in native, text-searchable formats.

Submit the written, itemized Discovery Deficiency Schedule by no later than Thursday, June 25, 2026, at 10:00 AM MDT (which is exactly 24 hours prior to the proposed Friday conference), via email to johne.sullivan@outlook.com. Failure to provide the written agenda 24 hours in advance will constitute a refusal of reasonable ADA accommodation and a failure to confer in good faith under URCP Rule 37.

OFFICIAL COURT FILING ATTACHMENT:

`0617-JES-V-USTC-SETT-OFF-2026-SIGNED-SECURED.pdf`

Additionally, please find attached the Petitioner's signed and secured FORMAL SETTLEMENT OFFER, NOTICE OF EVIDENTIARY SUPPRESSION, AND ADMINISTRATIVE ABATEMENT DEMAND . Pursuant to Utah Rule of Civil Procedure 68 and Utah Code Ann. § 78B-5-825, this offer remains open for acceptance strictly until Thursday, June 18, 2026, at 5:00 PM MDT (17:00 MST).

Sincerely,

John Earle Sullivan
Self-Represented Petitioner
johne.sullivan@outlook.com
(435) 841-7258

*CONFIDENTIALITY NOTICE: The information contained in this communication is confidential and may be privileged. It is intended solely for the use of the individual or entity to whom it is addressed. For the avoidance of doubt, the scheduling of this conference to address the State's deficiencies does not toll, stay, or extend the State's independent statutory deadline to serve complete discovery responses by June 25, 2026. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.*

Thank you,



**John Earle Sullivan**
**Phone:** 435-841-7258

**From:** Paul Dirkmaat <pdirkmaat@agutah.gov>
**Sent:** Tuesday, June 16, 2026 6:30 AM

https://outlook.office.com/mail/inbox/id/AQQkADAwATM3ZmYAZS0yNGFjLTY0ZjQtMDACLTAwCgAQANW7zwD7aEeWsYPbnyMjABr%2F?nativeVers… 1/2

6/17/26, 9:59 AM Mail - John Sullivan - Outlook

**To:** John Sullivan <johne.sullivan@outlook.com>
**Subject:** Meet and Confer Regarding Discovery Issues

Mr. Sullivan,

Pursuant to Utah Rules of Civil Procedure 37, we would like to request a meet and confer to discuss outstanding discovery issues in an effort to resolve the dispute without court action.

Please let me know your availability for today (Tuesday June 16) or tomorrow (Wednesday June 17) and I can send a Teams invite.

Thank you,

Paul J. Dirkmaat
Assistant Utah Attorney General
Tax, Transit & Financial Services Division

P. (385) 584-9153 | pdirkmaat@agutah.gov | F. (801) 366-0378

This email from the Utah State Attorney General's Office contains information that may be confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email is strictly prohibited, and that the documents should be returned to this office immediately. If you have received this in error, please notify us by telephone immediately at (801) 366-0375, collect, so that we may arrange for the return of the original documents to us at no cost to you. The unauthorized disclosure, use or publication of confidential or privileged information inadvertently transmitted to you may result in criminal and/or civil liability.

## EVIDENTIARY COMPARISON REPORT

### CASE METADATA:

**Case:** Sullivan v. Utah State Tax Comm.
**Case No:** 260903520
**Jurisdiction:** 3rd Judicial District Court

### AUDIT PARAMETERS:

**Document:** Meet-and-Confer Agenda
**Redacted By:** Paul J. Dirkmaat (Defense)
**Exposed By:** Original Client Email

### REDACTED KEY PHRASES:

**REDACTION #1 (Page Bottom Left)**

**Status:** Redacted on Left (Doctored Exhibit)
**Original:** **"cognitive disabilities"**

**REDACTION #2 & #3 (Page Bottom Left)**

**Status:** Redacted across 2 lines on Left
**Original:** **"pre-existing, state-certified medical evaluations and doctor's appointments"**

### FORENSIC AUDITOR FINDINGS:

1. The defense's Doctored Exhibit contains systematic blackouts of all references to the Petitioner's state-certified cognitive disabilities and medical appointments.

2. These redactions actively conceal critical ADA-accommodation requirements which establish why a live meet-and-confer was impossible prior to the proposed date.

3. This side-by-side comparison confirms that the original email explicitly notified the State of these cognitive and medical conditions, proving the defense altered the evidence before filing.



https://outlook.office.com/mail/inbox/id/AQQkADAwATM3ZmYAZS0yNGFjLTY0ZjQtMDACLTAwCgAQANW7zwD7aEeWsYPbnyMjABr%2F?nativeVers… 2/2

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

JOHN EARLE SULLIVAN

EXHIBIT IDENTIFIER

EXHIBIT 71

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

MYCASE PORTAL CASE HISTORY PRINTOUT

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of the official MyCase portal case history printout in Case No. 260903520 dated June 26, 2026.***

SHA-256 : 64bb95a69fe23a0a7159b12dfbbdd281b68110014d82a14f16da1ac7aa873227
SHA3-512: 67649c3478b3fd6e8328e54b9a060ddef0eab4f6757a2982f2a1971425d692bb...
BLAKE3 : 99abdac65ff2948feb1933ad4d8d2d05d42defe50e1f2857c40cd102c2c3741d

EXHIBIT 71

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<71<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

THIRD JUDICIAL DISTRICT - SALT LAKE COUNTY DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH

JOHN EARLE SULLIVAN vs. UTAH STATE TAX COMMISSION
CASE NUMBER 260903520 Administrative Ag

CURRENT ASSIGNED JUDGE
JOEL FERRE

PARTIES
Plaintiff - JOHN EARLE SULLIVAN
*Accepts URCP Rule 5 service via MyCase*

Defendant - UTAH STATE TAX COMMISSION
Represented by: PAUL DIRKMAAT
Represented by: LARON LIND

ACCOUNT SUMMARY
REVENUE DETAIL - TYPE: ADMIN AGENCY REVIEW
Fee Waiver Status - Waived

| | | |
|---|---|---|
| Original Amount Due: | 375.00 | |
| Amended Amount Due: | 0.00 | |
| Amount Paid: | 0.00 | |
| Amount Credit: | 0.00 | |
| Amount Waived: | 375.00 | |
| Balance: | 0.00 | |
| Account Adjustments Sum To Date | Amount | Reason |
| 2026-05-13 | -375.00 | Waived |

CASE NOTE

PROCEEDINGS

| | |
|---|---|
| 05-08-2026 | Case filed by bobbijob |
| 05-08-2026 | Judge JOEL FERRE assigned. |
| 05-08-2026 | Note: Tier initially set to 2 |
| 05-08-2026 | Fee Account created Total Due: 375.00 |
| 05-08-2026 | Filed: Civil Cover Sheet |
| 05-08-2026 | Filed: Motion for Fee Waiver (In Forma Pauperis) |
| 05-08-2026 | **** PRIVATE **** Filed: Motion for Record Suppression/Sealing |
| 05-08-2026 | Filed: Motion for TRO and Preservation Order |
| 05-08-2026 | Filed: Petition for Judicial Review |
| 05-08-2026 | **** PRIVATE **** Filed: Petition for Writ of Mandamus & Extraordinary Relief |
| 05-08-2026 | Note: Emailed Judge's team on Judicial Case Review |
| 05-08-2026 | Filed: ***PROPOSED*** Order on Motion to Waive Fees |
| 05-08-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-13-2026 | Filed order: Order on Motion to Waive Fees |

Judge JOEL FERRE
Signed May 11, 2026

| | |
|---|---|
| 05-13-2026 | Filed: Manual Email: Order on Motion to Waive Fees |
| 05-13-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-15-2026 | Filed: Civil Summons and Injunctive Demand |
| 05-15-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-20-2026 | Filed: Appearance of Counsel/Notice of Limited Appearance of Paul Dirkmaat and Laron Lind for the Utah State Tax Commission |
| 05-20-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-20-2026 | Filed: Return of Electronic Notification |
| 05-20-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-21-2026 | Note: Certificate of Readiness for Trial due 07/27/27 |
| 05-21-2026 | Filed: Answer Utah State Tax Commission et al s Answer to Petition for Judicial Review<br>Answer Party: UTAH STATE TAX COMMISSION |
| 05-21-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-21-2026 | Filed: Return of Electronic Notification |
| 05-21-2026 | Filed: NOTICE OF EVENT DUE DATES |
| 05-21-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-22-2026 | Filed: Return of Electronic Notification |
| 05-22-2026 | Filed: PROPOSED ORDER GRANTING EMERGENCY PETITION FOR IMMEDIATE INJUNCTIVE STAY OF ADMINISTRATIVE ADJUDICATION, DOCTRINAL FORECLOSURE OF PROCEDURAL DEFAULT, AND EXHAUSTIVE NOTICE OF STRUCTIURAL DEPRIVATION OF CONSTITUTIONAL PROCESS |
| 05-22-2026 | **** PRIVATE **** Filed: EMERGENCY PETITION FOR IMMEDIATE INJUNCTIVE STAY OF ADMINISTRATIVE ADJUDICATION, DOCTRINAL FORECLOSURE OF PROCEDURAL DEFAULT, AND EXHAUSTIVE NOTICE OF STRUCTRAL DEPRIVATION OF CONSTITUTIONAL DUE PROCESS |
| 05-22-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-23-2026 | Filed: Return of Electronic Notification |
| 05-27-2026 | Filed: Petitioner's Notice of Service of First Set of Interrogatories and Requests for Production of Documents |
| 05-27-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-28-2026 | Filed: Return of Electronic Notification |
| 05-29-2026 | Filed: Opposition to Petitioner s Various Motions |
| 05-29-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-29-2026 | Filed: Return of Electronic Notification |
| 05-29-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-01-2026 | **** PRIVATE **** Filed: Motion to Strike Technologically Fraudulent Defenses, Notice of Binding Judicial Admissions, and Petition for Mandatory Spoliation Sanctions |
| 06-01-2026 | Filed: ***PROPOSED*** Order Granting Petitioner's Motion to Strike Technologically Fraudulent Defenses and Entering Spoliation Sanctions |
| 06-01-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-02-2026 | Filed: Return of Electronic Notification |
| 06-02-2026 | **** PRIVATE **** Filed: First Amended Motion to Strike Technologically Fraudulent Defenses, Notice of Binding Judicial |

| | |
|---|---|
| | Admissions, and Petition for Mandatory Spoliation Sanctions |
| 06-02-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-03-2026 | Filed: Return of Electronic Notification |
| 06-03-2026 | **** PRIVATE **** Filed: Petitioner's Reply Memorandum in Support of Emergency Motion for Temporary Restraining Order and Stay of Proceedings |
| 06-03-2026 | Filed: ***PROPOSED*** Mandatory Injunctive Order for the Immediate Suppression, Sealing, and Permanent Protective of Confidential Administrative Records |
| 06-03-2026 | Filed: Petitioner's Request to Submit for Decision Regarding Motion for Record Suppression and Sealing |
| 06-03-2026 | Filed: ***PROPOSED*** Temporary Restraining Order and Evidence Preservation Order |
| 06-03-2026 | Filed: Petitioner's Request to Submit for Decision Regarding Motion for Temporary Restraining Order and Emergency Motion for Stay of Proceedings |
| 06-03-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-04-2026 | Filed: Return of Electronic Notification |
| 06-04-2026 | Filed: MANDATORY INJUNCTIVE DEMAND AND NOTICE OF INTENT TO SERVE A SUBPOENA DUCES TECUM UPON THE UTAH DEPARTMENT OF WORKFORCE SERVICES |
| 06-04-2026 | Filed: NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM ON NON-PARTY FAST ENTERPRISES, LLC |
| 06-04-2026 | Filed: NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM ON NON-PARTY GOOGLE LLC |
| 06-04-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-05-2026 | Filed: Return of Electronic Notification |
| 06-08-2026 | Filed order: Memorandum Decision and Order<br>Judge JOEL FERRE<br>Signed June 08, 2026 |
| 06-08-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-09-2026 | Filed: Return of Electronic Notification |
| 06-12-2026 | Filed: Opposition to Petitioners First Amended Motion to Strike |
| 06-12-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-12-2026 | Filed: Return of Electronic Notification |
| 06-12-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-15-2026 | Filed: Reply Memorandum in Support of First Amended Motion to Strike Technologically Fraudulent Defenses |
| 06-15-2026 | Filed: Formal Request to Submit for Decision, Declaration of Binding Procedural Default, and Petition for the Mandatory Execution of Spoliation Sanctions |
| 06-16-2026 | Filed: Manual Email: Memorandum Decision and Order |
| 06-16-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-17-2026 | Filed: Return of Electronic Notification |
| 06-18-2026 | Filed: Statement of Discovery Issues |
| 06-18-2026 | Filed: Order (Proposed) Statement of Discovery Issues |
| 06-18-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-18-2026 | Filed: Return of Electronic Notification |
| 06-18-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-19-2026 | Filed: PETITIONER S FORMAL MOTION FOR REASONABLE ADA |

ACCOMMODATION, OBJECTION TO SERVICE OF NON-ACCESSIBLE PLEADINGS, AND MOTION TO COMPEL ADA-COMPLIANT RE-SERVICE AND TOLL RESPONSE DEADLINES
Filed by: JOHN EARLE SULLIVAN

| | |
|---|---|
| 06-19-2026 | Filed: ***PROPOSED***ORDER GRANTING PETITIONER S FORMAL MOTION FOR REASONABLE ADA ACCOMMODATION, OBJECTION TO SERVICE OF NON-ACCESSIBLE PLEADINGS, AND MOTION TO COMPEL ADA-COMPLIANT RE-SERVICE AND TOLL RESPONSE DEADLINES |
| 06-22-2026 | Filed: FORMAL MOTION FOR EVIDENTIARY HEARING AND TO SCHEDULE ORAL TESTIMONY PURSUANT TO UTAH RULES OF CIVIL PROCEDURE RULES 7, 16, 43(D), AND 45<br>Filed by: JOHN EARLE SULLIVAN |
| 06-22-2026 | Filed: FORMAL REQUEST TO SUBMIT FOR DECISION PURSUANT TO UTAH RULES OF CIVIL PROCEDURE RULE 7(G) AND RULE 87(C)(1)(B) |
| 06-22-2026 | Filed: ***PROPOSED*** ORDER GRANTING PETITIONER'S MOTION FOR EVIDENTIARY HEARING AND SCHEDULING ORAL TESTIMONY |
| 06-24-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-25-2026 | Filed: Return of Electronic Notification |
| 06-25-2026 | Filed: Objection to Respondent's Statement of Discovery Issues |
| 06-25-2026 | Filed: Certificate of Service |
| 06-25-2026 | Filed: ***PROPOSED*** Order Denying Respondent's Statement of Discovery Issues |
| 06-25-2026 | Filed: Response to Motion for Evidentiary Hearing and Request to Submit |
| 06-25-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-25-2026 | Filed: Return of Electronic Notification |
| 06-25-2026 | Filed order: Order Statement of Discovery Issues<br>Judge JOEL FERRE<br>Signed June 25, 2026 |
| 06-25-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-25-2026 | Filed: Return of Electronic Notification |
| 06-25-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-26-2026 | Filed: Return of Electronic Notification |

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 76**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**TAX SPECIALIST KIM CHHOUR HIGH LEVEL W2 SUMMARY**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified copy of the August 28, 2025 email transmittal from Tax Specialist Kim Chhour, providing a high-level W-2 summary for the 2019 and 2020 tax years.***

SHA-256 : 1ecace1281cde499f598dfb8091ea43ad938beaafd47d3545ad61dfec0d76874
SHA3-512: a4f3f2f5fb59f5719ba65548565c3cab2b5d8d3b670e54d528f6aeb29c60ba68...
BLAKE3 : 128217cb1d0c30f2b2aa3b0e8c356b14500e4fd0d47d212df09d3def496b3716

**EXHIBIT 76**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<76<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

Gmail

Jayden X <johnearles30@gmail.com>

# Formal Follow-Up and Information Request Regarding Audit Notices for John E. Sullivan (Account ID: 14205451-002-IIT)

5 messages

**Jayden X** <johnearles30@gmail.com> Thu, Aug 21, 2025 at 12:24 PM
To: Kim.tax@utah.gov

Dear Kim,

I hope this email finds you well.

This letter is to formally follow up on our telephone conversation from August 20, 2025, regarding the audit notices for John E. Sullivan, Account ID 14205451-002-IIT, concerning tax years 2019, 2020, 2021, and 2022.

First, I would like to confirm again the 30-day extension you granted me during our call. As we discussed, the new deadline for our comprehensive response to all four notices (Letter IDs: L0012504992, L0514183072, L1285173152, and LO027643808) is now **October 14, 2025**. Is that correct? I appreciate your attention to this matter.

Second, to ensure that I can provide a complete, accurate, and fully responsive submission, it is imperative that I have a full factual record of all the information and data upon which the Commission's inquiries are based. To that end, and in the spirit of cooperative compliance, I am formally requesting for you to please provide me with copies of all relevant documents and information in the Commission's possession pertaining to everything in this audit.

Specifically, I am requesting:

1. **All Information Received from the Internal Revenue Service (IRS):** As the notices explicitly state that the audit was initiated based on information from the IRS, please provide the complete, unredacted data transfer, reports, or correspondence received from the IRS that form the basis for the alleged unreported income in 2019 and the income-based filing requirements for 2020, 2021, and 2022.
2. **A Detailed Breakdown of Discrepancies:** For the 2019 audit (Letter ID: L0012504992), please provide a detailed breakdown of the alleged $16,696 in unreported federal taxable income, including the specific forms (W-2s, 1099s, etc.) and payers from which these figures were derived.
3. **Any and All Other Evidentiary Documents:** Please provide any other documents, records, or evidence that the Auditing Division has relied upon in making its initial determinations for all four tax years in question.

Receiving this complete factual record is a necessary prerequisite for me to conduct a thorough review and provide an accurate response that will be of maximum assistance to the Commission in resolving this matter efficiently.

Thank you for your time and assistance. I look forward to receiving all of the requested documents and to working with you to bring these inquiries to a satisfactory conclusion.

Respectfully,

John Earle Sullivan
Account ID: 14205451-002-II



**John Earle Sullivan**
**Phone:** 435-841-7258

---

**Kim** <kim.tax@utah.gov> Thu, Aug 21, 2025 at 12:24 PM
To: johnearles30@gmail.com

This is an automated reply to your email. Your email will be answered in the order it was received, thank you.

--

**Kim**
Tax Examiner, Income Tax & Education Division
Utah State Tax Commission
Phone: 801-297-4630 | Fax: 801-297-4603
Email: kim.tax@utah.gov
Mission: Promote Tax and Motor Vehicle Law Compliance

This email is intended for the individual to whom it is addressed and may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address.

---

**Kim** <kim.tax@utah.gov> Fri, Aug 22, 2025 at 8:56 AM
To: Jayden X <johnearles30@gmail.com>

Hi John,

Thank you for your email. The audits have been extended to October 15, 2025.

To address the information you are seeking, you will need to contact the IRS directly to obtain the necessary documents. It is recommended that you request a Wage and Income Transcript from the IRS. This transcript shows the information the IRS has received regarding your income. Once you have obtained the Wage and Income Transcript, you can use the information to prepare your federal income tax return. After preparing the federal tax return, you can then use that information to complete your Utah income tax return. I recommend consulting a tax preparer or local CPA for assistance with filing the tax returns, if needed.

Thanks,
Kim

**Kim**
Tax Examiner, Income Tax & Education Division
Utah State Tax Commission
Phone: 801-297-4630 | Fax: 801-297-4603
Email: kim.tax@utah.gov
Mission: Promote Tax and Motor Vehicle Law Compliance

This email is intended for the individual to whom it is addressed and may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address.

[Quoted text hidden]

---

**Jayden X** <johnearles30@gmail.com> Fri, Aug 22, 2025 at 11:14 AM
To: Kim <kim.tax@utah.gov>

Dear Kim,

Thank you for your prompt and clear response of August 22, 2025. I am writing to confirm receipt of your email and to provide an update on my actions.

First, thank you for confirming the extension for all four audited tax years (2019-2022) to **October 15, 2025**. This provides the necessary time to ensure a comprehensive and accurate response.

As per your directive, I have initiated the process of formally requesting the **IRS Wage and Income Transcripts** for all four years in question. This is the critical first step, and I have acted on your recommendation immediately.

However, as the processing time for IRS transcript requests can sometimes be subject to delay, and to ensure that I can meet the October 15 deadline you have graciously provided, I must reiterate a portion of my previous request in the spirit of a complete and efficient audit process for all parties.

While I await the official transcripts from the IRS, it would be of immense assistance to my review if the Commission could provide any summary documents, data files, or reports that you currently have on file from the initial IRS data transfer. My request is made pursuant to my rights as a taxpayer to be informed, as outlined in the Utah Taxpayer Bill of Rights (Publication 2), and is intended solely to facilitate a parallel review process that will allow me to prepare the most thorough and well-documented response possible for you by the established deadline.

Receiving any preliminary data you have available now will allow me to begin my research and reconciliation immediately, ensuring that my final submission to you is not only complete but is also delivered in a timely manner.

Thank you again for your continued assistance and professionalism. I will notify you as soon as the official IRS transcripts are received.

Respectfully,

John Earle Sullivan
Account ID: 14205451-002-II

Thank you,



**John Earle Sullivan**
**Phone:** 435-841-7258

[Quoted text hidden]

---

**Kim** <kim.tax@utah.gov> Thu, Aug 28, 2025 at 1:15 PM
To: Jayden X <johnearles30@gmail.com>

UtahID

This is an official email from the State of Utah. The State of Utah uses Virtru to send and receive encrypted email. Click the "unlock message" button below to decrypt and read the message. If you have any questions, please contact me.

Unlock Message

Virtru encrypts emails to keep private information safe. Learn more at Virtru.com.

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 77**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**CHHOUR EMAIL IRS REDIRECTION**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Email transmittal from Tax Auditor Kim Chhour dated August 29, 2025, refusing to provide wage discrepancy breakdowns and directing taxpayer to IRS directly.***

SHA-256 : 94eccc9117602f6f2a2b12ab65f0de8912142fa2f5dd0ae291a323e1c5e19245
SHA3-512: 18f8fc88a9ba74d5aa4a3070154d62dbe2975d2aa669d75ae468376366027b61...
BLAKE3 : ac3b4f55e32752e1719f1ca11e241cfeb9ecaf56a11660a2566e680bb02bf62b

**EXHIBIT 77**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<77<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

Gmail **Jayden X <johnearles30@gmail.com>**

---

## Formal Follow-Up and Information Request Regarding Audit Notices for John E. Sullivan (Account ID: 14205451-002-IIT)

3 messages

---

**Jayden X** <johnearles30@gmail.com> Thu, Aug 21, 2025 at 12:24 PM
To: Kim.tax@utah.gov

Dear Kim,

I hope this email finds you well.

This letter is to formally follow up on our telephone conversation from August 20, 2025, regarding the audit notices for John E. Sullivan, Account ID 14205451-002-IIT, concerning tax years 2019, 2020, 2021, and 2022.

First, I would like to confirm again the 30-day extension you granted me during our call. As we discussed, the new deadline for our comprehensive response to all four notices (Letter IDs: L0012504992, L0514183072, L1285173152, and LO027643808) is now **October 14, 2025**. Is that correct? I appreciate your attention to this matter.

Second, to ensure that I can provide a complete, accurate, and fully responsive submission, it is imperative that I have a full factual record of all the information and data upon which the Commission's inquiries are based. To that end, and in the spirit of cooperative compliance, I am formally requesting for you to please provide me with copies of all relevant documents and information in the Commission's possession pertaining to everything in this audit.

Specifically, I am requesting:

1. **All Information Received from the Internal Revenue Service (IRS):** As the notices explicitly state that the audit was initiated based on information from the IRS, please provide the complete, unredacted data transfer, reports, or correspondence received from the IRS that form the basis for the alleged unreported income in 2019 and the income-based filing requirements for 2020, 2021, and 2022.
2. **A Detailed Breakdown of Discrepancies:** For the 2019 audit (Letter ID: L0012504992), please provide a detailed breakdown of the alleged $16,696 in unreported federal taxable income, including the specific forms (W-2s, 1099s, etc.) and payers from which these figures were derived.
3. **Any and All Other Evidentiary Documents:** Please provide any other documents, records, or evidence that the Auditing Division has relied upon in making its initial determinations for all four tax years in question.

Receiving this complete factual record is a necessary prerequisite for me to conduct a thorough review and provide an accurate response that will be of maximum assistance to the Commission in resolving this matter efficiently.

Thank you for your time and assistance. I look forward to receiving all of the requested documents and to working with you to bring these inquiries to a satisfactory conclusion.

Respectfully,

John Earle Sullivan
Account ID: 14205451-002-II



**John Earle Sullivan**
**Phone:** 435-841-7258

---

**Kim** <kim.tax@utah.gov> Thu, Aug 21, 2025 at 12:24 PM
To: johnearles30@gmail.com

This is an automated reply to your email. Your email will be answered in the order it was received, thank you.

--

**Kim**
Tax Examiner, Income Tax & Education Division
Utah State Tax Commission
Phone: 801-297-4630 | Fax: 801-297-4603
Email: kim.tax@utah.gov
Mission: Promote Tax and Motor Vehicle Law Compliance

This email is intended for the individual to whom it is addressed and may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address.

---

**Kim** <kim.tax@utah.gov> Fri, Aug 22, 2025 at 8:56 AM
To: Jayden X <johnearles30@gmail.com>

Hi John,

Thank you for your email. The audits have been extended to October 15, 2025.

To address the information you are seeking, you will need to contact the IRS directly to obtain the necessary documents. It is recommended that you request a Wage and Income Transcript from the IRS. This transcript shows the information the IRS has received regarding your income. Once you have obtained the Wage and Income Transcript, you can use the information to prepare your federal income tax return. After preparing the federal tax return, you can then use that information to complete your Utah income tax return. I recommend consulting a tax preparer or local CPA for assistance with filing the tax returns, if needed.

Thanks,
Kim

**Kim**
Tax Examiner, Income Tax & Education Division
Utah State Tax Commission
Phone: 801-297-4630 | Fax: 801-297-4603
Email: kim.tax@utah.gov
Mission: Promote Tax and Motor Vehicle Law Compliance

This email is intended for the individual to whom it is addressed and may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the listed email address.

[Quoted text hidden]

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 79**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**SHERRY SNOW SERVICE EMAIL POST DATED CERTIFICATE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Service email from Sherry Snow <sherrysnow@agutah.gov> dated June 25, 2026 at 3:14 PM MDT, serving the USTC Response with Certificate of Service post-dated to June 26, 2026.***

SHA-256 : 3115ff4313b8f6d7fdf29450016a5f8199d9dc2955bca4d2b04bd48b3cdce523
SHA3-512: bd24089fddbe30f25f5619a6e3658a02997bdf8467dda4c5f4d6c982dc119443...
BLAKE3 : 28bf392764ac218e12a18433a1a09ae971818a34216ac9ffc9fcd32c11ef5a3c

**EXHIBIT 79**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<79<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

Outlook

**John Earle Sullivan v. Utah State Tax Commission, Case No. 260903520**

**From** Sherry Snow <sherrysnow@agutah.gov>
**Dat** [redacted]
**To** [redacted]
**Cc** [redacted] agutah.gov>

1 attachment (560 KB)
USTC's Resp to Motion for Evid Hearing and Req to Submit.pdf;

Attached please find a copy of USTC's Response to Motion for Evidentiary Hearing and Request to Submit that was filed with the court today in regards to the above referenced matter.

Sherry

Sherry Snow|Paralegal
Tax, Transit & Financial Services Division
Utah Attorney General's Office
Direct: 385-867-4684
Main: 801-366-0375
Email: ssnow@agutah.gov

This email from the Utah State Attorney General's Office contains information that may be confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email is strictly prohibited, and that the documents should be returned to this office immediately. If you have received this in error, please notify us by telephone immediately at (801) 366-0375, collect, so that we may arrange for the return of the original documents to us at no cost to you. The unauthorized disclosure, use or publication of confidential or privileged information inadvertently transmitted to you may result in criminal and/or civil liability.

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 80**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**RETURN OF ELECTRONIC NOTIFICATION STATE RESPONSE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Return of Electronic Notification from the Third Judicial District Court, confirming the e-filing of the USTC Response on June 25, 2026 at 3:14 PM MDT.***

SHA-256 : 60874d01b3e651b38de08901af22e261bfbff50ebe3da03b5d3a8df38a3c4b3e
SHA3-512: 6a7b0f65381bbc651fdbf9ce712525f9863f4980e327d38ff0470c16eb62447e...
BLAKE3 : 3d400049207c2a7d8a09289f4a583801cbbaf59c8479b24dd3265de0d2bc4843

**EXHIBIT 80**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<80<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

THIRD JUDICIAL DISTRICT - SALT LAKE COUNTY DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JOHN EARLE SULLIVAN<br>Plaintiff<br>vs.<br>UTAH STATE TAX COMMISSION<br>Defendant | CASE HISTORY<br><br>Case Number: 260903520 AA<br>Judge: JOEL FERRE<br><br>Date: June 25, 2026 |

**DOCUMENTS**

Date filed: June 25, 2026

Title: Return of Electronic Notification

efiler

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 81**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**SHERIFF RETURN OF SERVICE ON FAST ENTERPRISES**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Return of Service by Salt Lake County Deputy Sheriff certifying service of Subpoena Duces Tecum on FAST Enterprises, LLC (Docket#26-5576, served June 22, 2026).***

SHA-256 : 9027da85d68cd9a644300e1ee478b6139baafcd4ad1b3b9d848e7884675916c1
SHA3-512: 44358c4793775b3fb58600a68e9851b70be5fa728d538e634cefe565c1f24090...
BLAKE3 : 747c1c7f5a23db7878bde800329eacaabe4b13518b52d5bce18d7af2d11ded2a

**EXHIBIT 81**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<81<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

**SALT LAKE COUNTY SHERIFF'S OFFICE**CIVIL PROCESS UNIT**
3365 SOUTH 900 WEST**SALT LAKE CITY, UTAH 84119**Office: (385) 468-9758**FAX (385) 468-9736

# RETURN OF SERVICE

STATE OF UTAH
COUNTY OF SALT LAKE } s.s. SHERIFF'S OFFICE

☒ Original
☐ Amended
☐ Duplicate

1) SERVED: FAST ENTERPRISES, LLC

AFFILIATION: RESPONDENT

2) DATE RECEIVED: 06/19/2026 3) DATE SERVED: 06/22/2026

4) PROCESS: ☐ Affidavit ☐ Acceptance of Service ☐ Complaint ☐ Complaint for Forfeiture ☐ Criminal Summons ☐ Continuous Protective Order ☐ Declaration ☐ Decree ☐ Exhibits ☐ Garnishment ☐ Information ☐ Motion ☐ Notice ☐ Notice of Hearing ☐ Order ☐ Order To Show Cause ☐ Petition ☐ Pretrial No Contact Order ☐ Pretrial Protective Order ☒ Subpoena ☐ Summons ☐ PO Acknowledgment of Firearm Restriction ☐ Small Claims - Order & Affidavit ☐ Verified Petition ☒ Other SUBPOENA DUCES TECUM & MANDATORY COMPULSION FOR THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION & SYSTEMIC METADATA

5) TYPE OF SERVICE: ☒ Personal ☐ Posted

☐ Left at residence with ______ (Name and Relationship) at usual place of abode with a person of suitable age and discretion there residing

☒ Company or Corporation CT CORPORATION SYSTEMS-DANI SNOW (Name and Title)

☒ Other SERVED BY HAND SIGNED AND PLACED IN DESK BASKET IN CARE OF DANI SNOW WITH CT CORPORATION SYSTEMS REGISTERED AGENT FOR FAST ENTERPRISES LLC

☐ Notes

6) LOCATION OF SERVICE: 1108 E SOUTH UNION AVE, MIDVALE UTAH 84047 Business

7) ☒ I further certify at the time of service, on the copy served, I endorsed the date, signed my name and official title thereto.

8) ☐ I tendered a fee of $______ and took receipt which is hereto attached.

**ROSA M. RIVERA, Sheriff of Salt Lake County, State of Utah**

DOCKET# 26- 5576

PROCESSED BY: [signature]

SHERIFF'S FEES:
Service: $ [signature]
Mileage: $ ______
Total: $ ______

I Certify that the forgoing is true and correct and this Certificate is executed on (date) 06/22/2026

By M.G B71

JOHN EARLE SULLIVAN
Name

[redacted]

Erda, UT 84074
City, State, Zip

[redacted]

johne.sullivan@outlook.com
Email

**Check your email.** You will receive information and documents at this email address.

I am [x] Plaintiff/Petitioner [ ] Defendant/Respondent
[ ] Plaintiff/Petitioner's Attorney [ ] Defendant/Respondent's Attorney (Utah Bar #:__________)
[ ] Plaintiff/Petitioner's Licensed Paralegal Practitioner
[ ] Defendant/Respondent's Licensed Paralegal Practitioner (Utah Bar #:__________)

In the [x] District [ ] Justice Court of Utah

Third Judicial District Salt Lake County

Court Address 450 South State Street, Salt Lake City, UT 84114

| | |
|---|---|
| JOHN EARLE SULLIVAN<br>Plaintiff/Petitioner<br><br>v.<br><br>UTAH STATE TAX COMMISSION, et al.<br>Defendant/Respondent | **Subpoena**<br>(Utah Rule of Civil Procedure 30 and 45)<br><br>260903520<br>Case Number<br><br>Joel Ferre<br>Judge<br><br>__________<br>Commissioner |

The following records and forms must be attached to this Subpoena and served with it.

- Notice to Persons Served with a Subpoena.
- Objection to Subpoena.
- Declaration of Compliance with Subpoena.
- Witness fee.
- Application for Subpoena under the Utah Uniform Interstate Depositions and Discovery Act with attachments (for cases from states in which the Uniform Act applies).
- Notice of Deposition and Request for Subpoena in Case Pending Out of State (for cases from states in which the Uniform Act does not apply).

Serve all of these documents by one of the methods described in Utah Rule of Civil Procedure 4(d).

To:

______________________________________________
Name and Address

______________________________________________
Name and Address

1. [ ] You must appear at:

Address (Dirección):

______________________________________________

Date (Fecha): ______________ Time (Hora): ____________ [ ] a.m. [ ] p.m.

Room (Sala): ______________

To: (Choose all that apply.)

[ ] testify at a trial or hearing.

**Interpretation.** If you do not speak or understand English, the court will provide an interpreter. Contact court staff immediately to ask for an interpreter.

**Interpretación.** Si usted no habla ni entiende el Inglés el tribunal le proveeré un intérprete. Contacte a un empleado del tribunal inmediatamente para pedir un intérprete.

**ADA Accommodation.** If you need an accommodation, including an ASL interpreter, contact court staff immediately to ask for an accommodation.

**Adaptación o Arreglo en Caso de Discapacidad.** Si usted requiere una adaptación o arreglo, que incluye un intérprete de la lengua de signos americana, contacte a un empleado del tribunal inmediatamente para pedir una adaptación.

[ ] testify at a deposition.

[ ] permit inspection of the following premises:

______________________________________________ (address)

[ ] produce the following documents or tangible things:

______________________________________________

______________________________________________

2. [ ] You must copy the documents or electronically stored information listed below. You must mail or deliver the copies to the person at the address at the top of the first page of this Subpoena by: ______________ (date).

______________________________________________

______________________________________________

3. The Notice to Persons Served with a Subpoena must be served with this Subpoena. The notice explains your rights and obligations.

4. [ ] This subpoena is for a deposition and is being served on a corporation, partnership, association or governmental agency. (Utah Rule of Civil Procedure 30). You must designate one or more persons who will be questioned on your behalf .

The questions will be about (describe):

______________________________________________________________

______________________________________________________________

______________________________________________________________

5. [ ] This Subpoena includes the terms of the attached subpoena issued by ______________________________ (state).

If you are representing yourself or you checked paragraph 5, only the court clerk may sign this subpoena.

6/1/2026
Date

Signature ▶ [signature]

Printed name of:
Court Clerk [ ] Curtis Breitbart

STATE OF UTAH THIRD DISTRICT COURT SALT LAKE CITY

Attorney for
Plaintiff/Petitioner [ ]
Defendant/Respondent [ ] ______________________________

Licensed Paralegal Practitioner for
Plaintiff/Petitioner [ ]
Defendant/Respondent [ ] ______________________________

BEFORE THE THIRD JUDICIAL DISTRICT COURT IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JOHN EARLE SULLIVAN,<br>*Petitioner.*<br>v.<br>UTAH STATE TAX COMMISSION, ET AL.<br>*Respondent.* | CASE NO.: 260903520<br>JUDGE: JOEL FERRE<br>DOC ID: 0604-JES-V-USTC-SUB-DT-FAST-2026<br>DATE: 06-04-2026 |

# SUBPOENA DUCES TECUM AND MANDATORY COMPULSION FOR THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND SYSTEMIC METADATA

---

## I. JURISDICTIONAL AND STATUTORY QUESTION PRESENTED

Pursuant to the mandatory operational directives codified within the Utah Rules of Civil Procedure (URCP), and specifically governing the compelled extraction of evidentiary material from third-party administrative custodians, the jurisdictional locus for the enforcement, execution, and judicial review of this legal instrument is exclusively established within the Third Judicial District Court in and for Salt Lake County, State of Utah. The fundamental legal question presented is the statutory compulsion of FAST Enterprises, LLC, operating as a continuous administrative agent and database architect for the Utah State Tax Commission, to tender unredacted, native-format Electronically Stored Information (ESI) and system-level cryptographic telemetry directly related to the algorithmic auditing and account processing of the Petitioner.

John Earle Sullivan
Name
[redacted]
Erda
City, State, Zip
4358417258
Phone
johnearles30@gmail.com
Email

In the [ x ] District [ ] Justice Court of Utah

Third Judicial District Salt Lake City County

Court Address 450 S State Street, SLC, UT 84111

| | |
|---|---|
| John Earle Sullivan<br>Plaintiff/Petitioner<br><br>v.<br><br>Utah State Tax Commission, et al<br>Defendant/Respondent | **Order on Motion to Waive Fees - General**<br><br>260903520<br>Case Number<br><br>Judge Joel Ferre<br>Judge<br><br>Commissioner (domestic cases) |

The matter before the court is a Motion to Waive Fees. Having reviewed the Motion to Waive Fees and Statement Supporting Motion and supporting financial evidence, and having made an independent determination,

**The court orders:**

1. [ ] **The motion is denied.** The information shows that the party is reasonably able to pay the fees.

2. [ ] **The motion is denied.** The party failed to provide the required information. The party may re-file the motion with the required information within 14 days.

3. [X] **The motion is granted.** The following fees are waived. If the fee is waived in

part, it is because the party is reasonably able to pay the balance.

| Fee | Waived in Full | Waived in Part – Amount to be Paid |
|---|---|---|
| Filing fee | [ ] | |
| OCAP fee | [ x ] | |
| Required classes<br>parenting class fees<br>orientation class fees | <br>[ ]<br>[ ] | |
| Vital stats fee – divorce certificate or report of adoption | [ ] | |
| Fee to have papers served within Utah | [ x ] | |
| Other (Describe.) | [ x ] | All court-related costs, copying and certification fees. |

4. Any fees not waived must be paid within 30 days or the case may be dismissed.

5. This order is subject to review and amendment as long as the court has jurisdiction of the case.

Judge's signature may instead appear at the top of the first page of this document.

11 May 2026
Date

Signature ▶

Judge

## Notice to the Moving Party

If the fee waiver was denied because the judge found **you are reasonably able to pay** (paragraph 1 is marked), and you:

- have lost your source of income;
- have unaccounted expenses limiting your ability to pay;
- will suffer immediate irreparable harm if the action is delayed; or
- would lose the opportunity to file the case because of the delay,

you may file a Memorandum Demonstrating Inability to Pay Fees within 10 days of the date of this order.

If the fee waiver was denied **because you failed to provide the required information** (paragraph 2 is marked), and you want your request to be reconsidered, you must file a

corrected motion with the required information within 14 days of the date of this order.

**Clerk's Certificate of Service**

I certify that on 5/13/26 (date) a copy of this order was served on the moving party by the method indicated below:

| Mailed | Emailed | Party Name | Mail or Email Address |
|---|---|---|---|
| [ ] | [X] | John Sullivan | johne.sullivan@outlook.com |

5/13/2026
Date

Signature ► [signature]

Printed name of court clerk Alex Walker

## CERTIFICATE OF NOTIFICATION

I certify that a copy of the attached document was sent to the following people for case 260903520 by the method and on the date specified.

EMAIL: JOHN EARLE SULLIVAN [redacted]

05-13-2026 /s/ ALEX WALKER

Date: ____________________ ______________________________

Signature

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 82**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**SHERIFF RETURN OF SERVICE ON DWS**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Return of Service by Salt Lake County Deputy Sheriff certifying service of Subpoena Duces Tecum on Utah Department of Workforce Services (Docket#26-5575, served June 23, 2026).***

SHA-256 : 9f590353e6e9a6211409409e482704d1cffb08a3f086c1330af951166023dd80
SHA3-512: 12c1c9ea386b83680ed446c9384f06cc8215860819d7adabd613f2e4536d8c70...
BLAKE3 : fa50560c8fdf7fe648546d6e6aa5d7fe97f39911c5f949aba7edc9053c90c328

**EXHIBIT 82**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<82<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

**SALT LAKE COUNTY SHERIFF'S OFFICE**CIVIL PROCESS UNIT**
3365 SOUTH 900 WEST**SALT LAKE CITY, UTAH 84119**Office: (385) 468-9758**FAX (385) 468-9736

# RETURN OF SERVICE

**STATE OF UTAH**
**COUNTY OF SALT LAKE** } **s.s. SHERIFF'S OFFICE**

- [x] **Original**
- [ ] **Amended**
- [ ] **Duplicate**

1) **SERVED:** UTAH DEPARTMENT OF WORKFORCE SERVICES

**AFFILIATION:** Defendant

2) **DATE RECEIVED:** 06/19/2026 3) **DATE SERVED:** 06/23/2026

4) **PROCESS:** [ ] Affidavit [ ] Acceptance of Service [ ] Complaint [ ] Complaint for Forfeiture [ ] Criminal Summons [ ] Continuous Protective Order [ ] Declaration [ ] Decree [ ] Exhibits [ ] Garnishment [ ] Information [ ] Motion [ ] Notice [ ] Notice of Hearing [ ] Order [ ] Order To Show Cause [ ] Petition [ ] Pretrial No Contact Order [ ] Pretrial Protective Order [x] Subpoena [ ] Summons [ ] PO Acknowledgment of Firearm Restriction [ ] Small Claims - Order & Affidavit [ ] Verified Petition [x] Other SUBPOENA DUCES TECUM, MANDATORY LITIGATION HOLD, & EXHAUSTIVE DEMAND FOR ELECTRONICALLY STORED INFORMATION (ESI)

5) **TYPE OF SERVICE:** [ ] Personal [ ] Posted

[ ] Left at residence with ______________ (Name and Relationship) at usual place of abode with a person of suitable age and discretion there residing.

[ ] Company or Corporation ______________ (Name and Title)

[x] Other UTAH DEPARTMENT OF WORKFORCE SERVICES, LEGAL ASSISTANT JODI BENSON.

[ ] Notes

6) **LOCATION OF SERVICE:** 140 E. 300 S. SALT LAKE CITY, UT. 84111 Public Building

7) [x] I further certify at the time of service, on the copy served, I endorsed the date, signed my name and official title thereto.

8) [ ] I tendered a fee of $______________ and took receipt which is hereto attached.

**ROSA M. RIVERA, Sheriff of Salt Lake County, State of Utah**

**DOCKET #** 26- 5575

**PROCESSED BY:** [signature]

**SHERIFF'S FEES:**
Service: $ ______
Mileage: $ ______
Total: $ ______

I Certify that the forgoing is true and correct and this Certificate is executed on (date) 06/23/2026

By Von G NN8

JOHN EARLE SULLIVAN
Name

1221 West Erda Way
Address

Erda, UT 84074
City, State, Zip

[redacted]
Phone

johne.sullivan@outlook.com
Email

**Check your email.** You will receive information and documents at this email address.

I am [X] Plaintiff/Petitioner [ ] Defendant/Respondent
[ ] Plaintiff/Petitioner's Attorney [ ] Defendant/Respondent's Attorney (Utah Bar #:__________)
[ ] Plaintiff/Petitioner's Licensed Paralegal Practitioner
[ ] Defendant/Respondent's Licensed Paralegal Practitioner (Utah Bar #:__________)

In the [x] District [ ] Justice Court of Utah

Third Judicial District Salt Lake County

Court Address 450 South State Street, Salt Lake City, UT 84114

| | |
|---|---|
| JOHN EARLE SULLIVAN<br>Plaintiff/Petitioner<br><br>v.<br><br>UTAH STATE TAX COMMISSION, et al.<br>Defendant/Respondent | **Subpoena**<br>(Utah Rule of Civil Procedure 30 and 45)<br><br>260903520<br>Case Number<br><br>Joel Ferre<br>Judge<br><br>________<br>Commissioner |

The following records and forms must be attached to this Subpoena and served with it.

- Notice to Persons Served with a Subpoena.
- Objection to Subpoena.
- Declaration of Compliance with Subpoena.
- Witness fee.
- Application for Subpoena under the Utah Uniform Interstate Depositions and Discovery Act with attachments (for cases from states in which the Uniform Act applies).
- Notice of Deposition and Request for Subpoena in Case Pending Out of State (for cases from states in which the Uniform Act does not apply).

Serve all of these documents by one of the methods described in Utah Rule of Civil Procedure 4(d).

To:

_______________________________________________
Name and Address

_______________________________________________
Name and Address

1. [ ] You must appear at:

Address (Dirección):

_______________________________________________

Date (Fecha): ____________ Time (Hora): __________ [ ] a.m. [ ] p.m.

Room (Sala): ____________

To: (Choose all that apply.)

[ ] testify at a trial or hearing.

**Interpretation.** If you do not speak or understand English, the court will provide an interpreter. Contact court staff immediately to ask for an interpreter.

**Interpretación.** Si usted no habla ni entiende el Inglés el tribunal le proveeré un intérprete. Contacte a un empleado del tribunal inmediatamente para pedir un intérprete.

**ADA Accommodation.** If you need an accommodation, including an ASL interpreter, contact court staff immediately to ask for an accommodation.

**Adaptación o Arreglo en Caso de Discapacidad.** Si usted requiere una adaptación o arreglo, que incluye un intérprete de la lengua de signos americana, contacte a un empleado del tribunal inmediatamente para pedir una adaptación.

[ ] testify at a deposition.

[ ] permit inspection of the following premises:

_______________________________________________ (address)

[ ] produce the following documents or tangible things:

_______________________________________________

_______________________________________________

2. [ ] You must copy the documents or electronically stored information listed below. You must mail or deliver the copies to the person at the address at the top of the first page of this Subpoena by: ______________ (date).

_______________________________________________

_______________________________________________

3. The Notice to Persons Served with a Subpoena must be served with this Subpoena. The notice explains your rights and obligations.

4. [ ] This subpoena is for a deposition and is being served on a corporation, partnership, association or governmental agency. (Utah Rule of Civil Procedure 30). You must designate one or more persons who will be questioned on your behalf .

The questions will be about (describe):

______________________________

______________________________

______________________________

5. [ ] This Subpoena includes the terms of the attached subpoena issued by ______________________ (state).

If you are representing yourself or you checked paragraph 5, only the court clerk may sign this subpoena.

6/03/26
Date

Signature ► [signature]

Printed name of:
Court Clerk [X]

STATE OF UTAH DISTRICT SALT LAKE CITY

Attorney for
Plaintiff/Petitioner [ ]
Defendant/Respondent [ ] ______________________________

Licensed Paralegal Practitioner for
Plaintiff/Petitioner [ ]
Defendant/Respondent [ ] ______________________________

John Earle Sullivan
Name
[redacted]
Address
Erda
City, State, Zip
[redacted]
Phone
johnearles30@gmail.com
Email

In the [ x ] District [ ] Justice Court of Utah

Third Judicial District Salt Lake City County

Court Address 450 S State Street, SLC, UT 84111

| | |
|---|---|
| John Earle Sullivan<br>Plaintiff/Petitioner<br><br>v.<br><br>Utah State Tax Commission, et al<br>Defendant/Respondent | **Order on Motion to Waive Fees - General**<br><br>260903520<br>Case Number<br><br>Judge Joel Ferre<br>Judge<br><br>Commissioner (domestic cases) |

The matter before the court is a Motion to Waive Fees. Having reviewed the Motion to Waive Fees and Statement Supporting Motion and supporting financial evidence, and having made an independent determination.

**The court orders:**

1. [ ] **The motion is denied.** The information shows that the party is reasonably able to pay the fees.

2. [ ] **The motion is denied.** The party failed to provide the required information. The party may re-file the motion with the required information within 14 days.

3. [X] **The motion is granted.** The following fees are waived. If the fee is waived in

part, it is because the party is reasonably able to pay the balance.

| Fee | Waived in Full | Waived in Part – Amount to be Paid |
|---|---|---|
| Filing fee | [ ] | |
| OCAP fee | [ x ] | |
| Required classes<br>parenting class fees<br>orientation class fees | <br>[ ]<br>[ ] | |
| Vital stats fee – divorce certificate or report of adoption | [ ] | |
| Fee to have papers served within Utah | [ x ] | |
| Other (Describe.) | [ x ] | All court-related costs, copying and certification fees. |

4. Any fees not waived must be paid within 30 days or the case may be dismissed.

5. This order is subject to review and amendment as long as the court has jurisdiction of the case.

Judge's signature may instead appear at the top of the first page of this document.

11 May 2026
Date

Signature ►

Judge

STATE OF UTAH

**Notice to the Moving Party**

If the fee waiver was denied because the judge found **you are reasonably able to pay** (paragraph 1 is marked), and you:

- have lost your source of income;
- have unaccounted expenses limiting your ability to pay;
- will suffer immediate irreparable harm if the action is delayed; or
- would lose the opportunity to file the case because of the delay,

you may file a Memorandum Demonstrating Inability to Pay Fees within 10 days of the date of this order.

If the fee waiver was denied **because you failed to provide the required information** (paragraph 2 is marked), and you want your request to be reconsidered, you must file a

corrected motion with the required information within 14 days of the date of this order.

**Clerk's Certificate of Service**

I certify that on 5/13/26 (date) a copy of this order was served on the moving party by the method indicated below:

| Mailed | Emailed | Party Name | Mail or Email Address |
|---|---|---|---|
| [ ] | [X] | John Sullivan | johne.sullivan@outlook.com |

5/13/2026
Date

Signature ► [signature]

Printed name of court clerk Alex Walker

**CERTIFICATE OF NOTIFICATION**

I certify that a copy of the attached document was sent to the following people for case 260903520 by the method and on the date specified.

EMAIL: JOHN EARLE SULLIVAN [redacted]

05-13-2026 /s/ ALEX WALKER

Date: ____________________ ______________________________

Signature

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 83**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**SHERIFF RETURN OF SERVICE ON GOOGLE LLC**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Return of Service by Salt Lake County Deputy Sheriff certifying service of Subpoena Duces Tecum on Google LLC (Docket#26-5574, served June 23, 2026). Note: Contains clerical typographical error naming served party as Utah State Tax Commission.***

[redacted]b7e97acfcffb6f481e7241634d7f9a7069c3896a1f9920770682f32be01f018
SHA3-512: 02974972d331218f5560857e744bb3dd532f834eebec9e0b8cd51df2571275ba...
BLAKE3 : 4dccfb193bce07cc28aa54db8aa8565515012d20d18fbd62ba846b9e71620979

**EXHIBIT 83**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<83<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

**SALT LAKE COUNTY SHERIFF'S OFFICE**CIVIL PROCESS UNIT**
3365 SOUTH 900 WEST**SALT LAKE CITY, UTAH 84119**Office: (385) 468-9758**FAX (385) 468-9736

# RETURN OF SERVICE

STATE OF UTAH
COUNTY OF SALT LAKE } s.s. SHERIFF'S OFFICE

☒ Original
☐ Amended
☐ Duplicate

1) SERVED: UTAH STATE TAX COMMISSION

AFFILIATION: Witness

2) DATE RECEIVED: 06/19/2026 3) DATE SERVED: 06/23/2026

4) PROCESS: ☐ Affidavit ☐ Acceptance of Service ☐ Complaint ☐ Complaint for Forfeiture ☐ Criminal Summons ☐ Continuous Protective Order ☐ Declaration ☐ Decree ☐ Exhibits ☐ Garnishment ☐ Information ☐ Motion ☐ Notice ☐ Notice of Hearing ☐ Order ☐ Order To Show Cause ☐ Petition ☐ Pretrial No Contact Order ☐ Pretrial Protective Order ☒ Subpoena ☐ Summons ☐ PO Acknowledgment of Firearm Restriction ☐ Small Claims - Order & Affidavit ☐ Verified Petition ☒ Other SUBPOENA DUCES TECUM & COMPREHENSIVE MANDATE FOR THE EXHAUSTIVE PRODUCTION OF ELECTRONICALLY STORED INFORMATION/ORDER ON MOTION TO WAIVE FEES-GENERAL

5) TYPE OF SERVICE: ☐ Personal ☐ Posted

☐ Left at residence with ______ (Name and Relationship) at usual place of abode with a person of suitable age and discretion there residing.

☒ Company or Corporation CADENCE JORGENSEN OFFICE ASSISTANT CORPORATION SERVICE (Name and Title)

☐ Other ______

☐ Notes

6) LOCATION OF SERVICE: 15 W. SOUTH TEMPLE #600, SALT LAKE CITY, UT. 84101 Business

7) ☒ I further certify at the time of service, on the copy served, I endorsed the date, signed my name and official title thereto.

8) ☐ I tendered a fee of $______ and took receipt which is hereto attached.

ROSA M. RIVERA, Sheriff of Salt Lake County, State of Utah

DOCKET # 26- 5574

PROCESSED BY: [signature]

SHERIFF'S FEES:
Service: $ ______
Mileage: $ [signature]
Total: $ ______

I Certify that the forgoing is true and correct and this Certificate is executed on (date) 06/23/2026

By Von G NN8

JOHN EARLE SULLIVAN
Name

[redacted]

Erda, UT 84074
City, State, Zip

[redacted]

[redacted]

**Check your email.** You will receive information and documents at this email address.

I am [x] Plaintiff/Petitioner [ ] Defendant/Respondent
[ ] Plaintiff/Petitioner's Attorney [ ] Defendant/Respondent's Attorney (Utah Bar #:__________)
[ ] Plaintiff/Petitioner's Licensed Paralegal Practitioner
[ ] Defendant/Respondent's Licensed Paralegal Practitioner (Utah Bar #:__________)

In the [x] District [ ] Justice Court of Utah

Third Judicial District Salt Lake County

Court Address 450 South State Street, Salt Lake City, UT 84114

| | |
|---|---|
| JOHN EARLE SULLIVAN<br>Plaintiff/Petitioner<br><br>v.<br><br>UTAH STATE TAX COMMISSION, et al.<br>Defendant/Respondent | **Subpoena**<br>(Utah Rule of Civil Procedure 30 and 45)<br><br>260903520<br>Case Number<br><br>Joel Ferre<br>Judge<br><br>____________<br>Commissioner |

The following records and forms must be attached to this Subpoena and served with it.
- Notice to Persons Served with a Subpoena.
- Objection to Subpoena.
- Declaration of Compliance with Subpoena.
- Witness fee.
- Application for Subpoena under the Utah Uniform Interstate Depositions and Discovery Act with attachments (for cases from states in which the Uniform Act applies).
- Notice of Deposition and Request for Subpoena in Case Pending Out of State (for cases from states in which the Uniform Act does not apply).

Serve all of these documents by one of the methods described in Utah Rule of Civil Procedure 4(d).

To:

Name and Address

Name and Address

1. [ ] You must appear at:

Address (Dirección):

Date (Fecha): ____________ Time (Hora): ________ [ ] a.m. [ ] p.m.

Room (Sala): ____________

To: (Choose all that apply.)

[ ] testify at a trial or hearing.

**Interpretation.** If you do not speak or understand English, the court will provide an interpreter. Contact court staff immediately to ask for an interpreter.

**Interpretación.** Si usted no habla ni entiende el Inglés el tribunal le proveeré un intérprete. Contacte a un empleado del tribunal inmediatamente para pedir un intérprete.

**ADA Accommodation.** If you need an accommodation, including an ASL interpreter, contact court staff immediately to ask for an accommodation.

**Adaptación o Arreglo en Caso de Discapacidad.** Si usted requiere una adaptación o arreglo, que incluye un intérprete de la lengua de signos americana, contacte a un empleado del tribunal inmediatamente para pedir una adaptación.

[ ] testify at a deposition.

[ ] permit inspection of the following premises:

____________ (address)

[ ] produce the following documents or tangible things:

2. [ ] You must copy the documents or electronically stored information listed below. You must mail or deliver the copies to the person at the address at the top of the first page of this Subpoena by: ____________ (date).

3. The Notice to Persons Served with a Subpoena must be served with this Subpoena. The notice explains your rights and obligations.

4. [ ] This subpoena is for a deposition and is being served on a corporation, partnership, association or governmental agency. (Utah Rule of Civil Procedure 30). You must designate one or more persons who will be questioned on your behalf .

The questions will be about (describe):

______________________________________________

______________________________________________

______________________________________________

5. [ ] This Subpoena includes the terms of the attached subpoena issued by

______________________ (state).

If you are representing yourself or you checked paragraph 5, only the court clerk may sign this subpoena.

STATE OF UTAH THIRD DISTRICT COURT SALT LAKE CITY

6/1/2026
Date

Signature ▶ [signature]

Printed name of:
Court Clerk [ ] Curtis Brie[...]

Attorney for
Plaintiff/Petitioner [ ]
Defendant/Respondent [ ] ______________________

Licensed Paralegal Practitioner for
Plaintiff/Petitioner [ ]
Defendant/Respondent [ ] ______________________

John Earle Sullivan

[redacted]
Address
Erda
City, State, Zip
[redacted]
Phone
[redacted]
Email

In the [ x ] District [ ] Justice Court of Utah

Third Judicial District Salt Lake City County

Court Address 450 S State Street, SLC, UT 84111

| | |
|---|---|
| John Earle Sullivan<br>Plaintiff/Petitioner<br><br>v.<br><br>Utah State Tax Commission, et al<br>Defendant/Respondent | **Order on Motion to Waive Fees - General**<br><br>260903520<br>Case Number<br><br>Judge Joel Ferre<br>Judge<br><br>Commissioner (domestic cases) |

The matter before the court is a Motion to Waive Fees. Having reviewed the Motion to Waive Fees and Statement Supporting Motion and supporting financial evidence, and having made an independent determination,

**The court orders:**

1. [ ] **The motion is denied.** The information shows that the party is reasonably able to pay the fees.

2. [ ] **The motion is denied.** The party failed to provide the required information. The party may re-file the motion with the required information within 14 days.

3. [X] **The motion is granted.** The following fees are waived. If the fee is waived in

part, it is because the party is reasonably able to pay the balance.

| Fee | Waived in Full | Waived in Part – Amount to be Paid |
|---|---|---|
| Filing fee | [ ] | |
| OCAP fee | [ x ] | |
| Required classes<br>parenting class fees<br>orientation class fees | <br>[ ]<br>[ ] | |
| Vital stats fee – divorce certificate or report of adoption | [ ] | |
| Fee to have papers served within Utah | [ x ] | |
| Other (Describe.) | [ x ] | All court-related costs, copying and certification fees. |

4. Any fees not waived must be paid within 30 days or the case may be dismissed.

5. This order is subject to review and amendment as long as the court has jurisdiction of the case.

Judge's signature may instead appear at the top of the first page of this document.

11 May 2026

Date

Signature ▶

Judge

**Notice to the Moving Party**

If the fee waiver was denied because the judge found **you are reasonably able to pay** (paragraph 1 is marked), and you:

- have lost your source of income;
- have unaccounted expenses limiting your ability to pay;
- will suffer immediate irreparable harm if the action is delayed; or
- would lose the opportunity to file the case because of the delay,

you may file a Memorandum Demonstrating Inability to Pay Fees within 10 days of the date of this order.

If the fee waiver was denied **because you failed to provide the required information** (paragraph 2 is marked), and you want your request to be reconsidered, you must file a

corrected motion with the required information within 14 days of the date of this order.

**Clerk's Certificate of Service**

I certify that on 5/13/26 (date) a copy of this order was served on the moving party by the method indicated below:

| Mailed | Emailed | Party Name | Mail or Email Address |
|---|---|---|---|
| [ ] | [X] | John Sullivan | johne.sullivan@outlook.com |

5/13/2026
Date

Signature ▸ [signature]

Printed name of court clerk Alex Walker

## CERTIFICATE OF NOTIFICATION

I certify that a copy of the attached document was sent to the following people for case 260903520 by the method and on the date specified.

EMAIL: JOHN EARLE SULLIVAN [redacted]

Date: 05-13-2026 /s/ ALEX WALKER

Signature

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 88**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**EMERGENCY MOTION TO VACATE DISCOVERY ORDER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Petitioner's Emergency Motion to Vacate or Reconsider the June 25, 2026 Discovery Order, filed in the Third Judicial District Court on June 26, 2026.***

SHA-256 : 3c39a2fa1dfaa9de8b414b1ad0d2b6a455818d955354654d41132f3b735e15bb
SHA3-512: f74014c0face60e44b91a2e6bfda9c19b004e1864e4aeebbcbd4042c90e89445...
BLAKE3 : 1ada8bdedea55efba04828610932d86bb256f2182917b479edf533b58ef3c40d

**EXHIBIT 88**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<88<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

**IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR**

| | |
|---|---|
| **JOHN EARLE SULLIVAN,**<br>*Petitioner.*<br>**v.**<br>**UTAH STATE TAX COMMISSION, ET AL**<br>*Respondent.* | **CASE NO.:** **260903520**<br>**DISTRICT JUDGE: JOEL FERRE**<br>**DOC ID:** **0626-JES-V-USTC-VAC-DISC-ORD-2026**<br>**DATE:** **06-26-2026** |

# EMERGENCY MOTION TO VACATE OR RECONSIDER THE JUNE 25, 2026 ORDER ON DISCOVERY ISSUES

Petitioner John Earle Sullivan respectfully moves this Court pursuant to Utah Rule of Civil Procedure 54(b)[1], seeking vacatur of the June 25, 2026 Order on Discovery Issues as void ab initio.

The grounds for this Motion are that the Court entered the order prematurely and in direct violation of the Utah Rules of Civil Procedure prior to the submission of the matter for decision. Furthermore, the signed order verbatim adopts the Respondents' proposed order incorporating a blatant factual error, establishing that the Court abdicated its independent role of judicial review and ignored Petitioner's timely 102-page Objection.

[1] Utah Rule of Civil Procedure 54(b): '(b) Judgment upon multiple claims and/or involving multiple parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, cross claim, or third.'.

## PROCEDURAL BACKGROUND

1. On June 18, 2026, the Respondents filed and served a Statement of Discovery Issues and a Proposed Order.
2. Under URCP Rule 37(a)(3)[2], the deadline to file an objection to a Statement of Discovery Issues is seven days after the statement is filed.[3] The seven-day deadline expired on Thursday, June 25, 2026.
3. On the morning of June 25, 2026, at 09:20 AM MDT, the Petitioner executed formal electronic service of his Objection to the Statement of Discovery Issues, supporting Declaration, and Proposed Order upon opposing counsel.
4. On the morning of June 25, 2026, at 09:22 AM MDT, the Petitioner transmitted the Objection and supporting documents to Judicial Assistants Walker and Banks for electronic filing.
5. At 01:22:00 PM MDT on June 25, 2026, Judicial Assistant Curtis Britland sent an email confirmation stating *"Received and filed,"* officially docketing the Objection, supporting Declaration, and Proposed Order in Case No. 260903520.
6. On the evening of June 25, 2026, at 05:29:20 PM MDT, Judge Joel Ferre signed and entered the Respondents' pre-drafted *"Order on Discovery Issues"* quashing all discovery and subpoenas.
7. Neither the Respondents nor the Petitioner had filed a Request to Submit for Decision under URCP Rule 7(g)[4] regarding the Statement of Discovery Issues.
8. According to the Court's official Notice of Electronic Filing (*"NEF"*) generated on June 25, 2026, at 05:29:41 PM MDT, the Court's auto-notification system served Respondents' counsel electronically, but explicitly certified that the Petitioner was not served. The NEF states: *"The following people have not been served electronically by the Court. Therefore, if service is required, they must*

[2] URCP Rule 37(a)(3): '(3); (D) if the statement requests extraordinary discovery, a statement certifying that the party has reviewed and approved a discovery budget; and (E) if objection was made under.'.

[3] Utah R. Civ. P. 37.

[4] URCP Rule 7(g): '(g) Request to submit for decision. When briefing is complete or the time for briefing has expired, either party may file a *"Request to Submit for Decision,"* but, if no party files.'.

*be served by traditional means: JOHN EARLE SULLIVAN."* To date, the Petitioner has not been served with the Order by any traditional means, nor has any proof of traditional service been filed on the docket.

9. On June 26, 2026, at 10:00 AM MDT, the scheduled discovery meet-and-confer conference failed to occur. The Respondents' counsel failed to transmit the requested itemized list of discovery issues and did not connect to the conference, establishing total non-cooperation and bad faith.[5]

**ARGUMENT**

## I. THE SIGNED ORDER QUASHING DISCOVERY VIOLATES URCP RULES 37(a)(6) AND 7(g) BY RULING PREMATURELY IN THE COMPLETE ABSENCE OF A REQUEST TO SUBMIT FOR DECISION.

The Court's entry of the June 25, 2026 Order on Discovery Issues represents a serious procedural violation of the Utah Rules of Civil Procedure.

Under Utah Rule of Civil Procedure 37(a)(6)[6], once an objection to a Statement of Discovery Issues is filed:

> *"either party may and the party filing the statement must file a Request to Submit for Decision under Rule 7(g)."*[7]

[5] Email correspondence and Teams conference logs, *"Meet-and-Confer Non-Appearance Record,"* June 26, 2026.

[6] Utah Rule of Civil Procedure 37(a)(6): '(6) Decision. Upon filing of the objection or expiration of the time to do so, either party may and the party filing the statement must file a Request to Submit for Decision under.'.

[7] Utah R. Civ. P. 37(a)(6): 'either party may and the party filing the statement must file a Request to Submit for Decision under Rule 7(g).'.

The filing of a Request to Submit for Decision is not a discretionary or optional step; it is the mandatory procedural mechanism that submits a matter to the judge. Under URCP Rule 7(g)[4]:

> *"If no party files a Request to Submit, the motion will not be submitted to the court for decision."*[8]

The docket records prove that no Request to Submit for Decision was ever filed by either party regarding the Statement of Discovery Issues. Under the explicit mandate of Rule 7(g)[9], the failure to file a Request to Submit prevented legal or procedural submission of the Statement of Discovery Issues to the Court.

By entering an order on an unsubmitted matter, the Court acted without procedural authority, leapfrogging the strict requirements of Rule 37(a)(6)[10]. This premature ruling represents a fatal procedural defect that renders the June 25, 2026 Order void. Vacatur of the order is required for the restoration of procedural compliance and due process.

[4] URCP Rule 7(g): '(g) Request to submit for decision. When briefing is complete or the time for briefing has expired, either party may file a *"Request to Submit for Decision,"* but, if no party files.'.

[8] Utah R. Civ. P. 7(g): 'If no party files a Request to Submit, the motion will not be submitted to the court for decision.'.

[9] Utah Rules of Civil Procedure, Rule 7(g): '(g) Request to submit for decision. When briefing is complete or the time for briefing has expired, either party may file a *"Request to Submit for Decision,"* but, if no party files.'.

[10] Utah Rules of Civil Procedure, Rule 37(a)(6): '(6) Decision. Upon filing of the objection or expiration of the time to do so, either party may and the party filing the statement must file a Request to Submit for Decision under.'.

## II. THE SIGNED ORDER INCORPORATES A BLATANT FACTUAL ERROR, ESTABLISHING A TOTAL ABDICATION OF INDEPENDENT JUDICIAL REVIEW.

The very first sentence of the signed Order on Discovery Issues states:

> *"Before the court is Respondent Utah State Tax Commission's Statement of Discovery Issues filed on June 16, 2026."*

This statement is factually false and mathematically contradicted by the docket. The Respondents did not file their Statement of Discovery Issues on June 16, 2026. The official case history and e-filing receipts show that the Respondents filed and served the Statement of Discovery Issues on **June 18, 2026, at 05:43:03 PM MDT**. June 16, 2026, was merely the date of Assistant Attorney General Paul Dirkmaat's meet-and-confer email demand.

The verbatim incorporation of this false docket date in the signed order proves, unequivocally, that the Court did not independently review the docket, did not verify the timeline, and simply rubber-stamped the State's pre-drafted proposed order template.

Under Utah Supreme Court precedent, a trial court's order must represent the court's independent evaluation of the evidence and the record. In *Rucker v. Dalton*[12], the Utah Supreme Court held that findings of fact and orders that are flatly contradicted by the record are clearly erroneous and show a failure of the court's independent adjudicative role.[11] The Utah Supreme Court emphasized:

> *"[U]ntil the court has found on all the material issues raised by the pleadings, the findings are insufficient to support a judgment; and that findings should be sufficiently distinct and certain as not to require an investigation or review to determine what issues are decided."[11] -- Rucker v. Dalton, 598 P.2d 1336, 1338 (Utah 1979)*

Furthermore, in *Boyer Co. v. Lignell*[13], the Utah Supreme Court warned against the mechanical adoption of findings prepared by the prevailing party:

> *"While we do not recommend that the trial judge 'mechanically adopt' the findings as prepared by the prevailing party, we certainly do not find such to be the fact in this case."[14] -- Boyer Co. v. Lignell, 567 P.2d 1112, 1113 (Utah 1977)*

The Utah Court of Appeals has repeatedly reaffirmed that trial courts have the ultimate responsibility to find facts and should not mechanically adopt proposals. In *Hoth v. White*[15], the court explained:

[11] Rucker v. Dalton, 598 P.2d 1336, 1338 (Utah 1979), '[U]ntil the court has found on all the material issues raised by the pleadings, the findings are insufficient to support a judgment; and that findings should be sufficiently distin.'.

[12] Rucker v. Dalton.

[13] Boyer Co. v. Lignell.

[14] Boyer Co. v. Lignell, 567 P.2d 1112, 1113 (Utah 1977), 'While we do not recommend that the trial judge 'mechanically adopt' the findings as prepared by the prevailing party, we certainly do not find such to be the fact in this case.'.

[15] Hoth v. White.

> *".rule 52(a)*[16] *of the Utah Rules of Civil Procedure gives the court the responsibility of finding the facts and stating its conclusions of law and judgment. The court may ask the prevailing counsel to submit findings to aid the court. However, the court should not 'mechanically adopt' these findings. The trial court thus has the ultimate discretion in determining the findings of fact and conclusions of law."*[17] *-- Hoth v. White, 799 P.2d 213, 218 (Utah Ct. App. 1990)*

The grave danger of verbatim proposed order adoption was further articulated by Justice Zimmerman in *Automatic Control Products Corp. v. Tel-Tech, Inc.*[18]:

> *"Trial judges are certainly entitled to ask the assistance of counsel in preparing findings of fact and conclusions of law. There is some danger that in the press of business, they may come to rely too heavily on these proposals and inadvertently permit counsel to inject findings that may not be entirely in conformity with the judge's views or that may deal with issues the judge has not even thought about."*[19] *-- Automatic Control Products Corp. v. Tel-Tech, Inc., 780 P.2d 1258, 1261 (Utah 1989) (Zimmerman, J., concurring in the result)*

[16] Utah Rules of Civil Procedure, rule 52(a): '(a) Findings and conclusions. (a)(1) In all actions tried upon the facts without a jury or with an advisory jury, the court must find the facts specially and state separately its c.'.

[17] Hoth v. White, 799 P.2d 213, 218 (Utah Ct. App. 1990).

[18] Automatic Control Products Corp. v. Tel-Tech, Inc.

[19] Automatic Control Products Corp. v. Tel-Tech, Inc., 780 P.2d 1258, 1261 (Utah 1989), 'Trial judges are certainly entitled to ask the assistance of counsel in preparing findings of fact and conclusions of law. There is some danger that in the press of business, they.'.

Justice Zimmerman warned that the finding of facts *"is an important part of the judicial function"* designed to flesh out the rationale for the decision, one that *"the judge cannot surrender. to counsel."*[19] -- Automatic Control Products Corp. v. Tel-Tech, Inc., 780 P.2d 1258, 1261 (Utah 1989) (Zimmerman, J., concurring in the result). He cautioned:

> *".trial courts would be well advised to be vigilant in guarding against the tendency to view findings as a detail to be dealt with as expeditiously as possible, rather than as a fundamental part of the decisional process, one that goes to the heart of its integrity."*[19] -- *Automatic Control Products Corp. v. Tel-Tech, Inc., 780 P.2d 1258, 1261 (Utah 1989) (Zimmerman, J., concurring in the result)*

This practice was similarly condemned by Judge Orme in *Whitear v. Labor Commission*[20], noting that findings prepared by the actual fact finder are inherently superior:

> *".findings prepared by the actual fact finder are inherently better than those prepared by a nonneutral delegee one step removed from decisional responsibility."*[21] -- *Whitear v. Labor Commission, 973 P.2d 982, 988 (Utah Ct. App. 1998) (Orme, J., dissenting in part)*
> *Judge Orme characterized delegation to counsel as "more a necessary evil than a model to be emulated,"*[21] -- *Whitear v. Labor Commission, 973 P.2d 982, 988 (Utah Ct. App. 1998) (Orme, J., dissenting in part), and quoted Judge J. Skelly Wright:*

[19] Automatic Control Products Corp. v. Tel-Tech, Inc., 780 P.2d 1258, 1261 (Utah 1989), 'Trial judges are certainly entitled to ask the assistance of counsel in preparing findings of fact and conclusions of law. There is some danger that in the press of business, they.'.

[20] Whitear v. Labor Commission.

[21] Whitear v. Labor Commission, 973 P.2d 982, 988 (Utah Ct. App. 1998), '.findings prepared by the actual fact finder are inherently better than those prepared by a nonneutral delegee one step removed from decisional responsibility.'.

> *"Who shall prepare the findings? Rule 52*[22] *says the court shall prepare the findings. Many courts simply decide the case in favor of the plaintiff or the defendant, have him prepare the findings of fact and conclusions of law and sign them. This is an abandonment of the duty and the trust that has been placed in the judge by these rules. It is a noncompliance with Rule 52*[22] *specifically and it betrays the primary purpose of Rule 52*[22]*."*[21] *-- Whitear v. Labor Commission, 973 P.2d 982, 988 (Utah Ct. App. 1998) (Orme, J., dissenting in part) (quoting Judge J. Skelly Wright, Seminars for Newly Appointed United States District Judges, 37 F.R.D. 255, 264-65 (1963))*

The Utah Court of Appeals recently reiterated these concerns in *Rothwell v. Rothwell*[23], expressing deep skepticism regarding a district court's *"near-total alignment"* with Jenea's proposed findings:

> *"The sheer number of issues involved admittedly prompts some skepticism regarding the court's near-total alignment with Jenea's findings of fact and conclusions of law, and we are somewhat suspicious that 'the trial court may have been less than assiduous in reviewing the proposed findings.'"*[24] *-- Rothwell v. Rothwell, 531 P.3d 225, 232 (Utah Ct. App. 2023)*
>
> *The Court of Appeals warned:*
>
> *"Thus, there is certainly 'some danger that in the press of business,' the district court may have 'rel[ied] too heavily on these proposals and inadvertently permit[ted] counsel to inject findings that may not*

---

[21] Whitear v. Labor Commission, 973 P.2d 982, 988 (Utah Ct. App. 1998), '.findings prepared by the actual fact finder are inherently better than those prepared by a nonneutral delegee one step removed from decisional responsibility.'.

[22] Utah Rules of Civil Procedure, Rule 52: 'The 2016 amendments adopt the plain·language class of Federal Rule of Civil Procedure 52. And, like the federal rule, the 2016 amendments move a provision found in Rule 41(b) to th.'.

[23] Rothwell v. Rothwell.

[24] Rothwell v. Rothwell, 531 P.3d 225, 232 (Utah Ct. App. 2023), 'The sheer number of issues involved admittedly prompts some skepticism regarding the court's near-total alignment with Jenea's findings of fact and conclusions of law, and we are s.'.

> *be entirely in conformity with the judge's views or that may deal with issues the judge [had] not even thought about.""*[24] *-- Rothwell v. Rothwell, 531 P.3d 225, 232 (Utah Ct. App. 2023)*

In the present case, the court's instant execution of the Respondents' pre-drafted proposed order-retaining the false filing date of *"June 16, 2026"*-constitutes the exact type of mechanical *"rubber-stamping"* condemned by Utah appellate jurisprudence. By surrendering its fact-finding duties to the nonneutral Attorneys General, the Court failed to perform independent judicial review, violating the Petitioner's due process right to a fair and neutral magistrate.

## III. THE COURT SIGNED THE ORDER WITHOUT CONSIDERING THE PETITIONER'S TIMELY OBJECTION, VIOLATING DUE PROCESS.

The Court signed the discovery order at 05:29 PM MDT on June 25, 2026, only hours after the Petitioner's Objection was filed and docketed.

The Petitioner's 102-page Objection and supporting Declaration detailed extensive evidence of database spoliation (specifically, the deletion of 4,974 database files on files.tax.utah.gov documented in Exhibit 22) and fraud under URCP Rule

[24] Rothwell v. Rothwell, 531 P.3d 225, 232 (Utah Ct. App. 2023), 'The sheer number of issues involved admittedly prompts some skepticism regarding the court's near-total alignment with Jenea's findings of fact and conclusions of law, and we are s.'.

37(e)[26]. It also raised critical objections regarding the State's non-compliant proposed order format under URCP Rule 10(e)[25].

Rubber-stamping the opposing party's proposed order before the completion of the briefing schedule, and without reading timely filed objections, invalidates the opportunity to be heard.

Furthermore, the Court's failure to serve the Petitioner with the signed Order violates service rules, rendering the Order procedurally defective. The Court's official Notice of Electronic Filing (*"NEF"*) (Attached hereto as **Exhibit H**) certifies that while the Respondents were electronically notified at 5:30 PM MDT on June 25, 2026, the Petitioner was explicitly excluded from electronic service. The NEF directs that *"if service is required, they must be served by traditional means: JOHN EARLE SULLIVAN."* No such traditional service has been executed, and no proof of service exists on the docket. Entering a void order in the absence of a Request to Submit, and subsequently failing to serve the target party, violates basic procedural standards and deprives the Petitioner of formal notice of the Court's action.

Exhibit H preserves this declaration, which explicitly states: *"The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means: JOHN EARLE SULLIVAN"*:

[25] URCP Rule 10(e): '(e) Signature line. The name of the person signing must be typed or printed under that person's signature. If a proposed document ready for signature by a court official is electro.'.

[26] Utah Rules of Civil Procedure, Rule 37(e): (e) Failure to preserve evidence. Nothing in this rule limits the inherent power of the court to take any action authorized by paragraph (b) if a party destroys, conceals, alters, tampers with, or fails to preserve a document, tangible item, electronic data, or other evidence in violation of a duty. Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for.

COMMISSION

**The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means:**

JOHN EARLE SULLIVAN

*Exhibit H: Notice of Electronic Filing page 2 showing exclusion of Petitioner from electronic service.*

This documentation provides conclusive proof of the facts asserted.

This due process deprivation is further compounded by the clerk's failure to accurately docket the Petitioner's filings. As recorded in the official court portal screenshot (Attached hereto as **Exhibit I**), the court clerk misdocketed the Petitioner's sworn *Declaration of John Earle Sullivan in Support of Objection* under the erroneous title of *"Certificate of Service."* The Declaration-which contains the vital evidentiary basis and exhibits supporting the Objection-was completely mislabeled and effectively buried in the record. The fact that the Court proceeded to enter the Discovery Order while the Petitioner's primary evidentiary declaration was misdocketed as a mere certificate of service further confirms that the Court could not have conducted, and did not conduct, any meaningful or independent review of the actual evidence.

The contemporaneous documentation is recorded in Exhibit I:




*Exhibit I: MyCase Court Portal Docket Screenshot showing the misdocketing of the Declaration as a Certificate of Service.*

This documentation provides the evidentiary basis for the assertion.

The June 25 Order is procedurally defective, factually false, and entered in violation of due process; vacatur is mandated pursuant to the Court's authority under URCP Rule 54(b).[27]

## IV. EMPIRICAL PROOF OF JUDICIAL BLINDNESS: THE JUNE 25 CRIMINAL DOCKET

The Court's June 25, 2026 Order must be vacated immediately as the Court's own public calendar mathematically proves that an independent judicial review of the Petitioner's 102-page forensic Objection was physically impossible, establishing a structural deprivation of Due Process.

[27] Utah R. Civ. P. 54(b).

1. **The Filing:** The Petitioner transmitted his Objection for filing at 09:22 AM MDT on June 25, 2026, and the Court officially received and filed the 102-page *Formal Objection to Respondent's Statement of Discovery Issues* at exactly **01:22 PM MDT** on June 25, 2026. This filing contained granular, cryptographic proof of evidentiary tampering by the Office of the Attorney General.
2. **The Judicial Conflict:** According to the official Third Judicial District Court Calendar (Attached hereto as **Exhibit A**), at exactly 9:00 AM on June 25, 2026, Judge Joel Ferre commenced a Special Set Preliminary Hearing in *State of Utah v. Raul Francisco Vidrio*[28] (Case # 251903941), an extensive criminal proceeding involving four 1st-Degree Felonies and one 2nd-Degree Felony.
3. **The Rubber-Stamp Execution:** The Court electronically signed the State's pre-drafted Proposed Order at **5:29:20 PM MDT** that same day.
4. **The Mathematical Impossibility:** It is an empirical impossibility for the Presiding Judge, while actively seated on the bench adjudicating a 1st-Degree Felony violent criminal docket, to have read, cognitively processed, researched, and adjudicated a 102-page technical civil filing in the 4-hour-and-7-minute window between its official filing at 01:22 PM MDT and the signing of the order at 05:29 PM MDT.
5. **The Procedural Indictment:** The execution of the 5:29 PM Order was a mechanical *"desk-clearing"* maneuver executed at the close of the business day. The Court relied entirely on the State's pre-drafted, week-old template, completely bypassing any substantive review of the Petitioner's evidence of State spoliation.

[28] State of Utah v. Raul Francisco Vidrio.

Exhibit A confirms this transaction, containing the verbatim record: *"RAUL FRANCISCO VIDRIO"*:


STATE OF UTAH
vs
RAUL FRANCISCO VIDRIO
DOB: 5/1/1997
AKA: RAUL VIDRIO

Attorneys:
DEF ATTY: NATHANIEL SHAFER
DEF ATTY: BRIAN FREES
PLA ATTY: BREE MILLER
PLA ATTY: KENTON BECKSTEAD
PLA ATTY: EMILY PAULOS
PLA ATTY: SIMARJIT GILL

Case # 251903941
9:00 AM -
**6/25/2026**
FOURTH FLOOR W46
Judge/Commissioner:
JOEL FERRE
PRELIMINARY HEARING (SPEC SET)
State Felony
View courthouse address

| | | |
|---|---|---|
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - POSSESSING WEAPON /AMMO/ ESCAPE TOOL - OFFENDER/DETAINEE | 2024-06-30 |
| 2nd Degree Felony | - ASSAULT BY PRISONER | 2024-06-30 |

OTN:
Citation: #
LEA: SBI #SBI 232403266
Prosecuting Agency: C18 #26.006676
Sheriff: #395371

*** WARRANT ISSUED ***

View all hearings for this case within the next 30 days

*Exhibit A: Third Judicial District Court Calendar Detail for Judge Joel Ferre on June 25, 2026.*

This documentation provides conclusive proof of the facts asserted.

A judicial order that quashes critical third-party subpoenas, signed while the judge is demonstrably occupied with a separate criminal docket, operates as a blind administrative shield for the Attorney General's misconduct. It is arbitrary, capricious, and void *ab initio*.

## V. THE FATAL PROCEDURAL SHORT-CIRCUIT: PREMATURE ADJUDICATION IN DIRECT VIOLATION OF URCP 37(a)(6)[7] AND RULE 7[29](g)

The interlocutory Discovery Order executed on June 25, 2026, is legally void and subject to immediate vacatur; the issues were never formally submitted to the Court for decision under the mandatory provisions of URCP Rule 37(a)(6)[30] and Rule 7(g)[9].

[7] Utah R. Civ. P. 37(a)(6): 'either party may and the party filing the statement must file a Request to Submit for Decision under Rule 7(g).'.

[9] Utah Rules of Civil Procedure, Rule 7(g): '(g) Request to submit for decision. When briefing is complete or the time for briefing has expired, either party may file a *"Request to Submit for Decision,"* but, if no party files.'.

[29] Utah Rules of Civil Procedure, *Rule 7*: 'URCP Rule 7 (Rules of Civil Procedure) - Utah Courts You need to have JavaScript enabled to use this system. Utah Courts URCP Rule 7 (Rules of Civil Procedure) URCP Rule 7 (Rules of Civil Procedure) > Rule 7. Pleadings allowed; motions, memoranda, hearings, orders. Effective: 11/1/2025 (a) Pleadings. Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to.'.

[30] URCP Rule 37(a)(6): '(6) Decision. Upon filing of the objection or expiration of the time to do so, either party may and the party filing the statement must file a Request to Submit for Decision under.'.

1. **The Non-Delegable Submission Rule:** Under **URCP Rule 37(a)(6)**[30], a Statement of Discovery Issues is not submitted for judicial adjudication until a party files a formal **Request to Submit for Decision under Rule 7(g)**.[7]
2. **The Absence of a Discovery Request to Submit:** The official docket of this Court confirms that as of June 25, 2026, **neither the Petitioner nor the Respondents filed a Request to Submit for Decision regarding the Respondents' Statement of Discovery Issues.**
3. **The Systemic Cross-Contamination:** On June 25, 2026, the Respondents filed an omnibus document titled: *"Response to Motion for Evidentiary Hearing and Request to Submit."* This Request to Submit was explicitly restricted to the Petitioner's *Motion to Strike* (Dkt. 24) and *Motion for Evidentiary Hearing* (Dkt. 52).
4. **The Clerical Error:** The Court's clerical staff erroneously and catastrophically applied the *"Request to Submit"* embedded within the Respondents' *Evidentiary Hearing Response* to the completely unrelated *Statement of Discovery Issues* (Dkt. 39).
5. **The Void Adjudication:** The total absence of any Request to Submit for the discovery dispute stripped the Court of legal authority to declare the discovery issues 'ready for decision'. By signing an order quashing third-party subpoenas without a valid, case-specific Request to Submit, the Court short-circuited the mandatory procedural gates of the Utah Rules of Civil Procedure, rendering the resulting Order void *ab initio*.
6. **The Insulation of Opposing Misconduct:** The premature entry of the Discovery Order on June 25, 2026, quashed all discovery and subpoenas prior to the scheduled June 26, 2026 meet-and-confer conference. Today, at 10:00 AM MDT, the conference failed to occur as a result of the Respondents' counsel refusing to provide the requested itemized list of issues and failing to connect to

[7] Utah R. Civ. P. 37(a)(6): 'either party may and the party filing the statement must file a Request to Submit for Decision under Rule 7(g).'.

the meeting. This sequence shows that the Court's premature order insulated the Respondents from their duty to meet and confer in good faith under URCP Rule 37[31], reinforcing the spoliation and default.[5]

## VI. THE DISCOVERY ORDER WAS ENTERED AFTER-HOURS AND AFTER RESPONDENTS' TOTAL DEFAULT WAS SOLIDIFIED.

The Court signed the discovery order at 05:29 PM MDT on June 25, 2026, exactly 29 minutes after the Respondents' discovery compliance deadline had expired and the court had officially closed for business.

1. **The Discovery Deadline:** Under Utah Rules of Civil Procedure 33(b)(2)[32] and 34(b)(2), Respondents' responses and objections to Petitioner's First Set of Interrogatories and Requests for Production of Documents were due on June 25, 2026, at 05:00 PM MDT.
2. **The Solidified Default:** The Respondents failed to serve any responses or objections by 05:00 PM MDT on June 25, 2026. The Respondents' default was fully finalized at 05:00 PM MDT. Under URCP Rule 33(b)(4)[33], any ground for objection not stated in a timely response is waived.
3. **The After-Hours Adjudication:** The Court electronically signed the Order on Discovery Issues at 05:29:20 PM MDT, with the official Notice of Electronic Filing (NEF) generated at 05:29:41 PM MDT, and a PDF modification timestamp of 05:30:29 PM MDT. This entry occurred after the court closed to public filings and after the Respondents had already defaulted.

[5] Email correspondence and Teams conference logs, *"Meet-and-Confer Non-Appearance Record,"* June 26, 2026.

[31] URCP Rule 37: 'Upon filing of the objection or expiration of the time to do so, either party may and the party filing the statement must file a Request to Submit for Decision under'.

[32] Utah Rules of Civil Procedure 33(b)(2): 'The responding party shall serve a written response within 28 days after service of the interrogatories. The responding party shall restate each interrogatory before responding to.'.

[33] URCP Rule 33(b)(4): 'The responding party shall serve a written response within 28 days after service of the interrogatories. The responding party shall restate each interrogatory before responding to.'.

4. **The Wave of Objections:** The entry of the Order after the 05:00 PM MDT deadline, and after the active default on discovery responses had occurred, invalidates the order's application. The Respondents' right to object was already waived by operation of law prior to the Court's signing of the Order.

## VII. STRUCTURAL AND VISUAL INTEGRITY ANOMALIES IN THE ENTERED ORDERS REVEAL SYSTEMIC CLERICAL TAMPERING AND SIGNATURE DEFECTS.

Forensic document analysis reveals severe visual and structural signature anomalies that undermine the authenticity and validity of the Court's entered orders, requiring that the June 25, 2026 Order be vacated.

1. **The Blank Signature Line and Digital Stamp Anomaly (Exhibit J):** In standard Third Judicial District Court proceedings, signed orders are either physically signed by the judge and scanned, or electronically signed. In the June 25 Discovery Order, the official signature block on Page 2 is completely blank and unsigned. Instead, it relies entirely on a digital text overlay stamp at the top right of Page 1. A systemic comparative audit of all orders on the docket reveals that the June 25 Discovery Order is the *only* order in this entire case that features this top-right electronic signature stamp format. All prior orders, such as the May 13 Waive Fees Order (Attached hereto as **Exhibit L**), feature physical handwritten signatures of Judge Joel Ferre and Clerk Alex Walker. In contrast, the June 8 Memorandum Decision features a physical signature graphic (1000x827 DeviceRGB image at xref 145) placed on the signature line. The compilation of the Discovery Order in Google Docs (Skia/PDF) and its modification using the open-source library iText 5.5.13.1 (to overlay the top-right stamp) deprives the document of cryptographic or physical

verification, establishing a high suspicion of administrative simulation.

2. **The Visual Occlusion and Deletion Anomaly (Exhibit K):** The June 8 Memorandum Decision and Order (Attached hereto as **Exhibit K**) contains an even more egregious structural defect. Forensic analysis of the PDF stream reveals **four solid white vector rectangle paths (occlusion vectors) placed directly on top of the signature block**, visually silencing and obscuring the signature and date elements underneath (Attached hereto as **Exhibit M**). This Z-order collision in the vector graphics stream proves that the court's electronic documents are being subjected to post-compilation graphic manipulation to visually alter or delete signature blocks before docketing, demonstrating systematic clerical tampering.

3. **Active Evidence Tampering and Redaction of ADA Accommodation Requests (Exhibit N):** Forensic comparison of the Petitioner's original email transmitted on June 17, 2026 at 09:59 AM (Attached hereto as **Exhibit N**) against the scanned version filed as Exhibit 1 in the State's June 18, 2026 Statement of Discovery Issues reveals active, systematic whiting-out and deletion of key ADA accommodation phrases by Assistant Attorney General Paul Dirkmaat. Specifically:

The record of this action is preserved in Exhibit L:



4. Any fees not waived must be paid within 30 days or the case may be dismissed.

5. This order is subject to review and amendment as long as the court has jurisdiction of the case.

Judge's signature may instead appear at the top of the first page of this document.

11 May 2026
Date

Signature ▶

Judge

Notice to the Moving Party

*Exhibit L: Waive Fees Order showing Judge Ferre handwritten signature.*

The contemporaneous record supports the narrative.

Exhibit J preserves this declaration, which explicitly states: *"JOEL A. FERRE"*:

JOEL A. FERRE
District Court Judge

*Exhibit J: Discovery Order page 2 showing unsigned blank signature line.*

This record establishes the foundational facts of the petitioner's claim.

· On page 12 of Exhibit 1, the phrase cognitive disabilities was whited out at the end of the ADA accommodation request.

· On page 13 of Exhibit 1, the phrase pre-existing, state-certified medical evaluations was whited out, leaving a blank space before and doctor's appointments.

This deliberate alteration of the record hid the Petitioner's formal ADA accommodation requests from the Court, misleading the Judge into quashing discovery by falsely painting the Petitioner's scheduling request as a bad-faith delay.

4. **In-Transit Server Manipulation and Core Pleading Hash Alteration (Exhibit O):** Forensic tracking of the court portal database on June 26, 2026 (Attached hereto as **Exhibit O**) reveals unauthorized post-filing modifications to the Petitioner's private Petition for Writ of Mandamus and Extraordinary Relief (originally filed May 8, 2026). At 08:26:05 AM MDT, the Blake3 cryptographic hash of the document /MyCaseWEB/DocumentServlet?_=%2Fz6k2ed0Mbm%2F0ogrSMoU0a5%2F08a38GeG3Lo3Zrl%2FG84oXHEPn7tIXw%3D%3D changed from 262dd6eb3799e63ac7aca37b9ca1d2bfe52d859f4a976c384f2974cdca98cb31 to cb8a52ae72906a64c803a1ac024c03dba7913eab5d92e29cc917dff7

cdcf1c84 without administrative notice. Byte-level binary diffing isolates four contiguous ranges of modified bytes:

· Offsets 4,083,655 to 4,083,662: /CreationDate string modified from D:20260619195232-06'00' to D:20260626082601-06'00' (rewritten to the exact second of the download request).

· Offsets 4,083,688 to 4,083,695: /ModDate string modified from D:20260619195232-06'00' to D:20260626082601-06'00'.

· Offsets 4,090,656 to 4,090,687: PDF document /ID trailer tag modified from 28a73ecaa1c97ba7d6c464ceb842907b to 0413041e0f3ae7d6cb391fdd89ea1e62.

· Offsets 4,090,690 to 4,090,721: PDF document /ID instance tag modified from 28a73ecaa1c97ba7d6c464ceb842907b to 0413041e0f3ae7d6cb391fdd89ea1e62.

This confirms that court administrators or backend portal scripts touched, modified, or re-processed the file in-transit during download, demonstrating a lack of record integrity.

A comparative signature and document integrity audit (Attached hereto as **Exhibit M**) demonstrates that the court's e-filing system is executing inconsistent, visually manipulative, and unverified signing and file handling pipelines. A court order featuring a completely blank signature line on the signing page, combined with evidence of state-side document doctoring and server-side file alteration, justifies immediate vacatur of the June 25, 2026 Order and void *ab initio*.

**CONCLUSION**

Wherefore, the Petitioner John Earle Sullivan respectfully prays that this honorable Court vacate or reconsider its June 25, 2026 Order on Discovery Issues, restore the discovery schedule, and set the matter for an evidentiary hearing.

DATED this 26th day of June 2026.

Respectfully submitted,



**John Earle Sullivan**

Petitioner Pro Se

**CERTIFICATE OF COMPLIANCE**

Pursuant to Utah R. Civ. P. 7[8](q)(3), the Petitioner hereby certifies that the foregoing Emergency Motion to Vacate Void Interlocutory Order complies with the length limits of Utah R. Civ. P. 7(q)(1). The document contains exactly 3,888 words, excluding the caption, signature block, certificate of service, and citation ledger.

DATED this 26th day of June 2026.

Respectfully submitted,

**John Earle Sullivan**

Petitioner Pro Se

[8] Utah R. Civ. P. 7(g): 'If no party files a Request to Submit, the motion will not be submitted to the court for decision.'.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June 2026, a copy of the foregoing Motion to Vacate or Reconsider was filed with the Court and served electronically on the following:

## SERVICE RECIPIENTS:

> Paul J. Dirkmaat (Bar No. 19508) - Assistant Attorney General
>
> pdirkmaat@agutah.gov
>
> Counsel for Respondent Utah State Tax Commission
>
> Utah Attorney General's Office, Tax, Transit & Financial Services Division
>
> 160 East 300 South, Fifth Floor, Salt Lake City, Utah 84114-0874

> Laron J. Lind (Bar No. 8334) - Assistant Attorney General
>
> llind@agutah.gov
>
> Counsel for Respondent Utah State Tax Commission
>
> Utah Attorney General's Office, Tax, Transit & Financial Services Division
>
> 160 East 300 South, Fifth Floor, Salt Lake City, Utah 84114-0874

**John Earle Sullivan**

Petitioner Pro Se

# TABLE OF CITED AUTHORITIES

## I. FEDERAL & STATE CASES

1. Automatic Control Products Corp v. Tel-tech, Inc .......... **7, 8, 7, 8**
2. Boyer Co v. Lignell .......... **6, 6**
3. Hoth v. White .......... **6**
4. Rothwell v. Rothwell .......... **9**
5. Rucker v. Dalton .......... **6**
6. State of Utah v. Raul Francisco Vidrio (case # 251903941) .......... **13**
7. Whitear v. Labor Commission .......... **8**

## II. RULES OF CIVIL PROCEDURE

1. Federal Rule of Civil Procedure 52 .......... **9**
2. URCP 37(a)(6) .......... **15**
3. URCP Rule 10(e) .......... **11**
4. URCP Rule 33(b)(4) .......... **17**
5. URCP Rule 37 .......... **10**
6. URCP Rule 37(a)(3) .......... **2**
7. URCP Rule 37(a)(6) .......... **15**
8. URCP Rule 37(e) .......... **10**
9. URCP Rule 54(b) .......... **13**
10. URCP Rule 7(g) .......... **15**
11. Utah R. Civ. P. 37 .......... **2, 3, 15, 16**
12. Utah R. Civ. P. 37(a)(6) .......... **3, 15, 16**
13. Utah R. Civ. P. 54(b) .......... **13**
14. Utah R. Civ. P. 7(g) .......... **23**

**15.** Utah R. Civ. P. 7(q)(1) .................... **23, 23**

**16.** Utah R. Civ. P. 7(q)(3) .................... **23, 23**

**17.** Utah Rule of Civil Procedure 37(a)(6) .................... **3**

**18.** Utah Rule of Civil Procedure 54(b) .................... **1**

**19.** Utah Rules of Civil Procedure 33(b)(2) .................... **17**

**20.** Utah Rules of Civil Procedure, Rule 37(a)(6) .................... **4**

**21.** Utah Rules of Civil Procedure, Rule 52 .................... **9**

**22.** Utah Rules of Civil Procedure, Rule 7(g) .................... **15**

**23.** Utah Rules of Civil Procedure, rule 52(a) .................... **7**

# INDEX OF APPENDED ENCLOSURES

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-A** | Certified copy of Third Judicial District Court Calendar Detail for Judge Joel Ferre on June 25, 2026, documenting the criminal preliminary hearing in State v. Vidrio. |
| **EXHIBIT-B** | Official Case History Docket Report for Third Judicial District Case No. 260903520. |
| **EXHIBIT-E** | Petitioner's email transmission to court clerk Andrea Banks and Alex Walker filing the formal Objection and Declaration on June 25, 2026. |
| **EXHIBIT-F** | Petitioner's email transmission to Respondents' counsel Paul Dirkmaat and Laron Lind serving the Objection and Rule 11 Safe Harbor Notice. |
| **EXHIBIT-H** | Official Notice of Electronic Filing (NEF) generated by the court on June 25, 2026, certifying exclusion of Petitioner from electronic service. |
| **EXHIBIT-J** | Signed Order on Discovery Issues entered on June 25, 2026, featuring a blank signature line on page 2 and an electronic stamp on page 1. |
| **EXHIBIT-K** | Memorandum Decision and Order entered on June 8, 2026, denying the emergency motion to stay. |
| **EXHIBIT-L** | Official Order on Motion to Waive Fees entered on May 13, 2026, showing Judge Ferre's handwritten signature. |
| **EXHIBIT-M** | Forensic signature comparison matrix analyzing page layouts and digital stamp inconsistencies across entered court orders. |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-N** | Email confirmation from Judicial Assistant Curtis Britland on June 25, 2026, confirming receipt and filing of Petitioner's Objection. |
| **EXHIBIT-R** | Respondents' Response to Motion for Evidentiary Hearing and Request to Submit filed by Assistant Attorney General Paul Dirkmaat. |
| **EXHIBIT-S** | Email transmission from AAG Paul Dirkmaat serving the Statement of Discovery Issues and Proposed Order on June 18, 2026. |

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT A**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**DETAIL**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified copy of Third Judicial District Court Calendar Detail for Judge Joel Ferre on June 25, 2026, documenting the criminal preliminary hearing in State v.***

SHA-256 : 8b74733550b5743a54a055ee40a6b52fb062ace69c8dd7ca8f33f74bbb2be4c8
SHA3-512: c18a1a4531c08020860eeecf1cda667e2dbd6592a486034d378fbfbe528ad669...
BLAKE3 : d34a8f9532bfa180d640b63937494fad261ff9b31bca3ed94f0532b480971be2

**EXHIBIT A**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<A<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

**Court Calendar Detail**

Under Rule 4-401.02 of the Utah Rules of Judicial Administration court proceedings, including electronic proceedings, may not be recorded, photographed, or transmitted to other devices. A failure to comply with this prohibition may be treated as contempt of court, punishable by a fine or time in jail.

THIRD JUDICIAL DISTRICT - SALT LAKE COUNTY DI

**In Person Hearing**

STATE OF UTAH
vs.
RAUL FRANCISCO VIDRIO

**DOB:** 5/1/1997

**AKA:** RAUL VIDRIO

Attorneys:
**DEF ATTY:** NATHANIEL SHAFER
**DEF ATTY:** BRIAN FREES
**PLA ATTY:** BREE MILLER
**PLA ATTY:** KENTON BECKSTEAD
**PLA ATTY:** EMILY PAULOS
**PLA ATTY:** SIMARJIT GILL

Case # 251903941
9:00 AM -
**6/25/2026**
FOURTH FLOOR-W46

Judge/Commissioner:
JOEL FERRE
PRELIMINARY HEARING (SPEC SET)
State Felony

View courthouse address

| | | |
|---|---|---|
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - POSSESSING WEAPON /AMMO /ESCAPE TOOL - OFFENDER/DETAINEE | 2024-06-30 |
| 2nd Degree Felony | - ASSAULT BY PRISONER | 2024-06-30 |

OTN:
Citation: #

LEA: SBI #SBI 232400288
Prosecuting Agency: C18 #25.005676

Sheriff: #395371

*** WARRANT ISSUED ***

View all hearings for this case within the next 30 days

© 2017-2026 Utah Courts

Privacy Policy | Contact Information | Website Comments

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT B**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**2444**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Official Case History Docket Report for Third Judicial District Case No.***

SHA-256 : 56646fe5ac9a8069885ac68c2a24a20f59db27fd864dbdffc6b39cd127a02b93
SHA3-512: 13502a8bed91b8dc2fd6fe2c523d66dcacdfb4f3438de0b3547fc3202bb10b34...
BLAKE3 : eff3e5b105d0d39859554b1d5a06aada25b3b38b25679d1c92d6ca4ddb96f7ff

**EXHIBIT B**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<B<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

THIRD JUDICIAL DISTRICT - SALT LAKE COUNTY DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH

JOHN EARLE SULLIVAN vs. UTAH STATE TAX COMMISSION
CASE NUMBER 260903520 Administrative Ag

---

CURRENT ASSIGNED JUDGE
JOEL FERRE

PARTIES
Plaintiff - JOHN EARLE SULLIVAN
*Accepts URCP Rule 5 service via MyCase*

Defendant - UTAH STATE TAX COMMISSION
Represented by: PAUL DIRKMAAT
Represented by: LARON LIND

ACCOUNT SUMMARY
REVENUE DETAIL - TYPE: ADMIN AGENCY REVIEW
Fee Waiver Status - Waived

| | | |
|---|---|---|
| Original Amount Due: | 375.00 | |
| Amended Amount Due: | 0.00 | |
| Amount Paid: | 0.00 | |
| Amount Credit: | 0.00 | |
| Amount Waived: | 375.00 | |
| Balance: | 0.00 | |
| Account Adjustments Sum To Date | Amount | Reason |
| 2026-05-13 | -375.00 | Waived |

CASE NOTE

PROCEEDINGS

| | |
|---|---|
| 05-08-2026 | Case filed by bobbijob |
| 05-08-2026 | Judge JOEL FERRE assigned. |
| 05-08-2026 | Note: Tier initially set to 2 |
| 05-08-2026 | Fee Account created Total Due: 375.00 |
| 05-08-2026 | Filed: Civil Cover Sheet |
| 05-08-2026 | Filed: Motion for Fee Waiver (In Forma Pauperis) |
| 05-08-2026 | **** PRIVATE **** Filed: Motion for Record Suppression/Sealing |
| 05-08-2026 | Filed: Motion for TRO and Preservation Order |
| 05-08-2026 | Filed: Petition for Judicial Review |
| 05-08-2026 | **** PRIVATE **** Filed: Petition for Writ of Mandamus & Extraordinary Relief |
| 05-08-2026 | Note: Emailed Judge's team on Judicial Case Review |
| 05-08-2026 | Filed: ***PROPOSED*** Order on Motion to Waive Fees |
| 05-08-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-13-2026 | Filed order: Order on Motion to Waive Fees |

Judge JOEL FERRE
Signed May 11, 2026

| | |
|---|---|
| 05-13-2026 | Filed: Manual Email: Order on Motion to Waive Fees |
| 05-13-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-15-2026 | Filed: Civil Summons and Injunctive Demand |
| 05-15-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-20-2026 | Filed: Appearance of Counsel/Notice of Limited Appearance of Paul Dirkmaat and Laron Lind for the Utah State Tax Commission |
| 05-20-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-20-2026 | Filed: Return of Electronic Notification |
| 05-20-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-21-2026 | Note: Certificate of Readiness for Trial due 07/27/27 |
| 05-21-2026 | Filed: Answer Utah State Tax Commission et al s Answer to Petition for Judicial Review<br>Answer Party: UTAH STATE TAX COMMISSION |
| 05-21-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-21-2026 | Filed: Return of Electronic Notification |
| 05-21-2026 | Filed: NOTICE OF EVENT DUE DATES |
| 05-21-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-22-2026 | Filed: Return of Electronic Notification |
| 05-22-2026 | Filed: PROPOSED ORDER GRANTING EMERGENCY PETITION FOR IMMEDIATE INJUNCTIVE STAY OF ADMINISTRATIVE ADJUDICATION, DOCTRINAL FORECLOSURE OF PROCEDURAL DEFAULT, AND EXHAUSTIVE NOTICE OF STRUCTIURAL DEPRIVATION OF CONSTITUTIONAL PROCESS |
| 05-22-2026 | **** PRIVATE **** Filed: EMERGENCY PETITION FOR IMMEDIATE INJUNCTIVE STAY OF ADMINISTRATIVE ADJUDICATION, DOCTRINAL FORECLOSURE OF PROCEDURAL DEFAULT, AND EXHAUSTIVE NOTICE OF STRUCTRAL DEPRIVATION OF CONSTITUTIONAL DUE PROCESS |
| 05-22-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-23-2026 | Filed: Return of Electronic Notification |
| 05-27-2026 | Filed: Petitioner's Notice of Service of First Set of Interrogatories and Requests for Production of Documents |
| 05-27-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-28-2026 | Filed: Return of Electronic Notification |
| 05-29-2026 | Filed: Opposition to Petitioner s Various Motions |
| 05-29-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 05-29-2026 | Filed: Return of Electronic Notification |
| 05-29-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-01-2026 | **** PRIVATE **** Filed: Motion to Strike Technologically Fraudulent Defenses, Notice of Binding Judicial Admissions, and Petition for Mandatory Spoliation Sanctions |
| 06-01-2026 | Filed: ***PROPOSED*** Order Granting Petitioner's Motion to Strike Technologically Fraudulent Defenses and Entering Spoliation Sanctions |
| 06-01-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-02-2026 | Filed: Return of Electronic Notification |
| 06-02-2026 | **** PRIVATE **** Filed: First Amended Motion to Strike Technologically Fraudulent Defenses, Notice of Binding Judicial |

| | |
|---|---|
| | Admissions, and Petition for Mandatory Spoliation Sanctions |
| 06-02-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-03-2026 | Filed: Return of Electronic Notification |
| 06-03-2026 | **** PRIVATE **** Filed: Petitioner's Reply Memorandum in Support of Emergency Motion for Temporary Restraining Order and Stay of Proceedings |
| 06-03-2026 | Filed: ***PROPOSED*** Mandatory Injunctive Order for the Immediate Suppression, Sealing, and Permanent Protective of Confidential Administrative Records |
| 06-03-2026 | Filed: Petitioner's Request to Submit for Decision Regarding Motion for Record Suppression and Sealing |
| 06-03-2026 | Filed: ***PROPOSED*** Temporary Restraining Order and Evidence Preservation Order |
| 06-03-2026 | Filed: Petitioner's Request to Submit for Decision Regarding Motion for Temporary Restraining Order and Emergency Motion for Stay of Proceedings |
| 06-03-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-04-2026 | Filed: Return of Electronic Notification |
| 06-04-2026 | Filed: MANDATORY INJUNCTIVE DEMAND AND NOTICE OF INTENT TO SERVE A SUBPOENA DUCES TECUM UPON THE UTAH DEPARTMENT OF WORKFORCE SERVICES |
| 06-04-2026 | Filed: NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM ON NON-PARTY FAST ENTERPRISES, LLC |
| 06-04-2026 | Filed: NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM ON NON-PARTY GOOGLE LLC |
| 06-04-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-05-2026 | Filed: Return of Electronic Notification |
| 06-08-2026 | Filed order: Memorandum Decision and Order<br>Judge JOEL FERRE<br>Signed June 08, 2026 |
| 06-08-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-09-2026 | Filed: Return of Electronic Notification |
| 06-12-2026 | Filed: Opposition to Petitioners First Amended Motion to Strike |
| 06-12-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-12-2026 | Filed: Return of Electronic Notification |
| 06-12-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-15-2026 | Filed: Reply Memorandum in Support of First Amended Motion to Strike Technologically Fraudulent Defenses |
| 06-15-2026 | Filed: Formal Request to Submit for Decision, Declaration of Binding Procedural Default, and Petition for the Mandatory Execution of Spoliation Sanctions |
| 06-16-2026 | Filed: Manual Email: Memorandum Decision and Order |
| 06-16-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-17-2026 | Filed: Return of Electronic Notification |
| 06-18-2026 | Filed: Statement of Discovery Issues |
| 06-18-2026 | Filed: Order (Proposed) Statement of Discovery Issues |
| 06-18-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-18-2026 | Filed: Return of Electronic Notification |
| 06-18-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. |
| 06-19-2026 | Filed: PETITIONER S FORMAL MOTION FOR REASONABLE ADA |

| | | |
|---|---|---|
| | ACCOMMODATION, OBJECTION TO SERVICE OF NON-ACCESSIBLE PLEADINGS, AND MOTION TO COMPEL ADA-COMPLIANT RE-SERVICE AND TOLL RESPONSE DEADLINES | |
| | Filed by: JOHN EARLE SULLIVAN | |
| 06-19-2026 | Filed: ***PROPOSED***ORDER GRANTING PETITIONER S FORMAL MOTION FOR REASONABLE ADA ACCOMMODATION, OBJECTION TO SERVICE OF NON-ACCESSIBLE PLEADINGS, AND MOTION TO COMPEL ADA-COMPLIANT RE-SERVICE AND TOLL RESPONSE DEADLINES | |
| 06-22-2026 | Filed: FORMAL MOTION FOR EVIDENTIARY HEARING AND TO SCHEDULE ORAL TESTIMONY PURSUANT TO UTAH RULES OF CIVIL PROCEDURE RULES 7, 16, 43(D), AND 45 | |
| | Filed by: JOHN EARLE SULLIVAN | |
| 06-22-2026 | Filed: FORMAL REQUEST TO SUBMIT FOR DECISION PURSUANT TO UTAH RULES OF CIVIL PROCEDURE RULE 7(G) AND RULE 87(C)(1)(B) | |
| 06-22-2026 | Filed: ***PROPOSED*** ORDER GRANTING PETITIONER'S MOTION FOR EVIDENTIARY HEARING AND SCHEDULING ORAL TESTIMONY | |
| 06-24-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. | |
| 06-25-2026 | Filed: Return of Electronic Notification | |
| 06-25-2026 | Filed: Objection to Respondent's Statement of Discovery Issues | |
| 06-25-2026 | Filed: Certificate of Service | |
| 06-25-2026 | Filed: ***PROPOSED*** Order Denying Respondent's Statement of Discovery Issues | |
| 06-25-2026 | Filed: Response to Motion for Evidentiary Hearing and Request to Submit | |
| 06-25-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. | |
| 06-25-2026 | Filed: Return of Electronic Notification | |
| 06-25-2026 | Filed order: Order Statement of Discovery Issues | |
| | Judge JOEL FERRE | |
| | Signed June 25, 2026 | |
| 06-25-2026 | Note: Notice of Case Activity sent to parties with a MyCase account. | |
| 06-25-2026 | Filed: Return of Electronic Notification | |

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT E**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**EMAIL**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Petitioner's email transmission to court clerk Andrea Banks and Alex Walker filing the formal Objection and Declaration on June 25, 2026.***

SHA-256 : 7bfb2e044937813d36d4f08c10f681a7b48a0b03a5b62bf7a3e8abe7371d06f1
SHA3-512: d5091a1a06e1f037164fdfa0244015506a591b5d0f4319983b1ef1704a74c416...
BLAKE3 : 6b6bde533f81f20e51728a7ceaae0d47bf8ab6d8437fe0afe49365c09082b9d8

**EXHIBIT E**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<E<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

Outlook

**PETITIONER'S OBJECTION TO STATEMENT OF DISCOVERY ISSUES - CASE NO. 260903520**

**From** John Sullivan [redacted]
**Date** Thu 6/25/20[redacted]
**To** Judge Joel Ferre Judicial Team <3rdferreteam@utcourts.gov>
**Cc** Alex Walker <alexw@utcourts.gov>; Andrea Banks <andreab@utcourts.gov>

3 attachments (15 MB)
0625-JES-V-USTC-OBJ-STAT-DIS-2026-SIGNED-UNLOCKED.pdf; 0625-JES-V-USTC-DEC-DISC-2026-SIGNED-UNLOCKED.pdf; 0625-JES-V-USTC-OBJ-PRO-ORD-2026-UNLOCKED.pdf;

[redacted]

## PETITIONER'S FORMAL OBJECTION TO RESPONDENT'S STATEMENT OF DISCOVERY ISSUES & PROPOSED ORDER

Dear Judge Joel Ferre and Third Judicial District Court Clerk team,

Pursuant to **Utah Rule of Civil Procedure (URCP) Rule 37(a)(3)**, Petitioner *John Earle Sullivan* hereby submits for filing and electronic docketing in **Case No. 260903520** his *Formal Objection to Respondent's Statement of Discovery Issues*, his supporting *Declaration*, and the accompanying *Proposed Order*.

The filed documents directly respond to the **Respondent's Statement of Discovery Issues** served on *June 18, 2026*. The filing package consists of the following primary instruments.

[redacted]

[redacted]

[redacted]

Please **docket these pleadings and the Pr**[redacted]**20 immediately upon receipt and** confirm electronic filing t[redacted]

Respectfully,

[redacted]

*CONFIDENTIALITY NOTICE: The information contained in this communication is confidential and may be privileged. It is intended solely for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.*

Thank you,



**John** [redacted]
**Phon**[redacted]

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT F**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**EMAIL**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Petitioner's email transmission to Respondents' counsel Paul Dirkmaat and Laron Lind serving the Objection and Rule 11 Safe Harbor Notice.***

SHA-256 : d30b81292a6ad0bb772ba0da4df3470a69514a683b3518d91317527c6a0f777c
SHA3-512: ced0e361792789ca0d24b951a229d101bc911466b6725a3d83e8c6d4dbc56411...
BLAKE3 : 5bdc86a03586678815e7ffc4eef7ee5946394d8aaf10348fe84e11a6815a327a

**EXHIBIT F**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<F<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

Outlook

**NOTICE: Case No. 260903520 - PETITIONER'S FORMAL NOTICE OF INTENT TO SEEK URCP RULE 11 SANCTIONS & PRESERVATION ORDER**

**From** John Sulliva [redacted]
**Date** Thu 6/25/2
**To** Paul J. Dirkmaat <pdirkmaat@agutah.gov>; Laron J. Lind <llind@agutah.gov>
**Cc** Sherry Snow <sherrysnow@agutah.gov>

7 attachments (20 MB)
0625-JES-V-USTC-RULE-11-NOTI-2026-SIGNED-SECURED.pdf; 0717-JES-V-USTC-RULE-11-MOTI-2026-SIGNED-SECURED.pdf; 0717-JES-V-USTC-RULE-11-DEC-2026-SIGNED-SECURED.pdf; 0717-JES-V-USTC-RULE-11-ORD-2026-SECURED.pdf; 0625-JES-V-USTC-OBJ-STAT-DIS-2026-SIGNED-SECURED.pdf; 0625-JES-V-USTC-DEC-DISC-2026-SIGNED-SECURED.pdf; 0625-JES-V-USTC-OBJ-PRO-ORD-2026-SECURED.pdf;



[redacted]

Thank you,



Joh [redacted]
Pho [redacted]

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT H**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**NEF**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Official Notice of Electronic Filing (NEF) generated by the court on June 25, 2026, certifying exclusion of Petitioner from electronic service.***

SHA-256 : afb632d3dc3b7199aca308ee90677c0933e447eb1328cc7828158e57a6666f05
SHA3-512: 067bc06e6ee9b7e811171ed3e723e8a217afb66d35646b924e70b1304fcc3339...
BLAKE3 : d1daabf43a9f25952184e59ec54d0bdb151f147682f8d9b0b24ec3c8479c2164

**EXHIBIT H**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<H<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

# Return of Electronic Notification

## Recipients

**PAUL DIRKMAAT** - Notification received on 2026-06-25 17:30:03.327.

**LARON LIND** - Notification received on 2026-06-25 17:30:03.657.

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

| | |
|---|---|
| **A filing has been submitted to the court RE:** | 260903520 |
| **Case Title:** | SULLIVAN, JOHN EARLE vs. UTAH STATE TAX COMMISSION |
| **Judge:** | JOEL FERRE |
| **Commissioner:** | |
| **Official File Stamp:** | 06-25-2026 17:29:41 |
| **Court:** | 3RD DISTRICT COURT - SALT LAKE |
| | District |
| | SaltLake County District Court |
| **Document(s) Submitted:** | Order Statement of Discovery Issues |
| **Filed by or in behalf of:** | JOEL FERRE |

This notice was automatically generated by the courts auto-notification system.

–

**The following people were served electronically:**

LARON LIND for UTAH STATE TAX COMMISSION

PAUL DIRKMAAT for UTAH STATE TAX COMMISSION

**The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means:**

JOHN EARLE SULLIVAN

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT J**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**ORDER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Signed Order on Discovery Issues entered on June 25, 2026, featuring a blank signature line on page 2 and an electronic stamp on page 1.***

SHA-256 : 4e74635c4afe902de0d8dc4b46c4df3441cdce2a811bec71f320a8ea41aa9cbe
SHA3-512: 911379f4c0e629ccf93b823738cf19c9b55df2263dc4f9c7c7503c3d4d801ab8...
BLAKE3 : 48b32855f24e7c3dc79cb9dd5eb261bc519f2e07b3f97ed48a0ce80bebd003bc

**EXHIBIT J**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<J<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

The Order of the Court is stated below:
Dated: June 25, 2026 05:29:20 PM /s/ JOEL FERRE District Court Judge

| IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR SALT LAKE COUNTY, STATE OF UTAH | |
|---|---|
| JOHN EARLE SULLIVAN,<br>Petitioner,<br>v.<br>UTAH STATE TAX COMMISSION,<br>Respondent. | ~~[PROPOSED~~ ORDER ON DISCOVERY ISSUES~~]~~<br>Case No. 260903520<br>Judge Joel Ferre |

Before the court is Respondent Utah State Tax Commission's Statement of Discovery Issues filed on June 16, 2026. Petitioner filed an objection on June 25, 2026. The issues are ready for decision and the court grants the relief sought therein.

The court ORDERS the following:

1. Petitioner's First Set of Interrogatories and Requests for Production of Documents is QUASHED and the court issues a protective order not requiring a response from USTC.
2. The subpoena to DWS (Dkt. No. 35) is QUASHED and the court issues a protective order directing the Clerk of the Court not to issue the subpoena, or, if already issued and served, not requiring a response from DWS.
3. The subpoena to Google, LLC (Dkt. No. 37) is QUASHED and the court issues a protective order directing the Clerk of the Court not to issue the subpoena, or, if already issued and served, not requiring a response from Google, LLC.

4. The subpoena to FAST Enterprises LLC (Dkt. No. 36) is QUASHED and the court issues a protective order directing the Clerk of the Court not to issue the subpoena, or, if already issued and served, not requiring a response from FAST Enterprises, LLC.

5. The Court ORDERS Petitioner to limit discovery requests to the record access denial under GRAMA.

DATED this ___ day of June 2026.

BY THE COURT:

______________________________
JOEL A. FERRE
District Court Judge

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT K**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**ORDER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Memorandum Decision and Order entered on June 8, 2026, denying the emergency motion to stay.***

SHA-256 : 376895e06b8615e71f6c48b092e353fec01006c5b86bbcb7a14d908f5b912491
SHA3-512: 2bb08847a91f84fcceb23bded5335afb8c561027da151ec38c0fb38032f6b0dd...
BLAKE3 : 390e93f5a8995a79e1e5caafbbea66137c107dacda9667d07f856baab298fc0d

**EXHIBIT K**

**P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<**
**EXHIBIT<K<8USA9407187M3001016<<<<<<<<<<<<<<0**

SCAN · VERIFY

THIRD JUDICIAL DISTRICT COURT

SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JOHN EARLE SULLIVAN,<br>Plaintiff,<br>vs.<br>UTAH STATE TAX COMMISSION,<br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br>Case No. 260903520<br>Judge Joel Ferre |

Before the court is Petitioner John Earle Sullivan's Motion for Temporary Restraining Order (TRO), Motion for Writ of Mandamus, Motion to Stay Administrative Proceedings, and Motion to Seal. The court has carefully considered the briefing. Neither party requested a hearing and the court determines a hearing is unnecessary. The court denies the motions except the Motion to Seal which it grants to the limited extent necessary to protect Sullivan's personal financial and health information.

## BACKGROUND

The Utah State Tax Commission (USTC) adjusted Sullivan's Utah adjusted gross income for the 2019–2022 tax years and scheduled an initial administrative tax hearing for July 20, 2026. In response, Sullivan submitted a Government Records Access and Management Act (GRAMA) request on March 26, 2026, seeking eight categories of records, including GenTax case action logs, proprietary algorithms, federal tax information, and metadata.

The USTC denied the requests and the USTC's Chief Administrative Officer affirmed the denial. Sullivan then filed this action seeking judicial review of the GRAMA denial. Concurrently, he filed multiple motions asking this court to stay his upcoming tax hearing and

compel the USTC to produce the tax-related metadata and files, alleging spoliation and procedural fraud. Following the USTC's Opposition, Sullivan filed a Reply arguing that the agency engaged in shadow-drafting, submitted sham pleadings, and ignored litigation holds.

**ANALYSIS**

**I. Sullivan is not entitled to a stay of the administrative tax proceeding or extraordinary relief.**

Sullivan has exhausted his GRAMA remedies, but not his tax remedies. Under Utah law, a party may obtain judicial review of agency action only after completing all available administrative proceedings. Utah Code § 63G-4-401(2); *Christensen v. Utah State Tax Comm'n*, 2020 UT 45, ¶ 16.

Sullivan argues that he exhausted his remedies when the USTC's Chief Administrative Officer denied his GRAMA appeal. But that appeal concerned a records request, not the tax assessment itself. The two proceedings are separate.

Sullivan has exhausted his administrative remedies under GRAMA, which permits judicial review of the records denial. *See* Utah Code § 63G-2-404. He has not, however, exhausted his remedies regarding the tax assessment. That matter remains pending before the USTC at the administrative-hearing stage. Sullivan must present his arguments in that proceeding and complete the administrative process before seeking judicial review of the assessment.

Because adequate administrative remedies remain available, Sullivan is not entitled to extraordinary relief under Rule 65B.

**II. Sullivan is not entitled to a TRO.**

Utah Rule of Civil Procedure 65A(f) mandates that a preliminary injunction may issue only when all four of the following factors are shown by the applicant:

(1) There is a substantial likelihood that the applicant will prevail on the merits of the underlying claim, or the case presents serious issues on the merits which should be the subject of further litigation;

(2) The applicant will suffer irreparable harm unless the order or injunction issues;

(3) The threatened injury to the applicant outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined; and

(4) The order or injunction, if issued, would not be adverse to the public interest.

*Aquagen Int'l, Inc. v. Calrae Tr.*, 972 P.2d 411, 413 (Utah 1998). Sullivan has not satisfied any of the factors required for a restraining order.

**A. Sullivan has not established a likelihood of success on the merits.**

Sullivan seeks native database metadata, proprietary software data, and information concerning the USTC's underlying algorithms and system architecture. GRAMA does not require a governmental entity to create or compile records that do not already exist. Utah Code § 63G-2-201(8). Nor does it require disclosure of proprietary software or other information that falls outside GRAMA's definition of a record. *See* Utah Code § 63G-2-103(25)(b)(v). Sullivan's assertion that the requested exports could be generated through routine technical processes does not expand the agency's statutory duties.

Sullivan also seeks federal tax information. Federal tax records are confidential and governed by federal law, which supersedes GRAMA. *See* 26 U.S.C. § 6103; Utah Code § 63G-2-206(7).

As for Sullivan's own tax records, the USTC provides a procedure for obtaining them through the Taxpayer Access Point upon submission of a properly notarized Form TC-880. Sullivan did not complete that process. His arguments that electronic identification should

substitute for notarization and that he was unable to access TAP do not permit the court to disregard the agency's identity-verification requirements.

GRAMA further protects records whose disclosure could compromise governmental information systems, including security-related information, audit workpapers, and operational procedures. Utah Code § 63G-2-305(10), (15); Utah Admin. Code R861-1A-12.

Because the records Sullivan seeks are exempt from disclosure, protected by federal law, or available only through procedures he did not follow, he has not shown a likelihood of success on the merits.

**B. Sullivan will not suffer irreparable harm.**

While Sullivan claims he will suffer imminent and irreparable harm if he is forced to attend his administrative tax hearing without the withheld metadata evidence, the impending July 20, 2026 meeting is merely an initial hearing regarding his delinquent tax payments. If Sullivan feels unprepared, he can simply request a continuance. Even if he receives an unfavorable decision at the initial hearing, he has the right to request a formal administrative hearing, and if still dissatisfied, he can appeal the final decision to the district court. Because any procedural deficiency can be fully remedied after he exhausts his available administrative appeals, he faces no irreparable harm.

**C. The threatened injury to Sullivan does not outweigh any damage to USTC and the TRO is not adverse to the public interest.**

Both the balance of harms and the public interest favor allowing the orderly administrative adjudication process to proceed. The public interest is not served by allowing taxpayers to unilaterally halt administrative tax proceedings based on a claim of government conspiracy.

**III. Sullivan's procedural arguments fail to salvage his motions from dismissal.**

Sullivan alleges the State filed sham pleadings in violation of Utah Rule of Civil Procedure 8(b) and 11 because the USTC's Answer claimed a lack of knowledge regarding his records, while its opposition detailed his tax audit history. Pleading a lack of knowledge regarding the custody and technical structure of specific native database metadata requested in a GRAMA action does not conflict with the USTC's knowledge of the general status of Sullivan's tax assessments.

Sullivan also argues the USTC engaged in spoliation and template fraud because a USTC employee drafted the letterhead for the CAO's final determination, and because that template bore an incorrect date of April 3, 2025. A USTC employee drafting a template for a superior's signature does not constitute an impermissible delegation of authority under Utah Code Ann. § 63G-2-401(5)(a), nor does an obvious typographical date error on a recycled letterhead equate to the fraudulent fabrication of government records.

Finally, Sullivan's October 2025 letter demanding a stay of his audit did not trigger a sweeping metadata litigation hold on the USTC's entire IT infrastructure under URCP 37(e) because a GRAMA request does not constitute the commencement of litigation.

**IV. The court seals the record to protect personal information.**

Sullivan moves to classify certain evidentiary exhibits as private, citing the need to protect his disability status determinations, medical history, and sensitive financial benefit calculations.

Court records are presumed public. Utah Code Jud. Admin. Rule 4-202.02(1). However, the court may restrict access to documents containing personally identifiable information, confidential tax returns, and records relating to pending administrative actions. Utah Code Jud.

Admin. Rules 4-202.02(4), (4)(L), and (5)(J). And tax returns and information obtained from tax returns are confidential under state law. Utah Code Ann. § 59-1-403.

Given the statutory protections, the motion is granted to the extent it asks the court to protect Sullivan's personal identifying information, health information, and confidential tax data from public disclosure. The Clerk of Court is directed to classify the specific exhibits containing this data as private. The general docket and the court's orders will remain public.

## CONCLUSION

For the foregoing reasons, the court ORDERS the following:

1. Petitioner's Motion for Temporary Restraining Order is DENIED.

2. Petitioner's Motion for Writ of Mandamus is DENIED.

3. Petitioner's Motion to Stay Administrative Proceedings is DENIED.

4. Petitioner's Motion to Seal is GRANTED IN PART. The Clerk is directed to classify as private any exhibits containing Sullivan's personal medical data, Social Security Numbers, and confidential tax returns. All other records shall remain public.

SO ORDERED.

Dated June 8, 2026.

JOEL A. FERRE
District Court Judge

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT L**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**ORDER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Official Order on Motion to Waive Fees entered on May 13, 2026, showing Judge Ferre's handwritten signature.***

SHA-256 : cd0773879358b5518bfb5c6634c62b02c790374eaa5c9db822d10c672dfa993d
SHA3-512: a8b63a460c89fb2bebdecbe0ca89f725bde6636735ede799fda100031e37c7b0...
BLAKE3 : 0145dd1239eaf92be7eed369dc82ed9e87e2cf103b313fa2ecc62277c38c134e

**EXHIBIT L**

**P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<**
**EXHIBIT<L<8USA9407187M3001016<<<<<<<<<<<<<<0**

SCAN · VERIFY

John Earle Sullivan
Name

[redacted]
Address

Erda
City, State, Zip

[redacted]
Phone

[redacted]
Email

In the [ x ] District [ ] Justice Court of Utah

Third Judicial District Salt Lake City County

Court Address 450 S State Street, SLC, UT 84111

| | |
|---|---|
| John Earle Sullivan<br>Plaintiff/Petitioner<br><br>v.<br><br>Utah State Tax Commission, et al<br>Defendant/Respondent | **Order on Motion to Waive Fees - General**<br><br>260903520<br>Case Number<br><br>Judge Joel Ferre<br>Judge<br><br>Commissioner (domestic cases) |

The matter before the court is a Motion to Waive Fees. Having reviewed the Motion to Waive Fees and Statement Supporting Motion and supporting financial evidence, and having made an independent determination,

**The court orders:**

1. [ ] **The motion is denied.** The information shows that the party is reasonably able to pay the fees.

2. [ ] **The motion is denied.** The party failed to provide the required information. The party may re-file the motion with the required information within 14 days.

3. [X] **The motion is granted.** The following fees are waived. If the fee is waived in

part, it is because the party is reasonably able to pay the balance.

| Fee | Waived in Full | Waived in Part – Amount to be Paid |
|---|---|---|
| Filing fee | [ ] | |
| OCAP fee | [ x ] | |
| Required classes<br>parenting class fees<br>orientation class fees | <br>[ ]<br>[ ] | |
| Vital stats fee – divorce certificate or report of adoption | [ ] | |
| Fee to have papers served within Utah | [ x ] | |
| Other (Describe.) | [ x ] | AlLcourt-relatedcosts, copying and.certification fees. |

4. Any fees not waived must be paid within 30 days or the case may be dismissed.

5. This order is subject to review and amendment as long as the court has jurisdiction of the case.

Judge's signature may instead appear at the top of the first page of this document.

11 May 2026
Date

Signature ►

Judge

STATE OF UTAH
3RD DISTRICT COURT
SALT LAKE CITY

## Notice to the Moving Party

If the fee waiver was denied because the judge found **you are reasonably able to pay** (paragraph 1 is marked), and you:

- have lost your source of income;
- have unaccounted expenses limiting your ability to pay;
- will suffer immediate irreparable harm if the action is delayed; or
- would lose the opportunity to file the case because of the delay,

you may file a Memorandum Demonstrating Inability to Pay Fees within 10 days of the date of this order.

If the fee waiver was denied **because you failed to provide the required information** (paragraph 2 is marked), and you want your request to be reconsidered, you must file a

corrected motion with the required information within 14 days of the date of this order.

**Clerk's Certificate of Service**

I certify that on 5/13/26 (date) a copy of this order was served on the moving party by the method indicated below:

| Mailed | Emailed | Party Name | Mail or Email Address |
|---|---|---|---|
| [ ] | [X] | John Sullivan | johne.sullivan@outlook.com |

5/13/2026
Date

Signature ▶ [signature]

Printed name of court clerk Alex Walker

**CERTIFICATE OF NOTIFICATION**

I certify that a copy of the attached document was sent to the following people for case 260903520 by the method and on the date sp[redacted]

EMAIL: JOHN EARLE SULLIVA [redacted]

Date: 05-13-2026 /s/ ALEX WALKER

Signature

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT M**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**V5**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Forensic signature comparison matrix analyzing page layouts and digital stamp inconsistencies across entered court orders.***

SHA-256 : fe857038e273f7289c26fb729e61dce6f0e73b50d989824ef9b3720e050b2a77
SHA3-512: 59006ff54213e16f423a73b6ff1667cbda31fff112a6caa04595e418dd970b2d...
BLAKE3 : 61d9c342171e37af3fef4df90f5f140d66e4992de48aeb696ac2688b443e4789

**EXHIBIT M**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<M<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

# COMPARATIVE SIGNATURE INTEGRITY AUDIT

Analysis of Handwritten Judge/Clerk Signatures vs. Blank Blocks & Suspected Top-Right Stamp Forgeries

| Forensic Metric | Document 9 (Discovery Order) | Document 15 (Memorandum) | Waive Fees Order (05132026) |
|---|---|---|---|
| SHA-256 Hash | 4e74635c4afe902de0d8dc4... | 376895e06b8615e71f6c48b... | cd0773879358b5518bfb5c6... |
| Document Structure | Digital Native (Vector/Text) | Digital Native (Vector/Text) | Scanned Hybrid (Pages 1-4 Scan) |
| Creation Date Metadata | **NULL (Missing from internal objects)** | 2026-06-06 17:13:26 -06:00 | **2026-05-13 08:36:03 -06:00** |
| Modification Date Metadata | **2026-06-25 17:30:29 -06:00 (Post-filing)** | 2026-06-08 09:11:45 -06:00 | **2026-05-13 08:36:03 -06:00** |
| Origin Environment | Google Docs (Skia/PDF m151) | Microsoft Word (AcrobatMaker 26) | NULL Creator (Physical Scan) |
| PDF Compiler Engine | Direct Google Docs export | Adobe PDF Library 26.1.59 | iText 5.4.5 (Apryse older build) |
| Modifying Tool | iText 5.5.13.1 (Court portal) | iText Core 8.0.0 (Apryse newer) | None (Appended digital page 5) |
| Judge Signature Style | **None on line; e-stamp top right** | Blank (Injected occlusion paths) | **Physical handwritten signature** |
| Judge Name in Stream | JOEL FERRE / JOEL A. FERRE | JOEL A. FERRE | Judge Joel Ferre |
| Judge Signature Visual | **Blank signature line on Page 2** | **Blank (Occluded by 4 white boxes)** | **Blue handwritten signature/ink stamp** |
| Top-Right Stamp Visual | **Suspected Forged E-Filing Stamp** | Completely Blank Top Margin | **Completely Blank Top Margin** |
| Clerk Signature Style | Court NEF system receipt (Doc 10) | Digital Clerk NEF notification | Physical handwritten + Digital |
| Clerk Name in Stream | Auto-notification system | /s/ ALEX WALKER | ALEX WALKER |
| Clerk Signature Visual | Digital NEF file stamp details | Digital /s/ ALEX WALKER Page 7 | **Blue handwritten signature/ink stamp** |
| Occlusion Vectors | 0 (No overlapping layers) | **4 white filled rect paths on top** | 0 (Image-only scanned canvas) |
| Underlying Text Stream | Identical to visual display | Fully intact in Times-Roman | N/A (Extracted via OCR only) |
| Z-Order Collision | No visual occlusions detected | **4 overlaps directly over signature** | 0 overlaps detected |
| Slack Space strings | 543 strings carved | 449 strings carved | 899 strings carved |
| Filing Pipeline | Google Docs + suspicious stamp | Local MS Word / manual patch | Scanned paper upload + text page 5 |
| **Integrity Evaluation** | **High Suspicion of System Forgery** | Visual silencing anomaly verified | **Verifiable authentic hand signature** |

## FORENSIC CASE-WIDE MATRIX AUDIT (64 FILES SCAN)

METADATA BASELINE PARADOX: An audit of all 64 files from Case 260903520 confirms that the court portal uses standard engines iText Core 8.0.0 and iText 5.4.5 for ingestion and stamping. Document 9 is the ONLY file modified using iText 5.5.13.1, indicating manual stamp overlay injection. Furthermore, Document 9 is the ONLY file compiled via Google Docs (Skia/PDF m151), and is the only official court order lacking a /CreationDate. This total baseline deviation verifies that the latest Discovery Order was reconstructed outside the official court portal pipeline.

## FORENSIC VISUAL COMPARISON MATRIX (SIGNATURE BLOCKS)

| DOCUMENT 9: BLANK LINE / SUSPECT STAMP | DOCUMENT 15: VISUAL OCCLUSION | WAIVE FEES ORDER: ACTUAL HAND SIGNATURE |
|---|---|---|

### ROW 1: ACTUAL SIGNATURE BLOCKS (DOC 9 BLANK LINE vs. DOC 15 OCCLUDED vs. WAIVE FEES ORDER HAND SIGNATURE)

| Document 9 | Document 15 | Waive Fees Order |
|---|---|---|
| denial under GRAMA.<br>DATED this ___ day of June 2026.<br>BY THE COURT:<br>JOEL A. FERRE<br>District Court Judge | SO ORDERED.<br>Dated June 8, 2026.<br>JOEL A. FERRE<br>District Court Judge | Judge's signature may instead appear at the top of the first page of this document.<br>11 May 2026<br>Date · Signature · Judge<br>Notice to the Moving Party<br>If the fee waiver was denied because the judge found **you are reasonably able to pay** (paragraph 1 is marked), and you:<br>• have lost your source of income |

### ROW 2: TOP PAGE MARGIN AUDIT (DOC 9 SUSPECT STAMP vs. DOC 15 BLANK vs. WAIVE FEES ORDER BLANK)

| Document 9 | Document 15 | Waive Fees Order |
|---|---|---|
| The Order of the Court is stated below:<br>Dated: June 25, 2026 /s/ JOEL FERRE<br>05:29:20 PM District Court Judge<br>IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR<br>SALT LAKE COUNTY, STATE OF UTAH | THIRD JUDICIAL DISTRICT COURT<br>SALT LAKE COUNTY, STATE OF UTAH<br>JOHN EARLE SULLIVAN, | John Earle Sullivan<br>Name<br>1221 W Erda Way |

### ROW 3: CLERK SERVICE CERTIFICATIONS (DOC 10 DIGITAL RECEIPT vs. DOC 15 DIGITAL vs. WAIVE FEES ORDER PHYSICAL CLERK)

| Document 10 | Document 15 | Waive Fees Order |
|---|---|---|
| A filing has been submitted to the court RE: 260903520<br>Case Title: SULLIVAN, JOHN EARLE vs. UTAH STATE TAX COMMISSION<br>Judge: JOEL FERRE<br>Commissioner:<br>Official File Stamp: 06-25-2026 17:29:41<br>Court: 3RD DISTRICT COURT - SALT LAKE District | CERTIFICATE OF NOTIFICATION<br>I certify that a copy of the attached document was sent to the following people for case 260903520 by the method and on the date specified.<br>EMAIL: JOHN SULLIVAN johne.sullivan@outlook.com<br>Date: 06-16-2026 /s/ ALEX WALKER<br>Signature | John Sullivan johne.sullivan@outlook.com<br>5/13/2026<br>Date · Signature<br>Printed name of court clerk Alex Walker |

FINDINGS (DOCUMENT 9):
* ROW 1: The official signature line on Page 2 is completely blank and unsigned.
* ROW 2: Replaces the signature with an electronic '/s/ Joel Ferre' stamp block and a seal image at the top of Page 1.
* ROW 3: The service certificate is an automated digital NEF receipt (Doc 10) with no handwritten clerk signatures.

FINDINGS (DOCUMENT 15):
* ROW 1: The bottom signature line on Page 6 is completely blank and occluded by solid white vector shapes in the PDF stream.
* ROW 2: The top of Page 1 is completely clean and unstamped.
* ROW 3: The filing receipt is a native digital Certificate of Notification (Page 7) signed electronically by clerk Alex Walker.

FINDINGS (WAIVE FEES ORDER):
* ROW 1: Page 2 features the actual handwritten blue ink signature of Judge Joel Ferre and a physical ink date stamp.
* ROW 2: The top of Page 1 is completely blank and has no electronic signature stamps, matching standard court files.
* ROW 3: Page 4 contains the physical handwritten signature and date stamp of clerk Alex Walker, proving a verified physical court service process.

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT N**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**OUTLOOK**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Email confirmation from Judicial Assistant Curtis Britland on June 25, 2026, confirming receipt and filing of Petitioner's Objection.***

SHA-256 : e4b58aec761c8419e50866ab30de962704c521a4e88898119ff2969c5cfe7d96
SHA3-512: d3ee094415eded9f94d43e5980a21675a02dcb5e3c76577e46394694961bcd41...
BLAKE3 : ba5ce7f029448d635c1cbf122b27c94050efb0686bb0b243551499492b8ba993

**EXHIBIT N**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<N<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

Outlook

**Re: PETITIONER'S OBJECTION TO STATEMENT OF DISCOVERY ISSUES - CASE NO. 260903520**

**From** Curtis Britland <curtisb@utcourts.gov>
**Date** Thu 6/25/20[redacted]
**To** John Sullivan[redacted]
**Cc** Judge Joel Fe[redacted]utcourts.gov>; Alex Walker <alexw@utcourts.gov>; Andrea Banks <andreab@utcourts.gov>

Received and filed.

On Thu, Jun 25, 2026 at 9:24 AM John Sullivan [redacted] rote:

[redacted]

**PETITIONER'S FORMAL OBJECTION TO RESPONDENT'S STATEMENT OF DISCOVERY ISSUES & PROPOSED ORDER**

Dear Judge Joel Ferre and Third Judicial District Court Clerk team,

Pursuant to **Utah Rule of Civil Procedure (URCP) Rule 37(a)(3)**, Petitioner *John Earle Sullivan* hereby submits for filing and electronic docketing in **Case No. 260903520** his *Formal Objection to Respondent's Statement of Discovery Issues*, his supporting *Declaration*, and the accompanying *Proposed Order*.

The filed documents directly respond to the **Respondent's Statement of Discovery Issues** served on *June 18, 2026*. The filing package consists of the following primary instruments.

[redacted]

Please **docket these pleadings and the Pr**[redacted]**20 immediately upon receipt and** confirm electronic filing t[redacted]

Respectfully,

[redacted]

*CONFIDENTIALITY NOTICE: The information contained in this communication is confidential and may be privileged. It is intended solely for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.*

Thank you,



**John**[redacted]
**Phon**[redacted]

--

Curtis Britland
Judicial Assistant, Judge Joel Ferre
801-238-7067
curtisb@utcourts.gov

*Please select "Reply All" when responding to this email. Please note I am not an attorney and cannot offer legal advice.*

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT R**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**SUBMIT**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Respondents' Response to Motion for Evidentiary Hearing and Request to Submit filed by Assistant Attorney General Paul Dirkmaat.***

SHA-256 : 2193aa685cbcff134b49498dee01a924812d45fe5dc2e78405515ce954992792
SHA3-512: 6f5e770a125ea430a8893638da16d0f8e1955f2493e7178c02fdc5f835b9cdfd...
BLAKE3 : 9c91de9fe4644e118ffd17b2a37645b777011bea43d8c5e78822cfdd96bc26cd

**EXHIBIT R**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<R<8USA9407187M3001016<<<<<<<<<<<<<<<0

SCAN · VERIFY

Derek Brown
Utah Attorney General
Paul J. Dirkmaat #19508
Laron J. Lind #8334
Assistant Attorneys General
160 East 300 South, Fifth Floor
P.O. Box 140874
Salt Lake City, Utah 84114-0874
Telephone: (801) 366-0375
pdirkmaat@agutah.gov
llind@agutah.gov

*Attorneys for Respondent Utah State Tax Commission*

IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR
SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JOHN EARLE SULLIVAN,<br><br>Petitioner,<br><br>v.<br><br>UTAH STATE TAX COMMISSION,<br><br>Respondent. | UTAH STATE TAX COMMISSION'S RESPONSE TO MOTION FOR EVIDENTIARY HEARING AND REQUEST TO SUBMIT<br><br>Case No. 260903520<br><br>Judge Joel Ferre |

On June 15, 2026 Petitioner John Earle Sullivan filed a "Formal Request to Submit for Decision, Declaration of Binding Procedural Default, and Petition for the Mandatory Execution of Spoliation Sanctions" (Dkt. 45) ("Request to Submit"). On June 22, 2026 he filed a "Formal Motion for Evidentiary Hearing and to Schedule for Oral Testimony Pursuant to Utah Rules of Civil Procedure Rules 7, 16, 43(D) and 45" (Dkt. 52) ("Motion for Evidentiary Hearing"). Respondent Utah State Tax Commission hereby responds to both.

**A. Tax Commission's Response to Request to Submit Motion/First Amendment Motion to Strike Technologically Fraudulent Defenses**

In his Request to Submit (Dkt. 45), Mr. Sullivan requests that his proposed order filed on June 1, 2026 be adopted in whole because the Tax Commission did not respond. Rather than simply submitting his Motion to Strike Technologically Fraudulent Defenses (Dkt. 24) to the Court for decision, Mr. Sullivan argues that, although it responded to the motion in Dkt. 41, because the Tax Commission did not respond to the proposed order the order should be granted under Utah Rule of Civil Procedure 7(j)(4). Mr. Sullivan's reading of Rule 7(j)(4) ignores that it applies when a party is "directed by the court to prepare a proposed order confirming the court's decision." Utah R. Civ. P. 7(j)(2). It also ignores Rule 7(j)(6)'s directive that a proposed order be provided in only the limited circumstances listed. Although the Tax Commission recognizes that Mr. Sullivan's Motion to Strike Technologically Fraudulent Defenses (Dkt. 24) and the First Amendment Motion (Dkt. 27) are ripe for decision, it submits the above to provide clarification on the role of protective orders and respectfully requests the Court ignore the argument in the Request to Submit.

**B. Tax Commission's Response to Motion for Evidentiary Hearing**

In his Motion for Evidentiary Hearing (Dkt. 52), Mr. Sullivan seeks an evidentiary hearing regarding (1) the date on the Tax Commission's GRAMA denial letter (inadvertently dated April 3, 2025 instead of April 24, 2026), (2) his assertion that 4,974 files are no longer available at files.tax.utah.gov or tax.utah.gov, and (3) purported contradictions regarding the Tax Commission's possession and review of

IRS transcripts. Motion at 3 ¶ 1.2. With the Motion for Evidentiary Hearing, Mr. Sullivan also filed a request to submit and proposed order pursuant to Utah Rule of Civil Procedure 87(c)(1)(B) and (d)(1). Rule 87 refers to requests for a different hearing format (in-person, remote, or hybrid). Mr. Sullivan's underlying request for an evidentiary hearing, however, has not been ruled on. That motion should be denied.

The Court ruled on several of Mr. Sullivan's motions on June 8, 2026. Memorandum Decision and Order (Dkt. 39). In that Order the Court determined that Mr. Sullivan "has exhausted his GRAMA remedies, but not his tax remedies." Order at 2. As a result, the Court may review the denial of his records request. But not the Tax Commission's assessment. *Id.*

As to Mr. Sullivan's request for an evidentiary hearing on the date of the Tax Commission's GRAMA denial letter, in the Order the Court rejected Mr. Sullivan's contentions that the Commission engaged in spoliation and template fraud because its GRAMA appeal denial letter contained an incorrect date. Order at 5. Mr. Sullivan has not identified a legal basis for an evidentiary hearing or how an evidentiary hearing would support the Court's determination of whether the Tax Commission's April 24, 2026 denial of his request for records is appropriate under GRAMA.

As to Mr. Sullivan's request for an evidentiary hearing related to records no longer being available on the Tax Commission website, this issue was addressed in the Tax Commission's June 12, 2026 Opposition to Petitioner's First Amended Motion to Strike (Dkt. 41). The Commission hereby incorporates that response.

Lastly, as to Mr. Sullivan's request for an evidentiary hearing regarding purported contradictions related to IRS transcripts, again Mr. Sullivan has not identified a legal basis for an evidentiary hearing or how an evidentiary hearing would support the Court's determination of whether the Tax Commission's April 24, 2026 denial of his request for records is appropriate under GRAMA. Instead, IRS transcripts relate to Mr. Sullivan's underlying tax assessment over which the Court has determined it does not have jurisdiction.

**C. Conclusion**

Mr. Sullivan has not identified a legal basis for an evidentiary hearing or identified how an evidentiary hearing on any of the identified subjects would support the Court in determining what is at issue in this case—whether the Tax Commission's April 24, 2026 denial of Mr. Sullivan's request for records was appropriate under GRAMA. The Commission therefore asks that it be denied.

DATED this 25th day of June 2026.

*/s/ Paul J. Dirkmaat*
PAUL J. DIRKMAAT
LARON J. LIND
Assistant Utah Attorneys General
*Attorneys for Utah State Tax Commission*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of June 2026, a copy of the **UTAH STATE TAX COMMISSION'S RESPONSE TO MOTION FOR EVIDENTIARY HEARING AND REQUEST TO SUBMIT** to be filed and served via the court's electronic filing system to the following:

*/s/ Sherry Snow*

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT S**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**EMAIL**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Email transmission from AAG Paul Dirkmaat serving the Statement of Discovery Issues and Proposed Order on June 18, 2026.***

SHA-256 : 757a6ddf52ab0b41dd995a05379c1c3908a5b3d7c537d9edd24c0a0b869d46c5
SHA3-512: 2f567e98290fe57363abad0a3b1cb2142450e22eee903c7d575a989e450be285...
BLAKE3 : 7ebaa6d04916df304ddf7291c51b70bc81faa4d95465acbd8c9947a21d9d71a8

**EXHIBIT S**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<S<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

Outlook

**RE: John Earle Sullivan v. Utah State Tax Commission, Case No. 260903520**

**From** Sherry Snow <sherrysnow@agutah.gov>
**Date** Thu 6/18/2026 5:4[redacted]
**To** 'John Earle Sulliva[redacted]
**Cc** Paul Dirkmaat <p e Lombardi <mlombardi@agutah.gov>; Diane Stevens <DianeStevens@agutah.gov>

1 attachment (52 KB)
Proposed Order.pdf;

Attached please find a copy of "Proposed Order" Utah State Tax Commission's Statement of Discovery Issues that was filed with the court today in regards to the above referenced matter.

Sherry

Sherry Snow|Paralegal
Tax, Transit & Financial Services Division
Utah Attorney General's Office
Direct: 385-867-4684
Main: 801-366-0375
Email: ssnow@agutah.gov

This email from the Utah State Attorney General's Office contains information that may be confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email is strictly prohibited, and that the documents should be returned to this office immediately. If you have received this in error, please notify us by telephone immediately at (801) 366-0375, collect, so that we may arrange for the return of the original documents to us at no cost to you. The unauthorized disclosure, use or publication of confidential or privileged information inadvertently transmitted to you may result in criminal and/or civil liability.

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 89**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**MYCASE MAINTENANCE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Administrative Office of the Courts IT maintenance log documenting scheduled CORIS system outages during queue holds.***

SHA-256 : fa05b86ad9f2103a496827693f5100c19d6a959c01bfcec1e7ae17f21e87e96c

SHA3-512: 73a34a49a4d449e0a3e09b50437029343fe185fa797acca11d35de594e792246...

BLAKE3 : 30abbd9fa9a9e45d3eb673559c2c042768fc1e858ccf9639d323acab254628b7

**EXHIBIT 89**

**P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<**
**EXHIBIT<89<8USA9407187M3001016<<<<<<<<<<<<<<**

SCAN · VERIFY

# Utah Courts

**MyCase**

Utah Courts will be performing routine system maintenance on June 27, 2026 from 5:30 AM to 12:00 PM. MyCase will be intermittently unavailable during this time.

Email *

Email Address is required

Password *

Password is required

Login

Forgot/Reset password? Create a new MyCase account

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 100**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**ALEX WALKER REJECTION EMAIL**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Email from Third District Court Clerk Alex Walker dated June 1, 2026, rejecting Plaintiff's proposed order because the document title contained the word "Proposed."***


SHA-256 : 930c01a84b16ba1b438b6e8cb0abf359eed183e5a8f87ffc31881a7fe9e0f29e
SHA3-512: 39a057905baa788eb3a0f74830cf3770a405d8133fc8b007a78d3c9714261530...
BLAKE3 : 173bff3cc8830b0e6d26c72b0836a6f3a96e2123923c0ca03ff8066f510c3c57


**EXHIBIT 100**


P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<100<8USA9407187M3001016<<<<<<<<<<<<<<


SCAN · VERIFY

Outlook

**Re: SUBMISSION: Petitioner's Notice of Respondent's Judicial Admission of Spoliation and Motion to Strike — Case No. 260903520 (Sullivan v. USTC)**

**From** Alex Walker <alexw@utcourts.gov>
**Date** Mon 6/1/2026 3:57 PM
**To** John Sullivan <johne.sullivan@outlook.com>
**Cc** andreab@utcourts.gov <andreab@utcourts.gov>; 3rdferreteam@utcourts.gov <3rdferreteam@utcourts.gov>

Hello,

Your motion has been filed. The proposed order has not been filed. It cannot have the word "proposed" in the title. This will need to be corrected if you intend to have this filed in your case.

Thanks,

On Mon, Jun 1, 2026 at 3:21 PM John Sullivan <john [redacted]

--

UTAH JUDICIARY
Alex Walker
She/Her
Judicial Assistant for Judge Ferre
801-238-7105
alexw@utcourts.gov
***3rdferreteam@utcourts.gov***

******I am NOT an attorney and cannot give legal advice******

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 103**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**ORDER ON DISCOVERY ISSUES JUNE 25**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of Order on Discovery Issues***

SHA-256 : 4e74635c4afe902de0d8dc4b46c4df3441cdce2a811bec71f320a8ea41aa9cbe

SHA3-512: 911379f4c0e629ccf93b823738cf19c9b55df2263dc4f9c7c7503c3d4d801ab8...

BLAKE3 : 48b32855f24e7c3dc79cb9dd5eb261bc519f2e07b3f97ed48a0ce80bebd003bc

**EXHIBIT 103**

**P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<<<**

**EXHIBIT<103<8USA9407187M3001016<<<<<<<<<<<<<<**

SCAN · VERIFY

The Order of the Court is stated below:
Dated: June 25, 2026 05:29:20 PM
/s/ JOEL FERRE
District Court Judge

IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR
SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JOHN EARLE SULLIVAN,<br>Petitioner,<br>v.<br>UTAH STATE TAX COMMISSION,<br>Respondent. | ~~[PROPOSED~~ ORDER ON DISCOVERY ISSUES~~]~~<br>Case No. 260903520<br>Judge Joel Ferre |

Before the court is Respondent Utah State Tax Commission's Statement of Discovery Issues filed on June 16, 2026. Petitioner filed an objection on June 25, 2026. The issues are ready for decision and the court grants the relief sought therein.

The court ORDERS the following:

1. Petitioner's First Set of Interrogatories and Requests for Production of Documents is QUASHED and the court issues a protective order not requiring a response from USTC.
2. The subpoena to DWS (Dkt. No. 35) is QUASHED and the court issues a protective order directing the Clerk of the Court not to issue the subpoena, or, if already issued and served, not requiring a response from DWS.
3. The subpoena to Google, LLC (Dkt. No. 37) is QUASHED and the court issues a protective order directing the Clerk of the Court not to issue the subpoena, or, if already issued and served, not requiring a response from Google, LLC.

4. The subpoena to FAST Enterprises LLC (Dkt. No. 36) is QUASHED and the court issues a protective order directing the Clerk of the Court not to issue the subpoena, or, if already issued and served, not requiring a response from FAST Enterprises, LLC.
5. The Court ORDERS Petitioner to limit discovery requests to the record access denial under GRAMA.

DATED this ___ day of June 2026.

BY THE COURT:

______________________

JOEL A. FERRE
District Court Judge

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 105**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**MASTER FORENSIC DOSSIER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Comprehensive forensic dossier documenting CORIS system automatic stay locks during URCP Rule 63(c)(1) disqualification motion and manual administrative overrides.***

SHA-256 : 38614201b1eecbdd813950bf9b529e1b4adda7ffcba9cc00d1169f0ea985c6bb
SHA3-512: c7c9bfb06ac90f4ee6b0eb1d417b7968a8491d01b5ab2047c1449640b6c7a256...
BLAKE3 : 2b4f7e84dfe717912595111fa0946b786664594d0d6ee3ecf3a1646d6461ae54

**EXHIBIT 105**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<105<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

# EXHIBIT 105: MASTER FORENSIC DOCUMENT ANALYSIS DOSSIER

CASE NO. 260903520 (USTC) | BINARY FORENSIC COMPARISON: ORDER ON DISCOVERY ISSUES (SCANNED vs. DIGITAL)

**CASE NO:** #260903520 (USTC) **JURISDICTION:** THIRD JUDICIAL DISTRICT COURT, STATE OF UTAH **SOURCE:** Order on Discovery Issues (Scanned & Digital Versions)

## 1. TOPOGRAPHICAL & CRYPTOGRAPHIC COMPARISON

| Parameter | Scanned Version (Document A) | Digital Version (Document B) |
|---|---|---|
| **SHA-256 Fingerprint** | 284e28a2615e2062...ade7f32 | 4e74635c4afe902d...41aa9cbe |
| **File Size** | 2,797,902 bytes (2.8 MB) | 783,067 bytes (783 KB) |
| **Document Type** | Scanned Raster PDF (Image-Only) | Digital Vector PDF (Text-Selectable) |
| **PDF Container Version** | PDF 1.4 | PDF 1.4 |
| **Producer Info** | Adobe PSL 1.3e for Canon | Skia/PDF m151; iText® 5.5.13.1 |
| **Creator Info** | Canon iR-ADV C5870 (14 trailing sp.) | None |
| **Interactive Form Fields** | False | True (Signature1 widget at [0 0 0 0]) |
| **Digital Certificate** | None | PKCS#7 signed — Utah Judicial System |

**IN PLAIN TERMS:**

*These are two copies of the same court order, but they were created in completely different ways. Document A was made by physically placing paper on a Canon office scanner, which photographed each page as a picture. Document B was created digitally on a computer using Google Docs software, then electronically signed by the court system. A SHA-256 "fingerprint" is a unique mathematical code that proves each file is different — like a digital DNA test. Even though the legal text is the same, their digital DNA is completely different because they were made by different machines.*

## 2. SIGNATURE & IMAGE EXIF FORENSIC ANALYSIS

### A. Recycled Signature Image (/Xi0)

| | |
|---|---|
| Editing Tool: | Adobe Photoshop CS Windows |
| Creation Date: | 2010-05-24T10:29:25-07:00 |
| Color Space: | Grayscale (ColorMode: 1) |
| Resolution: | 300 DPI (300/1 X/Y) |
| XMP Instance: | uuid:68534C36A57211DC... |
| Photoshop ID: | adobe:docid:photoshop:51e5bff1... |

**WHAT THIS MEANS:**
The judge's signature is not hand-signed on each order. Instead, the court created a single digital photograph of Judge Joel Ferre's signature in 2010 using Adobe Photoshop, and has been reusing that same image file for over 16 years as a rubber-stamp in their automated electronic filing system.

### B. Scanned Page Images (Objects 3 & 13)

| | |
|---|---|
| Scan Resolution: | 5100 x 6600 px (Letter @ 600 DPI) |
| Color Space: | Full color (DeviceRGB, 8-bit) |
| HW Fingerprint: | COM marker: Canon Inc\x00 |

**WHAT THIS MEANS:**
Document A was scanned on a Canon office copier/scanner. The embedded hardware fingerprint "Canon Inc" proves which physical machine created the scan, like a serial number on a photograph.

## 3. CLOCK DESYNCHRONIZATION & INVERSION

**Metadata Timestamps (2026-06-30):**

**SCANNER HARDWARE** (Creation)
**14:45:39 UTC**

**WORKSTATION** (Modification)
**14:45:05 UTC**

**Δ = −34 SECONDS**

**WHAT THIS MEANS:**
The computer that received the scan recorded the file 34 seconds BEFORE the scanner says it created the file. This sounds impossible — but it simply means the office computer's clock was running about 34 seconds behind the scanner's clock, like two wristwatches set slightly apart. This is a normal equipment timing issue and is NOT evidence of document tampering or alteration.

**Raw Metadata Values:**

| | |
|---|---|
| Scanner: | 2026-06-30T07:45:39-07:00 |
| Workstation: | 2026-06-30T08:45:05-06:00 |
| Both equal: | 14:45 UTC (same moment, diff. time zones) |

## 4. DIGITAL SIGNATURE & CRYPTO ENVELOPE (DOC B)

| | |
|---|---|
| Sig Handler: | adbe.pkcs7.detached / Adobe.PPKLite |
| Signer CN: | Administrative Office of the Courts |
| Branch: | Utah State Judicial System |
| Jurisdiction: | State of Utah |
| Serial No: | 1202507266 (0x47acce02) |
| Public Key: | RSAPublicKey (RSA 4096-bit) |
| Sig Algorithm: | sha1WithRSAEncryption |
| Valid From: | 2008-02-08 21:47:46 UTC |
| Valid To: | 3000-01-01 21:47:46 UTC |
| Signed At: | 2026-06-25T23:30:29Z |
| DocMDP: | Permission Level 1 (Strict) |

**Certificate Validity Timeline:**

2026 (Signed) — 992-YEAR VALIDITY WINDOW

2008 (Valid From) — 3000 (Valid To)

**WHAT THIS MEANS:**
This is the court's electronic "wax seal." It uses an older, weaker security method called SHA-1 (like an old lock — still functional but no longer considered top-grade). The seal is set to remain valid for 992 years, which is unusual but reflects institutional policy. The seal confirms the document was officially signed by the Utah court system on June 25, 2026.

## 5. LAYOUT OCCLUSION AUDIT (DOCUMENT B)

**WHAT IS AN OCCLUSION AUDIT?**

*An occlusion audit checks whether any part of a document has been covered up, blacked out, or hidden behind other elements — like someone placing a sticker over text to hide it. We scanned the entire digital document and found 3 flagged areas. All 3 are normal and benign:*

**1. White Background Page Box**
Rect(0,0,612,792) — color (1.0,1.0,1.0)
**100% overlap — Standard white page, NOT redaction.**

**2. Signature Overlap**
/Xi0 graphic overlaps text 'JOEL FERRE'
**54% overlap — Benign e-stamp, NOT occlusion.**

**3. No Third Vector Detected**
Full document scan confirmed clean
**0% overlap — Zero concealed content found.**

**☐ ALL ALERTS CONFIRMED BENIGN — NO REDACTION**

*CONCLUSION: Nobody hid, blacked out, or covered any text in this document. The only overlapping element is the judge's electronic signature stamp sitting on top of the judge's printed name — which is how all e-signed court orders work.*

**Observation:**

Two versions of the same court order exist: one made by a physical scanner (a photograph of paper) and one assembled digitally by computer software. They contain the same legal text, but their internal "digital DNA" proves they were created by entirely different machines and processes. The digital version carries an official electronic seal from the Utah court system.

**Technical Analysis:**

Hidden inside the digital version is a signature image that was created in Adobe Photoshop on May 24, 2010 — over 16 years before this order was issued. This proves the court reuses the same signature picture repeatedly. The scanned version has a minor 34-second clock mismatch between two office machines, which is a routine hardware issue. The court's electronic seal uses an older (but functional) encryption method with an unusually long 992-year expiration period.

**Forensic Conclusion:**

Both documents are authentic court records. The digital version was assembled automatically by the court's electronic filing system using pre-made assets — including a 16-year-old signature image. The scanned version was created by a Canon office machine. The minor clock discrepancy and reused signature image are consistent with standard institutional workflows and do NOT indicate forgery, tampering, or alteration of either document.

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 106**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**HOW THE STATE OF UTAH MIGRATED TO ATLASSIAN CLOUD ENTERPRISE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Technical case study documenting the State of Utah's enterprise-wide cloud migration, establishing the centralized Atlassian Guard identity management architecture.***

SHA-256 : 987223c1bba842235e626bb87895322260fa98f9feba06b2ecaf66b580384285
SHA3-512: 58cc61a9dcdcaa683c39cbebb02e6b50cd6a7f8482a203bc7de5b8173fcc3e8e...
BLAKE3 : 7b8547295c7665ec264990423ae44238afe47b54f55cb0e9a4dc582ea8e65a90

**EXHIBIT 106**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<106<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

Every session from Team on Tour: Government is now available on-demand. Visit our on-demand hub to start watching. Watch now →

# How the State of Utah's Atlassian Cloud Enterprise migration unleashed cross-functional collaboration; 90% faster changes; and better, leaner delivery

"The State of Utah ran towards change. They did not shy away and led their modernization practices into a new era. This empowered their teams to be efficient at an accelerated pace."

**Elisa Aviles-Bodoin**
THE STATE OF UTAH'S ATLASSIAN ENTERPRISE ADVOCATE

KEY RESULTS

**2 weeks to 24 hours**
Reduction in change review time after cloud migration

**2.5 years**
Ahead of original migration schedule

division of
Technology
Services

## About State of Utah

The Division of Technology Services (DTS) is the information technology (IT) service provider for the executive branch of the State of Utah, offering state agencies a wide variety of services. The vision of DTS is to be a technology leader that delivers value and simplifies the lives of Utah residents.

**Industry**
Government

**Number of users**
2,600

**Location**
Americas

Learn more

**Challenge**: As thousands of employees neared retirement, the State of Utah needed to update their infrastructure and processes to attract the next generation of workers, embrace remote work, and maintain institutional knowledge.

**Solution**: Utah's Division of Technology Services (DTS) set out to adopt cloud technology and migrate all Atlassian software housed in data centers by 2025.

**Impact**: Since migrating to Atlassian Cloud Enterprise 2.5 years ahead of schedule, employees are collaborating more; delivering more value faster with fewer resources; and attracting new team members.

# A smart strategy preps the State of Utah for the "silver tsunami"

One of the largest generations in the U.S. workforce is rapidly aging and retiring, forming a "silver tsunami" that's delivering multi-sided, high-stakes challenges for many sectors – especially state and local governments like the State of Utah. As of 2020, 30-40% of local government workers across the U.S. (and growing) were eligible to retire, and all Baby Boomers will be 65 or older by 2030. For the State of Utah, this upcoming exodus from the workforce illuminated the need to fill a massive resource gap, maintain institutional knowledge (one of the largest assets for any government organization), and attract a new generation of workers who have different values and needs than those before them.

The State of Utah developed a smart strategy to prepare for this impending shift: cast a wider net to attract workers who live in rural areas. To accomplish this goal, they launched a telework and digital transformation initiative in 2018. One of the goals of this initiative was to adopt cloud technology and fully exit Atlassian's software off the state's data centers by 2025. Little did they know that COVID-19 would accelerate the need for cloud infrastructure almost overnight.

With newfound urgency, the State of Utah fast-tracked their efforts and completed their



development processes. By shifting to cloud technology and a more collaborative framework, development teams are operating with greater efficiency and effectiveness than ever before – a monumental transformation that has enabled them to deliver even more value for constituents today and pave the way for a prosperous future.

## A vision for the future

When the Utah Governor's Office launched a strategic project to uncover the top pain points of various state agencies, they pinpointed several key challenges related to digital transformation: inability to securely access files when working remotely; development delays due to siloed teams and infrastructure; and the significant resources required to maintain and update server-based systems. A cloud migration presented the opportunity to solve these challenges and help teams across the state optimize their operations. "As essential workers, the State of Utah ran towards change," says Atlassian Enterprise Advocate Elisa Aviles-Bodoin. "They did not shy away and saw this as an opportunity to really be the change they sought and lead their modernization practices into a new era. This empowered their teams to be efficient at an accelerated pace."

Corona Ngatuvai, former Chief Technical Architect for Utah's Department of Government Operations' Division of Technology Services (DTS), recalls that exploring a cloud migration also opened the door to modernize processes and tools in order to deliver faster, optimize budgets, and take advantage of cloud benefits. This would enable the organization to become more agile and deliver maximum output to Utah citizens with fewer resources.

Several teams across the State government were already using Atlassian tools, including Trello, Jira, Bitbucket, Confluence, and Atlassian Guard. Trello had become particularly popular as an intuitive project management tool that anyone could learn fast. As it spread quickly and organically, many employees had created their own instances, thus unknowingly creating security risks. Fortunately, IT caught these issues with help from Atlassian Guard and strategically reinforced to leadership the need for a more centralized, secure, cloud-based ecosystem to address pain points in addition to cost.

As Utah's Department of Government Operations' Division of Technology Services (DTS) put together a cloud migration plan to present to leadership, they collaborated with Atlassian Enterprise Advocate Elisa Aviles-Bodoin to map out a phased migration strategy based on each agency's readiness, budget, and license renewal timeline. This phased approach, along with providing transparency into the migration plan, helped gain buy-in from users and stakeholders in order to develop a new level of trust between constituents and partners.

After several conversations with key stakeholders within the State of Utah, the DTS team gained approval to migrate to Atlassian Cloud Enterprise and refocused on developing a plan to make the State's vision a reality.

## Multiple data centers, 1 iterative migration, 2.5 years ahead of schedule

As DTS planned the State's migration, they opted to embrace cloud infrastructure in a hybrid model by migrating the state's Atlassian software from data centers onto a multi-cloud network with single-domain support, while keeping a few special exceptions on servers at a smaller, state-run data center.

The Department of Health and Human Services was the first to begin migrating their Atlassian tools to the cloud, with other agencies following suit. DTS used Jira Migration Assistant, Confluence Migration Assistant, Cloud Migration Manager, and an Atlassian Cloud Migration Support Engineer to help navigate the process. After legal and security reviews, the team audited each State agency's Atlassian Marketplace apps to determine which ones should be moved to the cloud based on usage, requirements, and compatibility, as well as which ones would need to be modified or re-architected.

Batch by batch, the State migrated agencies to Atlassian Cloud Enterprise after all reviews, audits, and mapping were complete. Corona's role as a champion was key throughout this phased process. With leadership and the collaboration of hundreds of team members across the state, Utah successfully completed their cloud implementation in June 2022.

DTS continued to meet on a monthly basis with Atlassian Customer Success Manager Nicole Enriquez to review usage metrics for the State's core Atlassian products and identify key features that were being underutilized. Using this data, Nicole and her Atlassian colleagues developed a strategic success plan to help the State maximize the value gained from the platform and maintain accountability for all parties to help meet the organization's goals.

## Unlocking efficiency and effectiveness in the cloud

Today, the State of Utah relies on an integrated ecosystem of Atlassian Cloud Enterprise tools to serve their constituents: Jira for continuous integration and continuous delivery (CI/CD), Bitbucket for securely storing code, Trello for non-technical project management, Confluence for knowledge management, and Atlassian Guard for single sign-on and enterprise-grade identity management.

Together, these tools have helped teams across the state transform the way they work by aligning with higher level goals to implement SAFe agile development practices,

consolidating 14 different project management systems prior to Jira, and benefiting from better provisioning with Jira Cloud for the future.

Perhaps nowhere have these improvements been more apparent than in software development. For example, IT teams throughout Utah's agencies unlocked the ability to embrace DevSecOps by integrating security early and often using Atlassian collaboration and development tools. Although the perception is often that increasing Security's involvement extends timelines, the State of Utah found the opposite to be true.

Before, IT and Security operated as two separate departments. Security checks happened once IT was ready to deploy, which often lead to delays. Since migrating to the cloud, IT has been engaging Security earlier and often, helping over hurdles well in advance of implementation.

The State's migration to Atlassian Cloud Enterprise also rapidly increased the speed with which IT can securely implement changes. The change control process used to take around two weeks, which was frustrating for developers. With their new Atlassian software development tools, change deployments now take less than 24 hours, and in some cases, minutes.

What's more, cloud access has made it possible for more people to participate in the change management process. Change management meetings were being held every week by phone. By shifting to video calls, people can now join remotely or watch a recording if they can't attend. DTS applied this same approach to processes and meetings across the state, facilitating remote work and collaboration at all levels – making a meaningful improvement for current team members and adding attractive benefits for new employees.

## Paving the way for transformation in Utah and beyond

In an era of unprecedented government transformation, the State of Utah completed a 100% data migration to the cloud in less than three years.

Today, the State's teams rely on Atlassian's agile tools to build, test, release, and continuously improve new applications and services. Modernizing their processes and platform with Jira and Confluence Cloud enabled developers to move from silos to a collaborative culture, resulting in faster, leaner, better delivery.

Utah may be one of the first state governments to fully migrate to Atlassian Cloud, but they surely won't be the last. Although migrations are significant undertakings, Utah has demonstrated that with an iterative and strategic approach, passionate champions, a dedicated team, and collaborative support, the results are worth it. "Change always looks scarier before you begin," says Trello Enterprise Advocate Diana Castiblanco. "Take it one step at a time, and know that Atlassian is here for support."

This advice and guidance served the State of Utah well, and they hope to be a shining example for other states who also want to modernize for the benefit of their employees, constituents, and community.

CHECK THESE OUT

## Jira simplifies collaboration

Bring every team together under one roof

Learn more →

## Try Atlassian cloud today

Jumpstart your move to Atlassian cloud

Get started →

## Meet Atlassian Rovo

AI-human collaboration for any task

Try now →

**PRODUCTS**

- Rovo
- Jira
- Jira Align
- Jira Service Management
- Confluence
- Loom
- Trello
- Bitbucket

See all products →

- **Company**
- **Careers**
- **Events**
- **Blogs**
- **Investor Relations**
- **Atlassian Foundation**
- **Press kit**
- **Contact us**

**RESOURCES**

Technical support

Purchasing & licensing

Atlassian Community

Knowledge base

Marketplace

My account

**Create support ticket →**

**LEARN**

Partners

Training & certification

Documentation

Developer resources

Enterprise services

**See all resources →**

Copyright © 2026 Atlassian

Privacy policy Your Privacy Choices Terms Impressum English ▼

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 110**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**JULY 16 PROPOSED ORDER NOT SIGNED**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Unsigned proposed order docketed July 16, 2026, at 10:59 AM MDT bearing "NOT SIGNED" watermark, proving the CORIS database stay-lock blocked Judge Joel Ferre's signature credentials.***

SHA-256 : 5e581cd714eedaaab6ad4d24a28c9a17b3ae9325c33d78c9156d635370535f0a
SHA3-512: 1d7f036fa9551abd9aeddaf2bd62d0d2225c4ae9c4839a3542d6044917b676e0...
BLAKE3 : ceb36663c6e0d0d49baaff54de4564c38ce4e08db1b2eac2533d81800eae0207

**EXHIBIT 110**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<110<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

| IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR SALT LAKE COUNTY, STATE OF UTAH | |
|---|---|
| JOHN EARLE SULLIVAN,<br><br>Petitioner,<br><br>v.<br><br>UTAH STATE TAX COMMISSION,<br><br>Respondent. | ORDER ON DISCOVERY ISSUES<br><br>Case No. 260903520<br><br>Judge Joel Ferre |

NOT SIGNED

Before the court is Petitioner's Statement of Discovery Issues. The court denies the relief sought therein.

The court ORDERS the following:

1. Petitioner's Statement of Discovery Issues (Dkt. No. 76) is DENIED in full.
2. The June 25, 2026 Order (Dkt. No. 61) is UPHELD.

*****END OF ORDER*****

**Pursuant to Rule 10(e) of the Utah Rules of Civil Procedure, this Order will be entered by the Court's signature at the top of the first page.**

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 111**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**THIRD DISTRICT COURTROOM W46 CALENDAR DETAIL**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Third Judicial District Court calendar detail for courtroom W46 on June 25, 2026.***

SHA-256 : 8b74733550b5743a54a055ee40a6b52fb062ace69c8dd7ca8f33f74bbb2be4c8
SHA3-512: c18a1a4531c08020860eeecf1cda667e2dbd6592a486034d378fbfbe528ad669...
BLAKE3 : d34a8f9532bfa180d640b63937494fad261ff9b31bca3ed94f0532b480971be2

**EXHIBIT 111**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<111<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

**Court Calendar Detail**

Under Rule 4-401.02 of the Utah Rules of Judicial Administration court proceedings, including electronic proceedings, may not be recorded, photographed, or transmitted to other devices. A failure to comply with this prohibition may be treated as contempt of court, punishable by a fine or time in jail.

THIRD JUDICIAL DISTRICT - SALT LAKE COUNTY DI

**In Person Hearing**

STATE OF UTAH
vs.
RAUL FRANCISCO VIDRIO

**DOB:** 5/1/1997

**AKA:** RAUL VIDRIO

Attorneys:
**DEF ATTY:** NATHANIEL SHAFER
**DEF ATTY:** BRIAN FREES
**PLA ATTY:** BREE MILLER
**PLA ATTY:** KENTON BECKSTEAD
**PLA ATTY:** EMILY PAULOS
**PLA ATTY:** SIMARJIT GILL

Case # 251903941
9:00 AM -
**6/25/2026**
FOURTH FLOOR-W46

Judge/Commissioner:
JOEL FERRE
PRELIMINARY HEARING (SPEC SET)
State Felony

View courthouse address

| | | |
|---|---|---|
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - AGGRAVATED ASSAULT BY PRISONER WITH SERIOUS BODILY INJURY | 2024-06-30 |
| 1st Degree Felony | - POSSESSING WEAPON /AMMO /ESCAPE TOOL - OFFENDER/DETAINEE | 2024-06-30 |
| 2nd Degree Felony | - ASSAULT BY PRISONER | 2024-06-30 |

OTN:
Citation: #

LEA: SBI #SBI 232400288
Prosecuting Agency: C18 #25.005676

Sheriff: #395371

*** WARRANT ISSUED ***

View all hearings for this case within the next 30 days

© 2017-2026 Utah Courts

Privacy Policy | Contact Information | Website Comments

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 113**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**FORENSIC SCRUTINY REPORT ON SIGNED DISCOVERY ORDER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Forensic Scrutiny Report of the June 25, 2026 Discovery Order, detailing chronology, signature stamp metadata, and character corruption.***

SHA-256 : bc4636acc802ae125e6d238bec79ddda17042f222e288a11c99bc31d724ef94b
SHA3-512: 7a1c7d67a81bfdb244a19e71e800d0ee6a57b688b7f6f334efcc1e4d088335cd...
BLAKE3 : f9d38ba9b66591b402da7a6f81ee707b97d8fb51ad3702ce34ad2986056a1684

**EXHIBIT 113**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<113<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

# EXHIBIT 103: SIGNED DISCOVERY ORDER — FORENSIC SCRUTINY REPORT

CASE NO. 260903520 | THIRD JUDICIAL DISTRICT COURT, STATE OF UTAH

**CASE NO:** #260903520 (USTC) **SUBJECT:** Order on Discovery Issues — June 25, 2026 **SOURCE:** Forensic Scrutiny Report

## 1. THE SIGNED ORDER'S SYSTEM PARADOXES (FLOWCHART)




## 2. CHRONOLOGY OF THE SIGNED ORDER (IMMEDIATE RUBBER-STAMPING)

- **09:00 AM** — **Judge Ferre begins presiding over felony prelim hearing** (State v. Vidrio — 4 First-Degree Felonies, 1 Second-Degree Felony)
- **09:22 AM** — **Petitioner transmits 102-page Objection to the Court** (Detailed technical civil filing with evidentiary exhibits)
- **01:22 PM** — **Judicial Assistant confirms: "Received and filed"** (Objection officially docketed in Case No. 260903520)
- **05:00 PM** — **Discovery response deadline expires — Respondents DEFAULT** (State failed to serve any responses or objections to discovery requests)
- **05:29 PM** — **Judge Ferre signs the State's pre-drafted Order** (Order quashes ALL discovery and subpoenas — signed 29m AFTER default)
- **05:30 PM** — **Notice of Electronic Filing (NEF) generated** (Petitioner EXCLUDED from electronic service — never notified)

**WHAT THIS MEANS:** Judge Ferre was presiding over a complex felony hearing all day. The Petitioner's 102-page Objection was filed at 1:22 PM. The order was signed at 5:29 PM — just 4 hours and 7 minutes later — while the judge was still on the bench. It is physically impossible for the judge to have read and considered this filing. The order was signed 29 minutes AFTER the State's own discovery deadline had already expired and they were in default.

**WRONG DATE — COPIED FROM STATE'S DRAFT:** The order also states the State's filing was "filed on June 16, 2026" — but it was actually filed June 18, 2026. June 16 was merely the date of an email. The court copied this wrong date verbatim from the State's own draft, proving no independent review occurred.

## 3. PHASE 1 — PRE-FILING BIAS & ADA TEXT ERASURE

### A. ADA Accommodation Deception

The State's attorneys selectively whited out and deleted references to the Petitioner's cognitive disabilities from his email before scanning it as an exhibit for the court.

**ORIGINAL EMAIL FROM PETITIONER**

`"...to accommodate pre-existing, state-certified cognitive disabilities:"`

**STATE'S SUBMITTED EXHIBIT (REDACTED)**

`"...to accommodate pre-existing, state-certified [BLANK SPACE]"`

### B. Proposed Order Double Standard

The court clerk enforced formatting rules differently: explicitly rejecting the Petitioner's proposed order while routing the State's proposed order straight to the judge.

**Petitioner Proposed Order: REJECTED**

`Walker: "The proposed order cannot have the word 'proposed' in the title."`

**State Proposed Order: ACCEPTED & SIGNED**

`Walker: Accepted immediately with '[PROPOSED ORDER]' title intact.`

**WHAT THIS MEANS:** SUMMARY: The State's attorneys deleted cognitive disability text to hide the Petitioner's ADA accommodation requests. At the same time, the clerk's office applied formatting rules as a double standard, obstructing the pro se Petitioner while waiving the State's errors through.

## 4. PHASE 2 — FILING DAY & COURT SYSTEM CORRUPTIONS

### A. Clerk Docketing Misclassification

The clerk's office mislabeled the Petitioner's primary evidentiary Declaration under the title 'Certificate of Service', effectively hiding the evidence from the public record.

**CLERK SYSTEM DOCKET ENTRY MISCLASSIFICATION**

**Docketed Title: "Certificate of Service" (Concealed from Court)**

### B. PDF Text Layer Corruption & Google Docs Compiler

The court's automated system corrupted the text layer by replacing '[PROPOSED' in the title with 'fRPROROSED'. Google Docs metadata shows it was compiled on a Google platform.

```
Original: [PROPOSED ORDER ON DISCOVERY ISSUES]
Mangled: fRPROROSED-ORDER ON DISCOVERY ISSUES}
```

### C. Notice of Electronic Filing (NEF) E-Service Exclusion

The official court NEF logs confirm that the Petitioner was completely excluded from electronic service of the signed order, receiving no notice of the court's action.

**OFFICIAL COURT NEF LOG EXCLUSION**

**Name: JOHN EARLE SULLIVAN | Method: Traditional (Physical) Mail Required**

**WHAT THIS MEANS:** SUMMARY: The court system automatically mangled the PDF title during electronic rubber-stamping, while the clerk's office mislabeled and concealed the Petitioner's evidence. The NEF system then blocked electronic notice, keeping the Petitioner in the dark about the signed order.

## 5. PHASE 3 — POST-FILING HASH CHANGES & SYSTEM MAINTENANCE

### A. Portal-Wide Evidence Degradation

The court's portal automatically degraded submitted evidence, compressing the Petitioner's Objection by 86.1% and flattening critical image screenshots of the Utah server deletions.

15.9 MB

2.2 MB (86.1% DEGRADATION)

### B. Post-Filing Cryptographic Fingerprint Changes

Database operators modified the Petitioner's sealed Mandamus Petition and Case History five separate times on June 26-27, changing their secure cryptographic hashes.

**UNAUTHORIZED BACKEND MODIFICATIONS LOG**

```
1. June 26, 08:26 AM | Cryptographic Hash Replaced
2. June 26, 09:03 AM | Binary PDF Stream Altered
3. June 27, 09:02 AM | Hash Modified (Second Node)
4. June 27, 09:15 AM | Binary Stream Recompressed
```

### C. Emergency 'System Maintenance' Downtime

Immediately following these backend file changes, the portal posted a weekend system downtime notice on late Friday afternoon, giving users less than 12.5 hours of notice.

**PORTAL EMERGENCY SYSTEM MAINTENANCE ANNOUNCEMENT**

`Announced: June 26 at 05:06 PM | Downtime Window: June 27 at 05:30 AM (Lead Time: < 12.5 Hrs)`

**WHAT THIS MEANS:** SUMMARY: Database operators altered filed legal documents and swapped cryptographic hashes on the server, then set up an emergency scheduled downtime window to cover the alterations under standard portal maintenance.

**Observation:** The signed Discovery Order of June 25, 2026 exhibits eight distinct forensic anomalies spanning PDF corruption, timeline impossibility, service failures, evidence degradation, ADA deception, and unauthorized post-filing document alteration. Each anomaly independently undermines the integrity of the order.

**Technical Analysis:** The order is the only document out of 64 case filings compiled via Google Docs. The judge was presiding over a felony hearing when it was signed. The court's automated system corrupted the title text. The Petitioner was excluded from electronic notice. The State's attorneys physically redacted ADA disability language from exhibits.

**Forensic Conclusion:** The cumulative forensic evidence establishes that this order was not the product of independent judicial review. It was a pre-drafted document prepared by the State's attorneys, processed by an automated system that corrupted it, and rubber-stamped by a judge who was physically unable to have reviewed the Petitioner's objection.

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 117**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**DWS EVIDENCE OF IMPAIRMENT**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Official Utah Department of W [redacted] vidence of Impairment Form signed by clinical psychologis [redacted] ertifying Plaintiff's severe cognitive and psychological impairments.***

SHA-256 : 0bfae1ff876d8ce7c652f85fdc3cd3242651f1bdb5241b84fc2798fbca09691f
SHA3-512: b093cb1ef075b3c790f0de18e4deb871cc16c0ca6d5834a21c9ece30aa5a6001...
BLAKE3 : cab7763b55652dc9151eaeeab6a7512f4b2d912fd28b91f5802a698a197e97a0

**EXHIBIT 117**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<117<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

DWS-ESD 1GA
Rev. 03/21

State of Utah
[redacted] Workforce Services
**Evidence of Impairment**

J SULLIVAN

**Name:** Sullivan (Last) John (First) Earle (Middle)

[redacted] **Case#** [redacted] **Date of Birth**: [redacted]94

[redacted]tion: I hereby autho[redacted]sician or other health car[redacted]s) to release to the Department of Workforce Services (DWS) any information concerning my health condition as it may relate to participation in employment related activities.

*Applicant Signature* 06/29/2026 *Date*

| **Information and Instructions:** ***To Be Completed By Treating Health Care Provider*** |
|---|
| You are being asked to complete this form in an effort to help us determine how we can best serve the needs of this customer. We are asking for your professional judgment in regard to the severity of the patient's condition and the potential for this condition to be temporary or permanent. **This information may also be used to determine appropriateness for client's pursuit of Social Security disability income or return back into the workforce.** |
| An Administrative Billing Form (Form 22) should accompany this medical report to facilitate payment. (Exception: The Veterans Administration Medical Center (VAMC) does not require a Form 22.) |
| **Please use a black pen to complete form.** |

1. Date of Service: 6/25/2026
2. Please list **ALL** diagnosis(es)/condition(s) being treated:
   [redacted]
3. How was the diagnosis(es)/condition(s) determined (lab tests, x-ray, history, etc.)?
   History and clinical assessment
4. What was the onset date of this condition? [redacted]
5. Do you find this individual is totally and seve[redacted]
   ***OCCUPATION*** due to a physical and/or mental impairment? ☒ Yes ☐ No
6. Explain how this diagnosis(es)/condition prevents the patient from working in ***ANY OCCUPATION***:
   [redacted]
7. From the date of today's evaluation, how long is the patient's inability to work expected to last?
   ☐ Less than 2 mo ☐ 2 mo ☐ 3 mo ☐ 4 mo ☐ 5 mo ☐ 6 mo ☒ 12 months or longer

Patient Account Number: [redacted]

***MUST BE SIGNED BY A LICENSED***: ☒ MD ☐ DO ☐ APRN ☐ PA ☐ Licensed Mental Health Therapist

Name (please print): [redacted] Phone#: [redacted]

Treatment [redacted]dress: [redacted] 300 [redacted]

***Signature:*** [redacted] 6/25/2026

| **Please Fax *or* Mail Completed Form To:** | |
|---|---|
| **Fax#:** 801-526-9500 | **Address:** Imaging Operations<br>P.O. Box 143245<br>Salt Lake City, Utah 84114-3245 |

***Equal Opportunity Employer/Program***
Auxiliary aids (accommodations) and services are available upon request to individuals with disabilities by callin[redacted]s who are deaf, hard of hearing, or have speech impairments may call Relay Utah by dialing 711. Spanish Rela[redacted]

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 118**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**GOOGLE LLC SUBPOENA OBJECTION LETTER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Formal objection letter transmitted by Google LLC Legal Investigations Support on July 2, 2026, objecting to third-party discovery and directing Petitioner to seek ESI directly from the party opponent under Rule 34.***

SHA-256 : c29b7708e74a64bd7d1b9ae863e32860a5c42b6299dac88bc5c8cd8925b2b587
SHA3-512: f8e566bf7efe0446fa7d40bcb850d7aa1f5caef71bf4d26edcd072b0537883a7...
BLAKE3 : 947ad34130c30191ccc47b44f96be46986bee9bcf2cfa66d1c353ca6baebde00

**EXHIBIT 118**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<118<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

google-legal-support@google.com
www.google.com

July 2, 2026

[redacted]

John E. Sullivan

[redacted]

**Re: *John Earle Sullivan v. Utah State Tax Commission, et al.*, Third Judicial District Court for the State of Utah, Salt Lake County, 260903520 (Internal Ref. No. 141899733)**

Dear John E. Sullivan:

Google LLC ("Google"), a non-party to your litigation, has received your subpoena, dated June 04, 2026, in the above-referenced matter (the "Subpoena"). As we understand it, your Subpoena requests documents or testimony related to the purported Google accounts outlined in your Subpoena.

Without waiving our objections, Google may be willing to produce responsive non-content data, to the extent it exists and is available. Any productions made by Google are subject to the objections and limitations set forth below. Google further hereby makes the following objections to the Subpoena.

**Jurisdiction**

Google objects to the Subpoena to the extent that it has been issued by a court without subpoena power over non-party Google, and has not been properly domesticated in California as required by Cal. Civ. Proc. Code §§ 2029.100, *et seq*, see also the Uniform Interstate Depositions and Discovery Act ("UIDDA"). Subpoena power over a non-party does not extend beyond state lines, and Google is headquartered in California and documents and information regarding its business are retrievable and will be produced only from its headquarters in Santa Clara County, California. Accordingly, Google accepts and responds to subpoenas issued from Santa Clara Superior Court and properly served upon Google, or the appropriate office of Google's registered agent, Corporation Service Company (CSC) (*see* https://support.google.com/faqs/answer/6151275?hl=en). California law provides a mechanism for obtaining a subpoena from a California court for use in judicial proceedings pending in other state court jurisdictions. *See* Cal. Civil Proc. Code § 2029.100 *et seq*.

**GIL Entity**

To the extent that a Google account you are requesting information for, relates to services provided by Google Ireland Limited (GIL), which is incorporated in Ireland and which operates under Irish law, Google objects to those requests. In order to provide the information related to accounts whose services are provided by Google Ireland Limited, Google requires binding legal

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

google-legal-support@google.com
www.google.com

process issued by an Irish court or under Irish law which must be validly served on Google Ireland.

**Request for Google Workspace User(s)**

To the extent that your request implicates a Google Workspace account, Google objects to the Subpoena because the appropriate entity to whom you should direct your request is the owner of the Workspace domain. The owner of the domain has custody and control over data associated with their domain, and accordingly legal process seeking such data should be directed towards the owner of the Workspace account. If you are seeking content related to a Google Workspace account, you have several options at your disposal as to how you can lawfully obtain this information:

1. You can ask the administrator for the content. The administrator can find instructions for downloading the organization's data at https://support.google.com/a/answer/100458.
2. Google users can obtain and produce their account content themselves by using Google Takeout, available at www.google.com/takeout/; or
3. You can request a court to order the administrator to comply with #1.

**Insufficient Information**

If there is limited information provided in the Subpoena such as the lack of proper and reliable identifiers, date ranges or proper names, Google objects to the Subpoena because it is unable to determine whether there is a relevant account in our records. Google cannot respond to the subpoena if it fails to sufficiently identify a Google account. Google has hundreds of millions of users, making it impossible to ensure that searches based on proper name, company name, birthday, social security number, presumed location, or similar information accurately identify the correct records.

**Service**

Google objects to the Subpoena to the extent it was improperly served. *See* Cal. Civ. Proc. Code § 2029.400; Fed. R. Civ. P. § 45(b)(1).

**User Notification**

Google objects to the Subpoena to the extent it fails to allow sufficient time for Google to notify the affected user and for the user to assert his or her rights in response. Google provides its users at least 21 days to object to your request or to inform Google of their intent to file a motion to quash. If your subpoena sufficiently identifies a Google account, Google intends to forward notice of this matter, including your name and contact information, to the user at the email address associated with the Google Account.

**First Amendment**

Google objects to the Subpoena to the extent that the Subpoena asks for Google to disclose the identity of Google users who posted certain reviews or certain content, which implicates the First Amendment rights of Google users to engage in anonymous speech. *Glassdoor, Inc. v. Superior Court*, 9 Cal. App. 5th 623 (Cal. Ct. App. 2017) (holding that online provider had

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

google-legal-support@google.com
www.google.com

standing to assert First Amendment objections to subpoena seeking to unmask anonymous users, and requiring a litigant to demonstrate a prima facie cause of action and provide evidence supporting its claim); *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1164-64 (Cal. App. Ct. 2008) (stating that "[s]peech on the Internet is...accorded First Amendment protection," and that, "[o]nce notified of a lawsuit by the website host or ISP, a defendant may then assert his or her First Amendment right to speak anonymously through an application for a protective order or...a motion to quash the subpoena."). California law requires a court to evaluate whether a plaintiff has made a prima facie showing of its cause of action before a plaintiff can compel a provider such as Google to disclose identifying information regarding an anonymous online speaker. *Glassdoor*, 9 Cal. App. 5th at 636 ("It is the court, not counsel, that must determine whether a prima facie showing of actionable statements has been made."). Litigants must further make "a showing of specific facts demonstrating discovery of [the Google users'] identities] [is] reasonably calculated to lead to the discovery of admissible evidence." *Digital Music News LLC v. Superior Court*, 226 Cal. App. 4th 216, 226 (2014), disapproved of on other grounds, *Williams v. Superior Court*, 3 Cal. 5th 531 (2017); *see also ZL Technologies, Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 617 (2017) (plaintiffs can obtain identifying information from a provider when a court determines discovery of a person's identity is "necessary" to pursue the claim). Although there is no indication you have done so, if a court has considered and imposed the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker, please provide us with a copy of any relevant documents. Moreover, please provide us with a copy of the plaintiff's complaint in this matter so that we can assess whether the plaintiff has or will be able to meet the First Amendment standard or demonstrate a compelling need for this discovery.

**Violation of Federal Law**

To the extent the Subpoena can be construed to include information we are prohibited from disclosing, Google objects on the grounds that Section 2702(a) of the federal Stored Communications Act ("SCA") prohibits Google from disclosing the content of electronic communications or content stored on behalf of the user, pursuant to a subpoena. The SCA prohibits Google from disclosing the content of electronic communications, including the headers for e-mails containing specific terms, pursuant to a subpoena. The production you seek would cause Google to disclose the presence or absence of communications containing specified content. A subpoena is not sufficient legal process for Google to disclose the existence of communications containing specific content. It is our position that this is a disclosure prohibited by the Stored Communications Act. 18 U.S.C. § 2702(a) *see e.g., Suzlon Energy Ltd. v. Microsoft Corp*, 671 F.3d 726, 730 (9th Cir. 2011); *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004); *Mintz v. Mark Bartelstein & Assocs.*, Inc. 885 F. Supp. 2d 987, 993-94 (C.D. Cal. 2012); *In re Subpoena Duces Tecum to AOL, LLC.*, 550 F.Supp.2d 606, 611 (E.D. Va. 2008); *Flagg v. City of Detroit*, 252 F.R.D. 346, 366 (E.D. Mich. 2008); *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008); *O'Grady v. Superior Court of Santa Clara*, 139 Cal. App. 4th 1423, 1441-43 (2006).

Instead, the appropriate way to seek such content is to direct your request to the account

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

google-legal-support@google.com
www.google.com

holder who has custody and control of the data in the account, is not bound by the SCA, and is the party to whom discovery requests should be directed. *Suzlon*, 671 F.3d 726, 730-31; *Mintz*, 885 F. Supp. 2d at 993-94; *O'Grady*, 139 Cal. App. 4th at 1446-47. If the account holder is a party to the underlying litigation, you may serve a document request on the account holder for the content sought. *See Mintz*, 885 F. Supp. 2d at 993-94; *O'Grady*, 13 Cal. App. 4th at 1446-67; *see also Flagg*, 252 F.R.D. at 348, 366-67. Google users can obtain and produce their account content themselves, or by using Google Takeout, available at www.google.com/takeout/.
To the extent you are seeking the production of content based on a signed consent form, Google objects to the request because Google is unable to verify that the person signing the form is the account owner.

Additionally, if the Subpoena seeks preservation of the contents related to a user's account, Google objects to the Subpoena on the grounds that it requests that Google preserve the content of electronic communications or content stored on behalf of the user. Preservation is for information that Google would ultimately be able to produce under the SCA.

**Authentication**

You do not need Google to authenticate any records. Google cannot authenticate the identity of the person who drafted or received a communication. Moreover, under California law, any of the following can authenticate the content in question: the owner of the account; any witness with knowledge; any participant to the communications; circumstantial evidence; or the person who collects the content for production. *See* Cal. Evid. Code § 1410 (No restriction on "the means by which a writing may be authenticated."); *id*. § 1421 (Writing can be authenticated by its contents.). The Court of Appeal has held that a printout of an online profile was sufficiently authenticated by the police investigator that downloaded the printout, noting that the "threshold authentication burden for admissibility is not to establish validity or negate falsity in a categorical fashion, but rather to make a showing on which the trier of fact reasonably could conclude the proffered writing is authentic." *People v. Valdez*, 201 Cal. App. 4th 1429, 1434-37 (2011). Thus, defendant, his or her authorized representative, a defense investigator, or any witness with knowledge are all proper parties to authenticate content, and authentication by Google is therefore unnecessary.

**Obligations of Parties to Litigation**

Google, a nonparty to the litigation objects to the subpoena because it would impose an undue burden to. *See* Fed. R. Civ. P. 45(d)(1). Provided that the account in question appears to belong to a party-opponent in the litigation, a third-party subpoena is not justified. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (upholding refusal to enforce subpoena issued to non-party where same documents were available from party opponent); *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996) ("If documents are available from a party," it is "preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness.") (internal alterations and citation omitted); *Musarra v. Digital Dish, Inc.*, No. 2:05-CV-545, 2008 WL 4758699, at *4 (S.D. Ohio Oct. 30, 2008) ("[T]he Court will not impose on this non-party the burden of producing documents presumably available to plaintiffs from a party to this litigation."); *Calcor Space Facility, Inc. v. Superior Court*, 53 Cal.

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

google-legal-support@google.com
www.google.com

App. 4th 216, 225 (1997) ("As between parties to litigation and nonparties, the burden of discovery should be placed on the latter only if the former do not possess the material sought to be discovered.").

To the extent these records are sought to verify the completeness or accuracy of discovery from a party to the litigation, the Federal Rules of Civil Procedure do not permit third-party subpoenas for hypothetical impeachment evidence. *See, e.g., Cusumano v. Microsoft Corp.*, 162 F.3d 708, 712 (1st Cir. 1998) (affirming the trial court's denial of a Rule 45 subpoena where the information was sought "for purposes akin to impeachment."); *Musarra*, 2008 WL 4758699, at *3-4 (rejecting plaintiff's request for non-party discovery to "compare[] and contrast[]" with defendants' production). If you have reason to suspect that another party has not complied with their discovery obligations, you have other means available that do not place an undue burden on a third party. For example, you can request that the other party produce account data while under supervision by the court or by a special master or obtain the services of an e-discovery consultant. *See, e.g., Seven Seas Cruises S. De R.L. v. V. Ships Leisure SAM*, No. 09-23411-CIV, 2011 WL 772855, at *7 (S.D. Fla. Feb. 19, 2011), report and recommendation adopted, No. 09-23411-CIV, 2011 WL 772902 (S.D. Fla. Feb. 28, 2011) (granting a motion to compel after finding that defendant's production contained significant gaps, and ordering defendant to "retain the services of a qualified third party E-Discovery consultant or vendor and perform a search."). *See also Logtale, Ltd. v. IKOR, Inc.*, No. C-11-05452 CW (DMR), 2013 WL 3967750, at *3 (N.D. Cal. July 31, 2013) (noting "obvious gaps and underproduction," and suggesting that, if there were "continuing problems. . . the court [would] order [defendants] to retain the services of an e-discovery vendor and . . . submit sworn, detailed declarations regarding their document preservation and collection efforts.").

**Deposition/Testimony**

Google objects to the Subpoena to the extent it calls for a deposition or testimony and does not intend to make a witness available on the requested date pursuant to its objections below.

1. Google objects on the grounds that the Subpoena imposes an undue burden on Google, a non-party. Google also objects on the grounds that the information sought can be obtained through less burdensome means, including from the parties to the case or through the production of documents in response to the Subpoena.
2. Google objects to the extent that the Subpoena is seeking testimony to authenticate records produced by Google. Such testimony is unnecessary and unduly burdensome as records can be authenticated by Certificate of Authenticity.
3. Google objects to the extent that the Subpoena calls for testimony more properly sought from an expert witness, including but not limited to testimony regarding how Google's products or services work.
4. Google objects on the grounds that the Subpoena is vague, overbroad, duplicative, cumulative, and oppressive. Google further objects to the extent the Subpoena is served for the purpose of annoying and harassing Google, a non-party.
5. Google objects on the grounds that the Subpoena demands that Google, a non-party, appear as a witness at its own expense. To the extent that Google appears as a witness pursuant to the Subpoena, Google shall only do so upon compensation allowed under

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

google-legal-support@google.com
www.google.com

applicable law for any costs, including attorney fees, related to the deposition.

6. Google objects to the time and place set by the Subpoena for the deposition. The time and place of the requested deposition was selected unilaterally, without consulting with Google about the availability of its witness(es) or its counsel. To the extent Google produces a witness to provide deposition testimony in response to the Subpoena, Google shall do so at a mutually agreeable time and place.
7. Google objects to any Topics to the extent they seek testimony regarding confidential financial, proprietary or trade secret information, or any information subject to a confidentiality agreement or protective order.
8. Google objects to the Topics to the extent it seeks testimony protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery.
9. Google objects to the Topics to the extent they seek testimony regarding information that is not within Google's knowledge.
10. Google objects to the Topics to the extent that they are vague, ambiguous, unlimited in time or scope, or fails to identify the testimony sought with reasonable particularity.
11. Google objects to the Topics to the extent they seek testimony regarding information that is not proportionate to the needs of the case, not relevant to any party's claims or defenses, or not reasonably calculated to lead to the discovery of admissible evidence.
12. Google objects to the Topics to the extent that they seek testimony or impose obligations beyond what is permissible under applicable law.

**Additional Objections**

1. Google objects to the Subpoena to the extent it seeks to impose an undue burden on a disinterested non-party. Google further objects to the Subpoena to the extent it seeks information already in a party's possession or available to a party from some other source (including public sources) that is more convenient, less burdensome or less expensive. Google objects to the Subpoena to the extent it seeks electronically stored information that is not reasonably accessible to Google.
2. Google objects to the Subpoena to the extent it seeks information that is not proportionate to the needs of the case, not relevant to any party's claims or defenses, or not reasonably calculated to lead to the discovery of admissible evidence.
3. Google objects to the Subpoena to the extent it specifies a date of production or date of deposition that is unreasonable and unduly burdensome, including because it may not afford Google time to provide sufficient notice to the user.
4. Google objects to the Subpoena to the extent that it is vague, ambiguous, unlimited in time or scope, or fails to identify the information sought with reasonable particularity. Accordingly, Google further objects to the Subpoena to the extent it purports to require Google to preserve the requested information. Therefore you should not assume that Google will undertake steps to preserve any information in response to your Subpoena. Google is willing to meet and confer to discuss any preservation request.
5. Google objects to the Subpoena to the extent it seeks to impose obligations on Google beyond what is permissible under applicable law.

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

google-legal-support@google.com
www.google.com

6. Google objects to the subpoena to the extent it seeks information in the possession, custody or control of any other entity besides Google LLC.
7. Google objects to the Subpoena to the extent it requests information created subsequent to the issuance of the legal process.
8. Non-party Google is located in Santa Clara County, California, which is also where Google resides. Google therefore objects to the Subpoena because it designates a place for compliance that is more than 100 miles from its headquarters. *See* Fed. R. Civ. P. 45(c)(2)(A).
9. Google also objects to the Subpoena to the extent it seeks information containing confidential financial, proprietary or trade secret information, or any information subject to a confidentiality agreement or protective order.
10. Google further objects to the Subpoena to the extent it seeks information protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery.

Google reserves the right to further object to the Subpoena in any additional response.

If you have any questions, please feel free to contact the undersigned at the Legal Support Department alias at GOOGLE-LEGAL-SUPPORT@GOOGLE.COM. Additionally, should you wish to seek any judicial relief in connection with this matter, Google requests the opportunity to meet and confer in advance of any such filing. Thank you.

Regards,

Google Legal Investigations Support

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 119**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**CANON COPIER FLAT SCANNED IMAGE CONTAINER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified copy of Respondent's Opposition to Petitioner's Various Motions (TRO Opposition), showing a scanned image-only container generated via Canon iR-ADV C5870 copier.***

SHA-256 : 484655dacb8b1ebdbf5d0303b869e600c5cfb9bfce4ce99298a6cba000698b61
SHA3-512: 5efde9f59d41ccf71a49ba1f72feaf18f39f3e3d09051cab4b35c55b8ccdf3b8...
BLAKE3 : 775bc2f92b1076196c36c5607f599b66e8f7e4332f3a2a9e7dad3474c9b2cce2

**EXHIBIT 119**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<119<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

Derek Brown
Utah Attorney General
Paul J. Dirkmaat #19508
Laron J. Lind #8334
Assistant Attorneys General
160 East 300 South, 5th Floor
P.O. Box 140874
Salt Lake City, Utah 84114-0874
Telephone: (801) 366-0375
pdirkmaat@agutah.gov
llind@agutah.gov

*Attorneys for Respondent Utah State Tax Commission*

**IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| JOHN EARLE SULLIVAN,<br><br>Petitioner,<br><br>vs.<br><br>UTAH STATE TAX COMMISSION, et al,<br><br>Respondent. | **RESPONDENT UTAH STATE TAX COMMISSION ET AL'S OPPOSITION TO PETITIONER'S VARIOUS MOTIONS**<br><br>Case No. 260903520<br><br>Judge Joel Ferre |

In the interest of judicial economy, and as Petitioner has filed five (5) motions alleging the same fact pattern, Utah State Tax Commission ("USTC") opposes the following motions in this opposition: (1) Petitioner's Motion for Temporary Restraining Order; (2) Petitioner's Motion for Writ of Mandamus; (3) Petitioner's Petition for Judicial Review; (4) Petitioner's Motion to Stay Administrative Proceedings and (5) Petitioner's Motion to Seal.

## I. Statement of Facts

Separately and unrelated to the current action, USTC adjusted Petitioner John E. Sullivan's Utah adjusted gross income for multiple past years, resulting in additional Utah income tax owed for tax years 2019-2022. For 2019, the Commission changed Petitioner's Utah return to match IRS information reflecting a federal adjusted gross income. For 2020-2022, the Commission issued non-filing estimates based on information from the IRS and other sources indicating taxable income, and issued Notices of Deficiency on March 5, 2026.

On March 26, 2026, Petitioner submitted a GRAMA request to the Tax Commission seeking eight categories of records, including GenTax case action logs and audit trails, algorithmic rules and SFR protocols, IRS information return data and GLDEP logs, identity-resolution records, internal communications, Qualtrics "XM Discover" outputs, STATS portal technical data, FiNS estimates, and third-party broker query returns (LexisNexis/Experian). On April 10, 2026, the Commission denied requests 1, 3, 5, 6, 7, and 8 as protected or as not "records" under GRAMA, denied request 4 under GRAMA protections and rule R861-1A-12, and denied request 2 based on federal tax confidentiality and related provisions. The denial also noted Petitioner's submitted TC-880 was not notarized and referenced taxpayer access via Taxpayer Access Point ("TAP"), an online system for taxpayers to access their own information and taxpayer services.

Petitioner appealed the denial to the Commission's Chief Administrative Officer, and on April 24, 2026 an administrative determination was issued affirming the April 10, 2026 denial and notice of further appeal rights. The April 10, 2026 access denial letter also reflected links to TAP and tax.utah.gov in the document.

On May 5, 2026, Petitioner filed in district court a petition for judicial review under GRAMA with requests for injunctive relief and preservation, and a separate motion for a TRO focused on preventing spoliation of GenTax and Virtru-related metadata.

Again, separately and unrelated to the current action, the Tax Commission scheduled an initial administrative hearing for Appeal No. 26-778 on July 20, 2026, with an evidence disclosure deadline of July 6, 2026.

On May 22, 2026, Petitioner moved in district court to stay the administrative hearing, asserting he needs the requested GRAMA materials to present evidence.

## II. This Court's Jurisdiction is Limited to Review of the GRAMA Request Denial.

Under Utah Code §63G-2-404, this Court has jurisdiction for a judicial review of USTC's denial of the GRAMA request. The jurisdiction of this Court is limited to review of the administrative decision.

In his filings, in addition to requesting judicial review of his GRAMA denial, Petitioner has attempted to litigate his tax appeal in this Court, (i) attempting to circumvent the administrative process before exhausting his administrative remedies and (ii) using the powers of this Court to serve burdensome and unreasonable discovery requests upon USTC, to circumvent the proper discovery process at the administrative level.

Petitioner has filed a Motion for a Temporary Restraining Order, a Motion for a Writ of Mandamus, and a Motion to Stay in the current proceeding, in addition to discovery requests. USTC will show that the Petitioner has not met his burden on each of these motions and that this Court is not the proper forum for these actions. Each of these actions are entirely unrelated to Petitioner's GRAMA request for judicial review and should be denied on jurisdictional grounds.

In the alternative, if the Court does find that it has jurisdiction over these pleadings, the Court should deny based on the following reasons.

## III. USTC Does Not Oppose Classifying the Record As Protected.

Court records are presumed public. UCJA 4-202.02(1). But the Court may classify records in ways that limit public disclosure. UCJA 4-202.02. Even though this case is only a GRAMA appeal, Plaintiff has made his tax returns, tax records, and tax appeals issues and parts of the record here. Tax returns and information obtained from tax returns are confidential. Utah Code §59-1-403. Administrative proceedings before USTC are also confidential. Utah Administrative Code, Rule R861-1A-12. Confidential tax records do not fall within the definition of sealed court records. *See* UCJA 4-202.02(3). They are also not private court records expect to they contain personally identifiable information. *See* UCJA 4-202.02(4) and (4)(L). The court records here may be protected court records because they regard a pending administrative action. UCJA 4-202.02(5)(J). While USTC's position remains that the Court should not consider any claims or issues here except the records access denial under GRAMA, if the Court is inclined to consider Plaintiff's other claims the court records should be protected.

## IV. Petitioner's Motion for a Temporary Restraining Order Fails the Four-Part Test in URCP 65A.

Utah Rules of Civil Procedure ("URCP") 65A(f) outline a framework for granting a temporary restraining order. Petitioner must show that: "(1) there is a substantial likelihood that the [Petitioner] will prevail on the merits of the underlying claim; (2) the [Petitioner] will suffer irreparable harm unless the order or injunction issues; (3) the threatened injury to the [Petitioner] outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined; and (4) the order or injunction, if issued, would not be adverse to the public interest."

An injunction may only be issued when all four factors are met. *Aquagen Int'l, Inc. v. Calrae Tr.*, 972 P.2d 411, 413 (Utah 1998).

Petitioner's entire pleadings argue against the issuance of a temporary restraining order. If the court's review is de novo, as it would be had he appropriately exhausted his administrative remedies and appealed to district court, then any procedural deficiency at the administrative level could be remedied in district court.

First, Petitioner has failed to show that he has a substantial likelihood of success on the merits of his underlying claim. As shown in Section VI of this opposition, Petitioner is not entitled to access these records and has not made a compelling case that such records should be released.

Second, Petitioner has failed to show that he will suffer irreparable harm. Petitioner states that it would cause him imminent and irreparable harm to attend hearing without metadata evidence. Ignoring for the moment the efficacy of arguing metadata and authorship when the issue before the administrative proceeding is the delinquency of tax payments, the hearing before the Commission is an initial hearing. Utah Code §63G-4-101, et seq, already has an administrative process set in law to allow taxpayers an opportunity to appeal. In an initial hearing, he can proffer evidence. At the administrative level, he can request a continuance of his hearing if he doesn't feel ready. If he doesn't like the decision of the initial hearing, then he has the right to appeal for a formal hearing. If he doesn't like the decision of the formal hearing, Utah Code then allows him to appeal to the district court.

But Petitioner must first exhaust his administrative remedies. Utah Code §63G-4-401(2) states, "[a] party may seek judicial review only after exhausting ***all*** administrative remedies

available." (Emphasis added.) Utah courts have held that a party must engage and complete each step of the available administrative process before seeking judicial review. *See Christensen v. Utah State Tax Comm'n*, 469 P.3d 962 (2020).

Third and fourth, both the balance of harms and public interest favor the orderly administrative adjudication process. Public interest is not served by allowing taxpayers to unilaterally halt administrative proceedings with spurious claims of government conspiracy.

Petitioner has failed to demonstrate any of these factors. Failing at even one of these factors is a fatal deficiency to the issuance of a temporary restraining order.

**V. Both Petitioner's Motion for a Writ of Mandamus and Petitioner's Motion to Stay Fail As There Exist Adequate Remedies at the Administrative Level.**

In both his Motion to Stay and his Motion for a Writ of Mandamus, Petitioner requests extraordinary relief. URCP 65B provides a framework for extraordinary relief, "[w]here no other plain, speedy and adequate remedy is available…" UT R. Civ. P. 65B(a). Utah Supreme Court has held that "the more extraordinary the relief the petitioner seeks, the more compelling the showing of entitlement to that relief should be." *Durbano v. Utah State Bar (In Re Durbano)*, 2019 UT 34, ¶ 29, 449 P.3d 24.

Petitioner has sought to stay the administrative proceedings and has requested a writ of mandamus compelling, among other requests, production of records. These do not amount to extraordinary circumstances. Both GRAMA and his underlying tax appeal have plain, speedy and adequate remedies set forth in statute. Petitioner is currently availing himself of such a remedy under Utah Code §63G-2 with his GRAMA appeal.

As to his tax appeal, there is a plain, speedy and adequate remedy at the administrative level under Utah Code §63G-4 which he has failed to appropriately engage. Again, and as

mentioned before, should he exhaust his administrative remedies, he would then have the option to appeal those decisions to district court.

URCP 65B(b)(5) allows this court to dismiss claims that it determines are frivolous. "On review of the petition…if for any other reason any claim in the petition shall appear frivolous on its face, the court shall forthwith issue an order dismissing the claim, stating that the claim is frivolous on its face and the reasons for this conclusion. The order need not state findings of fact or conclusions of law."[1]

Additionally, as to the Petitioner's Motion to Stay, under Utah Code §63G-4-405, "Parties ***shall*** petition the agency for a stay or other temporary remedies unless extraordinary circumstances require immediate judicial intervention." (Emphasis added.) This requirement is not discretionary, and as demonstrated above, Petitioner's case does not meet the exception provided as this is not an extraordinary circumstance. The proper venue for this action is at the administrative level.

## VI. Petitioner's Motion to Stay is Improper Because It Misquotes Statute and Rule

Petitioner makes several legal errors in his Motion to Stay. First, he argues that Rule 861-1A-33(B)(5) stands for the prospect that any proceedings he brings in this Court are "subject to active, ongoing settlement and judicial redetermination proceedings" and therefore strips the administrative tribunal of jurisdiction. In reality, the rule is designated for a "settlement

---

[1] Petitioner also claims in this motion that USTC's Answer is deficient thereby effectively admitting all allegations and that the filing of such an answer is sanctionable under Rule 11 against Assistant Attorney Generals Paul J. Dirkmaat and Laron J. Lind. USTC properly denied all allegations under URCP 8, beginning with a general denial in paragraph 1 of its answer. USTC has not defaulted nor have the attorneys in this matter conducted themselves in a manner meriting Rule 11 sanctions. Contrary to Petitioner's assertions, denials apply to the allegations in the petition.

agreement in writing and executed by each party or each party's legal representative." See R861-1A-33(B)(3).

Petitioner also argues that Rule 861-1A-27(1) is applicable before this Court, but that rule governs discovery within formal adjudicative proceedings before the USTC, not discovery in this Court. Petitioner also argues for anticipatory claim preclusion but does not cite any authority for this Court to do so.

The claims in these motions feel analogous to those in *Crain v. Commissioner*, 737 F.2d 1417 (5th Cir. 1984), which held that there is "no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit."

**VII. Petitioner's GRAMA Request was Properly Denied for Reasons Stated Explicitly in Statute and Rule.**

In his GRAMA request, Petitioner made 8 disparate requests for documents, summarized as follows: (1) GenTax System Architecture & Case Action Logs; (2) Federal Tax information; (3) Taxpayer Identity Resolution Logs; (4) Internal Communications re Petitioner's audit case file; (5) Semantic Intelligence and sentiment analysis logs (Qualtrics XM Discover); (6) STATS Portal Technical Data; (7) Fiscal Note System Impact Data; and (8) Third-Party Identity Broker Data.

In its response to these requests, USTC denied Petitioner's requests. The requested records are either (i) available to Petitioner through TAP, as he was referred to by USTC, (ii) do not qualify as records under GRAMA, (iii) do not exist and USTC has no legal obligation to create them, (iv) are protected by state statute and administrative rule, or (v) belong to other entities. As evidenced by the bevy of motions filed before this Court and Petitioner's Motion to

Stay, Petitioner is attempting to use GRAMA here to seek information for his USTC tax appeal and circumvent the administrative process entirely. This Court should uphold the records access denial. Applicable laws and public policy favor protection of the records sought that are not publicly available and disfavor disclosure.

First, where Petitioner would like to request his own tax records, he may do so via TAP, by submitting a properly endorsed and notarized Form TC-880. USTC has informed him of his rights to access documents via TAP and his rights to seek information from the Internal Revenue Service.

Second, to the extent Petitioner seeks data regarding software that is used by USTC including proprietary commercial information and proprietary software belonging to GenTax, Qualtrics, or other entities, such data also does not qualify as a record under Utah Code §63G-2-103(b).

Third, to the extent that Petitioner seeks metadata and other data relating to proprietary software used by USTC, USTC is unable to provide such records in their native format, and any provision of such data would require the creation and compilation of a record, which is not a requirement for USTC to provide. *See* Utah Code §63G-2-201(8).

Fourth, tax records belonging to other individuals are confidential under Utah Code §59-1-403. As such, records pertaining to other taxpayers were also appropriately denied. Furthermore, USTC's audit records and operational procedures are confidential under Utah Administrative Code, Rule R861-1A-12 or protected by GRAMA at Utah Code §63G-2-201 and 63G-2-305(2), (10), and (15). Protected records also include "records and audit workpapers that identify audit, collection, and operational procedures and methods used by the Utah State Tax

Commission, if disclosure would interfere with audits or collections." *See* Utah Code §63G-2-305(15). See also *Tax Analysts v. Utah State Tax Comm'n*, Government Records Office Decision and Order 18-17. GRAMA also protects "records created or maintained for civil, criminal, or administrative enforcement purposes or audit purposes, or for discipline, licensing, certification, or registration purposes…" *See* Utah Code §63G-2-305(10).

To the extent the request includes records, many of these records also fall into the protected class enumerated by Utah Code §63G-2-305(12), "records the disclosure of which would jeopardize the security or safety of governmental property, governmental programs, or governmental recordkeeping systems from damage, theft, or other appropriation or use contrary to law or public policy."

Finally, for some of the requests, the records requested are not USTC's records. For Request 2, pursuant to Utah Code §63G-2-206(7), Federal Tax Information is governed by federal regulations which supersede GRAMA including 26 U.S.C. §6103. Should Petitioner still like to review this information, he may file a Freedom of Information Act request with the Internal Review Service or otherwise request his documents from the IRS.

For Request 6, STATS refers to "Statewide Tax Administration and Technology Solutions," a portal operated and maintained by the Utah Association of Counties. USTC does not have access to these records. For Request 7, these records belong to the Utah Legislature, not USTC. In each of these instances, Petitioner may file a GRAMA request from those entities. Each of these categories was properly denied.

Petitioner has also claimed that USTC has deleted documents and has filed among his motions, a demand for spoliation sanctions. Sanctions are unwarranted here because (i) Petitioner

has provided no evidence that actual spoliation has occurred, and (ii) Petitioner has not established that a duty to preserve actually attached at the time of his GRAMA request. A GRAMA request is not the commencement of litigation, and therefore does not trigger a litigation-hold obligation under URCP 37(e). A date discrepancy in the metadata of a document from USTC is not evidence of fabrication of government records. Using a prior document as a letterhead template to draft a new Commission Affirmation of denial does not mean USTC is fabricating evidence. This accusation is specious on its face.

Further, any accusations that Ms. Herring did not fulfill her duties as Chief Administrative Officer in denying the request are equally unfounded. Ms. Herring executed the letter confirming the denial. Petitioner's accusations that another employee (Randolph Prawitt) denied his claim and usurped Ms. Herring's position are unfounded. His name found in the metadata of a document does not equate to his authoring the denial or his unlicensed practice of law. Mr. Prawitt drafted the letterhead upon which Ms. Herring's confirmation was typed. Again, this accusation is spurious on its face.

Petitioner's request to have USTC employees be subject to criminal penalties is spurious and fail as a matter of law. As Petitioner points out, Utah Code §63G-2-801(3)(a) states, "A public employee who intentionally refuse to release a record, the disclosure of which the employee knows is required by law, is guilty of a class B misdemeanor." Here, the release of these records is not required by law. Moreover, Petitioner fails to cite part (b) of that Section, which states, "It is a defense to prosecution under Subsection (3)(a) that the public employee's failure to release the record was based on a good faith belief that the public employee was acting in accordance with the requirements of law."

## CONCLUSION

This Court should affirm the access denial and dismiss Petitioner's appeal.

In addition, the Court should deny each of the following motions filed by Petitioner: (1) Petitioner's Motion for Temporary Restraining Order; (2) Petitioner's Motion for Writ of Mandamus; (3) Petitioner's Petition for Judicial Review; and (4) Petitioner's Motion to Stay Administrative Proceedings.

DATED this 29th day of May 2026.

Derek Brown
Utah Attorney General

***/s/ Paul J. Dirkmaat***
Paul J. Dirkmaat
Laron J. Lind
Assistant Attorneys General
*Attorneys for the Utah State Tax Commission*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of May 2026, I caused a copy of the RESPONDENT UTAH STATE TAX COMMISSION ET AL'S OPPOSITION TO PETITIONER'S VARIOUS MOTIONS to be sent via electronic mail and U.S. Mail, postage prepaid, to the following:

John Earle Sullivan
[redacted]
Email: [redacted]

***/s/ Sherry Snow***
Paralegal

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 120**

CORD CONTEXT

**DW [redacted] PPROVAL LETTER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***State of Utah Department of Workforce Service [redacted] pproval Letter (Case No. 15642907), dated May 2, 2026, establishing Petitioner's eligibility for means-tested public assistance.***

SHA-256 : 89b7e2acc63417033aa4f8998c22bd4746188e0256af75a888fb3815c0c0890e
SHA3-512: 7abe8396cd14dfcf18633fc56a3bb9b9aac390d8dcc631a956c72050e0b52fc1...
BLAKE3 : be3f1fa7edcca5480316be2989048b549aa64c267f2cfbdda9b7478a424258ba

**EXHIBIT 120**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<120<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

[redacted]T 84043

FIRST-CLASS
AUTO LETTER

US POSTAGE PITNEY BOWES

ZIP 84116 $ 000.59[3]
02 7W
0008027417 APR 29 2026

RETURN SERVICE REQUESTED

JOHN E SULLIVAN
[redacted]

005 BTCQS5B 84074

**Equal Opportunity Employer/Program**

Auxiliary aids and services are available upon request to individuals with disabilities by calling [redacted] Individuals who are deaf, hard of hearing, or have speech impairments may call Relay Utah by dialing 711. Spanish Relay Utah [redacted]

1101000000

[redacted]T 84043

State of Utah

SPENCER J. COX
*Governor*

DEIDRE HENDERSON
*Lieutenant Governor*

**Department of Workforce Services**

CASEY R. CAMERON
*Executive Director*

REBECCA BANNER
*Deputy Director*

KEVIN BURT
*Deputy Director*

GREG PARAS
*Deputy Director*

JOHN E SULLIVAN
[redacted]

April 24, 2026

JOHN E SULLIVAN

You have been approved fo[redacted]nancial benefits and assigned to the[redacted]hort-Term Track.

[redacted]ffers time limited financial assistance to adults without dependent children who [redacted]that prevents them from working.

[redacted]ustomers who have provided medical evid[redacted]f an impairment that is expected to last at least 60 [redacted], but less than 12 months ar[redacted]ned to the[redacted]hort-Term Track. Customers on this track may be eligible for up to 6 months o[redacted]nancial assistance within a 12 month period, not to exceed 12 months of benefits in a 60 month period.

Benefits for the[redacted]nancial program are effective the first day of the month following the month of a[redacted]ll not be paid based on the date of application.

Customers assigned to the[redacted]hort-Term Track are not required to meet with an employment counselor to negotiate an employment plan. However, all[redacted]ecipients are required to apply for any other services they may be eligible for, such as Veterans [redacted]s, Workers Compensation, etc.

If you are pursuing long term disability benefits through the Social Securit[redacted]ion, you must sign an Agreement to Repay Interim Assistance (Form 75). Please call the[redacted]eam at the numbers listed below and a form will be sent to you.

If you disagree with an agency action, you have the right to work on an agreeable solution. This may include asking for an agency conference and/or a Fair Hearing.

If you have additional questions about the[redacted]rogram, please call[redacted]

Sincerely,

[redacted]

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 121**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**DTS AND USTC AI PILOT PROJECT REPORT**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Department of Government Operations, Division of Technology Services & Utah State Tax Commission AI Pilot Project Report (July 2024 - February 2025).***

SHA-256 : cececd8533de7130c1bf92651be3942167ab27d4d3ece023f3339d747a9f7a59
SHA3-512: 07c91a09ee438db40a4b6b66f690e968f4f3f81d63c03cc927c654e99e3ad3a8...
BLAKE3 : b2a11d552aae775a72028f5a7163a0aa62a586bf85919054279e8a061db43cdd

**EXHIBIT 121**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<121<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

# UTAH STATE TAX COMMISSION AI PILOT




Department of Government Operations, Division of Technology Services

Utah State Tax Commission, Income Tax Division, Motor Vehicle Division

Category: Artificial Intelligence

July 2024 - February 2025

Alan Fuller
Chief Information Officer
alanfuller@utah.gov
(801) 967-4603

Stephanie Weteling
Public Information Officer
stephanie@utah.gov
(435) 720-5315

The Utah Tax AI Pilot project, conducted from July 2024 through February 2025, evaluated the use of generative AI within the Utah State Tax Commission. The project's overriding purpose was to determine whether generative AI can output trustworthy, accurate, and consistent responses.

The project consisted of a unique "bake off" between four different vendor platforms across two phases. Vendor solutions demonstrated significant improvement in AI response accuracy from Phase I (73%) to Phase II (97%), leading to the current deployment of a production solution for the Tax Commission.

Additionally, the pilot project resulted in the creation of the State of Utah Division of Technology Services (DTS) AI Factory, streamlining future AI implementations within state agencies and across the enterprise. Importantly, lessons learned from the pilot are preparing DTS for citizen-facing generative AI solution pilots within the 2025 calendar year.

# IDEA

## Problem or opportunity addressed

ChatGPT introduced generative AI to the world in November 2022. Since then, individuals and organizations have explored ways to harness the power of this once-in-a-generation technology to increase efficiency, improve quality, ensure compliance, and enhance decision-making.

However, generative AI has a fundamental weakness: hallucination. DTS designed the Tax AI pilot to rigorously evaluate whether RAG-based generative AI solutions could meet the high standards of accuracy and reliability required by the Utah State Tax Commission specifically, and by extension, the State of Utah.

## Why it matters

Trust is paramount for government operations, and the potential for generative AI models to hallucinate poses significant risks. Relying on inaccurate AI-generated information could negatively impact residents and erode public trust in government agencies.

That being said, the promise of generative AI deserves exploration. Utah executive branch agencies are entering into a period of financial austerity and uncertainty. If generative AI can live up to its potential, it could help agencies deliver essential services more efficiently while enhancing constituent experience.

## What makes it different

The Utah Tax AI project was unique in its competitive "bake-off" approach, simultaneously evaluating multiple vendor platforms rather than a single solution. This approach brought the following benefits:

| | |
|---|---|
| **Direct comparative analysis** | Instead of testing one vendor's capabilities in isolation, Utah designed the pilot to directly compare how different generative AI solutions performed using the same grounding data and the same set of test questions. |
| **Data-driven decision making** | Key metrics like accuracy, consistency, cost, ease of implementation, and handling of guardrails were evaluated across all platforms. This provided a much richer dataset for decision-making than a single-vendor pilot could offer. |
| **Identifying the optimal fit** | By testing multiple options concurrently, Utah could objectively determine which platform and underlying models offered the best balance of performance (accuracy, reliability) and cost for the specific Tax Commission use case. |
| **Vendor-agnostic learning** | The pilot provided broader insights into the state of RAG technology across the market, rather than just deep knowledge of one specific ecosystem. It |

| | |
|---|---|
| | addressed key questions around data ingestion, model selection, prompt engineering, response formatting, integration, latency, and deployment. |

## What makes it universal

The Utah Tax AI project addresses fundamental challenges shared by most state governments concerning generative AI, aligned with CIO priorities identified in the 2024 NASCIO survey:

| | |
|---|---|
| **Priority #1 Cybersecurity and Risk Management** | **Cybersecurity & Risk Management**<br>Utah's pilot assessed how well different platforms adhered to guardrails and provided accurate, non-harmful responses, which relates directly to the universal priority of managing AI cybersecurity and technological risks. |
| **Priority #2 AI/ML/RPA** | **Evaluating AI trustworthiness**<br>The core question Utah tackled – *Can we trust generative AI with RAG to provide accurate answers for government work?* – is universal. |
| **Priority #3 Digital Government / Digital Services** | **Improving government efficiency and services**<br>The Utah Tax Commission aims to make call center agents more productive, a goal shared by agencies nationwide looking to enhance service delivery, reduce wait times, and manage workforce pressures. |
| **Priority #4 Data Management and Analytics** | **Data management and governance**<br>Ensuring data quality, managing updates, and deciding how to structure data sources are universal challenges for states implementing AI. |
| **Priority #6 Budget; #8 Cloud Services** | **Navigating vendor solutions**<br>States are often faced with multiple complex technology solutions from various vendors. Utah's approach offers a replicable strategy for any state evaluating AI technologies. |

# IMPLEMENTATION

## Roadmap

During the summer of 2024, Utah envisioned the concept of a "bake off" to help determine whether chatbots could viably support internal state agency operations. When considering agencies, the Utah State Tax Commission was identified as an ideal organization for the pilot. From a project management and coordination perspective, DTS oversaw the project. The project commenced in August 2024 and concluded by early October 2024. After the conclusion of the evaluation, Utah decided to add a second phase, as reflected in the project timeline below:



## Who was involved

DTS began meeting with vendors to gauge their interest in participating. Several were interested, as long as the process was equitable and transparent. DTS ensured all vendors received the same messaging, and proposed conducting blind testing to ensure all vendors were evaluated without bias.

Simultaneously, the DTS Director of AI engaged the Tax IT Director, who was instrumental in identifying and inviting key Tax Commission leaders and experts to participate. Tax nominated experts from the Income Tax Division as well as the Division of Motor Vehicles (DMV). Additionally, the DTS Cloud Hosting team was engaged to provision and configure environments as needed.

DTS prepared concise documentation outlining the project including proposed objectives, scope, timelines, roles and responsibilities, ensuring all parties involved had a common understanding of the project. Additionally, to secure support, the project was structured to minimize the level of effort required of the Tax / DMV experts and the Tax IT team.

## How we did it

### Phase I (August - October 2024)

An in-person project kick-off meeting with all vendors, DTS project team members, and Tax / DMV experts was held in late August 2024. All project elements were discussed and agreed upon by all parties.

The Tax / DMV experts provided 366 questions to be included in the pilot. To make it easier for vendors, the experts recommended using the publicly available tax.utah.gov and dmv.utah.gov subdomains as data sources for the pilot.

No DTS staff were experts in the generative AI platforms provided by the vendors for the pilot. Therefore, DTS asked vendors to manage their configurations directly, in their own environments. Each vendor was left to optimize their configuration as they saw fit.

To ensure transparency in testing, DTS requested direct access to vendor platforms to submit questions and retrieve responses. The DTS Director of AI imported questions into the platforms, downloaded responses, placed them into spreadsheets, and circulated them to the Tax / DMV experts for evaluation. This process saved Tax / DMV experts significant time and effort and removed the need for end-user training on the various platforms.

The Tax / DMV experts evaluated questions based on their areas of expertise and, for each question, scored them as follows:

- Ranked each vendor response from best to worst, assigning a 4 to the best and a 1 to the worst.
- Scored each response for accuracy:
  - 4 - equivalent or better than a knowledgeable human
  - 3 - accurate but perhaps missing some information (e.g., link to a source)
  - 2 - response contains inaccuracies
  - 1 - system did not answer the question

In addition, DTS conducted consistency testing to evaluate the similarity of responses over time and guardrail testing to evaluate how the solutions might handle inappropriate questions. Testing and evaluation took place during September and October 2024. DTS compiled and presented the results in a pilot debrief session held in mid October 2024.

### Phase II (November 2024 - February 2025)

The Tax / DMV experts were encouraged by the pilot results. However, the vendors believed they could improve on the Phase I scores. The decision was made in November to initiate a second (previously unplanned) phase of the pilot.

DTS hired two AI Analysts in September and October. For Phase II, it was recommended that the new DTS AI Analysts work closely with the vendors to further optimize their RAG solutions. This required configuring environments within the DTS technology stack.

Provisioning environments took longer than anticipated. Two of four vendors were able to provide credits and the DTS Cloud Hosting team was able to stand up dev environments in December 2024. The other two vendors needed more time, and their environments were finally provisioned and configured in February 2025. One of those proved quite challenging to configure to a minimally viable level of accuracy, and further testing was discontinued.

During that time, the AI Analysts conducted testing using a subset of questions from Phase I that were scored lower by the experts. The AI Analysts employed a range of techniques to evaluate responses. Tuning parameters and configurations were adjusted through multiple iterations in Phase II to maximize accuracy.

### Production deployment (March 2025 - present)

Analyses were concluded at the end of February 2025 and showed marked improvement. In March, the results were presented to DTS leadership along with a recommended vendor solution. The same were presented to Tax.

Tax was pleased with the results and agreed to move to a production solution. The Tax IT Director identified resources to support the deployment. As of this writing, production deployment is in progress.

# IMPACT

## What the project made better

The Tax AI pilot project proved that generative AI could be successfully used internally within the Tax Commission and, by extension, other state agencies.

### The story: from risk to reliability

Like many government agencies, the Tax Commission saw the potential for generative AI to help its approximately 200 call center agents become more effective. However, providing inaccurate or “hallucinated” tax information carries significant risks for residents and could erode public confidence.

The pilot directly confronted this uncertainty. Systematically testing multiple vendor solutions using RAG architecture grounded in Utah's specific tax knowledge base answered the fundamental question: Can this technology be trusted for government work?

The results demonstrated that, yes, with careful implementation, RAG can achieve high levels of accuracy. The pilot showed significant improvement through refinement, with average top-accuracy scores increasing from 61% in Phase I to 83% in Phase II. It identified viable, cost-effective platforms capable of meeting the Tax Commission's needs.

### Environment before and after the project

Prior to the Tax AI pilot, the Utah state government was uncertain whether generative AI solutions could produce trustworthy results. The pilot proved they could.

| **Before** | **After** |
|---|---|
| **High uncertainty**: Concerns about the reliability and safety of using generative AI for sensitive Tax / DMV queries. | **Demonstrated trustworthiness**: Specific RAG solutions, when properly configured and grounded, can achieve high accuracy and reliably answer questions. |

| | |
|---|---|
| **Lack of comparative data**: No empirical basis for comparing how different major AI platforms would perform using Tax Commission data and the RAG approach. | **Evidence-based platform choice**: Clear, comparative performance data across established vendors on accuracy, consistency, cost, and implementation complexity, leading to a specific recommendation and selection decision. |
| **Undefined path forward**: No clear, low-risk pathway to implement generative AI assistance for call center agents. Potential benefits were overshadowed by the risks. | **Viable implementation path**: Specific, tested approach and platform for moving forward with AI agent assistance, de-risking next steps, and serving as the foundation for the establishment of the DTS AI Factory. |
| **Unknown costs / ROI**: Difficulty in budgeting or justifying investment due to unknown implementation and operational costs. | **Budget clarity**: Concrete estimates of annual operational costs enabling informed financial planning. Favorable cost trends were noted from Phase I to Phase II as vendor business models evolved. |

## How we know

The Tax AI pilot project built confidence in the viability and trustworthiness of using RAG generative AI solutions, based on assessments conducted throughout its structured evaluation phases.

### Accuracy scores by phase

The following chart shows overall accuracy across all vendor solutions tested in both Phase I and Phase II. Responses rated as equivalent or better than a knowledgeable human increased from 61% in Phase I to 83% in Phase II. Responses rated as accurate (3s and 4s) increased from 73% to 97%.




Following Phase I, newer, better, and more cost-effective models and features have been introduced. DTS is working on further fine-tuning and configurations that may increase accuracy to 99%, well above the accuracy of the average call center agent.

### Guardrails by phase

The following chart shows improvement in guardrails and inappropriate prompt handling from Phase I to Phase II. Thirty cleverly worded prompts that the systems shouldn't answer were processed.




## Consistency

Delivering consistent responses over time can be challenging for generative AI. To that end, DTS conducted a range of consistency tests using the FuzzyWuzzy Python library, which offers several string comparison metrics, each tailored for different scenarios. The `ratio()` function computes the Levenshtein Distance, representing the minimum single-character edits needed to make two case-sensitive strings identical, and scales this to a 0-100 score. For situations where one string might be a substring of another, `partial_ratio()` identifies the best-matching substring. To disregard word order and case sensitivity, `token_sort_ratio()` sorts the words alphabetically and compares the lowercase strings. Finally, `token_set_ratio()` delivers a more resilient comparison by creating token sets, effectively ignoring duplicate words and word order, and then performing comparisons on these sets.

All vendors scored near or above 90 in the Token Set Ratio test, indicating a very high degree of similarity and a strong likelihood that strings share almost all the same important tokens.

| Platform | Ratio | Partial Ratio | Token Sort Ratio | Token Set Ratio |
|---|---|---|---|---|
| Vendor A | 79 | 78 | 84 | 91 |
| Vendor B | 78 | 78 | 87 | 92 |
| Vendor C | 78 | 78 | 85 | 89 |

## Return on investment

Generative AI has brought with it unprecedented speed of change, not just in the technology but also vendor business models and pricing plans. At the conclusion of Phase I, solution pricing varied greatly, from high five-figure to mid six-figure annual pricing for a production Tax AI agent assist solution. By the end of Phase II, vendor pricing averaged around $10,000 per year.

Furthermore, the level of effort from the agency business staff, agency IT team and enterprise IT resources to deliver and deploy RAG-based solutions is low compared to most application development projects. That being said, ROI was not a primary element of the project scope. Instead, the scope was to determine whether responses could be trusted.

# What now

The Tax AI pilot solution is currently deploying to production, where it will assist agents in quickly handling incoming resident queries. Moving forward, DTS is concentrating on four major initiatives spawned by the Tax AI pilot. First, preparing agencies for long-term maintenance of GenAI RAG solutions. Second, iterating the AI Factory to increase its efficiency and quality. Third, measuring the impact of generative AI solutions deployed both within specific agencies and at the enterprise level. And fourth, applying lessons learned from the Tax AI and other generative AI pilots to prepare for piloting citizen-facing solutions, beginning in late 2025.

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 122**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**USTC FY2026 STRATEGIC PLAN**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Utah State Tax Commission FY2026 Strategic Plan, documenting development of the AI-enabled tax system and electronic audit logs.***

SHA-256 : ed5e646bfdf30d4243a7d2eb54a5159a58841049dae3d20b3b4ca09cf66fe09b
SHA3-512: 9739bb60101859b7ed7879eb8ab21963f17b0ea8ba9b09bd634cf9597b05ffca...
BLAKE3 : b656a143771a0a22fde170b52193016fc205d3677403f80ca271026c40305805

**EXHIBIT 122**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<122<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

# Strategic Plan

## FY 2026 - 2029

UTAH STATE TAX COMMISSION
210 N 1950 W
Salt Lake City, UT 84134

tax.utah.gov



# CONTENTS


**3** Executive Summary

**4** Who We Are
- Duties & Functions
- Tax Commission Organization

**9** WHAT DRIVES US

**10** AGENCY GOAL ONE
- Make Compliance Easier by Promoting Innovation and Leveraging Technology.

**11** AGENCY GOAL TWO
- Enhance the Customer Experience

**13** AGENCY GOAL THREE
- Promote a Quality Work Environment and Sound Agency Leadership

**15** Work Plan

# EXECUTIVE SUMMARY



**TAX COMMISSION MISSION**

"Promote tax and motor vehicle law compliance."

Through his "Built Here – Second Term Strategic Plan," Governor Cox is committed to three goals centered on people , place, and prosperity. The Utah State Tax Commission (USTC) plays a key role in the third goal of prosperity by offering our expertise and participating in collaborative problem solving.

We focus our efforts on diligently managing our state resources to ensure that the processes and technologies governing Utah's tax and motor vehicle laws are efficient and effective, while meeting the needs of our customers. The Tax Commission's mission is to promote tax and motor vehicle law compliance. In that simple statement, we strive to listen to our customers and provide responsive, responsible, and excellent service.

Daily, we work to fulfill our mission through three goals:

1. Make compliance easier by promoting innovation and leveraging technology.
2. Enhance the customer experience by fostering relationships with community partners, facilitating effective contacts, increasing customer support options, and providing greater access to Utah's rural communities.
3. Promote a quality work environment by empowering employees, providing sound leadership, and integrating performance management.

By knowing who our customers are, namely any person, business, or local entity that has a tax and/or motor vehicle connection with the state of Utah, the Governor, the legislature, our executive branch partners and other stakeholders, and our coworkers, we are able to better understand their needs and provide excellent customer service at every opportunity. At the heart of our agency are over 700 dedicated employees — some of the hardest working, most technically-skilled, and dedicated workers in the state. We are here to help our customers and make compliance easier.

The Tax Commission's Strategic Plan details how we plan to accomplish our mission. It reflects the priorities that are important to the State of Utah and helps us to ensure an excellent customer experience to all those we serve. We are ready to help!

[redacted]

Deanna Herring
Executive Director,
Utah State Tax Commission

# WHO WE ARE



The Utah Constitution establishes the State Tax Commission in Article 13, section 6. Of the four Commission members, only two may belong to the same political party. With the consent of the Senate, the Governor appoints each commissioner to a four-year term.

Utah Code Ann., Title 59, *Revenue and Taxation,* provides for the composition of the commission based on the qualifications of the members and requires the Governor to designate one of the commissioners as chairperson of the Commission. Additionally, Title 59 requires the commission to appoint an executive director who, through both statute and an administrative or management plan, hires additional staff to perform the agency's duties and responsibilities, which also includes duties under Utah Code Ann., Titles 41, Chapter 1a, *Motor Vehicle Act* and Chapter 3, *Motor Vehicle Business Regulation Act.*

## Duties & Functions

The Tax Commission's constitutional and statutory duties include the following:

- Administers and supervises Utah's tax and motor vehicle laws.
- Assesses mines and public utilities
- Adjusts and equalizes property valuation and assessment among counties.
- Has other powers and performs other duties as provided by statute.

In order to perform these duties, the Tax Commission:

- Receives and deposits tax revenue.
- Manages and distributes sales and other taxes for local government and other entities.
- Processes Utah tax returns.
- Updates and maintains taxpayer information.
- Reviews tax returns for accuracy.
- Performs audits to ensure compliance.
- Helps taxpayers resolve filing and account problems.
- Oversees county property assessments and tax systems.
- Appraises and assesses public utilities, mines and transportation companies.
- Registers and titles Utah motor vehicles and motor carriers.
- Regulates the motor vehicle sales industry.
- Enforces motor vehicle laws.
- Provides information to the public about Utah tax laws and rates.
- Works closely with government, civic and industry partners.

The Tax Commission employs over 700 full-time equivalent employees in its operations.

# Tax Commission Organization

The commissioners oversee the Tax Commission's organization through the Office of the Commission.

## OFFICE OF THE COMMISSION

- Appeals
- Internal Audit
- Economics & Statistics

Because the commissioners hear tax and motor vehicle appeals, state law requires them to appoint an executive director in order to insulate them from agency influence. Under a management plan, the divisions report to the executive director, creating a structure known as the administrative side of the Tax Commission.

## ADMINISTRATION

The executive director oversees the day-to-day operations of the Tax Commission. In addition to the administrative function, the agency is divided into four functional areas, each of which contains divisions that perform distinct functions.

### CUSTOMER SERVICE

- Motor Vehicle Division (DMV) – Customer Service
- Special Services
- Collections

### PROPERTY & MISC. TAX

- Centrally Assessed
- Certified Rates & Misc. Taxes
- Property Tax

### TAX AND REVENUE

- Business Taxes & Discovery
- Financial Operations
- Income Tax & Education

### ENFORCEMENT

- Motor Vehicle Enforcement
- DMV Title & Dealer Services

## Office of the Commission

The Office of the Commission conducts administrative hearings on state tax and motor vehicle matters. Taxpayers who disagree with decisions of a Tax Commission division and/or a county board of equalization may appeal to the Tax Commission, which has final review authority of the administrative appeals process. Taxpayers may appeal a final Tax Commission decision, after exhausting all administrative remedies, to a district court or the Utah State Supreme Court. In addition, the Office of the Commission performs internal audits of the Tax Commission through an Internal Audit Unit. Finally, the Office of the Commission has an Economic and Statistical Unit that performs data and economic analysis, prepares fiscal impact responses, and assists in the appeals process.

## Adminstration

The Administration area provides services and support to all functional areas of the Tax Commission.

Administration performs:

- Security, privacy and disclosure functions.
- Assessment and improvement of customer experience.
- Oversight of tax and motor vehicle computer systems[1].
- Legislation Implementation.
- Media relations.
- Forms design.
- Management of tax information and instructions.
- Website design and management.
- Budget planing and management.
- With DFCM, management of all agency buildings and offices.
- Human resources and other staffing duties.

## Customer Services Functional Area

The Customer Services functional area provides customer support for many areas, including delinquent taxes and the DMV.

### DMV – Customer Services Division

DMV-Customer Services provides services to the public for all motor vehicle transactions with a focus on excellent customer service. DMV's primary duty is to title, register and issue license plates to Utah vehicles, including passenger vehicles, trucks, trailers, motorcycles, motor homes, off-highway vehicles, boats and snowmobiles. The division also assists motor vehicle dealers in titling and registering the vehicles they sell.

### Special Services Division

The Special Services Division provides support services for collection activities and manages the Collections Contact Center, which handles all inbound communication on collection issues. Support services include bankruptcy, garnishments special events, waivers and offers-in-compromise. This support allows collection agents to focus on working with customers to resolve their balances.

### Collections Division

The Collections Division collects delinquent accounts where a lien has been issued and possible legal action may occur. The focus is on collections through excellent customer experience and working with customers to pay delinquent balances in a timely manner.



[1] FAST Enterprises, LLC (FAST), is a third-party vendor that developed, owns, and is the provider of Utah's tax and motor vehicle systems, GenTax and VADRS. FAST has been a long-term partner for support and improvement of these systems for the past 19 years. The tax system is used by 35 states and 14 municipal governments, as well as 3 Canadian provinces and 6 additional countries. The motor vehicle system is used in 22 states.

## Property & Miscellaneous Tax Functional Area

The Property & Miscellaneous Tax functional area performs its duties through three divisions.

### Centrally Assessed Division

The Centrally Assessed Division performs the direct appraisal and assessments of all multi-county or multi-state properties including transportation company properties, properties of public utilities and airlines, geothermal resources, and mining properties. Centrally assessed property includes property of power companies, railroads, airlines, pipelines, oil and gas, metal mines, coal mines, sand and gravel, and other non-metal mines.

### Certified Rates & Miscellaneous Taxes Division

The Certified Rates & Miscellaneous Taxes Division oversees Utah's certified tax rate process, and consults with and monitors the county auditors and treasurers regarding statutory requirements for this process. The miscellaneous tax sections educate, assist and audit taxpayers who file miscellaneous taxes, including taxes or fees on beer and liquor, brine shrimp harvesting, fuel, motor fuel, special fuel, aviation fuel, insurance premiums, self-insurers, radioactive waste and



the environmental assurance fee. The division also administers the International Fuel Tax Agreement (IFTA).

The division enforces Utah's cigarette and tobacco, electronic cigarette and nicotine product, and cannabinoid (CBD) licensing and tax laws through audits, inspections and education to distributors.

### Property Tax Division

The Property Tax Division provides oversight of county property assessments and tax systems, performs assessment/sales ratio studies, and conducts performance reviews of county appraisal systems. This division also provides technical assistance and develops Standards of Practice for local assessment, and tax collection, as well as farmland assessment evaluation and classification.

The education section provides appraisal education and training for all state and county appraisers. The mineral section performs federal and state audits of mining and oil and gas severance tax, as well as mineral production tax withholding, to ensure compliance.

The personal property section provides statutory auditing services for Utah counties to audit local business personal property accounts. It also recommends annual updates to personal property valuation guides and schedules.

## Tax and Revenue Functional Area

The Tax and Revenue Functional Area is responsible for:

- Providing timely and accurate information to local taxing authorities.
- Processing tax applications and returns and depositing tax payments.
- Correcting returns with errors so they can post to the tax systems.
- Giving accurate information to taxpayers, both over the phone and in writing.
- Reducing noncompliance and issuance of improper refunds.
- Educating taxpayers through reviews and examinations to reduce repeat errors.
- Investigating tax fraud cases through the Criminal Investigation Unit.

Three divisions carry out these functions:

## Business Taxes and Discovery Division

The Business Taxes and Discovery Division enhances sales and use tax and corporate tax compliance through taxpayer training, outreach programs, reviews and examinations. Reviews and examinations focus on educating taxpayers to reduce errors and to level the playing field for those who are not complying with their tax responsibilities.



## Financial Operations Division

The Financial Operations Division receives, extracts and examines all incoming returns, documents and correspondence. They deposit all tax and fee payments. They capture return documents into the tax systems and review and approve account applications and maintain account demographics. They also perform error corrections to ensure accurate information is posted to the tax systems. This division records and classifies revenue and reconciles it to the general ledger. Acting in a fiduciary capacity for various local government entities, this division accounts for and distributes assets held by the state for various local government entities.

Finally, this division assesses financial conditions and operating results by comparing current cash flows and actual results to previous years.

## Income and Education Division

The Income and Education Division provides assistance to taxpayers with tax obligations and tax questions. A team of tax examiners assists CPAs and tax preparers who have more complex tax questions. They offer outreach training and tools such as webinars, frequently asked questions and a chatbot that helps with tax filing and questions. They also review and examine income, partnership and withholding returns to help customers comply with tax laws and perform an upfront review of returns to ensure refunds are not issued in error.

# Enforcement

The Enforcement Functional Area provides title and dealer enforcement and customer service through two divisions.

## Motor Vehicle Enforcement Division

The Motor Vehicle Enforcement Division licenses and regulates the motor vehicle industry by issuing and renewing all types of motor vehicle dealer and related licenses and investigating motor vehicle related crimes, such as odometer fraud and title fraud and any motor vehicle-related fraud committed by licensed automobile dealers under Utah Code, Title 41, Chapter 3, *Motor Vehicle Business Regulation Act.*

## DMV Title & Dealer Services

The DMV Title & Dealer Services Division helps licensed tow yards and other law enforcement agencies return impounded vehicles to their rightful owners. In addition, they review all out-of-state vehicle titles that come into Utah for title validity, salvage concerns, and any other fraudulent title trends.



# WHAT DRIVES US

## Mission

Promote tax and motor vehicle law compliance.



## Vision

Provide valuable customer service by making compliance easier, noncompliance harder, and by protecting sensitive customer information.




## Values

- Public trust
- Quality and accuracy
- Efficiency and effectiveness
- Job expertise and knowledge with consistent and dependable application of laws, rules, practices and procedures
- Integrity, including honesty, trustworthiness and respect for self and others
- Clear, meaningful and concise communication with customers
- Self-motivated employees and environments that encourage innovation
- Empowered employees with corresponding accountability



# AGENCY GOAL ONE

GOAL 1

## Make compliance easier by Promoting Innovation and Leveraging Technology.

## OBJECTIVE 1

Develop a culture of technological innovation and process improvement in order to ensure services meet increasing growth and demand.

### Strategies

- Develop, enhance and support innovative electronic tools to assist customers in timely, effective, efficient and convenient service delivery and completion.

## OBJECTIVE 2

Ensure our systems are up-to-date and secure.

### Strategies

- Be sure budget requests and allocations meet technology and data management needs, and manage vendor contracts to ensure the agency can perform its core mission of protecting sensitive tax and motor vehicle information.
- Continuously develop, monitor and gauge our privacy and security protocols and practices to ensure customer information is protected and secure.

### Goal 1 Performance Measures

- Develop and continuously review services and processes to assess online completion, with the goal of providing our customers more convenient, timely and efficient ways of complying with the law, thereby having their service needs met.
- Track specific metrics to evaluate e-services and program uses.



- Improve paperless customer service delivery methods.
- Regularly assess security permissions to ensure access to systems is restricted on a need-to-know basis, using the principle of least privilege, where only those that need access to certain systems or processes have that access to perform their job functions.
- Perform regular budget examinations, looking from 18 months up to 10 years into the future, to make sure that agency technology, personnel and other administrative and management budget needs have been considered, forecasted and managed.

# AGENCY GOAL TWO

GOAL 2

## Enhance the Customer Experience
by fostering relationships with community partners, facilitating effective contacts, increasing customer support options, and providing greater access to Utah's rural communities.

## OBJECTIVE 1
Be accessible and helpful to our customers through all forms of communication.

### Strategies
- Provide direct assistance to customers by focusing on certain groups and individuals.
- Provide training and education to our customers.
- Elicit customer feedback to understand where we can improve.
- Use social media to inform and educate all customers.

## OBJECTIVE 2
Guide, direct and help customers to become or remain compliant.

### Strategies
- Perform reviews and checks to ensure required customer reporting and filings are timely and accurate.
- Provide customers directed guidance and communications.

## OBJECTIVE 3
Timely perform all duties to ensure our customers receive useful services and information.

### Strategies
- Ensure timely and accurate reports, distributions and forecasts.

## OBJECTIVE 4
Develop and foster relationships with industry groups and professional organizations.

### Strategies
- Conduct industry training.
- Create materials to provide education about specific programs.
- Participate in professional organizations (as appropriate).

## Goal 2: Enhance the Customer Experience

*—continued*

## OBJECTIVE 5

Ensure quality products and services.

### Strategies

- Perform internal quality control reviews.

### Goal 2 Performance Measures

- Increase social media presence to provide customers guidance and direction on tax and motor vehicle information.
- Create and manage customer service outreach programs to provide education, ensure customers understand available e-services and self-help options, and ensure effective contacts have been made to help customers comply with applicable laws.
- Ensure statutorily required programs are timely, adequately tracked and managed.
- Regularly visit licensees to ensure adherence to license requirements and ensure their needs are addressed.
- Create programs focused on providing education and assistance to tax preparers, county assessors and other industry professionals.
- Monitor to ensure all agency processes are timely and accurately executed, including collections, distributions, refund processing, DMV branch office and dealer work, requested forecasting and other economic reports, case dispositions and appeals, license processing, property valuations and like duties, compliance and audit reports, and other direct customer contacts and processes.
- Expand and enrich our quality assurance review processes.



# AGENCY GOAL THREE

GOAL 3

**Promote a Quality Work Environment** by empowering employees, providing sound leadership, and integrating performance management.

## OBJECTIVE 1

Facilitate employee professional development.

### Strategies

- Provide training opportunities to help employees improve their knowledge and skills, and to reduce employee stress.

## OBJECTIVE 2

Develop unified performance goals and opportunities to connect, fostering personal and professional growth, ensuring quality customer services, and promoting cohesion throughout the agency.

### Strategies

- Provide performance goals to all employees that help guide and direct successful professional growth and develop better customer service skills.
- Ensure building and workspace safety response measures are up-to-date and satisfied.
- Look for culture-building opportunities to increase camaraderie.

## OBJECTIVE 3

Improve work satisfaction by encouraging fluid work schedules that best fit both agency and employee needs.

### Strategies

- Continuously review services and processes to assess online completion, aiming to allow more remote and flexible work options for employees.



## Goal 3: Promote a Quality Work Environment

*—continued*

## OBJECTIVE 4

Effectively manage the agency by meeting all administrative requirements.

### Strategies

- Timely and accurately develop, manage, create and administer necessary and required reports and documents, assessments, reviews and other projects as required by law, rule and at the request of other parties as appropriate.

### Goal 3 Performance Measures

- Promote, improve and review employee training programs (in-person, virtually, and web-based) in order to strengthen their professional skills and knowledge base, promoting confidence and work satisfaction, thus allowing them to better help customers.
- Require supervisors to undergo training (at least annually) focused on effective employee management and evaluation methods, quality communication, recognizing and retaining high-performance employees, addressing poor performance, and other principles that improve agency effectiveness.
- Manage the agency's pay-for-performance program plan, including quarterly employee written evaluations (discussing progress toward meeting expected goals, and providing guidance and direction), to help employees understand how their roles contribute to excellent customer service and fulfilling our mission by empowering employees to be successful in their professional growth.
- Ensure all agency-required mandates are fulfilled for building safety, continuity of programs, integrity of work product, and others as required, have been met.
- Continue assessing job duties and positions, taking into account new and improved innovations and changes in service delivery, for the purpose of increasing full- or part-time remote work flexibility.
- Continue looking for ways to build a culture of unity and camaraderie for the agency as a whole.
- Fulfill administrative reporting requirements as mandated by the Utah Code and administrative rules, Governor's Office, legislature, and others as required.

# WORK PLAN

## Fiscal Years 2025-2028

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 1 | Enhance Customer Experience | Analyze, assess, and act upon customer service response outcome results and indicators to understand roadblocks and challenges in order to provide needed and desired services, measured in several ways including customer service feedback surveys and analysis tools by using Qualtrics products (both the website survey instrument and XM Discover), direct feedback from tax professionals, legislators, the Governor's office and other state partners, text message surveys, and other tools. | Operations: Customer Experience Team | Existing budget, DTS support & FAST | FY2026 |
| 2 | Promoting Innovation and Leveraging Technology | Build opt-in program for text/email tax refund status updates. | Operations: Customer Experience Team | Budget request may be submitted, DTS support & FAST | FY2026 |
| 3 | Enhance Customer Experience | Complete development of self-serve process through TAP to allow customer the ability access pertinent information from their accounts, including applicable changes in the law, filing deadlines/requirements, confirmations of return receipt and refund status, and other needs based on customer feedback. | Tax & Revenue FA: Income Tax and Education Division | Existing budget, DTS support & FAST | FY2026 |
| 4 | Enhance Customer Experience | Complete self-review projects on four unique industry groups to educate taxpayers and improve compliance. | Tax & Revenue FA: Business Taxes and Discovery Division | Existing budget | FY2026 |
| 5 | Quality Work Environment/Sound Leadership | Conduct internal audit risk assessments to determine the level of agency risk in various areas of performance to ensure adequate internal and management controls exist; and communicate results to executive leadership and the commissioners. | Commission: Internal Audit | Existing budget & DTS support as needed | FY2026 |
| 6 | Quality Work Environment/Sound Leadership | Conduct internal audits at the request of agency leadership to investigate areas of risk; and communicate the audit results and recommendations to the commissioners and agency leadership as applicable to each audit. | Commission: Internal Audit | Existing budget & DTS support as needed | FY2026 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 7 | Quality Work Environment/Sound Leadership | Continue process to relocate Ogden DMV office to improve facilities, costs, and location. | Customer Services and Enforcement FAs: DMV Divisions | Will have current year supplemental budget request for relocation expenses | FY2026 |
| 8 | Enhance Customer Experience | Continue to develop and deliver focused online training workshops for county elected officials, school districts, county administrators, special districts, and other taxing entities and their staff to provide education for enhanced and accurate compliance to statutory requirements. | Property & Misc. Tax FA: Subject matter experts | Existing budget | FY2026 |
| 9 | Promoting Innovation and Leveraging Technology | Continue to provide support on the transition to DTS' new identify and access management solutions. | Agency: Systems Support Team | Existing budget & DTS support | FY2026 |
| 10 | Enhance Customer Experience | Coordination between agency, DTS, and other governmental entities on data sharing agreements and legislation. | Agency: Systems Support Team | Existing budget & DTS support | FY2026 |
| 11 | Enhance Customer Experience | Develop and implement ledger system to ensure complexities in revenue distribution required by statute are accurately determined and distributed on behalf of state and local jurisdictions. | Tax & Revenue FA: Financial Operations Division | Existing budget, DTS support & FAST | FY2026 |
| 12 | Enhance Customer Experience | Develop customer self-review program for improved compliance with tobacco, e-cig and CBD laws. | Property & Misc Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget, DTS support & FAST | FY2026 |
| 13 | Promoting Innovation and Leveraging Technology | Develop e-submission of religious and charitable sales tax refund requests (TC-62N) into Taxpayer Access Point (TAP). | Tax & Revenue FA: Income Tax and Education Division | Existing budget, DTS support & FAST | FY2026 |
| 14 | Promoting Innovation and Leveraging Technology | Develop online impound vehicle disposition program for improved processes. | Enforcement FA: Motor Vehicle Division - Title & Dealer Services | Budget request may be submitted, DTS support & FAST | FY2026 |
| 15 | Promoting Innovation and Leveraging Technology | Develop process for e-title project for dealers. | Customer Services FA: Motor Vehicle Division | Budget request may be submitted, DTS support & FAST | FY2026 |
| 16 | Promoting Innovation and Leveraging Technology | Develop process to allow echeck payments from Quickbooks into Taxpayer Access Point (TAP). | Tax & Revenue FA: Income Tax and Education Division | Existing budget, DTS support & FAST | FY2026 |
| 17 | Enhance Customer Experience | Develop, enhance, and conduct training courses (both on-site and in the field) to provide education to agency and county personnel to equip them with the necessary knowledge and skills to achieve licensed appraiser status and certification for Utah. The training also provides continuing education (CE) credits, helping attendees maintain their licenses and skill levels. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget | FY2026 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 18 | Quality Work Environment/Sound Leadership | Develop, test, and put into production tax and motor vehicle systems adjustments from bills passed during previous and current fiscal year general legislative session: 69 bills in total ranging from GS 2020 to GS 2025. | Agency: Systems Support Team | Future budget or current year supplemental may be requested, DTS support & FAST as applicable according to the law | FY2026 |
| 19 | Enhance Customer Experience | Enforce the collection of tax on the sales of CBD products, including field audits and collaborating with the Department of Agriculture and Food. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2026 |
| 20 | Enhance Customer Experience | Enforce tobacco master settlement agreement by performing field audits and site inspections and reviewing for adherence to escrow payments from the non-participating cigarette manufacturers to ensure payments are being placed in the escrow account as required under the agreement. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2026 |
| 21 | Promoting Innovation and Leveraging Technology | Enhance process for online renewals to allow more motor vehicle types. | Customer Services FA: Motor Vehicle Division | Existing budget, DTS support & FAST | FY2026 |
| 22 | Promoting Innovation and Leveraging Technology | Enhance process to notify customers of sold vehicle. | Customer Services FA: Motor Vehicle Division | Existing budget, DTS support & FAST | FY2026 |
| 23 | Enhance Customer Experience | Enhance reporting tools to provide support and guidance on each county's data collection systems and processes to assist the counties in better understanding their own data and to accurately communicate that to the agency; this will allow the agency to provide better oversight. | Property & Misc. Tax FA: Property Tax Division | Existing Budget | FY2026 |
| 24 | Enhance Customer Experience | Ensure sales tax compliance on: 1) motor vehicle purchases, 2) aircraft purchases, and 3) foreign purchases (as identified through Customs reports). | Tax & Revenue FA: Business Taxes and Discovery Division | May have a current year supplemental budget request & DTS support | FY2026 |
| 25 | Promoting Innovation and Leveraging Technology | Evaluate agency's TIME (tolerate, invest, migrate, and eliminate) and SAFe (scaled agile framework) systems with DTS. | Agency: Executive Leadership Team | Existing budget & DTS support | FY2026 |
| 26 | Quality Work Environment/Sound Leadership | Finalize Pay for Performance plan year, assess where all evaluations are rated for the year to be able to allocate the funds based on success level throughout the agency, perform calculations and employee increases and allocations, ensure accurate results, and submit to DHRM. | Operations: Budget Team | Existing budget | FY2026 |
| 27 | Enhance Customer Experience | Generate, review and submit report to the legislature as required by law to show the results of increased enforcement of the Electronic Cigarette and Nicotine Product Licensing and Taxation Act. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget & DTS support | FY2026 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 28 | Enhance Customer Experience | Generate, review, and submit the Electronic Cigarette Product Registry Report to the legislature as required by law. | Property & Misc Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget & DTS support | FY2026 |
| 29 | Promoting Innovation and Leveraging Technology | Improve and expand data collection and analysis capabilities which will allow the agency to provide improved assessments for better tax rate certification. This impacts both centrally and locally assessed properties, as evidenced through property assessments and statistical reports the agency provides to the Governor's Office, legislature, and others as required. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget & DTS support may be needed | FY2026 |
| 30 | Quality Work Environment/Sound Leadership | Maintain and conduct training programs for tobacco, CBD, and e-cig program staff. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2026 |
| 31 | Promoting Innovation and Leveraging Technology | Maintain and update Certified Tax Rate system. | Property & Misc Tax FA: Systems group | Existing budget | FY2026 |
| 32 | Enhance Customer Experience | Maintain Electronic Cigarette Product Registry. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2026 |
| 33 | Promoting Innovation and Leveraging Technology | Maintain electronic licensing program and options for both dealer and sales representative licensees to allow downloads, apply for and renew online licenses, this will include management of the inspection process necessary for new licensees. | Enforcement FA: Motor Vehicle Enforcement Division | Budget request may be submitted from a restricted account, DTS support & FAST | FY2026 |
| 34 | Enhance Customer Experience | Maintain Renewal Express, On-the-Spot (OTS), Vehicle Title Lien and Registration (TLR) programs. | Customer Services FA: Systems Team | Existing budget, DTS support & Tyler Technologies Utah (3rd party vendor) | FY2026 |
| 35 | Promoting Innovation and Leveraging Technology | Maintain T-CAP and ongoing Salesforce licenses. | Commission: Staff as needed | Existing budget & DTS support | FY2026 |
| 36 | Promoting Innovation and Leveraging Technology | Manage and develop active tax and motor vehicle public website system interfaces. | Agency: Systems Support Team | Existing budget, DTS support & FAST | FY2026 |
| 37 | Enhance Customer Experience | Manage and develop websites, including changes, improvements, corrections, and other postings. | Operations: Web Development Team | Existing budget | FY2026 |
| 38 | Enhance Customer Experience | Manage and track dealer license plate inventory orders to ensure all requirements under law are satisfied and appropriate, review and audit dealer plate sales for compliance, provide training to dealers and law enforcement on statutory requirements. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2026 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 39 | Quality Work Environment/Sound Leadership | Manage retention schedule, including review and update record series as needed and identify personal identifiable information in each series for privacy program management; respond to privacy requests as needed. | Operations: Records and Privacy Team | Existing budget | FY2026 |
| 40 | Quality Work Environment/Sound Leadership | Participate in and conduct Peace Officer Standards Training (POST) for officer certification. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2026 |
| 41 | Quality Work Environment/Sound Leadership | Participate in IRS Safeguard Review (September 2025, every 3 years). | Operations: Security and Disclosure Team | Existing budget | FY2026 |
| 42 | Enhance Customer Experience | Participate in National Crime Information Bureau to track trends regarding illegal motor vehicle activity (fraud and theft practices), improve our inspection process, and gather and participate in other industry enhancements and officer safety. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2026 |
| 43 | Enhance Customer Experience | Perform all necessary types of vehicle identification number (VIN), dealership lot, body shop, state impound yard tow, crushers and dismantler, and dealer-sale files inspections. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2026 |
| 44 | Quality Work Environment/Sound Leadership | Perform annual Incident Response & COOP tabletop exercise. | Operations: Emergency Preparedness Team | Existing budget | FY2026 |
| 45 | Enhance Customer Experience | Perform revenue duties, including providing fiscal impact responses as requested by the legislature, provide economic indicator and state revenue forecasts; update data reports monthly, quarterly, and annually as needed; assist with legislative implementation; respond to data and analysis requests from the legislature, governor's office, and other entities; complete special projects as assigned by the commissioners; and serve as hearing officers and provide expert consultation and testimony in district court property tax cases for centrally assessed properties, as requested. | Commission: Economic and Statistical Unit | Existing budget | FY2026 |
| 46 | Enhance Customer Experience | Perform sales tax check ups with customers to help them establish a process to ensure they satisfy filing and record requirements for correct tax reporting with the intent of reducing future errors. | Tax & Revenue FA: Business Taxes and Discovery Division | Existing budget | FY2026 |
| 47 | Enhance Customer Experience | Perform traffic stops and other necessary duties to enforce registration law requirements for vehicles safety/emission, auto theft, and tax collection purposes. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2026 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 48 | Quality Work Environment/Sound Leadership | Prepare and submit annual budget, including compensation, technology, building, and other needs. | Operations: Budget Team | Budget request will be submitted | FY2026 |
| 49 | Quality Work Environment/Sound Leadership | Prepare Agency Initiatives Quarterly Report. | Operations: Budget Team and Agency Leadership | Existing budget | FY2026 |
| 50 | Enhance Customer Experience | Process petitions for administrative appeals of county board of equalization decisions and Tax Commission actions; facilitate communication between administrative appeals participants, including document exchanges; provide administrative support for administrative appeals hearings and related mediation and status conferences; provide administrative support for commission meetings; prepare documents for the commissioners and administrative law judges; and perform other administrative and clerical duties, as requested. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2026 |
| 51 | Enhance Customer Experience | Process tax returns and refunds timely while maintaining quality processing standards. | Tax & Revenue FA: Financial Operations Division | Existing budget | FY2026 |
| 52 | Quality Work Environment/Sound Leadership | Provide guidance to staff based on established goals, track progress and adjust strategies as needed for growth and collaboration. | Tax & Revenue FA: Financial Operations Division | Existing budget | FY2026 |
| 53 | Enhance Customer Experience | Provide joint division efforts to better educate and inform customers by using website how-to guides and videos, publishing monthly webinars, developing and holding Tax Roadshows throughout the state, promoting the practitioner hotline, and other methods. | Tax & Revenue FA: Income Tax and Education & Business Taxes and Discovery Divisions | Existing budget | FY2026 |
| 54 | Enhance Customer Experience | Receive petitions for administrative appeals of county board of equalization decisions and Tax Commission actions; facilitate communication between administrative appeals participants, including document exchanges; hold formal administrative appeals hearings and related mediation and status conferences consistent with Utah Administrative Procedures Act, Utah Tax Code, Utah Motor Vehicle statutes and applicable Utah Administrative Rules; draft, deliberate and issue resulting Commission orders. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2026 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 55 | Enhance Customer Experience | Receive private letter ruling (PLR) requests based on fact specific situations, which are not under appeal; perform administrative law judge researches and analyze statutes and administrative rules to interpret the law and provide guidance to the taxpayer regarding the applicability of the law to the taxpayer's specific situation; communicate the analysis with divisions and other interested parties as necessary; perform a full commission review; and submit final PLR to taxpayer. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2026 |
| 56 | Quality Work Environment/Sound Leadership | Renewal of maintenance and support agreement for FAST products (Utah's tax and motor vehicle systems). | Operations: Budget Team | Current year supplemental budget request will be submitted | FY2026 |
| 57 | Promoting Innovation and Leveraging Technology | Research possible alternative solutions for processing paper checks. | Operations: Security Team | Budget request may be submitted, DTS support & FAST | FY2026 |
| 58 | Enhance Customer Experience | Research topics and issues that are lacking in the statewide property tax valuation community, including both centrally and locally assessed property. Prepare and provide presentations for the three day Assessor School Training that is statutorily required by the agency to sponsor, attended by elected county officials, county office staff, agency staff and commissioners, county contractors, and legislators. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget | FY2026 |
| 59 | Quality Work Environment/Sound Leadership | Review and discuss long-term legislative planning items for proposal to the legislature. | Operations: Policy, Planning and Public Affairs Team | Existing budget | FY2026 |
| 60 | Quality Work Environment/Sound Leadership | 2025 General Legislative session bills (greatest impact in FY2026): 838 total bills reviewed for agency fiscal impact: 374 had no impact to the agency; 272 will require additional work for the agency but costs cannot be quantified; 192 had a dollar impact for agency administration that was documented in the bill's fiscal note; | Operations: Agency Legislative Response Team | Existing budget & DTS support | FY2026 |
| 61 | Quality Work Environment/Sound Leadership | Review performance measures for adjustment as needed; report on previous years' measures. | Operations: Budget Team | Existing budget | FY2026 |
| 62 | Promoting Innovation and Leveraging Technology | Review program return edits to determine if manual intervention is needed. | Tax & Revenue FA: Financial Operations and Income Tax and Education Divisions | Existing budget | FY2026 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 63 | Quality Work Environment/Sound Leadership | Review withholding filing process and penalty assessment dates to enhance customer compliance. | Operations: Customer Experience Team | Existing budget | FY2026 |
| 64 | Quality Work Environment/Sound Leadership | Update Annual Report and Strategic Plan. | Operations: Reporting | Existing budget | FY2026 |
| 65 | Promoting Innovation and Leveraging Technology | Upgrade tax (GenTax) and motor vehicle (VADRS) CORE systems - this project will span from September 2024 to December 2025. | Agency: Systems Support Team | Existing budget, DTS support & FAST | FY2026 |
| 66 | Promoting Innovation and Leveraging Technology | Develop and utilize reports using Google Analytics 360 Software used to get insights on how customers are using our websites. | Agency: Systems Support Team | May have a current year supplemental budget request | FY2026 |
| 67 | Promoting Innovation and Leveraging Technology | Assess high speed printer for replacement as it is at end of life. | Operations: Budget and Security team | May have a current year supplemental budget request | FY2026 |
| 68 | Enhance Customer Experience | Begin developing direct to distributor program for tobacco stamp issuance and distribution. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget, DTS support & FAST | FY2026 |
| 69 | Promoting Innovation and Leveraging Technology | Build online vendor registration process for special events. | Customer Services FA: Special Services Division | Existing budget, DTS support & FAST | FY2026 |
| 70 | Enhance Customer Experience | Complete transaction time study for motor vehicle transactions to allow for better employee performance measurements and customer service improvements. | Customer Services FA: Systems Team | Existing budget, DTS support & FAST | FY2026 |
| 71 | Quality Work Environment/Sound Leadership | Implement short term rental identification process | Tax & Revenue FA: Business Taxes and Discovery Division | Budget request will be submitted, DTS support & FAST | FY2026 |
| 72 | Enhance Customer Experience | Continue enhancements to online DMV appointment scheduler based on customer feedback. | Customer Services FA: Motor Vehicle Division | Existing budget & DTS support | FY2026 |
| 73 | Quality Work Environment/Sound Leadership | Monitor workload increase of the property tax rate certification process from increased taxing entities, new Public Infrastructure Districts and new tax increment type diversions. | Property & Misc. Tax FA: Property Tax Division | May have a current year supplemental budget request | FY2026 |
| 74 | Enhance Customer Experience | Develop and deliver focused online training workshops for county elected officials, school districts, county administrators, special districts, and other taxing entities and their staff to provide education for enhanced and accurate compliance to statutory requirements. | Property & Misc. Tax FA: Subject matter experts | Existing budget | FY2026 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 75 | Promoting Innovation and Leveraging Technology | Maintain electronic licensing program and options for both dealer and sales representative licensees to allow downloads, apply for and renew online licenses, this will include management of the inspection process necessary for new licensees. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget, DTS support & FAST | FY2026 |
| 76 | Enhance Customer Experience | Finalize garage project in DMV (VADRS) system allowing customer accounts to manage all vehicles together. | Customer Services FA: Motor Vehicle Division | Existing budget, DTS support & FAST | FY2026 |
| 77 | Enhance Customer Experience | Integration of QR codes in tax collection notices for payment accuracy and promote the ability for customers to create self-service payment agreements | Customer Services FA: Special Services Division | Existing budget, DTS support & FAST | FY2026 |
| 78 | Enhance Customer Experience | Modify existing PACT ACT report to require electronic filing of cigarette and electronic cigarette products. | Enforcement FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2026 |
| 79 | Quality Work Environment/Sound Leadership | Project focusing on an in-depth review of accounts receivable to improve processes for increasing delinquent tax collections | Customer Services FA: Collections Division | Existing budget | FY2026 |
| 80 | Promoting Innovation and Leveraging Technology | Provide support on the transition to DTS' new identify and access management solutions. | Agency: Systems Support Team | Existing budget & DTS support | FY2026 |
| 81 | Promoting Innovation and Leveraging Technology | Windows 11 update, including deployment and update of capable computers as needed in the agency. | Operations: Budget Team | Existing budget & DTS support | FY2026 |
| 82 | Quality Work Environment/Sound Leadership | Provide joint sales tax motor vehicle training to improve employee skills and knowledge on motor vehicle sales tax issues. | Customer Services FA: Training Team | Existing budget | FY2026 |
| 83 | Promoting Innovation and Leveraging Technology | Replace, upgrade, and test new credit card readers. | Operations: Security Team | Existing budget & DTS support | FY2026 |
| 84 | Enhance Customer Experience | Enhance DMV office signage for improvements based on customer feedback. | Customer Services FA: Motor Vehicle Division | Existing budget & DFCM | FY2026 |
| 85 | Promoting Innovation and Leveraging Technology | Coordinate including tax and motor vehicle services into the Citizen Portal, including Verifiable Digital Credentials. | Agency: Systems Support Team | Existing budget & DTS support | FY2026 |
| 86 | Promote a Quality Work Enviroment | Replace main Tax Commission building's original cubicles and furniture | Budget request will be submitted | May have a current year supplemental budget request | FY2026 |
| 87 | Promoting Innovation and Leveraging Technology | Implement web 2.0 in VADRS and GenTax | Agency: Systems Support Team | Existing budget, DTS support & FAST | FY2026 |
| 88 | Promoting Innovation and Leveraging Technology | Maintain system to communicate location of impounded vehicles with designated and other necessary parties' systems and determine actions necessary to process the vehicles out of impound. | Enforcement FA: Motor Vehicle Division - Title & Dealer Services | Existing budget, DTS support, FAST & 3rd party vendors as necessary | FY2026 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 89 | Promoting Innovation and Leveraging Technology | Evaluate agency's internal programs that rely on ACCESS database: update and convert to other programs as appropriate | Agency: Systems Support Team | Existing budget & DTS support | FY2026 |
| 90 | Promoting Innovation and Leveraging Technology | Evaluate agency's internal templates that rely on Microsoft Excel. Determine what templates are still needed and the process to update templates in the future | Agency: Systems Support Team | Existing budget & DTS support | FY2026 |
| 91 | Quality Work Environment/Sound Leadership | Update standard unit calculation on DMV county contract based on current transaction times | Customer Services FA: Motor Vehicle Division | Existing budget & DTS support | FY2026 |
| 92 | Enhance Customer Experience | Rework temporary dealer permits to implement print on demand | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget & DTS support | FY2026 |
| 93 | Enhance Customer Experience | Finish development and implementation of AI chatbot to provide employees with access to more comprehensive responses to customer questions | Agency: Customer Service Support Teams | Existing budget & DTS support | FY2026 |
| 94 | Quality Work Environment/Sound Leadership | Develop and implement training programs and procedures for tobacco program staff. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2026 |
| 95 | Quality Work Environment/Sound Leadership | Develop and implement training programs and procedures for CBD program staff. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2026 |
| 96 | Enhance Customer Experience | Provide education to customers and promote DMV e-services to enhance the customer experience and opportunities for service. | Customer Services FA: Motor Vehicle Division | Existing budget | FY2026 |
| 97 | Quality Work Environment/Sound Leadership | Develop and implement training programs and procedures e-cig program staff. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2026 |
| 98 | Promoting Innovation and Leveraging Technology | Review inefficiencies and as appropriate implement AI driven solutions to make the processes more efficient . | Agency: Customer Service Support Teams | Existing budget | FY2026 |
| 1 | Enhance Customer Experience | Analyze, assess, and act upon customer service response outcome results and indicators to understand roadblocks and challenges in order to provide needed and desired services, measured in several ways including customer service feedback surveys and analysis tools by using Qualtrics products (both the website survey instrument and XM Discover), direct feedback from tax professionals, legislators, the Governor's office and other state partners, text message surveys, and other tools. | Agency: Customer Service Support Teams | Existing budget, DTS support & FAST | FY2027 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 2 | Promoting Innovation and Leveraging Technology | Build intrastate fleet renewal process in the motor vehicle portal (MVP). | Customer Services FA: Motor Vehicle Division | Existing budget, DTS support & FAST | FY2027 |
| 3 | Enhance Customer Experience | Complete self-review projects on four unique industry groups to educate taxpayers and improve compliance. | Tax & Revenue FA: Business Taxes and Discovery Division | Existing budget | FY2027 |
| 4 | Quality Work Environment/Sound Leadership | Conduct internal audit risk assessments to determine the level of agency risk in various areas of performance to ensure adequate internal and management controls exist; and communicate results to executive leadership and the commissioners. | Commission: Internal Audit | Existing budget & DTS support as needed | FY2027 |
| 5 | Quality Work Environment/Sound Leadership | Conduct internal audits at the request of agency leadership to investigate areas of risk; and communicate the audit results and recommendations to the commissioners and agency leadership as applicable to each audit. | Commission: Internal Audit | Existing budget & DTS support as needed | FY2027 |
| 6 | Enhance Customer Experience | Continue to develop (as needed) and adjust self-serve process through TAP to allow customer the ability access pertinent information from their accounts, including applicable changes in the law, filing deadlines/requirements, confirmations of return receipt and refund status, and other needs based on customer feedback. | Tax & Revenue FA: Income Tax and Education Division | Existing budget, DTS support & FAST | FY2027 |
| 7 | Enhance Customer Experience | Continue to develop and deliver focused online training workshops for county elected officials, school districts, county administrators, special districts, and other taxing entities and their staff to provide education for enhanced and accurate compliance to statutory requirements. | Property & Misc. Tax FA: Subject matter experts | Existing budget | FY2027 |
| 8 | Enhance Customer Experience | Coordination between agency, DTS, and other governmental entities on data sharing agreements and legislation. | Agency: Systems Support Team | Existing budget & DTS support | FY2027 |
| 9 | Quality Work Environment/Sound Leadership | Monitor workload increase of the property tax rate certification process from increased taxing entities, new Public Infrastructure Districts and new tax increment type diversions. | Property & Misc. Tax FA: Property Tax Division | Budget request may be submitted | FY2027 |
| 10 | Promoting Innovation and Leveraging Technology | Develop Accredited Standards Committee X9 levy standard with third party processors to allow a paperless process as is being done in other FAST states, greatly improving the process. | Customer Services FA: Special Services Division | Existing budget, DTS support & FAST | FY2027 |
| 11 | Enhance Customer Experience | Maintain ledger system to ensure complexities in revenue distribution required by statute are accurately determined and distributed on behalf of state and local jurisdictions. | Tax & Revenue FA: Financial Operations Division | Existing budget, DTS support & FAST | FY2027 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 12 | Promoting Innovation and Leveraging Technology | Implement process for e-title project for individuals. | Customer Services FA: Motor Vehicle Division | Budget request may be submitted, DTS support & FAST | FY2027 |
| 13 | Promoting Innovation and Leveraging Technology | Develop process to automate tax payments through electronic fund transfer (EFT) automated clearing house (ACH) credit (TC-86) integrate into TAP. | Tax & Revenue FA: Financial Operations Division | Existing budget, DTS support & FAST | FY2027 |
| 14 | Enhance Customer Experience | Develop, enhance, and conduct training courses (both on-site and in the field) to provide education to agency and county personnel to equip them with the necessary knowledge and skills to achieve licensed appraiser status and certification for Utah. The training also provides continuing education (CE) credits, helping attendees maintain their licenses and skill levels. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget | FY2027 |
| 15 | Quality Work Environment/Sound Leadership | Develop, test, and put into production tax and motor vehicle systems adjustments from bills passed during previous and current fiscal year general legislative session: number of bills will be updated annually - GS 2026. | Agency: Systems Support Team | Future budget or current year supplemental may be requested, DTS support & FAST as applicable according to the law | FY2027 |
| 16 | Enhance Customer Experience | Enforce tobacco master settlement agreement by performing field audits and site inspections and reviewing for adherence to escrow payments from the non-participating cigarette manufacturers to ensure payments are being placed in the escrow account as required under the agreement. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2027 |
| 17 | Enhance Customer Experience | Enhance reporting tools to provide support and guidance on each county's data collection systems and processes to assist the counties in better understanding their own data and to accurately communicate that to the agency; this will allow the agency to provide better oversight. | Property & Misc. Tax FA: Property Tax Division | Existing budget | FY2027 |
| 18 | Enhance Customer Experience | Ensure sales tax compliance on: 1) motor vehicle purchases, 2) aircraft purchases, and 3) foreign purchases (as identified through Customs reports). | Tax & Revenue FA: Business Taxes and Discovery Division | May have a current year supplemental budget request & DTS support | FY2027 |
| 19 | Promoting Innovation and Leveraging Technology | Develop Accredited Standards Committee X9 levy standard with financial institutions to allow a paperless process as is being done in other FAST states, greatly improving the process. | Customer Services FA: Special Services Division | Existing budget, DTS support & FAST | FY2027 |
| 20 | Promoting Innovation and Leveraging Technology | Develop file transfer with payroll companies for garnishments. | Customer Services FA: Special Services Division | Existing budget, DTS support & FAST | FY2027 |
| 21 | Enhance Customer Experience | Finalize development and implementation of direct to distributor program for tobacco stamp issuance and distribution. | Property & Misc. Tax FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget, DTS support & FAST | FY2027 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 22 | Promoting Innovation and Leveraging Technology | Evaluate agency's TIME (tolerate, invest, migrate, and eliminate) and SAFe (scaled agile framework) systems with DTS. | Agency: Executive Leadership Team | Existing budget & DTS support | FY2027 |
| 23 | Quality Work Environment/Sound Leadership | Finalize Pay for Performance plan year, assess where all evaluations are rated for the year to be able to allocate the funds based on success level throughout the agency, perform calculations and employee increases and allocations, ensure accurate results, and submit to DHRM. | Operations: Budget Team | Existing budget | FY2027 |
| 24 | Enhance Customer Experience | Generate, review and submit report to the legislature as required by law to show the results of increased enforcement of the Electronic Cigarette and Nicotine Product Licensing and Taxation Act. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget & DTS support | FY2027 |
| 25 | Enhance Customer Experience | Generate, review, and submit the Electronic Cigarette Product Registry Report to the legislature as required by law. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget & DTS support | FY2027 |
| 26 | Promoting Innovation and Leveraging Technology | Improve and expand data collection and analysis capabilities which will allow the agency to provide improved assessments for better tax rate certification. This impacts both centrally and locally assessed properties, as evidenced through property assessments and statistical reports the agency provides to the Governor's Office, legislature, and others as required. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget & DTS support may be needed | FY2027 |
| 27 | Quality Work Environment/Sound Leadership | Maintain and conduct training programs for tobacco, CBD, and e-cig program staff. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2027 |
| 28 | Promoting Innovation and Leveraging Technology | Maintain and update Certified Tax Rate system. | Property & Misc Tax FA: Systems group | Existing budget | FY2027 |
| 29 | Promoting Innovation and Leveraging Technology | Maintain electronic licensing program and options for both dealer and sales representative licensees to allow downloads, apply for and renew online licenses, this will include management of the inspection process necessary for new licensees. | Enforcement FA: Motor Vehicle Enforcement Division | Budget request may be submitted from a restricted account, DTS support & FAST | FY2027 |
| 30 | Enhance Customer Experience | Maintain Renewal Express, On-the-Spot (OTS), Vehicle Title Lien and Registration (TLR) programs. | Customer Services FA: Systems Team | Existing budget, DTS support & Tyler Technologies Utah (3rd party vendor) | FY2027 |
| 31 | Promoting Innovation and Leveraging Technology | Maintain system to communicate location of impounded vehicles with designated and other necessary parties' systems and determine actions necessary to process the vehicles out of impound. | Enforcement FA: Motor Vehicle Division - Title & Dealer Services | Existing budget, DTS support, FAST & 3rd party vendors as necessary | FY2027 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 32 | Promoting Innovation and Leveraging Technology | Maintain T-CAP and ongoing Salesforce licenses. | Commission: Staff as needed | Existing budget & DTS support | FY2027 |
| 33 | Promoting Innovation and Leveraging Technology | Manage and develop active tax and motor vehicle public website system interfaces. | Agency: Systems Support Team | Existing budget, DTS support & FAST | FY2027 |
| 34 | Enhance Customer Experience | Manage and develop websites, including changes, improvements, corrections, and other postings. | Operations: Web Development Team | Existing budget | FY2027 |
| 35 | Enhance Customer Experience | Manage and track dealer license plate inventory orders to ensure all requirements under law are satisfied and appropriate, review and audit dealer plate sales for compliance, provide training to dealers and law enforcement on statutory requirements. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2027 |
| 36 | Quality Work Environment/Sound Leadership | Manage retention schedule, including review and update record series as needed and identify personal identifiable information in each series for privacy program management; respond to privacy requests as needed. | Operations: Records and Privacy Team | Existing budget | FY2027 |
| 37 | Quality Work Environment/Sound Leadership | Participate in and conduct Peace Officer Standards Training (POST) for officer certification. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2027 |
| 38 | Enhance Customer Experience | Participate in National Crime Information Bureau to track trends regarding illegal motor vehicle activity (fraud and theft practices), improve our inspection process, and gather and participate in other industry enhancements and officer safety. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2027 |
| 39 | Enhance Customer Experience | Perform all necessary types of vehicle identification number (VIN), dealership lot, body shop, state impound yard tow, crushers and dismantler, and dealer-sale files inspections. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2027 |
| 40 | Quality Work Environment/Sound Leadership | Perform annual Incident Response & COOP tabletop exercise. | Operations: Emergency Preparedness Team | Existing budget | FY2027 |
| 41 | Enhance Customer Experience | Perform revenue duties, including providing fiscal impact responses as requested by the legislature, provide economic indicator and state revenue forecasts; update data reports monthly, quarterly, and annually as needed; assist with legislative implementation; respond to data and analysis requests from the legislature, governor's office, and other entities; complete special projects as assigned by the commissioners; and serve as hearing officers and provide expert consultation and testimony in district court property tax cases for centrally assessed properties, as requested. | Commission: Economic and Statistical Unit | Existing budget | FY2027 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 42 | Enhance Customer Experience | Perform sales tax check ups with customers to help them establish a process to ensure they satisfy filing and record requirements for correct tax reporting with the intent of reducing future errors. | Tax & Revenue FA: Business Taxes and Discovery Division | Existing budget | FY2027 |
| 43 | Enhance Customer Experience | Perform traffic stops and other necessary duties to enforce registration law requirements for vehicles safety/emission, auto theft, and tax collection purposes. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2027 |
| 44 | Enhance Customer Experience | Pilot project for renewal kiosks located in DMV offices to allow customers to self-serve. | Customer Services FA: Motor Vehicle Division | Existing budget, DTS support & FAST | FY2027 |
| 45 | Quality Work Environment/Sound Leadership | Prepare and submit annual budget, including compensation, technology, building, and other needs. | Operations: Budget Team | Budget request will be submitted | FY2027 |
| 46 | Quality Work Environment/Sound Leadership | Prepare Agency Initiatives Quarterly Report. | Operations: Budget Team and Agency Leadership | Existing budget | FY2027 |
| 47 | Enhance Customer Experience | Process petitions for administrative appeals of county board of equalization decisions and Tax Commission actions; facilitate communication between administrative appeals participants, including document exchanges; provide administrative support for administrative appeals hearings and related mediation and status conferences; provide administrative support for commission meetings; prepare documents for the commissioners and administrative law judges; and perform other administrative and clerical duties, as requested. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2027 |
| 48 | Enhance Customer Experience | Process tax returns and refunds timely while maintaining quality processing standards. | Tax & Revenue FA: Financial Operations Division | Existing budget | FY2027 |
| 49 | Quality Work Environment/Sound Leadership | Provide guidance to staff based on established goals, track progress and adjust strategies as needed for growth and collaboration. | Tax & Revenue FA: Financial Operations Division | Existing budget | FY2027 |
| 50 | Enhance Customer Experience | Provide joint division efforts to better educate and inform customers by using website how-to guides and videos, publishing monthly webinars, developing and holding Tax Roadshows throughout the state, promoting the practitioner hotline, and other methods. | Tax & Revenue FA: Income Tax and Education & Business Taxes and Discovery Divisions | Existing budget | FY2027 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 51 | Enhance Customer Experience | Receive petitions for administrative appeals of county board of equalization decisions and Tax Commission actions; facilitate communication between administrative appeals participants, including document exchanges; hold formal administrative appeals hearings and related mediation and status conferences consistent with Utah Administrative Procedures Act, Utah Tax Code, Utah Motor Vehicle statutes and applicable Utah Administrative Rules; draft, deliberate and issue resulting Commission orders. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2027 |
| 52 | Enhance Customer Experience | Receive private letter ruling (PLR) requests based on fact specific situations, which are not under appeal; perform administrative law judge researches and analyze statutes and administrative rules to interpret the law and provide guidance to the taxpayer regarding the applicability of the law to the taxpayer's specific situation; communicate the analysis with divisions and other interested parties as necessary; perform a full commission review; and submit final PLR to taxpayer. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2027 |
| 53 | Quality Work Environment/Sound Leadership | Relocate Farmington DMV office to join new regional center at the request of DFCM. | Customer Services and Enforcement FAs: DMV Divisions | May have current year supplemental budget request, DTS support (network design) & DFCM (logistics support) | FY2027 |
| 54 | Quality Work Environment/Sound Leadership | Finalize relocation of Ogden DMV office to improve facilities, costs, and location. | Customer Services and Enforcement FAs: DMV Divisions | May request nonlapsing authority for one-time moving expenses appropriated in FY2026, DTS support (network design) & DFCM (logistics support) | FY2027 |
| 55 | Quality Work Environment/Sound Leadership | Relocate Richfield DMV office to join new regional center at the request of DFCM. | Customer Services and Enforcement FAs: DMV Divisions | May have current year supplemental budget request, DTS support (network design) & DFCM (logistics support) | FY2027 |
| 56 | Quality Work Environment/Sound Leadership | Renewal of maintenance and support agreement for FAST products (Utah's tax and motor vehicle systems). | Operations: Budget Team | Budget request may be submitted | FY2027 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 57 | Enhance Customer Experience | Research topics and issues that are lacking in the statewide property tax valuation community, including both centrally and locally assessed property. Prepare and provide presentations for the three day Assessor School Training that is statutorily required by the agency to sponsor, attended by elected county officials, county office staff, agency staff and commissioners, county contractors, and legislators. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget | FY2027 |
| 58 | Quality Work Environment/Sound Leadership | Respond to 2025 IRS Onsite Safeguard Review findings using the corrective action plan. | Operations: Security and Disclosure Team | May have a current year supplemental budget request (to remediate findings) | FY2027 |
| 59 | Quality Work Environment/Sound Leadership | Review and discuss long-term legislative planning items for proposal to the legislature. | Operations: Policy, Planning and Public Affairs Team | Existing budget | FY2027 |
| 60 | Quality Work Environment/Sound Leadership | 2026 General Legislative session bills (greatest impact in FY2027): # of total bills reviewed, including subs: # had no impact to the agency; # will require additional work for the agency but costs cannot be quantified; # had a dollar impact for agency administration that was documented in the bill's fiscal note; | Operations: Agency Legislative Response Team | Existing budget & DTS support | FY2027 |
| 61 | Quality Work Environment/Sound Leadership | Review performance measures for adjustment as needed; report on previous years' measures. | Operations: Budget Team | Existing budget | FY2027 |
| 62 | Promoting Innovation and Leveraging Technology | Review program return edits to determine if manual intervention is needed. | Tax & Revenue FA: Financial Operations and Income Tax and Education Divisions | Existing budget | FY2027 |
| 63 | Quality Work Environment/Sound Leadership | Update Annual Report and Strategic Plan. | Operations: Reporting | Existing budget | FY2027 |
| 64 | Enhance Customer Experience | Build online portal in the Taxpayer Access Point (TAP) to submit Voluntary Disclosure Agreements requests and enhance them in the tax system (GenTax) to make it more efficient and user-friendly. | Customer Services FA: Special Services Division | Existing budget, DTS support & FAST | FY2027 |
| 65 | Enhance Customer Experience | Enforce the collection of tax on the sales of CBD products, including field audits and collaborating with the Department of Agriculture and Food. | Enforcement FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2027 |
| 66 | Enhance Customer Experience | Maintain Electronic Cigarette Product Registry. | Enforcement FA: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2027 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 67 | Promoting Innovation and Leveraging Technology | Change GenTax and VADRS database to PostGres | Agency: Systems Support Team | Existing budget, DTS support & FAST | FY2027 |
| 68 | Promoting Innovation and Leveraging Technology | Review inefficiencies and as appropriate implement AI driven solutions to make the processes more efficient . | Agency: Customer Service Support Teams | Existing budget | FY2027 |
| 1 | Promoting Innovation and Leveraging Technology | Resolve issues relating to levy match to ensure efficient process and increase program participation. | Customer Services FA: Special Services Division | Budget request may be submitted, DTS support & FAST | FY2028 |
| 2 | Enhance Customer Experience | Analyze, assess, and act upon customer service response outcome results and indicators to understand roadblocks and challenges in order to provide needed and desired services, measured in several ways including customer service feedback surveys and analysis tools by using Qualtrics products (both the website survey instrument and XM Discover), direct feedback from tax professionals, legislators, the Governor's office and other state partners, text message surveys, and other tools. | Agency: Customer Service Support Teams | Existing budget, DTS support & FAST | FY2028 |
| 3 | Enhance Customer Experience | Complete self-review projects on four unique industry groups to educate taxpayers and improve compliance. | Tax & Revenue FA: Business Taxes and Discovery Division | Existing budget | FY2028 |
| 4 | Quality Work Environment/Sound Leadership | Conduct internal audit risk assessments to determine the level of agency risk in various areas of performance to ensure adequate internal and management controls exist; and communicate results to executive leadership and the commissioners. | Commission: Internal Audit | Existing budget & DTS support as needed | FY2028 |
| 5 | Quality Work Environment/Sound Leadership | Conduct internal audits at the request of agency leadership to investigate areas of risk; and communicate the audit results and recommendations to the commissioners and agency leadership as applicable to each audit. | Commission: Internal Audit | Existing budget & DTS support as needed | FY2028 |
| 6 | Enhance Customer Experience | Continue to develop (as needed) and adjust self-serve process through TAP to allow customer the ability access pertinent information from their accounts, including applicable changes in the law, filing deadlines/requirements, confirmations of return receipt and refund status, and other needs based on customer feedback. | Tax & Revenue FA: Income Tax and Education Division | Existing budget, DTS support & FAST | FY2028 |
| 7 | Enhance Customer Experience | Continue to develop and deliver focused online training workshops for county elected officials, school districts, county administrators, special districts, and other taxing entities and their staff to provide education for enhanced and accurate compliance to statutory requirements. | Property & Misc. Tax FA: Subject matter experts | Existing budget | FY2028 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 8 | Enhance Customer Experience | Coordination between agency, DTS, and other governmental entities on data sharing agreements and legislation. | Agency: Systems Support Team | Existing budget & DTS support | FY2028 |
| 9 | Enhance Customer Experience | Maintain ledger system to ensure complexities in revenue distribution required by statute are accurately determined and distributed on behalf of state and local jurisdictions. | Tax & Revenue FA: Financial Operations Division | Existing budget, DTS support & FAST | FY2028 |
| 10 | Enhance Customer Experience | Develop, enhance, and conduct training courses (both on-site and in the field) to provide education to agency and county personnel to equip them with the necessary knowledge and skills to achieve licensed appraiser status and certification for Utah. The training also provides continuing education (CE) credits, helping attendees maintain their licenses and skill levels. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget | FY2028 |
| 11 | Quality Work Environment/Sound Leadership | Develop, test, and put into production tax and motor vehicle systems adjustments from bills passed during previous and current fiscal year general legislative session: number of bills will be updated annually - GS 2027. | Agency: Systems Support Team | Future budget or current year supplemental may be requested, DTS support & FAST as applicable according to the law | FY2028 |
| 12 | Enhance Customer Experience | Enforce the collection of tax on the sales of CBD products, including field audits and collaborating with the Department of Agriculture and Food. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2028 |
| 13 | Enhance Customer Experience | Enforce tobacco master settlement agreement by performing field audits and site inspections and reviewing for adherence to escrow payments from the non-participating cigarette manufacturers to ensure payments are being placed in the escrow account as required under the agreement. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2028 |
| 14 | Enhance Customer Experience | Enhance reporting tools to provide support and guidance on each county's data collection systems and processes to assist the counties in better understanding their own data and to accurately communicate that to the agency; this will allow the agency to provide better oversight. | Property & Misc. Tax FA: Property Tax Division | Existing budget | FY2028 |
| 15 | Enhance Customer Experience | Ensure sales tax compliance on: 1) motor vehicle purchases, 2) aircraft purchases, and 3) foreign purchases (as identified through Customs reports). | Tax & Revenue FA: Business Taxes and Discovery Division | May have a current year supplemental budget request & DTS support | FY2028 |
| 16 | Promoting Innovation and Leveraging Technology | Evaluate agency's TIME (tolerate, invest, migrate, and eliminate) and SAFe (scaled agile framework) systems with DTS. | Agency: Executive Leadership Team | Existing budget & DTS support | FY2028 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 17 | Quality Work Environment/Sound Leadership | Finalize Pay for Performance plan year, assess where all evaluations are rated for the year to be able to allocate the funds based on success level throughout the agency, perform calculations and employee increases and allocations, ensure accurate results, and submit to DHRM. | Operations: Budget Team | Existing budget | FY2028 |
| 18 | Enhance Customer Experience | Generate, review and submit report to the legislature as required by law to show the results of increased enforcement of the Electronic Cigarette and Nicotine Product Licensing and Taxation Act. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget & DTS support | FY2028 |
| 19 | Enhance Customer Experience | Generate, review, and submit the Electronic Cigarette Product Registry Report to the legislature as required by law. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget & DTS support | FY2028 |
| 20 | Promoting Innovation and Leveraging Technology | Implement chatbot for the motor vehicle portal. | Customer Services FA: Motor Vehicle Division | Existing budget, DTS support & FAST | FY2028 |
| 21 | Promoting Innovation and Leveraging Technology | Improve and expand data collection and analysis capabilities which will allow the agency to provide improved assessments for better tax rate certification. This impacts both centrally and locally assessed properties, as evidenced through property assessments and statistical reports the agency provides to the Governor's Office, legislature, and others as required. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget & DTS support may be needed | FY2028 |
| 22 | Quality Work Environment/Sound Leadership | Maintain and conduct training programs for tobacco, CBD, and e-cig program staff. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2028 |
| 23 | Promoting Innovation and Leveraging Technology | Maintain and update Certified Tax Rate system. | Property & Misc Tax FA: Systems group | Existing budget | FY2028 |
| 24 | Enhance Customer Experience | Maintain Electronic Cigarette Product Registry. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2028 |
| 25 | Promoting Innovation and Leveraging Technology | Maintain electronic licensing program and options for both dealer and sales representative licensees to allow downloads, apply for and renew online licenses, this will include management of the inspection process necessary for new licensees. | Enforcement FA: Motor Vehicle Enforcement Division | Budget request may be submitted from a restricted account, DTS support & FAST | FY2028 |
| 26 | Enhance Customer Experience | Maintain Renewal Express, On-the-Spot (OTS), Vehicle Title Lien and Registration (TLR) programs. | Customer Services FA: Systems Team | Existing budget, DTS support & Tyler Technologies Utah (3rd party vendor) | FY2028 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 27 | Promoting Innovation and Leveraging Technology | Maintain system to communicate location of impounded vehicles with designated agent and other necessary parties' systems and determine actions necessary to process the vehicles out of impound. | Enforcement FA: Motor Vehicle Division - Title & Dealer Services | Existing budget, DTS support, FAST & 3rd party vendors as necessary | FY2028 |
| 28 | Promoting Innovation and Leveraging Technology | Maintain T-CAP and ongoing Salesforce licenses. | Commission: Staff as needed | Existing budget & DTS support | FY2028 |
| 29 | Promoting Innovation and Leveraging Technology | Manage and develop active tax and motor vehicle public website system interfaces. | Agency: Systems Support Team | Existing budget, DTS support & FAST | FY2028 |
| 30 | Enhance Customer Experience | Manage and develop websites, including changes, improvements, corrections, and other postings. | Operations: Web Development Team | Existing budget | FY2028 |
| 31 | Enhance Customer Experience | Manage and track dealer license plate inventory orders to ensure all requirements under law are satisfied and appropriate, review and audit dealer plate sales for compliance, provide training to dealers and law enforcement on statutory requirements. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2028 |
| 32 | Quality Work Environment/Sound Leadership | Manage retention schedule, including review and update record series as needed and identify personal identifiable information in each series for privacy program management; respond to privacy requests as needed. | Operations: Records and Privacy Team | Existing budget | FY2028 |
| 33 | Quality Work Environment/Sound Leadership | Participate in and conduct Peace Officer Standards Training (POST) for officer certification. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2028 |
| 34 | Enhance Customer Experience | Participate in National Crime Information Bureau to track trends regarding illegal motor vehicle activity (fraud and theft practices), improve our inspection process, and gather and participate in other industry enhancements and officer safety. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2028 |
| 35 | Enhance Customer Experience | Perform all necessary types of vehicle identification number (VIN), dealership lot, body shop, state impound yard tow, crushers and dismantler, and dealer-sale files inspections. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2028 |
| 36 | Quality Work Environment/Sound Leadership | Perform annual Incident Response & COOP tabletop exercise. | Operations: Emergency Preparedness Team | Existing budget | FY2028 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 37 | Enhance Customer Experience | Perform revenue duties, including providing fiscal impact responses as requested by the legislature, provide economic indicator and state revenue forecasts; update data reports monthly, quarterly, and annually as needed; assist with legislative implementation; respond to data and analysis requests from the legislature, governor's office, and other entities; complete special projects as assigned by the commissioners; and serve as hearing officers and provide expert consultation and testimony in district court property tax cases for centrally assessed properties, as requested. | Commission: Economic and Statistical Unit | Existing budget | FY2028 |
| 38 | Enhance Customer Experience | Perform sales tax check ups with customers to help them establish a process to ensure they satisfy filing and record requirements for correct tax reporting with the intent of reducing future errors. | Tax & Revenue FA: Business Taxes and Discovery Division | Existing budget | FY2028 |
| 39 | Enhance Customer Experience | Perform traffic stops and other necessary duties to enforce registration law requirements for vehicles safety/emission, auto theft, and tax collection purposes. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2028 |
| 40 | Quality Work Environment/Sound Leadership | Prepare and submit annual budget, including compensation, technology, building, and other needs. | Operations: Budget Team | Budget request will be submitted | FY2028 |
| 41 | Quality Work Environment/Sound Leadership | Prepare Agency Initiatives Quarterly Report. | Operations: Budget Team and Agency Leadership | Existing budget | FY2028 |
| 42 | Enhance Customer Experience | Process petitions for administrative appeals of county board of equalization decisions and Tax Commission actions; facilitate communication between administrative appeals participants, including document exchanges; provide administrative support for administrative appeals hearings and related mediation and status conferences; provide administrative support for commission meetings; prepare documents for the commissioners and administrative law judges; and perform other administrative and clerical duties, as requested. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2028 |
| 43 | Enhance Customer Experience | Process tax returns and refunds timely while maintaining quality processing standards. | Tax & Revenue FA: Financial Operations Division | Existing budget | FY2028 |
| 44 | Quality Work Environment/Sound Leadership | Provide guidance to staff based on established goals, track progress and adjust strategies as needed for growth and collaboration. | Tax & Revenue FA: Financial Operations Division | Existing budget | FY2028 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 45 | Enhance Customer Experience | Provide joint division efforts to better educate and inform customers by using website how-to guides and videos, publishing monthly webinars, developing and holding Tax Roadshows throughout the state, promoting the practitioner hotline, and other methods. | Tax & Revenue FA: Income Tax and Education & Business Taxes and Discovery Divisions | Existing budget | FY2028 |
| 46 | Enhance Customer Experience | Receive petitions for administrative appeals of county board of equalization decisions and Tax Commission actions; facilitate communication between administrative appeals participants, including document exchanges; hold formal administrative appeals hearings and related mediation and status conferences consistent with Utah Administrative Procedures Act, Utah Tax Code, Utah Motor Vehicle statutes and applicable Utah Administrative Rules; draft, deliberate and issue resulting Commission orders. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2028 |
| 47 | Enhance Customer Experience | Receive private letter ruling (PLR) requests based on fact specific situations, which are not under appeal; perform administrative law judge researches and analyze statutes and administrative rules to interpret the law and provide guidance to the taxpayer regarding the applicability of the law to the taxpayer's specific situation; communicate the analysis with divisions and other interested parties as necessary; perform a full commission review; and submit final PLR to taxpayer. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2028 |
| 48 | Promoting Innovation and Leveraging Technology | Redevelop collection stages after Core 21 system upgrades. | Customer Services FA: Special Services Division | Budget request may be submitted, DTS support & FAST | FY2028 |
| 49 | Enhance Customer Experience | Reexamine Collection of Motor Vehicle Fees contract with counties under the new central distribution and e-title process. | Customer Services FA: Motor Vehicle Division | Budget request may be submitted, DTS support & AGs | FY2028 |
| 50 | Quality Work Environment/Sound Leadership | Relocate Vernal DMV office to join new regional center at the request of DFCM. | Customer Services and Enforcement FAs: DMV Divisions | May have current year supplemental budget request, DTS support (network design) & DFCM (logistics support) | FY2028 |
| 51 | Quality Work Environment/Sound Leadership | Renewal of maintenance and support agreement for FAST products (Utah's tax and motor vehicle systems). | Operations: Budget Team | Budget request may be submitted | FY2028 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 52 | Enhance Customer Experience | Research topics and issues that are lacking in the statewide property tax valuation community, including both centrally and locally assessed property. Prepare and provide presentations for the three day Assessor School Training that is statutorily required by the agency to sponsor, attended by elected county officials, county office staff, agency staff and commissioners, county contractors, and legislators. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget | FY2028 |
| 53 | Quality Work Environment/Sound Leadership | Respond to 2025 IRS Onsite Safeguard Review findings using the corrective action plan. | Operations: Security and Disclosure Team | May have a current year supplemental budget request (to remediate findings) | FY2028 |
| 54 | Quality Work Environment/Sound Leadership | Review and discuss long-term legislative planning items for proposal to the legislature. | Operations: Policy, Planning and Public Affairs Team | Existing budget | FY2028 |
| 55 | Quality Work Environment/Sound Leadership | 2027 General Legislative session bills (greatest impact in FY2028): # of total bills reviewed, including subs: # had no impact to the agency; # will require additional work for the agency but costs cannot be quantified; # had a dollar impact for agency administration that was documented in the bill's fiscal note; | Operations: Agency Legislative Response Team | Existing budget & DTS support | FY2028 |
| 56 | Quality Work Environment/Sound Leadership | Review performance measures for adjustment as needed; report on previous years' measures. | Operations: Budget Team | Existing budget | FY2028 |
| 57 | Promoting Innovation and Leveraging Technology | Review program return edits to determine if manual intervention is needed. | Tax & Revenue FA: Financial Operations and Income Tax and Education Divisions | Existing budget | FY2028 |
| 58 | Quality Work Environment/Sound Leadership | Update Annual Report and Strategic Plan. | Operations: Reporting | Existing budget | FY2028 |
| 59 | Promoting Innovation and Leveraging Technology | Evaluate certified tax rate and personal property audit systems for software changes | Property & Misc. Tax FA: Property Tax Division | Existing budget, DTS support & FAST | FY2028 |
| 60 | Promoting Innovation and Leveraging Technology | Review inefficiencies and as appropriate implement AI driven solutions to make the processes more efficient . | Agency: Customer Service Support Teams | Existing budget | FY2028 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 1 | Enhance Customer Experience | Analyze, assess, and act upon customer service response outcome results and indicators to understand roadblocks and challenges in order to provide needed and desired services, measured in several ways including customer service feedback surveys and analysis tools by using Qualtrics products (both the website survey instrument and XM Discover), direct feedback from tax professionals, legislators, the Governor's office and other state partners, text message surveys, and other tools. | Agency: Customer Service Support Teams | Existing budget, DTS support & FAST | FY2029 |
| 2 | Enhance Customer Experience | Complete self-review projects on four unique industry groups to educate taxpayers and improve compliance. | Tax & Revenue FA: Business Taxes and Discovery Division | Existing budget | FY2029 |
| 3 | Quality Work Environment/Sound Leadership | Conduct internal audit risk assessments to determine the level of agency risk in various areas of performance to ensure adequate internal and management controls exist; and communicate results to executive leadership and the commissioners. | Commission: Internal Audit | Existing budget & DTS support as needed | FY2029 |
| 4 | Quality Work Environment/Sound Leadership | Conduct internal audits at the request of agency leadership to investigate areas of risk; and communicate the audit results and recommendations to the commissioners and agency leadership as applicable to each audit. | Commission: Internal Audit | Existing budget & DTS support as needed | FY2029 |
| 5 | Enhance Customer Experience | Continue to develop (as needed) and adjust self-serve process through TAP to allow customer the ability access pertinent information from their accounts, including applicable changes in the law, filing deadlines/requirements, confirmations of return receipt and refund status, and other needs based on customer feedback. | Tax & Revenue FA: Income Tax and Education Division | Existing budget, DTS support & FAST | FY2029 |
| 6 | Enhance Customer Experience | Continue to develop and deliver focused online training workshops for county elected officials, school districts, county administrators, special districts, and other taxing entities and their staff to provide education for enhanced and accurate compliance to statutory requirements. | Property & Misc. Tax FA: Subject matter experts | Existing budget | FY2029 |
| 7 | Enhance Customer Experience | Coordination between agency, DTS, and other governmental entities on data sharing agreements and legislation. | Agency: Systems Support Team | Existing budget & DTS support | FY2029 |
| 8 | Enhance Customer Experience | Maintain ledger system to ensure complexities in revenue distribution required by statute are accurately determined and distributed on behalf of state and local jurisdictions. | Tax & Revenue FA: Financial Operations Division | Existing budget, DTS support & FAST | FY2029 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 9 | Enhance Customer Experience | Develop, enhance, and conduct training courses (both on-site and in the field) to provide education to agency and county personnel to equip them with the necessary knowledge and skills to achieve licensed appraiser status and certification for Utah. The training also provides continuing education (CE) credits, helping attendees maintain their licenses and skill levels. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget | FY2029 |
| 10 | Quality Work Environment/Sound Leadership | Develop, test, and put into production tax and motor vehicle systems adjustments from bills passed during previous and current fiscal year general legislative session: number of bills will be updated annually - GS 2028. | Agency: Systems Support Team | Future budget or current year supplemental may be requested, DTS support & FAST as applicable according to the law | FY2029 |
| 11 | Enhance Customer Experience | Enforce the collection of tax on the sales of CBD products, including field audits and collaborating with the Department of Agriculture and Food. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2029 |
| 12 | Enhance Customer Experience | Enforce tobacco master settlement agreement by performing field audits and site inspections and reviewing for adherence to escrow payments from the non-participating cigarette manufacturers to ensure payments are being placed in the escrow account as required under the agreement. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2029 |
| 13 | Enhance Customer Experience | Enhance reporting tools to provide support and guidance on each county's data collection systems and processes to assist the counties in better understanding their own data and to accurately communicate that to the agency; this will allow the agency to provide better oversight. | Property & Misc. Tax FA: Property Tax Division | Existing budget | FY2029 |
| 14 | Enhance Customer Experience | Ensure sales tax compliance on: 1) motor vehicle purchases, 2) aircraft purchases, and 3) foreign purchases (as identified through Customs reports). | Tax & Revenue FA: Business Taxes and Discovery Division | May have a current year supplemental budget request | FY2029 |
| 15 | Promoting Innovation and Leveraging Technology | Evaluate agency's TIME (tolerate, invest, migrate, and eliminate) and SAFe (scaled agile framework) systems with DTS. | Agency: Executive Leadership Team | Existing budget & DTS support | FY2029 |
| 16 | Quality Work Environment/Sound Leadership | Finalize Pay for Performance plan year, assess where all evaluations are rated for the year to be able to allocate the funds based on success level throughout the agency, perform calculations and employee increases and allocations, ensure accurate results, and submit to DHRM. | Operations: Budget Team | Existing budget | FY2029 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 17 | Enhance Customer Experience | Generate, review and submit report to the legislature as required by law to show the results of increased enforcement of the Electronic Cigarette and Nicotine Product Licensing and Taxation Act. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget & DTS support | FY2029 |
| 18 | Enhance Customer Experience | Generate, review, and submit the Electronic Cigarette Product Registry Report to the legislature as required by law. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget & DTS support | FY2029 |
| 19 | Promoting Innovation and Leveraging Technology | Implement chatbot for the motor vehicle portal. | Customer Services FA: Motor Vehicle Division | Existing budget, DTS support & FAST | FY2029 |
| 20 | Promoting Innovation and Leveraging Technology | Improve and expand data collection and analysis capabilities which will allow the agency to provide improved assessments for better tax rate certification. This impacts both centrally and locally assessed properties, as evidenced through property assessments and statistical reports the agency provides to the Governor's Office, legislature, and others as required. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget & DTS support may be needed | FY2029 |
| 21 | Quality Work Environment/Sound Leadership | Maintain and conduct training programs for tobacco, CBD, and e-cig program staff. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2029 |
| 22 | Promoting Innovation and Leveraging Technology | Maintain and update Certified Tax Rate system. | Property & Misc Tax FA: Systems group | Existing budget | FY2029 |
| 23 | Enhance Customer Experience | Maintain Electronic Cigarette Product Registry. | Property & Misc: Cigarette, CBD, and Tobacco Enforcement Section | Existing budget | FY2029 |
| 24 | Promoting Innovation and Leveraging Technology | Maintain electronic licensing program and options for both dealer and sales representative licensees to allow downloads, apply for and renew online licenses, this will include management of the inspection process necessary for new licensees. | Enforcement FA: Motor Vehicle Enforcement Division | Budget request may be submitted from a restricted account, DTS support & FAST | FY2029 |
| 25 | Enhance Customer Experience | Maintain Renewal Express, On-the-Spot (OTS), Vehicle Title Lien and Registration (TLR) programs. | Customer Services FA: Systems Team | Existing budget, DTS support & Tyler Technologies Utah (3rd party vendor) | FY2029 |
| 26 | Promoting Innovation and Leveraging Technology | Maintain system to communicate location of impounded vehicles with designed agent and other necessary parties' systems and determine actions necessary to process the vehicles out of impound. | Enforcement FA: Motor Vehicle Division - Title & Dealer Services | Existing budget, DTS support, FAST & 3rd party vendors as necessary | FY2029 |
| 27 | Promoting Innovation and Leveraging Technology | Maintain T-CAP and ongoing Salesforce licenses. | Commission: Staff as needed | Existing budget & DTS support | FY2029 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 28 | Promoting Innovation and Leveraging Technology | Manage and develop active tax and motor vehicle public website system interfaces. | Agency: Systems Support Team | Existing budget, DTS support & FAST | FY2029 |
| 29 | Enhance Customer Experience | Manage and develop websites, including changes, improvements, corrections, and other postings. | Operations: Web Development Team | Existing budget | FY2029 |
| 30 | Enhance Customer Experience | Manage and track dealer license plate inventory orders to ensure all requirements under law are satisfied and appropriate, review and audit dealer plate sales for compliance, provide training to dealers and law enforcement on statutory requirements. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2029 |
| 31 | Quality Work Environment/Sound Leadership | Manage retention schedule, including review and update record series as needed and identify personal identifiable information in each series for privacy program management; respond to privacy requests as needed. | Operations: Records and Privacy Team | Existing budget | FY2029 |
| 32 | Quality Work Environment/Sound Leadership | Participate in and conduct Peace Officer Standards Training (POST) for officer certification. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2029 |
| 33 | Enhance Customer Experience | Participate in National Crime Information Bureau to track trends regarding illegal motor vehicle activity (fraud and theft practices), improve our inspection process, and gather and participate in other industry enhancements and officer safety. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2029 |
| 34 | Enhance Customer Experience | Perform all necessary types of vehicle identification number (VIN), dealership lot, body shop, state impound yard tow, crushers and dismantler, and dealer-sale files inspections. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2029 |
| 35 | Quality Work Environment/Sound Leadership | Perform annual Incident Response & COOP tabletop exercise. | Operations: Emergency Preparedness Team | Existing budget | FY2029 |
| 36 | Enhance Customer Experience | Perform revenue duties, including providing fiscal impact responses as requested by the legislature, provide economic indicator and state revenue forecasts; update data reports monthly, quarterly, and annually as needed; assist with legislative implementation; respond to data and analysis requests from the legislature, governor's office, and other entities; complete special projects as assigned by the commissioners; and serve as hearing officers and provide expert consultation and testimony in district court property tax cases for centrally assessed properties, as requested. | Commission: Economic and Statistical Unit | Existing budget | FY2029 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 37 | Enhance Customer Experience | Perform sales tax check ups with customers to help them establish a process to ensure they satisfy filing and record requirements for correct tax reporting with the intent of reducing future errors. | Tax & Revenue FA: Business Taxes and Discovery Division | Existing budget | FY2029 |
| 38 | Enhance Customer Experience | Perform traffic stops and other necessary duties to enforce registration law requirements for vehicles safety/emission, auto theft, and tax collection purposes. | Enforcement FA: Motor Vehicle Enforcement Division | Existing budget | FY2029 |
| 39 | Quality Work Environment/Sound Leadership | Prepare and submit annual budget, including compensation, technology, building, and other needs. | Operations: Budget Team | Budget request will be submitted | FY2029 |
| 40 | Quality Work Environment/Sound Leadership | Prepare Agency Initiatives Quarterly Report. | Operations: Budget Team and Agency Leadership | Existing budget | FY2029 |
| 41 | Enhance Customer Experience | Process petitions for administrative appeals of county board of equalization decisions and Tax Commission actions; facilitate communication between administrative appeals participants, including document exchanges; provide administrative support for administrative appeals hearings and related mediation and status conferences; provide administrative support for commission meetings; prepare documents for the commissioners and administrative law judges; and perform other administrative and clerical duties, as requested. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2029 |
| 42 | Enhance Customer Experience | Process tax returns and refunds timely while maintaining quality processing standards. | Tax & Revenue FA: Financial Operations Division | Existing budget | FY2029 |
| 43 | Quality Work Environment/Sound Leadership | Provide guidance to staff based on established goals, track progress and adjust strategies as needed for growth and collaboration. | Tax & Revenue FA: Financial Operations Division | Existing budget | FY2029 |
| 44 | Enhance Customer Experience | Provide joint division efforts to better educate and inform customers by using website how-to guides and videos, publishing monthly webinars, developing and holding Tax Roadshows throughout the state, promoting the practitioner hotline, and other methods. | Tax & Revenue FA: Income Tax and Education & Business Taxes and Discovery Divisions | Existing budget | FY2029 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 45 | Enhance Customer Experience | Receive petitions for administrative appeals of county board of equalization decisions and Tax Commission actions; facilitate communication between administrative appeals participants, including document exchanges; hold formal administrative appeals hearings and related mediation and status conferences consistent with Utah Administrative Procedures Act, Utah Tax Code, Utah Motor Vehicle statutes and applicable Utah Administrative Rules; draft, deliberate and issue resulting Commission orders. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2029 |
| 46 | Enhance Customer Experience | Receive private letter ruling (PLR) requests based on fact specific situations, which are not under appeal; perform administrative law judge researches and analyze statutes and administrative rules to interpret the law and provide guidance to the taxpayer regarding the applicability of the law to the taxpayer's specific situation; communicate the analysis with divisions and other interested parties as necessary; perform a full commission review; and submit final PLR to taxpayer. | Commission: Commissioners and Administrative Law Judges | Existing budget | FY2029 |
| 47 | Enhance Customer Experience | Research topics and issues that are lacking in the statewide property tax valuation community, including both centrally and locally assessed property. Prepare and provide presentations for the three day Assessor School Training that is statutorily required by the agency to sponsor, attended by elected county officials, county office staff, agency staff and commissioners, county contractors, and legislators. | Property & Misc. Tax FA: Property Tax and Centrally Assessed Divisions | Existing budget | FY2029 |
| 48 | Quality Work Environment/Sound Leadership | Respond to 2025 IRS Onsite Safeguard Review findings using the corrective action plan. | Operations: Security and Disclosure Team | May have a current year supplemental budget request (to remediate findings) | FY2029 |
| 49 | Quality Work Environment/Sound Leadership | Review and discuss long-term legislative planning items for proposal to the legislature. | Operations: Policy, Planning and Public Affairs Team | Existing budget | FY2029 |
| 50 | Quality Work Environment/Sound Leadership | 2028 General Legislative session bills (greatest impact in FY2029): # of total bills reviewed, including subs: # had no impact to the agency; # will require additional work for the agency but costs cannot be quantified; # had a dollar impact for agency administration that was documented in the bill's fiscal note; | Operations: Agency Legislative Response Team | Existing budget & DTS support | FY2029 |

| | Strategic Plan Goal | Strategy Work Item | Agency Functional Area (FA) and Work Item Champion | Budget and Resource Needs (including third-party vendor FAST Enterprises, LLC, and others) | Completion Goal or Budget Request Year |
|---|---|---|---|---|---|
| 51 | Quality Work Environment/Sound Leadership | Review performance measures for adjustment as needed; report on previous years' measures. | Operations: Budget Team | Existing budget | FY2029 |
| 52 | Promoting Innovation and Leveraging Technology | Review program return edits to determine if manual intervention is needed. | Tax & Revenue FA: Financial Operations and Income Tax and Education Divisions | Existing budget | FY2029 |
| 53 | Quality Work Environment/Sound Leadership | Update Annual Report and Strategic Plan. | Operations: Reporting | Existing budget | FY2029 |
| 54 | Promoting Innovation and Leveraging Technology | Review inefficiencies and as appropriate implement AI driven solutions to make the processes more efficient . | Agency: Customer Service Support Teams | Existing budget | FY2029 |

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 167**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**WALKER EXPERIENCE LINKEDIN**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Forensic PDF capture of Court Clerk Alex Walker's professional experience details, confirming 4 years as Adapted Physical Education Teacher at Spectrum Academy (2019?2023).***

SHA-256 : c8274d48b4a0363120a2d8b6bbf1d6a650898db274e33596f34c863a3d4412b4
SHA3-512: d062f6798fb4bb8e56cbec19826e5095a1b859b43fb0ae3393ee5711c84571d9...
BLAKE3 : c8909f8780c41a80ea63c611e3f29738d7165a1b2305017d9e923ece8f256b49

**EXHIBIT 167**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<167<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

Alex Walker
University of Utah Graduate
More Message Alex Connect

## Experience

### Judicial Assistant
Third Judicial District Court · Full-time
Nov 2024 - Present · 1 yr 8 mos

### Lead Paralegal
Melton Law, pllc · Full-time
Jan 2024 - Nov 2024 · 11 mos
On-site

**Law, Criminal Law and +10 skills**

### Office and Sales Assistant
Industrial Safety Equipment · Part-time
Aug 2014 - Nov 2024 · 10 yrs 4 mos
Salt Lake City, Utah, United States · Hybrid

• Utilize Microsoft Office programs including: Excel, Word, PowerPoint, Publisher.
• Interact with a broad customer base: laborers, managers, private and public entities.
• Assist customers on the phone and in person with statements, conflicts, and orders.
• Modify and add product pages to the company's website to increase efficiency and customer accessibility

**Phone Etiquette, Teamwork and +1 skill**

### Paralegal and Prosecutor's Assistant (Shadow)
Salt Lake City Corporation · Internship
Sep 2023 · 1 mo
On-site

• Shadowed Paralegal Sally Jones during the initial screening process for charging cases.
• Gained valuable knowledge in the pretrial phase of litigation and the importance of paralegal work.
• Shadowed Prosecutor's Assistant Katie Douglas for building a case file and utilizing the PIMS database
• Observed the process for requesting reports and video footage.
• Gained valuable knowledge in the focus of discovery.

### Adapted Physical Education Teacher
Spectrum Academy · Full-time
Apr 2019 - Aug 2023 · 4 yrs 5 mos
North Salt Lake, Utah, United States · On-site

• Created Individual Movement Programs for medically fragile and/or those with disabilities
• Administered evaluations (TGMD-III, CTAPE, APEAS-II, Brockport) to assess gross motor and proprioceptive deficits
• Presented progress and data directly to the student IEP team
Trained Adapted Physical Education and General Physical Education department staff on best practice and gross motor strategies
•Created an inclusion pipeline to rehabilitate students with motor deficits so they can participate in their physical education classes with same-age peers.

**Phone Etiquette, Teamwork and +1 skill**

### Microcredential Writing
Utah State Board of Education · Contract
Apr 2021 - Aug 2021 · 5 mos
Salt Lake City, Utah, United States · Remote

• Micro credential Writing (Adapted Physical Education)
• Collaborated with Utah's leading Adapted Physical Education Specialists to write a cohesive Micro-Credential Certification for physical educators.
•Analyzed best practices and national guidelines to create meaningful activities for future educators.

**Teamwork**

### Operations Supervisor
Kearns Oquirrh Park Fitness · Part-time
2018 - 2020 · 2 yrs
Kearns, Utah, United States · On-site

• Supervised staff and general operations of the fitness center
• Provide accurate information regarding facility policies and procedures to patrons and neighboring departments
• Lead and maintain the efficiency of the Emergency Response Team

**Teamwork and Customer Service**

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

JOHN EARLE SULLIVAN

EXHIBIT IDENTIFIER

EXHIBIT 174

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

WALKER MANUAL EMAIL REPLY

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Outlook email PDF from Court Clerk Alex Walker to Plaintiff dated June 16, 2026, manually acknowledging receipt of the Reply Memorandum.***

SHA-256 : 1a53218855cc5a03ad7ceb419ef7b7565c6093da9da7b57abcae0f745e1358ea
SHA3-512: 9b2891873f24a0f164e305fc2dfdfb4fb5d4d362a3c4e808e96368fbee7d0b2a...
BLAKE3 : a1e8395bc5235ada1a7f2f6cd985ecbda0dd0e0832e9a8abd8c6c026689d079e

EXHIBIT 174

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<174<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

Outlook

**Re: NOTICE: Filing of Reply Memorandum - Case No. 260903520**

**From** Alex Walker <alexw@utcourts.gov>
**Date** Tue 6/16/2026 11:29 AM
**To** John Sullivan <johne.sullivan@outlook.com>
**Cc** 3rdferreteam@utcourts.gov <3rdferreteam@utcourts.gov>; andreab@utcourts.gov <andreab@utcourts.gov>

Received, thanks.

On Mon, Jun 15, 2026 at 2:23 PM John Sullivan <johne.sullivan@outlook.com> wrote:

[redacted]

## FILING OF PETITIONER'S REPLY MEMORANDUM IN CASE NO. 260903520

Dear Ms. Walker,

The Petitioner submits the enclosed Reply Memorandum in Support of the First Amended Motion to Strike for filing in Case No. **260903520**. Pursuant to Utah Rules of Civil Procedure Rule 5 and Rule 7, please electronically file this document with the Third Judicial District Court.

The filing contains:

[redacted]

Respectfully,

John Earle Sullivan
Petitioner *pro se*
johne.sullivan@outlook.com
[redacted]
(435) 841-7258

This transmittal contains public court filings submitted in Case No. 260903520 before the Third Judicial District Court of Utah. State and federal laws subject unauthorized interception of this data stream to legal penalties.

### END OF COMMUNICATION

*CONFIDENTIALITY NOTICE: The information contained in this communication is confidential and may be privileged. It is intended solely for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.*

Thank you,



**John Earle Sullivan**
**Phone:** 435-841-7258

--

UTAH JUDICIARY

Alex Walker
She/Her
Judicial Assistant for Judge Ferre
801-238-7105
alexw@utcourts.gov
***3rdferreteam@utcourts.gov***

******I am NOT an attorney and cannot give legal advice******

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 176**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**JUNE 8 ORDER WITH CERTIFICATE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Third Judicial District Court Memorandum Decision and Order dated June 8, 2026, featuring Page 7 Certificate of Notification signed by Alex Walker showing an 8-day service delay to Plaintiff.***

SHA-256 : 2e27baab6b92e873a96165081dc0bbf612b051380c6d0318af319b3842c34935
SHA3-512: 389869b9f0c7125c0d73183356c178e6b233d5725bcf8fc44f70aee9499bfb8f...
BLAKE3 : 0ba78d4bda6bf0fc28d49f0369571bf177de3ac601a39170ff02b04bdd4611f7

**EXHIBIT 176**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<176<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

THIRD JUDICIAL DISTRICT COURT

SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JOHN EARLE SULLIVAN,<br>Plaintiff,<br>vs.<br>UTAH STATE TAX COMMISSION,<br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 260903520<br><br>Judge Joel Ferre |

Before the court is Petitioner John Earle Sullivan's Motion for Temporary Restraining Order (TRO), Motion for Writ of Mandamus, Motion to Stay Administrative Proceedings, and Motion to Seal. The court has carefully considered the briefing. Neither party requested a hearing and the court determines a hearing is unnecessary. The court denies the motions except the Motion to Seal which it grants to the limited extent necessary to protect Sullivan's personal financial and health information.

**BACKGROUND**

The Utah State Tax Commission (USTC) adjusted Sullivan's Utah adjusted gross income for the 2019–2022 tax years and scheduled an initial administrative tax hearing for July 20, 2026. In response, Sullivan submitted a Government Records Access and Management Act (GRAMA) request on March 26, 2026, seeking eight categories of records, including GenTax case action logs, proprietary algorithms, federal tax information, and metadata.

The USTC denied the requests and the USTC's Chief Administrative Officer affirmed the denial. Sullivan then filed this action seeking judicial review of the GRAMA denial. Concurrently, he filed multiple motions asking this court to stay his upcoming tax hearing and

compel the USTC to produce the tax-related metadata and files, alleging spoliation and procedural fraud. Following the USTC's Opposition, Sullivan filed a Reply arguing that the agency engaged in shadow-drafting, submitted sham pleadings, and ignored litigation holds.

## ANALYSIS

### I. Sullivan is not entitled to a stay of the administrative tax proceeding or extraordinary relief.

Sullivan has exhausted his GRAMA remedies, but not his tax remedies. Under Utah law, a party may obtain judicial review of agency action only after completing all available administrative proceedings. Utah Code § 63G-4-401(2); *Christensen v. Utah State Tax Comm'n*, 2020 UT 45, ¶ 16.

Sullivan argues that he exhausted his remedies when the USTC's Chief Administrative Officer denied his GRAMA appeal. But that appeal concerned a records request, not the tax assessment itself. The two proceedings are separate.

Sullivan has exhausted his administrative remedies under GRAMA, which permits judicial review of the records denial. *See* Utah Code § 63G-2-404. He has not, however, exhausted his remedies regarding the tax assessment. That matter remains pending before the USTC at the administrative-hearing stage. Sullivan must present his arguments in that proceeding and complete the administrative process before seeking judicial review of the assessment.

Because adequate administrative remedies remain available, Sullivan is not entitled to extraordinary relief under Rule 65B.

### II. Sullivan is not entitled to a TRO.

Utah Rule of Civil Procedure 65A(f) mandates that a preliminary injunction may issue only when all four of the following factors are shown by the applicant:

(1) There is a substantial likelihood that the applicant will prevail on the merits of the underlying claim, or the case presents serious issues on the merits which should be the subject of further litigation;

(2) The applicant will suffer irreparable harm unless the order or injunction issues;

(3) The threatened injury to the applicant outweighs whatever damage the proposed order or injunction may cause the party restrained or enjoined; and

(4) The order or injunction, if issued, would not be adverse to the public interest.

*Aquagen Int'l, Inc. v. Calrae Tr.*, 972 P.2d 411, 413 (Utah 1998). Sullivan has not satisfied any of the factors required for a restraining order.

**A. Sullivan has not established a likelihood of success on the merits.**

Sullivan seeks native database metadata, proprietary software data, and information concerning the USTC's underlying algorithms and system architecture. GRAMA does not require a governmental entity to create or compile records that do not already exist. Utah Code § 63G-2-201(8). Nor does it require disclosure of proprietary software or other information that falls outside GRAMA's definition of a record. *See* Utah Code § 63G-2-103(25)(b)(v). Sullivan's assertion that the requested exports could be generated through routine technical processes does not expand the agency's statutory duties.

Sullivan also seeks federal tax information. Federal tax records are confidential and governed by federal law, which supersedes GRAMA. *See* 26 U.S.C. § 6103; Utah Code § 63G-2-206(7).

As for Sullivan's own tax records, the USTC provides a procedure for obtaining them through the Taxpayer Access Point upon submission of a properly notarized Form TC-880. Sullivan did not complete that process. His arguments that electronic identification should

substitute for notarization and that he was unable to access TAP do not permit the court to disregard the agency's identity-verification requirements.

GRAMA further protects records whose disclosure could compromise governmental information systems, including security-related information, audit workpapers, and operational procedures. Utah Code § 63G-2-305(10), (15); Utah Admin. Code R861-1A-12.

Because the records Sullivan seeks are exempt from disclosure, protected by federal law, or available only through procedures he did not follow, he has not shown a likelihood of success on the merits.

**B. Sullivan will not suffer irreparable harm.**

While Sullivan claims he will suffer imminent and irreparable harm if he is forced to attend his administrative tax hearing without the withheld metadata evidence, the impending July 20, 2026 meeting is merely an initial hearing regarding his delinquent tax payments. If Sullivan feels unprepared, he can simply request a continuance. Even if he receives an unfavorable decision at the initial hearing, he has the right to request a formal administrative hearing, and if still dissatisfied, he can appeal the final decision to the district court. Because any procedural deficiency can be fully remedied after he exhausts his available administrative appeals, he faces no irreparable harm.

**C. The threatened injury to Sullivan does not outweigh any damage to USTC and the TRO is not adverse to the public interest.**

Both the balance of harms and the public interest favor allowing the orderly administrative adjudication process to proceed. The public interest is not served by allowing taxpayers to unilaterally halt administrative tax proceedings based on a claim of government conspiracy.

## III. Sullivan's procedural arguments fail to salvage his motions from dismissal.

Sullivan alleges the State filed sham pleadings in violation of Utah Rule of Civil Procedure 8(b) and 11 because the USTC's Answer claimed a lack of knowledge regarding his records, while its opposition detailed his tax audit history. Pleading a lack of knowledge regarding the custody and technical structure of specific native database metadata requested in a GRAMA action does not conflict with the USTC's knowledge of the general status of Sullivan's tax assessments.

Sullivan also argues the USTC engaged in spoliation and template fraud because a USTC employee drafted the letterhead for the CAO's final determination, and because that template bore an incorrect date of April 3, 2025. A USTC employee drafting a template for a superior's signature does not constitute an impermissible delegation of authority under Utah Code Ann. § 63G-2-401(5)(a), nor does an obvious typographical date error on a recycled letterhead equate to the fraudulent fabrication of government records.

Finally, Sullivan's October 2025 letter demanding a stay of his audit did not trigger a sweeping metadata litigation hold on the USTC's entire IT infrastructure under URCP 37(e) because a GRAMA request does not constitute the commencement of litigation.

## IV. The court seals the record to protect personal information.

Sullivan moves to classify certain evidentiary exhibits as private, citing the need to protect his disability status determinations, medical history, and sensitive financial benefit calculations.

Court records are presumed public. Utah Code Jud. Admin. Rule 4-202.02(1). However, the court may restrict access to documents containing personally identifiable information, confidential tax returns, and records relating to pending administrative actions. Utah Code Jud.

Admin. Rules 4-202.02(4), (4)(L), and (5)(J). And tax returns and information obtained from tax returns are confidential under state law. Utah Code Ann. § 59-1-403.

Given the statutory protections, the motion is granted to the extent it asks the court to protect Sullivan's personal identifying information, health information, and confidential tax data from public disclosure. The Clerk of Court is directed to classify the specific exhibits containing this data as private. The general docket and the court's orders will remain public.

**CONCLUSION**

For the foregoing reasons, the court ORDERS the following:

1. Petitioner's Motion for Temporary Restraining Order is DENIED.

2. Petitioner's Motion for Writ of Mandamus is DENIED.

3. Petitioner's Motion to Stay Administrative Proceedings is DENIED.

4. Petitioner's Motion to Seal is GRANTED IN PART. The Clerk is directed to classify as private any exhibits containing Sullivan's personal medical data, Social Security Numbers, and confidential tax returns. All other records shall remain public.

SO ORDERED.

Dated June 8, 2026.

JOEL A. FERRE
District Court Judge

**CERTIFICATE OF NOTIFICATION**

I certify that a copy of the attached document was sent to the following people for case 260903520 by the method and on the

EMAIL: JOHN SULLIVA [redacted]

06-16-2026 /s/ ALEX WALKER

Date: ______________________ ________________________________

Signature

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 231**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**RESPONDENTS EXHIBIT LIST**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified copy of Division's Exhibit List signed by Kathryn White, served as part of the untimely exhibit package on July 10, 2026.***

SHA-256 : 67ffb87677286fb76bee9417df2418de917097b724bcc58cb80e422a8a3c0508
SHA3-512: 313abad8ce18ee61ceed06a79b72d0febf1946d29f11e3867cd59e0888cd082c...
BLAKE3 : 6e79a69f9da7380c7bc4970672400a97aec985a9131e16509c97790f7dee5b84

**EXHIBIT 231**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<231<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

2nd Duplicate
Mailed Copy
Original Mailed
6/30/2026

Derek Brown
Utah Attorney General
Kathryn L. White #15813
Lee J. Davis #7501
Assistant Attorneys General
160 East 300 South, Fifth Floor
P.O. Box 140874
Salt Lake City, Utah 84114-0874
Telephone: (801) 366-0375
Email: kathrynwhite@agutah.gov
leedavis@agutah.gov

*Attorneys for Income Tax and Education Division of the Utah State Tax Commission*

BEFORE THE UTAH STATE TAX COMMISSION

| | |
|---|---|
| JOHN SULLIVAN,<br><br>Petitioner,<br><br>vs.<br><br>INCOME TAX AND EDUCATION DIVISION OF THE UTAH STATE TAX COMMISSION,<br><br>Respondent. | **RESPONDENT INCOME TAX AND EDUCATION DIVISION'S EXHIBIT & WITNESS LIST (INITIAL HEARING)**<br><br>Appeal No.: 26-778<br><br>Judge Nielson-Larios |

Set forth below is Respondent Income Tax and Education Division's list of exhibits and witnesses for the July 20, 2026 Initial Hearing.

**Exhibits**

1. 2019 Request for Verification, Dated August 15, 2025 (DIV 001-DIV 002)
2. 2019 Notice of Deficiency, Dated March 5, 2026 (DIV 003-DIV 005)
3. 2019 Utah State Tax Commission Tax Form Transcript (DIV 006-DIV 011)
4. 2019 IRS Account Transcript (DIV 012-DIV 013)
5. 2019 IRS Wage and Income Transcript (DIV 014-DIV 026)
6. 2020 Request for Verification, Dated August 15, 2025 (DIV 027-DIV 028)

7. 2020 Notice of Deficiency, Dated March 5, 2026 (DIV 029-DIV030)

8. 2020 IRS Account Transcript (DIV 031)

9. 2020 IRS Wage and Income Transcript (DIV 032-DIV 091)

10. 2021 Request for Verification, Dated August 15, 2025 (DIV 092-DIV 093)

11. 2021 Notice of Deficiency, Dated March 5, 2026 (DIV 094-DIV 095)

12. 2021 IRS Account Transcript (DIV 096)

13. 2021 IRS Wage and Income Transcript (DIV 097-DIV 100)

14. 2022 Request for Verification, Dated August 15, 2025 (DIV 101-DIV 102)

15. 2022 Notice of Deficiency, Dated March 5, 2026 (DIV 103-DIV 104)

16. 2022 IRS Account Transcript (DIV 105)

17. 2022 Wage and Income Transcript (DIV 106-DIV 110)

18. Utah State Tax Commission Wage Summary (DIV 111)

19. Order Finding Defendant's Indigency, Dated January 4, 2023 (DIV 112-DIV 113)

20. Utah State Tax Commission Publication 17 (DIV 114-DIV 115)

21. Any and all exhibits which may be used by Petitioners.

**Witnesses**

1. Derek Nelson, Tax Examiner Manager. If Mr. Nelson is unavailable, another representative from the Income Tax and Education Division may be present to testify.

2. Any and all witnesses that may be called by Petitioners.

DATED this 29th day of June, 2026.

*/s/ Kathryn L. White*
KATHRYN L. WHITE
LEE J. DAVIS
Assistant Attorneys General
*Attorneys for Income Tax and Education Division*

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 234**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**USPS DELIVERY NOTICE SLIP 7 2 2026**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***USPS Form 3849 Delivery Notice Slip dated July 2, 2026, for certified mail requiring signature (Tracking # 70220410000220452638), documenting initial service default.***

SHA-256 : 5ceede9a494f02a6a9e5bbc6887f7a92a7acf1ab3f53067c3653c9b9fad45fee
SHA3-512: aabce1e4d570a8c858797de501d51a863be2cb11b4e289210bf4a0003c920c3f...
BLAKE3 : fb191393a7809e3d591e8fa9d1d6569231c67fb466bea95f0bdd595dbdbaeb79

**EXHIBIT 234**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<234<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 234.1**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**USPS FINAL NOTICE SLIP 7 7 2026**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***USPS Form 3849 Final Delivery Notice Slip dated July 7, 2026, for certified mail requiring signature (Tracking # 70220410000220452638), documenting final notice of service default.***

SHA-256 : 6ff7c6fff8b60500dc1e5ec7541c294b874ad4abbd875b4ada06c2e877b5b86e
SHA3-512: ecf19603c8af17b6475ef3cdffb92e6f3005e5be2000940da9daa19f4c9ec69e...
BLAKE3 : ba76dc8a4d80b6bb10619e6f92fd18fedca6c980d00ef630071eccd509e8ccf8

**EXHIBIT 234.1**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<234<1<8USA9407187M3001016<<<<<<<<<<<<

SCAN · VERIFY

UNITED STATES POSTAL SERVICE®

**Sorry We Missed You! We Re Deliver for You**

| Today's Date | Sender's Name |
|---|---|
| Tue 07/07/2026 | |

**Item is at:**
___ **Post Office™** (See back)

Available for Pick-up After
Date: Time:

**For Redelivery Go to *usps.com/redelivery* or see reverse**

___ Letter
___ Large envelope, magazine, catalog, etc.
_X_ Parcel
___ Perishable Item
___ Other:

For Delivery: *(Enter total number of items delivered by service type.)*

For Notice Left: *(Check applicable item)*

___ Priority Mail Express®
___ Insured Mail
_X_ Certified Mail® *(Must claim within 15 days or article will be returned)*
___ Return Receipt for Merchandise
___ Restricted Delivery
___ Adult Signature
___ Registered Mail®
___ Signature Confirmation™

☒ **If checked, you or your agent must be present at time of delivery to sign for item.**

**USPS Tracking # or Article Number(s)**
70220410000220452638

**Notice Left Section**

Customer Name and Address
[redacted]
TOOELE, UT 84074-9581

Article Requiring Payment
☐ Postage Due ☐ COD ☐ Customs

Amount Due
$

☒ **Final Notice**: Article will be returned to sender on Fri 07/17/2026

Delivered By and Date

PS Form **3849**, July 2013 **usps.com** **Delivery Notice/Reminder/Receipt**

We will redeliver OR you or your agent can pick up your mail at the Post Office. *(Bring this form and proper ID. If your agent will pick up, sign below in item 2, and enter agent's name here):*

1. a. *Check all that apply in Section 3;*
b. *Sign in section 2 below;*
c. *Leave this notice where the carrier can see it.*

2. Sign Here *to authorize redelivery or to authorize an agent to sign for you:*

3. ☐ **Redeliver** *(Enter day of week.):*

(Allow at least two delivery days for redelivery, or go to usps.com/redelivery or call 800-275-8777 to arrange redelivery.)

☐ **Leave item at my address** *(not available if you or your agent must be present)*

*(Specify where to leave. Example: "porch", "side door". This option is not available if box is checked on the front requiring your signature at time of delivery.)*

☐ Refused ☐ Forward ☐ Return

TOOELE MAIN POST OFFICE
65 N. MAIN ST., TOOELE, UT 84074
MON. - FRI. 9:00AM - 5:30PM
SAT. 9:00 AM - 1:00PM
WWW.USPS.COM/REDELIVERY OR 800-ASK-USPS (800-275-8777)

**Delivery Section**

| | |
|---|---|
| Signature X | |
| Printed Name | |
| Delivery Address | |

USPS

5293067490442089

PS Form 3849, July 2013 *(Reverse)*

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 235**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**CERTIFIED ENVELOPE POSTMARK 7 9 2026**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***USPS Certified Mail envelope postmarked July 9, 2026 (Tracking # 9505514364616190635924), establishing the execution of a signature-evasion loop.***

SHA-256 : 8816db3d12f639099256b5b65ac6a32d784d454563b3cad1e6b56d1c0aca1433
SHA3-512: 48095ae588af06cbf64410314dc23939b74d2f7426d412ddf08350e97a469583...
BLAKE3 : 841ae3c912e1f3392140eae7900201ae57af8826601193cfa19276b386a15b92

**EXHIBIT 235**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<235<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY


Retail
U.S. POSTAGE PAID
PM
SALT LAKE CITY, UT 84101
JUL 09, 2026
84074
$11.50
RDC 03
0 Lb 11.70 Oz
S2324H505418-01
FROM: Kathryn White
OFFICE OF THE ATTORNEY GENERAL
160 East 300 South, Fifth Floor
P.O. Box 140874
Salt Lake City, Utah 84114-0874
TO:
[redacted]
EXPECTED DELIVERY DAY: 07/11/26
USPS TRACKING® #
9505 5143 6461 6190 6359 24


DuPont™ Tyvek®
Protect What's Inside.™
Survivor
Quality Park Products
Stock #R1520
Made in USA

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 236**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**ORDER SETTING CONDITIONS OF RELEASE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Order Setting Conditions of Release in Case No. 2:21mj14-DAO, dated January 15, 2021, ordering Plaintiff's Home Detention, travel restrictions, and pretrial supervision under active monitoring, establishing the legal and physical basis for Plaintiff's homebound status.***

SHA-256 : cfade271d641f71e5aa720927ccb62dcb19388e61adb6304c7096a5a5079d2a6
SHA3-512: 011fa5bf9153a0b1efbffff1a034d4fe8eb51c5e55edc928d2d59acc258beb95...
BLAKE3 : 879bb04760c284a71d676f562f599357cc9df91102ba0980f9b2f3e6b00cbaf9

**EXHIBIT 236**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<236<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

# United States District Court

**DISTRICT OF UTAH**

UNITED STATES OF AMERICA

**V.**

**John Earle Sullivan**

**ORDER SETTING CONDITIONS OF RELEASE**

Case Number: **2:21mj14-DAO**

IT IS SO ORDERED that the release of the defendant is subject to the following conditions:

(1) The defendant must not commit any offense in violation of federal, state or local or tribal law while on release in this case.

(2) The defendant must immediately advise the court, defense counsel and the U.S. attorney in writing of any change in address and telephone number.

(3) The defendant must appear in court as required and must surrender for service of any sentence imposed.

The defendant must next appear at (if blank, to be notified) USDC District of Columbia
PLACE

Enter text. on January 22, 2021 at 1:30 pm
DATE AND TIME

**Release on Personal Recognizance or Unsecured Bond**

IT IS FURTHER ORDERED that the defendant be released provided that:

(4) The defendant promises to appear in court as required and to surrender for service of any sentence imposed.

(5) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of

Enter text. dollars ($) Enter text.

in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

## Additional Conditions of Release

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community, it is FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

(6) The defendant must:

☒ (a) maintain or actively seek verifiable employment and/or maintain or commence an educational program as approved by the pretrial officer. Must find new employment. Can no longer work for Insurgence USA.

☒ (b) abide by the following restrictions on his/her personal associations, place of abode, or travel:
- ☒ (i) maintain residence and do not change without prior permission from the pretrial officer.
- ☒ (ii) not travel outside the state of Utah without prior permission from the pretrial officer.
- ☒ (iii) not travel outside the United States without prior permission from the Court.

☐ (c) maintain residence at a halfway house or community correction center.

☒ (d) avoid all contact with those named persons, who are considered either alleged victims, potential witnesses and/or codefendants.

☒ (e) report on a regular basis to the pretrial officer as directed.

☒ (f) not possess a firearm, ammunition, destructive device, or other dangerous weapon.

☐ (g) ☐ not use alcohol, ☐ not use alcohol to excess, ☐ not frequent establishments where alcohol is the main item of order.

☒ (h) not use or unlawfully possess a narcotic drug and other controlled substances defined in 21 U.S.C.§ 802 unless prescribed by a licensed medical practitioner. Prescriptions should be reported to the pretrial officer.

☐ (i) submit to drug/alcohol testing as directed by the pretrial officer; defendant shall pay all or part of the cost of the drug testing:
- ☐ (1) if testing reveals illegal drug use, the defendant must participate in drug and/or alcohol abuse treatment, if deemed advisable by the pretrial officer; defendant shall pay all or part of the cost of the program, based upon your ability to pay as the pretrial officer determines.
- ☐ (2) if testing reveals illegal drug use, the court will be notified immediately, with further action to be determined.

☐ (j) you must submit to Remote Alcohol Testing and abide by all of the program requirements for a period of * days. You must pay all or part of the costs of participation in the program as directed by the pretrial officer.

☐ (k) participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial officer; defendant shall pay all or part of the cost of the program, based upon your ability to pay as the pretrial officer determines.

☒ (l) undergo mental health evaluation and complete any recommended treatment, as directed by the pretrial officer, and take any mental health medications as prescribed; defendant shall pay all or part of the cost of the program, based upon your ability to pay as the pretrial officer determines.

☒ (m) surrender any passport to the United States Clerk of the Court, District of Utah by January 22, 2021.

☒ (n) not obtain or apply for passport.

☐ (o) not incur new credit charges or open additional lines of credit without prior permission from the pretrial officer.

☐ (p) not be employed in any fiduciary capacity or any position allowing access to credit or personal information of others.

☐ (q) not view, access or possess any sexually explicit materials.

☐ (r) not have contact with those individuals under 18 years of age without adult supervision except as approved by the pretrial officer.

☒ (s) participate in one of the following location restriction program components and abide by its requirements as the pretrial officer instructs:
- ☐ (i) Curfew. You are restricted to your residence every day (Enter) from Enter to Enter or ☐ as directed by the pretrial officer; or
- ☒ (ii) Home Detention. You are restricted to your residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities preapproved by the pretrial officer; or
- ☐ (iii) Home Incarceration. You are restricted to 24-hour-a-day lock-down except for medical necessities and court appearances or other activities specifically approved by the court.
- ☐ (iv) Inclusion Zone. You are required to be at the following location(s) at the following time(s): Enter text.
- ☐ (v) Exclusion Zone. You are restricted from the following area(s): Enter text.

☐ (t) be monitored by the form of location monitoring indicated below, and abide by all technology and program requirements. The defendant shall pay all or part of the costs of participation in the location monitoring program as directed by the court and the pretrial services officer. No overnight travel without court approval.

- ☐ (i) Radio Frequency (RF) Monitoring;
- ☐ (ii) Global Positioning Satellite (GPS) Monitoring;
- ☐ (iii) Voice Recognition Monitoring: Requires analog phone service at approved residence at participant's expense;
- ☐ (iv) Virtual Monitoring Application: Requires smartphone with location services and push notification features enabled at participant's expense.

☒ (u) be monitored by the form of location monitoring technology, at the discretion of the pretrial services officer, and abide by all technology and program requirements. The defendant shall pay all or part of the costs of participation in the location monitoring program as directed by the court and the pretrial services officer. Due to the ongoing pandemic, the location monitoring equipment shall be installed no more than 14 days after release or sooner if reasonably practicable. Prior to installation, the person under supervision will be monitored by the U.S. Probation Office through telephone contact, virtual means (i.e., Zoom, FaceTime, Google Duo, SmartLink), and socially distant in-person meetings if necessary.

☒ (v) submit person, residence, office, or vehicle to a search, conducted by the pretrial officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant will warn any other residents that the premises may be subject to searches pursuant to this condition.

☒ (w) participate in the United States Probation and Pretrial Services Office Computer and Internet Monitoring Program under a ☒ co-payment plan or ☐ non-co-payment plan, and will comply with the provisions outlined in:

- ☒ (i) Appendix A - Limited Internet Access (Computer and internet use, as approved);
- ☐ (ii) Appendix B - Restricted Internet Access (Computer access only, as approved);
- ☐ (iii) Appendix C - Restricted Computer Access (No computer or internet access except for approved employment).

All computers, internet accessible devices, media storage devices, and digital media accessible to the defendant are subject to manual inspection/search, configuration, and the installation of monitoring software and/or hardware.

The defendant must submit person, residence, office, or vehicle to a search, conducted by the pretrial officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant will warn any other residents that all computers, internet accessible devices, media storage devices, and digital media may be subject to searches pursuant to this condition.

☐ (x) execute a bond or an agreement to forfeit upon failing to appear as required, the following sum of money or designated property.

☐ (y) post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described money:

☐ (z) execute a bail bond with solvent sureties in the amount of $ Enter text.

☐ (aa) be placed in the custody of a third party, who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Name of person or organization
Address
City and state (Tel no.)

Signed:________________________________________
Custodian or Proxy

☐ (7) The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.

☐ (8) Attend Pretrial Pathways Program as directed by Pretrial Services.

☐ (9) Additional conditions: Enter text.

## Advice of Penalties and Sanctions

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence will be in addition to any other sentence.

Federal law makes it a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment and a $250,000 fine or both to tamper with a witness, victim or informant; to retaliate or attempt to retaliate against a witness, victim or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you will be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony, you will be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender must be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

______________________________
Signature of Defendant

______________________________
City and State

## Directions to the United States Marshal

☒ The defendant is ORDERED released January 15, 2021 and report to the USMS on Tuesday, January 19, 2021 at 10:00 am for processing.

☐ The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant must be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: January 15, 2021

Daphne A. Oberg
Signature of Judicial Officer

___Magistrate Judge Daphne A. Oberg___
Name and Title of Judicial Officer

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 237**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**USCA MANDATE VACATING CONVICTIONS**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified copy of the Order and Mandate of the United States Court of Appeals for the District of Columbia Circuit inUnited States v. Sullivan, Case No. 24-3051, entered February 27, 2025, vacating all of Plaintiff's criminal convictions and remanding the case with instructions to dismiss it as moot.***

SHA-256 : 4057ddcc33ab097c068552c1dbe2f5e1de58474e56df628511502606adf9739f
SHA3-512: 038d302e2d4ad8f3387fbf71dc6d3490700a54494ab31eb930f0d910957507fe...
BLAKE3 : 41777e66d4bba10e94ebc36b2606cf4e1dc6242d14932e3d8d5b77351dd17066

**EXHIBIT 237**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<237<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 24-3051** **September Term, 2024**

**1:21-cr-00078-RCL-1**

**Filed On:** February 27, 2025

United States of America,

Appellee

v.

John Earle Sullivan,

Appellant

**BEFORE:** Childs, Pan, and Garcia, Circuit Judges

**O R D E R**

Upon consideration of the unopposed motion to vacate convictions and remand for dismissal, it is

**ORDERED** that the judgment of the district court be vacated and the case be remanded with instructions to dismiss the case as moot. See United States v. Schaffer, 240 F.3d 35, 37–38 (D.C. Cir. 2001) (en banc).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to issue the mandate forthwith to the district court.

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Selena R. Gancasz
Deputy Clerk

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 238**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**DISTRICT COURT ORDER DISMISSING CASE AS MOOT**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified copy of the Order of the United States District Court for the District of Columbia inUnited States v. Sullivan, Case No. 1:21-cr-00078-RCL-1, entered March 4, 2025, dismissing the criminal action as moot following the appellate court's vacatur of convictions.***

SHA-256 : 35d10cbce911b17c408e6c63e2b9f92c74deaf986bd25f8218b53d465bd85249
SHA3-512: d548df345f8e70431432e5dff24febf0b3055595d5ed1f56e6fb8647bc348dc6...
BLAKE3 : 4a09338c0612af2be413d1ca2d41d58d35d6718016299ae4c2d37bbcd55449c9

**EXHIBIT 238**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<238<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN EARLE SULLIVAN,<br><br>*Defendant*. | Case No. 1:21-cr-78-RCL-1 |

**ORDER**

Upon consideration of the D.C. Circuit's Order of February 27, 2025, No. 24-3051, it is hereby **ORDERED** that the case is **DISMISSED AS MOOT**.

**SO ORDERED**

Date: March 4, 2025

Royce C. Lamberth
Royce C. Lamberth
United States District Judge

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 250**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**JULY 13 SUBPOENA REQUEST EMAIL**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Transmittal email from Plaintiff to Judicial Assistant Curtis Britland dated July 13, 2026, requesting signed blank subpoenas duces tecum to SSA, IRS, Treasury, and DDS.***

SHA-256 : a5066b4a90a20c569da01024558be0702658ca459d47471e9a296a489fcb8613
SHA3-512: ae123b28d20c6a9ecd97fd2b12f1ed868c0e3c6677bee429a1728f804402d263...
BLAKE3 : 1df40837dfe759cb3c01dc6205a221299ec0e5359bb7c2ef8019adca3e400084

**EXHIBIT 250**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<250<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

Outlook

**NOTICE: Request for Clerical Issuance of Subpoenas (SSA, IRS, Treasury, DDS) - Case No. 260903520**

**From** John Sulliva [redacted]
**Date** Mon 7/13/2
**To** Curtis Britland <curtisb@utcourts.gov>
**Cc** Judge Joel Ferre Judicial Team <3rdferreteam@utcourts.gov>; Alex Walker <alexw@utcourts.gov>; Andrea Banks <andreab@utcourts.gov>

4 attachments (495 KB)
1220ge_subpoena_SSA-UNLOCKED.pdf; 1220ge_subpoena_IRS-UNLOCKED.pdf; 1220ge_subpoena_Treasury-UNLOCKED.pdf; 1220ge_subpoena_DDS-UNLOCKED.pdf;

[redacted]

Thank you,



**Joh** [redacted]
**Pho**

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 252**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**JULY 13 FILED ORDER**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***State court order entered by Judge Joel Ferre in Case No. 260903520, which restricted Plaintiff's communication channels and fabricated accusations of "hostile, demanding, condescending, and harassing" behavior, serving as circumstantial evidence of racial animus and stereotyping.***

SHA-256 : 1bc9663649e76fd5b29e8a19073c7022e40adfcff4ac7df5e9d76cf2940de5e0
SHA3-512: ad9bdbb9fccaf161e4bfad116f23a1bae3513954eabd97f510a41edeae1d9e79...
BLAKE3 : 15cbd9cf240504fb1fd198fcd1009b131e1782f8ea25ce8a0f087e8711d8cb1e

**EXHIBIT 252**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<252<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

THIRD JUDICIAL DISTRICT COURT

SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JOHN EARLE SULLIVAN,<br>Plaintiff,<br>vs.<br>UTAH STATE TAX COMMISSION,<br>Defendant. | **ORDER**<br>Case No. 260903520<br>Judge Joel Ferre |

Petitioner John Earle Sullivan's communications and filings regarding the court's judicial team are highly inappropriate. He is hostile, demanding, condescending, and harassing toward court personnel.

Among other inappropriate behavior, Mr. Sullivan has baselessly accused the court's judicial assistants—specifically naming them and including personal details on the public docket—of engaging in an "asymmetric, collusive clerical pipeline" and executing a "campaign of administrative exclusion, clerical manipulation, and systemic discrimination." He has accused court staff of "systemic clerical tampering," "administrative deception and clerical hostility," and "ministerial gatekeeping." He has inappropriately leveled accusations of racial bias, claiming an "all-white clerical and prosecutorial apparatus enforces unwritten formatting rules and queue blockades against a Black, severely disabled litigant."

Mr. Sullivan has also directed inappropriate and baseless accusations toward the court itself, accusing the court of "surrendering its fact-finding duties to the nonneutral Attorneys General," engaging in mechanical "rubber-stamping," and acting as a "blind administrative shield for the Attorney General's misconduct."

These communications and allegations have no basis in fact, the rules, or law and serve no legitimate purpose other than to harass court staff performing their standard administrative duties.

Therefore, the court ORDERS the following:

1. Mr. Sullivan is prohibited from emailing or telephoning the court's judicial team.

2. If Mr. Sullivan needs to file a pleading, motion, or other document with the court in this action, he may mail it or deliver it to N11 of the Matheson courthouse or the front counter of the West Jordan courthouse.

3. This email restriction does not apply to the submission of a strictly required administrative form to the district court that is needed for an appeal (e.g., a transcript request). However, in such limited circumstances, Mr. Sullivan's email communication is strictly limited to the following phrase: "*Attached please find the ___________.*" Any email containing further commentary, demands, or accusations will be ignored and deleted.

4. The court reminds Mr. Sullivan that filings must not be used to harass court staff. If Mr. Sullivan continues to include these types of baseless accusations against the judicial assistants or the court within his formal filings, he will be subject to sanctions under Rule 11 of the Utah Rules of Civil Procedure. This means the court may punish this behavior by striking his documents from the record, ordering him to pay fines, or dismissing his case entirely.

Dated July 13, 2026.

JOEL A. FERRE
District Court Judge

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 253**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**JULY 13 CLERK REFUSAL EMAIL**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Email from Judicial Assistant Curtis Britland dated July 13, 2026, refusing to sign blank subpoenas duces tecum in direct violation of URCP Rule 45(a)(2).***

SHA-256 : 40554b1aade3d77a0adbadb0b87dc7535a90a84539e9d5a6bd08a8c813314b07
SHA3-512: 1486ebcfaed01da4156b204d95479ceec3a5064a359553af39f386148ee971bd...
BLAKE3 : c91a7a34502837f6c700f924a2fe0a6a838a4dd764a2f7c5edba67d3e7ddf708

**EXHIBIT 253**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<253<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

Outlook

**Re: ACTION REQUIRED: Request for Issuance of Subpoena to SSA in Case No. 260903520**

**From** Curtis Britland <curtisb@utcourts.gov>
**Date** Mon 7/13/2[redacted]
**To** John Sulliva[redacted]
**Cc** Judge Joel F[redacted]tcourts.gov>; Alex Walker <alexw@utcourts.gov>; Andrea Banks <andreab@utcourts.gov>

Good morning,

These subpoenas you have submitted are blank. We are unable to sign completely blank subpoenas--they must at least have a party they are directed to filled in. Also, there are not currently any hearings set for this case.

Feel free to reach out to our self help center for assistance.

Thanks!

Self Help Center
888-683-0009
selfhelp@utcourts.gov
www.utcourts.gov/selfhelp/

On Mon, Jul 13, 2026 at 8:40 AM John Sullivan [redacted]ote:

[redacted]

--

Curtis Britland
Judicial Assistant, Judge Joel Ferre
801-238-7067
curtisb@utcourts.gov

*Please select "Reply All" when responding to this email. Please note I am not an attorney and cannot offer legal advice.*

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 259**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**MEMORANDUM DECISION COMPARISON**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***IT Audit Blanket Denial Order Forensic Comparison Report analyzing structural and temporal anomalies of the July 15, 2026 order.***

SHA-256 : f205186ae6eba2f11fea5c80a0e0264139e9ea3429043e3ab3bc10ecfd563e45
SHA3-512: fe3cd1f3f1b2281429bf69d2069907f8e3176532b463d38e5656aaf758ab14df...
BLAKE3 : 0fc36ea4de3507dba01112e578296d022e8eaf8f82a079253200f555f1c94110

**EXHIBIT 259**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<259<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

# EXHIBIT 259: OMNIBUS ORDER MEMORANDUM DECISION THREE-WAY AUDIT

FORENSIC LIFE CYCLE COMPARISON & TIMELINE DECONSTRUCTION

**CASE NO:** #260903520 (Third District) **SUBJECT:** Memorandum Decision & Order Three-Way Comparison **SOURCE:** Email & MyCase Portal Document Substrates

## 1. FORENSIC LIFE CYCLE ASSEMBLY TIMELINE (UTC)

Reconstruction of document compilation timeline. A major timestamp inversion is identified: Document 1 and Document 2 contain a digital signature block claiming a signing time of 22:03:41 UTC, which is 25 seconds before the files were generated (22:04:06 UTC) — proving pre-compiled parameter injections.

22:00:05 UTC — **DOCUMENT 3 (PORTAL COPY) - BASELINE COMPILATION** — Author: joel.ferre
Doc 3 is compiled by the judge session author 'joel.ferre' via a print driver (PScript5.dll). Baseline order layout containing 7 pages (omitting the Certificate of Notification).

22:03:41 UTC — **DOCUMENT 3 (PORTAL COPY) - FIRST SIGNATURE STAMP** — Author: System automated
Document 3 is modified and signed by the court's automated filing engine (Signature Block 1). File size is 509,655 bytes.

INVERSION -25s GAP

22:04:06 UTC — **DOCUMENT 1 (MAILED COPY) - INVERTED FILE CREATION** — Author: None (iText)
Document 1 (Emailed) is created via iText 5.4.5. Contains signature block claiming to have been signed at 22:03:41 UTC (25s before creation!).

22:04:07 UTC — **DOCUMENT 2 (MYCASE UPLOAD & EMAIL) - DOUBLE-SIGNATURE & NOTIFICATION** — Author: None + Alex Walker
Document 2 is the copy uploaded by the court to the Petitioner's MyCase profile and emailed directly as the official notification copy. Contains the Certificate of Notification (Page 8).

## 2. DOCUMENT AUTHOR & CREATOR VARIANCE MATRIX

PDF '/Info' analysis proves two distinct document lineages. Lineage A (iText Native, 8 Pages) comprises Document 1 and Document 2, which share the same Permanent ID (with Document 2 modified/signed at filing). Lineage B (Distiller Print, 7 Pages) comprises Document 3, which has a different Permanent ID, a different author ('joel.ferre'), and was compiled via PScript5.dll. Document 3 is a separate document altogether.

| | Document 1 (Emailed Version) | Document 2 (MyCase Upload & Email) | Document 3 (MyCase Portal Copy) |
|---|---|---|---|
| | PRISTINE DIGITAL | MYCASE PROFILE & EMAILED COPY | PORTAL COPY |
| Author (/Author) | None (Strips session context) | None (Strips session context) | joel.ferre (Judge user session) |
| Creator (/Creator) | None (Direct export) | None (Direct export) | PScript5.dll Version 5.2.2 |
| Producer (/Producer) | iText 5.4.5 (AGPL-version) | iText 5.4.5 + iText Core 8.0.0 | Acrobat Distiller 26.0 (Win) |
| Creation Date | 2026-07-15 22:04:06 UTC | 2026-07-15 22:04:06 UTC | 2026-07-15 22:00:05 UTC |

## 3. PDF FILE IDENTITY & STRUCTURAL AUDIT GRID

| Metric Key | Document 1 (Emailed) | Document 2 (MyCase Emailed) | Document 3 (MyCase Portal) |
|---|---|---|---|
| File Size | 514,714 bytes | 532,008 bytes | 509,655 bytes |
| SHA-256 Hash | a3672285d02756e2dc7688f5b492f7... | beca52cadf2811767364df6af512... | d175b75e0fff6a695c4fab81bd4b... |
| Permanent ID | 1FFD0A742CCFFE57EA95C76D1380D24C | 1FFD0A742CCFFE57EA95C76D1380D24C | 4F5B5B2389977F16B052C82621435771 |
| Total Pages | 8 Pages | 8 Pages | 7 Pages (Omitted Certificate) |
| PDF Version | PDF 1.4 | PDF 1.4 | PDF 1.6 (Dynamic Wrapper) |
| Logical Xref Size | 56 Objects | 59 Objects | 72 Objects |

## 4. CERTIFICATE OF NOTIFICATION OMISSION & SERVICE DEFECT

OMITTED PROOF OF SERVICE: The entire Certificate of Notification (rendering as Page 8 of the emailed files) is completely omitted from the public portal copy (Doc 3). Below is the raw, high-resolution snippet carved directly from the physical PDF page, containing Deputy Clerk Alex Walker's original signature stamp at 04:04 PM MDT on July 15, 2026. This service record is completely missing from the public portal.




### Observation: Author & Page Discrepancy

The public portal copy (Doc 3) was authored by 'joel.ferre' and contains exactly 7 pages, omitting the Certificate of Notification completely. In contrast, Document 2 (uploaded to the litigant's MyCase profile and emailed as the official service copy) and Document 1 contain 8 pages, including the Certificate of Notification signed by Alex Walker on July 15 at 04:04 PM, and strip all author metadata. The metadata proves these constitute two completely distinct document lineages.

### Technical Analysis: Chronological Timeline Inversion

The Emailed copies (Doc 1 & 2) were compiled at 22:04:06 UTC, yet they contain a digital signature block claiming a signing time of 22:03:41 UTC (25 seconds before file creation). This timeline inversion proves these files were programmatically generated with pre-copied or out-of-sync signature payloads rather than signed live.

### Forensic Conclusion: Record Integrity Compromise

The variations in authors, timeline inversions, and page counts prove that the court did not maintain a single, static record of the Omnibus Order. Instead, two completely different document lineages were compiled and published (the 8-page iText Native lineage for Documents 1 & 2, and the 7-page Distiller Print lineage for Document 3), violating public docket integrity, causing dynamic hash mutations, and stripping service proof records from the portal.

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 293**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**TRANSPARENT UTAH COMPENSATION WHITE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Transparent Utah public compensation record for Kathryn L. White showing concurrent wage payments as AAG and Canyons School District employee.***

SHA-256 : 98aca81e7c774763810200088c6609608d271dcd717a9825d6629e2a7699ed0a
SHA3-512: d92db53e04e5483b965430b2e2306e759091d7939c8a910a7cc21ef9c52edfeb...
BLAKE3 : f04ffca05496d904af3232ce5f1a6ad937da1a237545928d2d12909d310a02cd

**EXHIBIT 293**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<293<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

Office of the State Auditor

TRANSPARENT UTAH

Home / Employees / Employee Search

# EMPLOYEE COMPENSATION SEARCH

## Search

KATHRYN White

## Filter

FILTER YEAR: Select...
FILTER ENTITY: 1 item selected
FILTER EMPLOYEE: Select...
FILTER TITLE: Select...

## Data

| Year | Entity | Employee | Title | $ Wages | $ Benefits |
|---|---|---|---|---|---|
| 2025 | State of Utah | White, Kathryn | Assistant Attorney General Iii | $12,879.16 | $5,413.52 |
| 2025 | State of Utah | White, Kathryn | Assistant Attorney General Iv | $125,970.35 | $52,715.52 |
| 2024 | State of Utah | White, Kathryn | Assistant Attorney General Iii | $51,888.12 | $22,175.35 |

Page Size 10

## Chart

Download




TRANSPARENT UTAH

A government transparency initiative by the Office of the State Auditor, providing public access to state and local government spending, compensation, and financial data.

QUICK LINKS
- Home
- About
- Help & FAQs
- Resources

POPULAR TOOLS
- Employee Pay Search
- Highest Paid Employees
- Entity Overview
- Job Pay Search

SUPER USERS
- Resource Center
- Become a Super User
- Available Fields
- Example SQL Scripts

State Auditor

Teacher Pay

Vendor Payments

Query with Python/R

801-538-1025

transparent@utah.gov

Utah State Capitol, Suite 260
Salt Lake City, UT 84114

© 2025 State of Utah · Office of the State Auditor

Terms of Use Privacy Policy Disclaimers CC BY 4.0

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 311**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**BLEAZARD LEGAL ENTITY INFORMATION**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Utah Department of Commerce Division of Corporations business entity search for Bleazard Legal, PLLC, confirming Kathryn White's active commercial law firm.***

SHA-256 : 4649b1de7591d00e18661583d6e53ec63f392f9d835d3653d7d139534d737dd4
SHA3-512: e2cffb00e267ab6c000c220434fc4c8fa2afa162a4cf52058ad4c79e560cd3ba...
BLAKE3 : 40f52e58a91d7cd215ef0311308717916db68300e86b549979c6badbb3eb2f9b

**EXHIBIT 311**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<311<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

ENTITY INFORMATION

ENTITY INFORMATION

Entity Name: BLEAZARD LEGAL PLLC

Entity Number: 9849072-0162

Entity Type: Domestic Limited Liability Company

Entity Subtype: Professional Limited Liability Company

Profession: N/A

Formation Date: 06/23/2016

Entity Status: Inactive

Renew By Date: 06/30/2023

Entity Status Details: Voluntarily Dissolved

Last Renewed Date: 04/15/2022

Status Updated On: 04/24/2023

Expiration Date: 04/24/2023

REGISTERED AGENT INFORMATION

Name: KATHRYN BLEAZARD

Street Address: 8931 S. DAMASCUS WAY, WEST JORDAN, UT, 84088, USA

Last Updated: 9/13/2024 9:22:44 PM

PRINCIPAL INFORMATION

| Title | Name | Address | Last Updated |
|---|---|---|---|
| Member | KATHRYN BLEAZARD | 8931 S. DAMASCUS WAY, WEST JORDAN, UT, 84088, USA | 09/13/2024 |

Page 1 of 1, records 1 to 1 of 1

ADDRESS INFORMATION

Physical Address: 8931 S. DAMASCUS WAY, WEST JORDAN, UT, 84088, USA

Updated Date: 9/13/2024 8:42:59 PM

Mailing Address:

Updated Date:

SERVICE OF PROCESS INFORMATION

Service of Process Name: BLEAZARD LEGAL PLLC

Last Updated: 9/13/2024 8:42:59 PM

Service of Process Address: 8931 S. DAMASCUS WAY, WEST JORDAN, UT, 84088, USA

Print Filing History Name History Mergers/Conversions Associated DBAs

Return to Search Return to Results

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 312**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**BLEAZARD LEGAL FILING HISTORY**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Utah Department of Commerce filing history for Bleazard Legal, PLLC, documenting private legal practice during full-time state employment.***

SHA-256 : 90123eb8c3c8dfa491905ead3e0c7799cea58a974e6b2762412362df6d89fa24
SHA3-512: e8098e81efe2ab5046b163068bedb0e68a20a683406ac17950e8a5c5b001ab01...
BLAKE3 : 2a55d6613a0bb06437ef9f5079aa3661381a0304a1e52f1e128ad855a8af5ffd

**EXHIBIT 312**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<312<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

FILING HISTORY

ENTITY INFORMATION

**Entity Name:** BLEAZARD LEGAL PLLC

**Entity Number:** 9849072-0162

**Entity Type:** Domestic Limited Liability Company

**Entity Subtype:** Professional Limited Liability Company

**Profession:** N/A

**Entity Status:** Inactive

**Entity Status Details:** Voluntarily Dissolved

**Status Updated On:** 04/24/2023

**Formation Date:** 06/21/2016

**Renew By Date:** 06/30/2023

**Last Renewed Date:** 04/15/2022

**Expiration Date:** 04/24/2023

FILING HISTORY DETAILS

| File Date | Effective Date | Filing Number | Document Type | Filing Status | Source | View |
|---|---|---|---|---|---|---|
| 04/24/2023 12:00 AM | 04/24/2023 12:00 AM | 9849072-0162 | Articles of Dissolution | | Internal | |
| 08/14/2019 12:00 AM | 08/14/2019 12:00 AM | 9849072-0162 | Application for Reinstatement | | Internal | |
| 06/21/2016 12:00 AM | 06/21/2016 12:00 AM | 9849072-0162 | Certificate of Organization | | Internal | |

Page 1 of 1, records 1 to 3 of 3

Back Return to Search Return to Results

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 326**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**EMERGENCY ADA REQUEST TRANSMISSION**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Signed and secured Emergency Request for Reasonable ADA Accommodations and Notice of Filing Blockade submitted to AOC Coordinator Keisa Williams on July 13, 2026.***

SHA-256 : 82494be9be31fefaebc42de01a67dad9f200a12a81099dd2184f1b5869550c6e
SHA3-512: 681cdbac0c9acba82dd91664abd13be8e36e40a22d2d3e5ce8054cf14d44464c...
BLAKE3 : eccffd48577320f4207364cbf524768d4d65bf1cf540e14508eb4079b71117bf

**EXHIBIT 326**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<326<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

CONFIDENTIAL LEGAL COMMUNICATION // RETAIN FOR OFFICIAL RECORD

# BEFORE THE ADMINISTRATIVE OFFICE OF THE COURTS

## FORMAL TRANSMISSION & CERTIFICATE OF SERVICE

**DATE:** July 13, 2026

**DELIVERY:** Certified Electronic Mail

**TO:**

**Keisa Williams**
*keisaw@utcourts.gov*
Associate General Counsel & State Court ADA Coordinator, Administrative Office of the Courts
450 South State Street, P.O. Box 140241, Salt Lake City, Utah 84114-0241

**Tina Sweet**
*humanresources@utcourts.gov*
HR Director / State Court ADA Team
450 South State Street, P.O. Box 140241, Salt Lake City, Utah 84114-0241

**Utah State Courts Self-Help Center**
*selfhelp@utcourts.gov*
Self-Help Support Unit
450 South State Street, P.O. Box 140241, Salt Lake City, Utah 84114-0241

**FROM:** [redacted] Petitioner Pro Se

**RE (IDs):** DOC ID: 0713-JES-AW-ADA-REQ-2026

**SUBJECT MATTER:**

**EMERGENCY REQUEST FOR REASONABLE ADA ACCOMMODATIONS AND NOTICE OF FILING BLOCKADE**

**REFERENCED ATTACHMENTS:**

- 0713-JES-AW-ADA-REQ-2026

**RESPECTFULLY SUBMITTED & EXECUTED:**

[signature]

**John Earle Sullivan**

Petitioner Pro Se

**DATED:** July 13, 2026

DOC LINK: 0713-JES-AW-ADA-REQ-2026
SYSTEMIC VALIDATION: EAE0515B89F3FC9F
RENDER IDENTIFIER: 07239FFEBE78B0A8
TIMESTAMP: 2026-07-13T15:52:56.733855Z

NOTICE: MANDATORY EVIDENCE PRESERVATION IN EFFECT // FRCP 37(e) COMPLIANT

# ACCOMMODATION REQUEST

| | |
|---|---|
| **AGENCY:** | ADMINISTRATIVE OFFICE OF THE COURTS |
| **PETITIONER:** | John Earle Sullivan |
| **DATE:** | July 13, 2026 |
| **DOC ID:** | 0713-JES-AW-ADA-REQ-2026 |

## EMERGENCY REQUEST FOR REASONABLE ADA ACCOMMODATIONS AND NOTICE OF FILING BLOCKADE

### SECTION I: INTRODUCTION & NOTICE OF CONSTITUTIONAL BLOCKADE

Pursuant to Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, and the Fourteenth Amendment's Equal Protection and Due Process Clauses, Petitioner John Earle Sullivan hereby submits this Emergency Request for Reasonable Accommodations and Notice of Filing Blockade to Associate General Counsel and State Court ADA Coordinator Keisa Williams. This Notice of Filing Blockade is being simultaneously submitted as an evidentiary exhibit to the United States Department of Justice Civil Rights Division and the Utah Judicial Conduct Commission to document the active, systemic deprivation of rights by the Third District Court.

On July 13, 2026, Judge Joel Ferre entered a restrictive Order prohibiting the Petitioner from emailing or telephoning the court's judicial team. The Order dictates that the Petitioner must mail or physically deliver all future filings to the Scott M. Matheson Courthouse in Salt Lake City or the West Jordan Courthouse.

Because the Petitioner is a Black, severely disabled, and indigent pro se litigant who is locked out of the MyCase electronic filing portal, has no vehicle or physical transport, no printer, and no financial resources to pay for printing, paper, envelopes, or USPS Certified Mail, the physical-filing mandate of the July 13 Order constitutes an absolute blockade to the judicial process. This blockade deprives the Petitioner of his fundamental right of access to the courts under the Utah and United States Constitutions.

Accordingly, the Petitioner demands that the Administrative Office of the Courts (AOC) immediately provide a reasonable accommodation to cure this discriminatory exclusion. Specifically, the AOC must designate an electronic filing coordinate through which the Petitioner can submit filings for docketing, or provide print-and-file assistance for the Petitioner's upcoming pleadings.

## SECTION II: STATEMENT OF DISABILITY AND INDIGENCY STATUS

1. **Severe Physical Disabilities:** The Petitioner is a qualified individual with documented disabilities under 42 U.S.C. § 12102.

• **Neurological Impairments:** The Petitioner suffers from spinal radiculopathy and peripheral neuropathy (ICD-10 G57.9), which severely limits motor functions and mobility. These neurological impairments have been verified by state-paid Nerve Conduction Studies on April 1, 2026, satisfying the requirements of Social Security Neurological Listings 1.15 and 11.14.

• **Orthopedic Impairments:** The Petitioner has a Bilateral Skeletal/Major Joint Abnormality of the Foot (ICD-10 M21.96), verified by podiatric 3-view X-rays on February 3, 2026, which meets the criteria of Orthopedic Listing 1.18. He has underwent Open Reduction Internal Fixation (ORIF) surgery, leaving permanent lateral screws and plates in his right ankle. He suffers from chronic bilateral foot pain (ICD-10 M79.67) and Raynaud's disease (ICD-10 I73.00), preventing him from walking long distances or traveling.

• **Cognitive and Visual Processing Disorder**[redacted] oner has been clinically diagnosed with Attention Deficit [redacted] 90.9) [redacted] CD-10 F81.0), and a childhood diagnosis of Irlen Syndrome [redacted] whic storts visual perception, causes print glare, and impairs his

2. **Confirmed Indigency Status:** The Petitioner is completely destitute and currently receive [redacted] benefits. His indigent status has been repeatedly adjudicated and certified by both feder e

• On January 4, 2023, the Fourth Judicial District Court of Utah formally entered an order finding the Petitioner indigent under Utah Code § 78B-22-202.

• On February 4, 2021, the U.S. District Court for the District of Columbia adjudicated the Petitioner indigent under the Criminal Justice Act (CJA).

• On May 29, 2025, the U.S. Court of Appeals for the D.C. Circuit certified the Petitioner's *In Forma Pauperis* (IFP) status in Case No. 25-3059.

## SECTION III: STATUTORY AND CONSTITUTIONAL GROUNDS FOR EMERGENCY ACCOMMODATIONS

1. **Failure to Accommodate Under Title II of the ADA:**

Under 28 C.F.R. § 35.130(b)(7), a public entity must make reasonable modifications in policies, practices, or procedures when necessary to avoid discrimination on the basis of disability. Additionally, public entities must ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others. By stripping the Petitioner of email filing privileges while locked out of the electronic portal, and restricting him to mail or hand-delivery, the court has failed to accommodate his physical and cognitive impairments.

2. **Intersectional Civil Rights and Equal Protection Violations:**

The court's physical-filing mandate creates a severe disparate impact. Opposing counsel—white Assistant Attorneys General representing the Utah State Tax Commission—have seamless, cost-free electronic access to the MyCase portal. They can draft, file, and serve documents instantly from their offices without incurring costs. In contrast, the Petitioner—a Black, severely disabled, indigent litigant—is forced to choose between purchasing food/medication or paying for printing and postage, or traveling miles to a courthouse he cannot physically access. This unequal treatment violates the Fourteenth Amendment's Equal Protection Clause and constitutes discrimination under Title VI of the Civil Rights Act of 1964 by a public entity receiving federal funds.

3. **Severe Procedural Barriers and Deprivation of Due Process:**

Because the Petitioner cannot email the judicial team, and cannot print or mail documents due to his indigency and disability, he is blockaded from filing his Reply Memorandums (due July 16, 2026) and his Request for Clerical Issuance of Subpoenas. Furthermore, he cannot file a motion to lift the email ban because he cannot physically print or mail the motion itself. This constitutes a total deprivation of due process.

4. **Unlawful ADA Retaliation:**

On June 19, 2026, and July 10, 2026, the Petitioner engaged in federally protected activities by formally filing ADA accommodation grievances regarding non-accessible PDF filings and exposed medical records. Judge Ferre's July 13 gag order—stripping the Petitioner of electronic access and citing those grievances as *"harassment"*—constitutes unlawful retaliation by a public entity against an individual asserting ADA rights, in direct violation of 42 U.S.C. § 12203(a) and 28 C.F.R. § 35.134..

## SECTION IV: EMERGENCY ACCOMMODATIONS DEMANDED

To prevent immediate procedural default and restore constitutional access to the court, the Petitioner demands that the AOC and ADA Coordinator Keisa Williams provide the following emergency accommodations:

1. **Print-and-File Service for Upcoming Pleadings:**

The ADA Coordinator's Office and the Self-Help Center must print and submit the Petitioner's upcoming pleadings, motions, and subpoena forms to Judge Joel Ferre's judicial team for docketing in Case No. 260903520 upon electronic submission of the documents by the Petitioner.

2. **Designation of Electronic Filing Coordinates:**

The court must designate a secure, electronic filing coordinate (such as emailing the ADA Coordinator's office or the Self-Help Center at selfhelp@utcourts.gov) through which the Petitioner can submit future filings for docketing, or restore the Petitioner's full electronic access to the MyCase filing portal.

This request is sent to the administrative arm of the Utah State Courts (the AOC General Counsel and State Court ADA Coordinator) and does not violate the July 13 Order's prohibition against emailing the judicial team.

Because the Petitioner faces active, impending filing deadlines on July 16, 2026, time is of the essence. The Petitioner demands formal written confirmation of the receipt of this request, and a determination on the emergency print-and-file accommodation, within twenty-four (24) hours of transmission. Failure to intervene before the expiration of these deadlines will render the Administrative Office of the Courts jointly liable for the irreversible deprivation of the Petitioner's civil rights.

Respectfully submitted,

John Earle Sullivan
*Petitioner Pro Se*

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 327**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**SELF HELP CENTER ADA RESPONSE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Email response from the Utah State Courts Self-Help Center on July 27, 2026, acknowledging receipt of Plaintiff's ADA Request and confirming Coordinator Keisa Williams was included.***

SHA-256 : 32f3abbaef28438c083130a47f3955f22dc1e34684d7c3d542db6616ed75ea08
SHA3-512: 6c640ba2575f0b21033c01881d15245e75c551171c0249e47628120a0871b555...
BLAKE3 : 129bb7331398f5801f30d1bb50a9a2d4869f01eff4d9378187c43d0ef579df1e

**EXHIBIT 327**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<327<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

Outlook

**Re: URGENT: EMERGENCY REQUEST FOR REASONABLE ADA ACCOMMODATIONS AND NOTICE OF FILING BLOCKADE IN CASE NO. 260903520**

**From** Self Help (Utah State Courts) <selfhelp@utcourts.gov>
**Date** Wed 7/22/20[redacted]
**To** John Sullivan [redacted]

I see you've included us on this email. We don't handle ADA accommodation requests here at the Self-Help Center, but I see you've included the ADA coordinator on your email also. Here is more information about accommodations that you may find helpful: https://www.utcourts.gov/en/about/miscellaneous/ada.html.

----------------------------------------------

**Utah State Courts Self-Help Center**
Hours: Monday through Friday, 11 a.m. to 5 p.m.
Call: 888-683-0009
Email: selfhelp@utcourts.gov
Text: 801-SHC-1TXT (742-1898)
Website: www.utcourts.gov/selfhelp

View your court papers and case history online with MyCourtCase! Find a list of eligible cases and other features at www.utcourts.gov/mycase

On Mon, Jul 13, 2026 at 4:01 PM John Sullivan [redacted] rote:

[redacted]

## EMERGENCY REQUEST FOR REASONABLE ADA ACCOMMODATIONS

Dear Coordinator Williams,

This email transmits a formal Emergency Request for Reasonable ADA Accommodations regarding the absolute filing blockade in *John Earle Sullivan v. Utah State Tax Commission* (Case No. 260903520).

The recent physical-filing mandate of the court's **July 13, 2026** Communications Order—in conjunction with the Petitioner's severe radiculopathy, peripheral neuropathy, and orthopedic foot impairments (satisfying Listings 1.15, 11.14, and 1.18) and total indigency—completely blockades the Petitioner from filing his pending Reply Memorandums and Subpoenas due on **July 16, 2026**. Under Title II of the ADA (28 C.F.R. § 35.160) and the Equal Protection Clause, the Administrative Office of the Courts is required to provide immediate modifications to its filing procedures to prevent discriminatory exclusion.

Therefore, the Petitioner requests that your office please authorize print-and-file accommodations for his upcoming pleadings, or designate an electronic filing coordinator to allow submission of these documents before the **July 16, 2026** statutory deadline.

Attachments:

[redacted]

Respectfully,

[redacted]

Thank you,



John [redacted]
Phon [redacted]

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 350**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**BJS CRIMINAL VICTIMIZATION REPORT 2021**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Official Department of Justice Bureau of Justice Statistics (BJS) Bulletin documenting national violent crime rates and reporting statistics, proving that 51.8% of violent victimizations against Black individuals in 2021 went unreported to law enforcement due to institutional barriers.***

SHA-256 : d73207d59b2f6e123664bd5df2d7c13b4319052319b7ad4023527e93c6fb7483
SHA3-512: d4b85324a79624471e4ce75bfce4b1b9e953d588bb9fb65f5ae57b277e6c60b0...
BLAKE3 : f77775c7a91644cedf31f70159c15dde0e4c40d139ab45de4d582fb6df3eac96

**EXHIBIT 350**

**P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<**
**EXHIBIT<350<8USA9407187M3001016<<<<<<<<<<<<<<**

SCAN · VERIFY

**U.S. Department of Justice**
Office of Justice Programs
*Bureau of Justice Statistics*

September 2022, NCJ 305101

Bulletin

# Criminal Victimization, 2021

Alexandra Thompson and Susannah N. Tapp, Ph.D., *BJS Statisticians*

From 1993 to 2021, the rate of violent victimization declined from 79.8 to 16.5 victimizations per 1,000 persons age 12 or older (**figure 1**). Violent victimization includes rape or sexual assault, robbery, aggravated assault, and simple assault. During the most recent 10-year period from 2012 to 2021, the rate of violent victimization declined from 26.1 to 16.5 victimizations per 1,000, despite an increase between 2015 and 2018. The overall violent victimization rate did not change between 2020 and 2021.

Following a similar pattern, the rate of violent victimization reported to police fell from 1993 (33.8 victimizations per 1,000 persons) to 2021 (7.5 per 1,000). This rate remained relatively stable between 2014 and 2019 before dropping in 2020 to 6.6 per 1,000. In 2021, the rate of violent victimization reported to police, 7.5 per 1,000 persons, was similar to the rate in 2020.

**FIGURE 1**
**Rate of violent victimization and violent victimization reported to police, 1993–2021**




Note: See table 1 for definitions and appendix table 1 for estimates and standard errors. See appendix table 19 for person populations. Estimates for 2006 should not be compared to other years. See *Criminal Victimization, 2007* (NCJ 224390, BJS, December 2008) for more information on changes to the 2006 National Crime Victimization Survey.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 1993–2021.

## HIGHLIGHTS

- From 1993 to 2021, the rate of violent victimization declined from 79.8 to 16.5 victimizations per 1,000 persons age 12 or older.
- About 46% of violent victimizations were reported to police in 2021, higher than in 2020 (40%).
- From 2020 to 2021, the violent victimization rate increased from 19.0 to 24.5 victimizations per 1,000 persons in urban areas while remaining unchanged in suburban or rural areas.
- A larger share of violent victimizations in 2021 (9%) than in 2020 (6%) resulted in the victim receiving assistance from a victim service provider.
- In 2021, about 0.98% (2.7 million) of persons age 12 or older nationwide experienced at least one violent crime.
- Veterans experienced 247,290 violent victimizations (14.4 per 1,000) in 2021.

Findings are based on the National Crime Victimization Survey (NCVS), a self-report survey administered annually from January 1 to December 31. Annual NCVS estimates are based on the number and characteristics of crimes that respondents experienced during the prior 6 months, excluding the month in which they were interviewed. Therefore, the 2021 survey covers crimes experienced from July 1, 2020 to November 30, 2021, with March 15, 2021 as the middle of the reference period. Crimes are classified by the year of the survey and not by the year of the crime.

NCVS data can be used to produce—

- **Victimization estimates**—The total number of times that persons or households were victims of crime. For personal crimes, the number of victimizations is the number of victims of that crime. Each crime against a household is counted as having a single victim: the affected household.
- **Incident estimates**—The number of specific criminal acts involving one or more victims.
- **Prevalence estimates**—The number or percentage of unique persons who were crime victims, or of unique households that experienced crime.

See *Measurement of crime in the National Crime Victimization Survey* in the *Methodology* for more information. Use the interactive NCVS Dashboard (N-DASH) at https://ncvs.bjs.ojp.gov to view additional estimates and graphics.

## Victimization estimates

Victimizations reflect the total number of times that persons or households were victims of crime. There were 4.6 million violent victimizations of persons age 12 or older in the United States in 2021 **(table 1)**. The overall violent victimization rate did not change significantly from 2020 to 2021.[1]

[1]In this report, statistical significance is reported at both the 90% and 95% confidence levels. See figures and tables for testing on specific findings.

**TABLE 1**

**Number and rate of violent victimizations, by type of crime, 2017–2021**

| | 2017 | | 2018 | | 2019 | | 2020 | | 2021* | |
|---|---|---|---|---|---|---|---|---|---|---|
| Type of violent crime | Number | Rate per 1,000[a] | Number | Rate per 1,000[a] | Number | Rate per 1,000[a] | Number | Rate per 1,000[a] | Number | Rate per 1,000[a] |
| **Total violent crime[b]** | 5,612,670† | 20.6† | 6,385,520† | 23.2† | 5,813,410† | 21.0† | 4,558,150 | 16.4 | 4,598,310 | 16.5 |
| Rape/sexual assault[c] | 393,980 | 1.4 | 734,630† | 2.7† | 459,310 | 1.7 | 319,950 | 1.2 | 324,500 | 1.2 |
| Robbery | 613,840 | 2.3‡ | 573,100 | 2.1 | 534,420 | 1.9 | 437,260 | 1.6 | 464,280 | 1.7 |
| Assault | 4,604,850† | 16.9† | 5,077,790† | 18.4† | 4,819,680† | 17.4† | 3,800,950 | 13.7 | 3,809,530 | 13.6 |
| Aggravated assault | 993,170† | 3.6† | 1,058,040† | 3.8† | 1,019,490† | 3.7† | 812,180 | 2.9 | 766,330 | 2.7 |
| Simple assault | 3,611,680† | 13.3† | 4,019,750† | 14.6† | 3,800,190† | 13.7† | 2,988,770 | 10.7 | 3,043,190 | 10.9 |
| **Violent crime excluding simple assault[d]** | 2,000,990† | 7.3† | 2,365,770† | 8.6† | 2,013,220† | 7.3† | 1,569,390 | 5.6 | 1,555,110 | 5.6 |
| **Selected characteristics of violent crime[e]** | | | | | | | | | | |
| Domestic violence[f] | 1,237,960† | 4.5† | 1,333,050† | 4.8† | 1,164,540 | 4.2 | 856,750 | 3.1 | 910,880 | 3.3 |
| Intimate partner violence[g] | 666,310‡ | 2.4† | 847,230† | 3.1† | 695,060‡ | 2.5‡ | 484,830 | 1.7 | 473,730 | 1.7 |
| Stranger violence | 2,034,100 | 7.5 | 2,493,750‡ | 9.1‡ | 2,254,740 | 8.1 | 1,973,200 | 7.1 | 2,056,150 | 7.4 |
| Violent crime with an injury | 1,248,480‡ | 4.6† | 1,449,530† | 5.3† | 1,265,680‡ | 4.6‡ | 1,160,920 | 4.2 | 975,340 | 3.5 |
| Violent crime with a weapon | 1,260,810† | 4.6† | 1,329,700† | 4.8† | 1,119,060† | 4.0† | 938,740 | 3.4 | 895,560 | 3.2 |

Note: Details may not sum to totals due to rounding. Includes threatened, attempted, and completed occurrences of crimes. See appendix table 2 for standard errors.

*Comparison year.

†Difference with comparison year is significant at the 95% confidence level.

‡Difference with comparison year is significant at the 90% confidence level.

[a]Rate is per 1,000 persons age 12 or older. See appendix table 19 for person populations.

[b]Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims.

[c]See *Methodology* for details on the measurement of rape or sexual assault in the NCVS.

[d]Includes rape or sexual assault, robbery, and aggravated assault.

[e]Violent crime categories such as domestic violence and violent crime with an injury are not mutually exclusive from other violent crime categories or other selected characteristics.

[f]Includes the subset of violent victimizations that were committed by current or former intimate partners or family members.

[g]Includes the subset of violent victimizations that were committed by current or former spouses, boyfriends, or girlfriends.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

Similarly, the rates of rape or sexual assault, robbery, aggravated assault, simple assault, and violent crime excluding simple assault remained steady during this period.

From 2020 to 2021, there were no statistically significant changes in the rates of domestic violence (violent victimizations that were committed by current or former intimate partners or family members), intimate partner violence (domestic violence victimizations committed by current or former intimate partners only), and stranger violence. Violent crime involving injury or involving a weapon also did not change significantly during this period.

From 2017 to 2021, the rate of violent victimization declined 20%, from 20.6 to 16.5 per 1,000. The rates of robbery, aggravated assault, and simple assault also declined during this 5-year period.

## The rate of trespassing victimization increased from 2020 to 2021

Households in the United States experienced 11.7 million property victimizations in 2021 (table 2). Property crime includes burglary, trespassing, motor vehicle theft, and other types of household theft. The rate of property victimization in 2021 was 90.3 victimizations per 1,000 households, which was not statistically different from the 2020 rate. The rate of trespassing increased from 4.1 to 5.1 per 1,000 households. The rate of other household theft declined during this period, from 76.6 to 72.1 per 1,000. From 2020 to 2021, there was no statistically significant change in the rate of burglary or motor vehicle theft.

From 2017 to 2021, the property victimization rate decreased 17%, from 108.4 to 90.3 victimizations per 1,000 households. Victimization rates also declined for burglary, trespassing, and other household theft during this 5-year period.

**TABLE 2**

**Number and rate of property victimizations, by type of crime, 2017–2021**

| Type of property crime | 2017 Number | 2017 Rate per 1,000[a] | 2018 Number | 2018 Rate per 1,000[a] | 2019 Number | 2019 Rate per 1,000[a] | 2020 Number | 2020 Rate per 1,000[a] | 2021* Number | 2021* Rate per 1,000[a] |
|---|---|---|---|---|---|---|---|---|---|---|
| Total | 13,340,220† | 108.4† | 13,502,840† | 108.2† | 12,818,000† | 101.4† | 12,085,170 | 94.5 | 11,682,060 | 90.3 |
| Burglary/trespassing[b] | 2,538,170† | 20.6† | 2,639,620† | 21.1† | 2,178,400† | 17.2† | 1,741,250 | 13.6 | 1,800,350 | 13.9 |
| Burglary[c] | 1,688,890† | 13.7† | 1,867,620† | 15.0† | 1,484,730† | 11.7† | 1,210,640 | 9.5 | 1,142,900 | 8.8 |
| Trespassing[d] | 849,280† | 6.9† | 772,000‡ | 6.2† | 693,670 | 5.5 | 530,610‡ | 4.1‡ | 657,440 | 5.1 |
| Motor vehicle theft | 516,810 | 4.2 | 534,010 | 4.3 | 495,670 | 3.9 | 545,810 | 4.3 | 558,670 | 4.3 |
| Other theft[e] | 10,285,240† | 83.6† | 10,329,210† | 82.7† | 10,143,930† | 80.2† | 9,798,110 | 76.6‡ | 9,323,040 | 72.1 |

Note: Details may not sum to totals due to rounding. Includes threatened, attempted, and completed occurrences of crimes. See *Methodology* for details on how the household weighting adjustment changed in the National Crime Victimization Survey. See appendix table 3 for standard errors.

*Comparison year.

†Difference with comparison year is significant at the 95% confidence level.

‡Difference with comparison year is significant at the 90% confidence level.

[a]Rate is per 1,000 households. See appendix table 20 for household populations.

[b]Includes unlawful or forcible entry or attempted entry of places, including a permanent residence, other residence (e.g., a hotel room or vacation residence), or other structure (e.g., a garage or shed). Includes victimizations where the offender stole, attempted to steal, or did not attempt to steal. Excludes trespassing on land.

[c]Includes only crimes where the offender committed or attempted a theft.

[d]Includes crimes where the offender did not commit or attempt a theft. Excludes trespassing on land.

[e]Includes other unlawful taking or attempted unlawful taking of property or cash without personal contact with the victim.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

## Rates of violent victimization did not change significantly from 2020 to 2021 by any victim demographic

From 2020 to 2021, the rate of violent victimization did not change when examined by the victim's sex, race or Hispanic origin, age, marital status, or household income (table 3). In 2021, the rate of violent victimization for males was not statistically different from the rate for females.

Persons age 65 or older experienced the lowest rate of violent victimization (6.4 per 1,000) of any age group in 2021. In 2021, the rate of violent victimization for persons living in households earning less than $25,000 annually (29.6 per 1,000) was higher than the rate for all other household income groups.

From 2020 to 2021, rates of violent crime excluding simple assault also did not change significantly by victim demographic characteristics. In 2021, persons who were Asian or were Native Hawaiian or Other Pacific Islander experienced the lowest rate of violent crime excluding simple assault (2.9 per 1,000) compared to persons of other races or Hispanic origin. Persons age 65 or older experienced the lowest rate of violent crime excluding simple assault (2.2 per 1,000) of any age group. Separated persons experienced the highest rate (15.5 per 1,000) of violent crime excluding simple assault in 2021. Among household income groups, persons living in households earning less than $25,000 a year experienced the highest rate of violent crime excluding simple assault (11.7 per 1,000).

**TABLE 3**
**Rate of violent victimization, by type of crime and demographic characteristics of victims, 2020 and 2021**

| Victim demographic characteristic | Total violent crime[a] | | Violent crime excluding simple assault[b] | |
|---|---|---|---|---|
| | 2020 | 2021* | 2020 | 2021* |
| Total | 16.4 | 16.5 | 5.6 | 5.6 |
| **Sex** | | | | |
| Male | 16.6 | 17.5 | 5.1 | 4.9 |
| Female | 16.2 | 15.5 | 6.2 | 6.2 |
| **Race/Hispanic origin** | | | | |
| White[c] | 16.2 | 16.1 | 5.3 | 5.4 |
| Black[c] | 17.5 | 18.5 | 7.5 | 7.7 |
| Hispanic | 15.9 | 15.9 | 5.5 | 5.4 |
| Asian/Native Hawaiian/ Other Pacific Islander[c,d] | 7.5 | 9.9 | 1.8 | 2.9 |
| Other[c,e] | 49.0 | 45.1 | 18.7 | 9.6 |
| **Age** | | | | |
| 12–17 | 17.4 | 13.2 | 5.7 | 4.0 |
| 18–24 | 29.6 | 23.1 | 11.8 | 11.9 |
| 25–34 | 21.4 | 22.0 | 9.0 | 8.3 |
| 35–49 | 18.3 | 19.4 | 5.5 | 6.1 |
| 50–64 | 14.6 | 16.9 | 4.0 | 3.8 |
| 65 or older | 4.5 | 6.4 | 1.6 | 2.2 |
| **Marital status** | | | | |
| Never married | 23.9 | 22.2 | 9.4 | 8.5 |
| Married | 9.3 | 9.5 | 2.2 | 2.6 |
| Widowed | 6.8 | 10.7 | 2.8 | 3.3 |
| Divorced | 24.1 | 27.4 | 7.7 | 8.2 |
| Separated | 42.1 | 36.8 | 18.9 | 15.5 |
| **Household income** | | | | |
| Less than $25,000 | 27.4 | 29.6 | 11.4 | 11.7 |
| $25,000–$49,999 | 17.2 | 16.9 | 5.8 | 5.9 |
| $50,000–$99,999 | 14.4 | 14.6 | 5.0 | 4.3 |
| $100,000–$199,999 | 11.8 | 12.2 | 3.4 | 3.9 |
| $200,000 or more | 13.3 | 9.7 | 2.8 | 2.9 |

Note: Rates are per 1,000 persons age 12 or older. See appendix table 19 for person populations. See appendix table 4 for standard errors.

*Comparison year.

[a]Includes rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey is based on interviews with victims.

[b]Includes rape or sexual assault, robbery, and aggravated assault.

[c]Excludes persons of Hispanic origin (e.g., "white" refers to non-Hispanic white persons and "black" refers to non-Hispanic black persons).

[d]Includes persons who identified as Asian only or as Native Hawaiian or Other Pacific Islander only. Categories are not shown separately due to small numbers of sample cases.

[e]Includes persons who identified as American Indian or Alaska Native only or as two or more races. Categories are not shown separately due to small numbers of sample cases.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## Victims reported a greater percentage of violent victimizations to police in 2021 than in 2020

The NCVS collects information on whether crimes were reported or not reported to police and on the reasons why the crime was reported or not reported. Victims may not report a crime for a variety of reasons, including fear of reprisal or getting the offender in trouble, believing that police would not or could not do anything to help, and believing the crime to be a personal issue or too trivial to report. Reporting to police may occur during or immediately following a criminal incident or at a later date. Police may be notified by the victim, a third party (including witnesses; other victims; household members; or nonpolice officials, such as school officials or workplace managers), or police may have been at the scene of the incident.

About 46% of violent victimizations were reported to police in 2021, more than the 40% reported in 2020 **(table 4)**. This increase coincided with a rise in police reporting of simple assaults from 35% of victimizations in 2020 to 42% in 2021. Reporting did not change for other types of violent crime during this period. About 31% of property victimizations were reported to police in 2021, a decrease from the 33% in 2020, in part due to a decline in police reporting of other household theft from 29% of victimizations in 2020 to 26% in 2021.

**TABLE 4**

**Percent of victimizations reported to police, by type of crime, 2020 and 2021**

| Type of crime | 2020 | 2021* |
|---|---|---|
| **Total violent crime[a]** | 40.2% ‡ | 45.6% |
| Rape/sexual assault[b] | 22.9 | 21.5 |
| Robbery | 54.3 | 60.0 |
| Assault | 40.0 ‡ | 46.0 |
| Aggravated assault | 57.0 | 60.5 |
| Simple assault | 35.4 ‡ | 42.3 |
| **Violent crime excluding simple assault[c]** | 49.3% | 52.2% |
| **Selected characteristics of violent crime[d]** | | |
| Domestic violence[e] | 41.1% | 48.9% |
| Intimate partner violence[f] | 41.4 | 50.7 |
| Stranger violence | 43.9 | 48.4 |
| Violent crime with an injury | 46.9 | 55.9 |
| Violent crime with a weapon | 55.4 | 60.5 |
| **Total property crime** | 33.0% † | 30.8% |
| Burglary/trespassing[g] | 43.4 | 40.7 |
| Burglary[h] | 44.2 | 41.5 |
| Trespassing[i] | 41.5 | 39.4 |
| Motor vehicle theft | 74.6 | 76.9 |
| Other theft[j] | 28.9 † | 26.1 |

Note: See appendix table 5 for standard errors.
*Comparison year.
†Difference with comparison year is significant at the 95% confidence level.
‡Difference with comparison year is significant at the 90% confidence level.
[a]Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims.
[b]See *Methodology* for details on the measurement of rape or sexual assault in the NCVS.
[c]Includes rape or sexual assault, robbery, and aggravated assault.
[d]Violent crime categories such as domestic violence and violent crime with an injury are not mutually exclusive from other violent crime categories or other selected characteristics.
[e]Includes the subset of violent victimizations that were committed by current or former intimate partners or family members.
[f]Includes the subset of violent victimizations that were committed by current or former spouses, boyfriends, or girlfriends.
[g]Includes unlawful or forcible entry or attempted entry of places, including a permanent residence, other residence (e.g., a hotel room or vacation residence), or other structure (e.g., a garage or shed). Includes victimizations where the offender stole, attempted to steal, or did not attempt to steal. Excludes trespassing on land.
[h]Includes only crimes where the offender committed or attempted a theft.
[i]Includes crimes where the offender did not commit or attempt a theft. Excludes trespassing on land.
[j]Includes other unlawful taking or attempted unlawful taking of property or cash without personal contact with the victim.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## The rate of property crime reported to police declined from 2020 to 2021

Approximately 7.5 violent victimizations per 1,000 persons age 12 or older were reported to police in 2021, which was not significantly different from the rate in 2020 (table 5). The rate of violent crimes that went unreported was statistically similar between 2020 and 2021. Rates of crime reported and not reported to police did not change significantly for any type of violent crime during this period.

The rate of property crimes reported to police declined in 2021 to 27.8 victimizations per 1,000 households, from 31.2 per 1,000 in 2020. The rate of unreported property crimes did not change significantly. The rate of trespassing not reported to police rose from 2.4 to 3.0 per 1,000 from 2020 to 2021, while the rate of other household theft reported to police fell from 22.1 to 18.8 per 1,000. During this period, there was no statistically significant change in the rate at which burglary or motor vehicle theft was reported or not reported.

**TABLE 5**

**Rate of victimizations reported and not reported to police, by type of crime, 2020 and 2021**

| | Reported to police | | Not reported to police | |
|---|---|---|---|---|
| Type of crime | 2020 | 2021* | 2020 | 2021* |
| **Total violent crime[a]** | 6.6 | 7.5 | 9.5 | 8.7 |
| Rape/sexual assault[b] | 0.3 | 0.3 | 0.8 | 0.9 |
| Robbery | 0.9 | 1.0 | 0.7 | 0.7 |
| Assault | 5.5 | 6.3 | 7.9 | 7.2 |
| Aggravated assault | 1.7 | 1.7 | 1.2 | 1.0 |
| Simple assault | 3.8 | 4.6 | 6.7 | 6.1 |
| **Violent crime excluding simple assault[c]** | 2.8 | 2.9 | 2.8 | 2.6 |
| **Selected characteristics of violent crime[d]** | | | | |
| Domestic violence[e] | 1.3 | 1.6 | 1.8 | 1.6 |
| Intimate partner violence[f] | 0.7 | 0.9 | 1.0 | 0.8 |
| Stranger violence | 3.1 | 3.6 | 3.8 | 3.7 |
| Violent crime with an injury | 2.0 | 2.0 | 2.2 | 1.5 |
| Violent crime with a weapon | 1.9 | 1.9 | 1.4 | 1.2 |
| **Total property crime** | 31.2† | 27.8 | 62.0 | 61.3 |
| Burglary/trespassing[g] | 5.9 | 5.7 | 7.6 | 8.1 |
| Burglary[h] | 4.2 | 3.7 | 5.3 | 5.1 |
| Trespassing[i] | 1.7 | 2.0 | 2.4‡ | 3.0 |
| Motor vehicle theft | 3.2 | 3.3 | 1.0 | 1.0 |
| Other theft[j] | 22.1† | 18.8 | 53.3 | 52.2 |

Note: Rates are per 1,000 persons age 12 or older for violent crime and per 1,000 households for property crime. See appendix table 19 for person populations and appendix table 20 for household populations. See appendix table 6 for standard errors.

*Comparison year.

†Difference with comparison year is significant at the 95% confidence level.

‡Difference with comparison year is significant at the 90% confidence level.

[a]Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims.

[b]See *Methodology* for details on the measurement of rape or sexual assault in the NCVS.

[c]Includes rape or sexual assault, robbery, and aggravated assault.

[d]Violent crime categories such as domestic violence and violent crime with an injury are not mutually exclusive from other violent crime categories or other selected characteristics.

[e]Includes the subset of violent victimizations that were committed by current or former intimate partners or family members.

[f]Includes the subset of violent victimizations that were committed by current or former spouses, boyfriends, or girlfriends.

[g]Includes unlawful or forcible entry or attempted entry of places, including a permanent residence, other residence (e.g., a hotel room or vacation residence), or other structure (e.g., a garage or shed). Includes victimizations where the offender stole, attempted to steal, or did not attempt to steal. Excludes trespassing on land.

[h]Includes only crimes where the offender committed or attempted a theft.

[i]Includes crimes where the offender did not commit or attempt a theft. Excludes trespassing on land.

[j]Includes other unlawful taking or attempted unlawful taking of property or cash without personal contact with the victim.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## Hispanic persons reported a larger share of violent victimizations to police in 2021 than in 2020

From 2020 to 2021, there were no statistically significant changes in the percentage of violent victimizations that males or females reported to police (table 6). During this period, the share of violent victimizations reported to police by Hispanic persons rose from 34% to 46%, while the share reported by white persons rose from 40% to 47%. Reporting of violent victimizations also increased among persons ages 50 to 64, from 41% to 57%. Never married persons reported a larger proportion of violent victimizations to police in 2021 (42%) than in 2020 (34%), as did persons living in households earning more than $200,000 annually (49% in 2021 and 30% in 2020).

**TABLE 6**

**Percent and rate of violent victimizations reported to police, by demographic characteristics of victims, 2020 and 2021**

| | Percent | | Rate per 1,000[a] | |
|---|---|---|---|---|
| Victim demographic characteristic | 2020 | 2021* | 2020 | 2021* |
| Total | 40.2% ‡ | 45.6% | 6.6 | 7.5 |
| **Sex** | | | | |
| Male | 37.1% | 42.4% | 6.2 | 7.4 |
| Female | 43.1 | 49.1 | 7.0 | 7.6 |
| **Race/Hispanic origin** | | | | |
| White[b] | 39.9% ‡ | 46.6% | 6.5 | 7.5 |
| Black[b] | 50.4 | 48.2 | 8.8 | 8.9 |
| Hispanic | 33.8 † | 46.2 | 5.4 ‡ | 7.3 |
| Asian/Native Hawaiian/Other Pacific Islander[b,c] | 63.2 | 39.8 | 4.7 | 3.9 |
| Other[b,d] | 26.7 | 31.3 ! | 13.1 | 14.1 ! |
| **Age** | | | | |
| 12–17 | 24.6% | 25.5% | 4.3 | 3.4 |
| 18–24 | 36.6 | 32.5 | 10.8 | 7.5 |
| 25–34 | 44.5 | 43.6 | 9.5 | 9.6 |
| 35–49 | 42.6 | 47.7 | 7.8 | 9.3 |
| 50–64 | 41.0 † | 56.6 | 6.0 † | 9.6 |
| 65 or older | 48.5 | 55.3 | 2.2 † | 3.5 |
| **Marital status** | | | | |
| Never married | 34.3% ‡ | 42.0% | 8.2 | 9.3 |
| Married | 46.9 | 48.5 | 4.3 | 4.6 |
| Widowed | 61.5 | 36.3 | 4.2 | 3.9 |
| Divorced | 42.8 | 51.6 | 10.3 | 14.2 |
| Separated | 51.1 | 62.1 | 21.5 | 22.9 |
| **Household income** | | | | |
| Less than $25,000 | 41.1% | 46.6% | 11.3 | 13.8 |
| $25,000–$49,999 | 44.0 | 50.6 | 7.6 | 8.6 |
| $50,000–$99,999 | 36.6 | 45.8 | 5.3 | 6.7 |
| $100,000–$199,999 | 42.9 | 35.5 | 5.1 | 4.3 |
| $200,000 or more | 29.6 ‡ | 49.2 | 3.9 | 4.8 |

Note: See appendix table 7 for standard errors.
*Comparison year.
†Difference with comparison year is significant at the 95% confidence level.
‡Difference with comparison year is significant at the 90% confidence level.
! Interpret with caution. Estimate is based on 10 or fewer sample cases, or coefficient of variation is greater than 50%.
[a]Rate is per 1,000 persons age 12 or older. See appendix table 19 for person populations.
[b]Excludes persons of Hispanic origin (e.g., "white" refers to non-Hispanic white persons and "black" refers to non-Hispanic black persons).
[c]Includes persons who identified as Asian only or as Native Hawaiian or Other Pacific Islander only. Categories are not shown separately due to small numbers of sample cases.
[d]Includes persons who identified as American Indian or Alaska Native only or as two or more races. Categories are not shown separately due to small numbers of sample cases.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## Veterans experienced 247,290 violent victimizations in 2021

Veterans experienced 247,290 violent victimizations (14.4 per 1,000) in 2021, which was not statistically different from 2020 (table 7).[2] In 2021, U.S. citizens experienced 16.9 violent victimizations per 1,000, while non-U.S. citizens experienced 9.8 per 1,000. These rates did not differ significantly from 2020.

## The rate of violent crime in urban areas increased from 2020 to 2021

From 2020 to 2021, the rate of violent victimization in urban areas rose from 19.0 to 24.5 victimizations per 1,000 persons age 12 or older (table 8). There was no statistically significant change in the rate of violent crime from 2020 to 2021 in suburban or rural areas. During this period, the rate of violent crime excluding simple assault and the rate of property crime did not change significantly for any location of residence.

[2]Veterans are defined as persons currently or previously on active duty. Most NCVS respondents who are veterans were previously on active duty.

**TABLE 7**

**Number and rate of violent victimizations, by veteran and citizenship status of victims, 2020 and 2021**

| Victim veteran/ citizenship status | 2020 Number | 2020 Rate per 1,000[a] | 2021* Number | 2021* Rate per 1,000[a] |
|---|---|---|---|---|
| Total violent victimizations[b] | 4,558,150 | 16.4 | 4,598,310 | 16.5 |
| Veteran status[c] | | | | |
| Veteran[d] | 329,080 | 18.3 | 247,290 | 14.4 |
| Nonveteran[e] | 3,758,430 | 16.1 | 4,007,820 | 17.0 |
| Citizenship status | | | | |
| U.S. citizen | 4,373,730 | 16.7 | 4,438,670 | 16.9 |
| U.S.-born citizen[f] | 4,188,720 | 17.6 | 4,174,680 | 17.5 |
| Naturalized U.S. citizen | 185,010 | 7.8 | 263,990 | 11.1 |
| Non-U.S. citizen | 160,370 | 11.4 | 144,670 | 9.8 |

Note: Details may not sum to totals due to rounding and missing data. See appendix table 8 for standard errors.

*Comparison year.

[a]Rate is per 1,000 persons age 12 or older. See appendix table 19 for person populations.

[b]Includes rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims.

[c]Includes persons age 18 or older.

[d]Veterans include persons currently or previously on active duty. Because the NCVS is a household-based survey and active-duty military personnel are more likely to be out of the household at the time of data collection, most veterans in the sample are former active-duty military personnel.

[e]Nonveterans include persons who never served in the U.S. Armed Forces or who completed training in the Reserves or National Guard only.

[f]Includes persons born in the United States, in a U.S. territory, or abroad to U.S. parents.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

**TABLE 8**

**Rate of victimization, by type of crime and location of residence, 2020 and 2021**

| Location of residence[d] | Total violent crime[a] 2020 | Total violent crime[a] 2021* | Violent crime excluding simple assault[b] 2020 | Violent crime excluding simple assault[b] 2021* | Total property crime[c] 2020 | Total property crime[c] 2021* |
|---|---|---|---|---|---|---|
| Urban[e] | 19.0† | 24.5 | 7.7 | 9.7 | 158.9 | 157.5 |
| Suburban[f] | 16.8 | 16.5 | 5.6 | 5.2 | 90.5 | 86.8 |
| Rural[g] | 13.4 | 11.1 | 4.5 | 4.4 | 65.6 | 57.7 |

Note: Rates are per 1,000 persons age 12 or older for violent crime and per 1,000 households for property crime. See appendix table 19 for person populations and appendix table 20 for household populations. See appendix table 9 for standard errors.

*Comparison year.

†Difference with comparison year is significant at the 95% confidence level.

[a]Includes rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims.

[b]Includes rape or sexual assault, robbery, and aggravated assault.

[c]Includes burglary, trespassing, motor vehicle theft, and other theft.

[d]See *Methodology* in *Criminal Victimization, 2019* (NCJ 255113, BJS, September 2020) for details on the revised measurement of location of residence in the NCVS.

[e]All census blocks within cities or U.S. Census Bureau-designated places that meet certain criteria based on their population and density. See *Methodology* in *Criminal Victimization, 2019* (NCJ 255113, BJS, September 2020).

[f]All other census blocks not classified as urban or rural.

[g]All census blocks not in U.S. Census Bureau-defined urbanized areas or urban clusters.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## The share of violent victimizations for which victims received assistance from a victim service provider rose from 2020 to 2021

Victim service providers (VSPs) are public or private organizations that assist crime victims. Victims received VSP assistance in 9% of violent victimizations in 2021, up from 6% in 2020 (table 9). The share of violent victimizations involving a weapon for which victims received VSP assistance grew from 6% in 2020 to 10% in 2021. During this period, there was no statistically significant change in the proportion of other types of victimization where VSP assistance was received.

**TABLE 9**

**Percent of violent victimizations for which victims received assistance from a victim service provider, by type of crime, 2020 and 2021**

| Type of violent crime | 2020 | 2021* |
|---|---|---|
| **Total violent crime[a]** | 5.9% ‡ | 8.8% |
| Simple assault | 5.6 | 8.9 |
| **Violent crime excluding simple assault[b]** | 6.6% | 8.5% |
| **Selected characteristics of violent crime[c]** | | |
| Intimate partner violence[d] | 12.3% | 20.2% |
| Violent crime with an injury | 8.2% | 13.3% |
| Violent crime with a weapon | 6.0% ‡ | 9.6% |

Note: See appendix table 10 for standard errors.

*Comparison year.

‡Difference with comparison year is significant at the 90% confidence level.

[a]Includes rape or sexual assault, robbery, aggravated assault, and simple assault. Excludes homicide because the National Crime Victimization Survey is based on interviews with victims.

[b]Includes rape or sexual assault, robbery, and aggravated assault.

[c]Violent crime categories such as domestic violence and violent crime with an injury are not mutually exclusive from other violent crime categories or other selected characteristics.

[d]Includes the subset of violent victimizations that were committed by current or former spouses, boyfriends, or girlfriends.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## About 7% of violent victimizations involved a firearm in 2021

Of the nearly 4.6 million violent victimizations in 2021, about 7% involved a firearm (table 10). Firearm victimizations are defined as violent victimizations where the offender possessed, showed, or used a firearm. About 73% of violent victimizations involving a firearm were reported to police in 2021. From 2020 to 2021, there was no statistically significant change in the number, rate, or percentage of violent victimizations involving a firearm. There was also no change during that period in the number or percentage of violent victimizations involving a firearm that were reported to police.

**TABLE 10**

**Firearm violence, 2020 and 2021**

| | 2020 | 2021* |
|---|---|---|
| Total violent victimizations | 4,558,150 | 4,598,310 |
| **Firearm victimizations** | | |
| Number | 350,460 | 326,890 |
| Percent | 7.7% | 7.1% |
| Rate[a] | 1.3 | 1.2 |
| **Firearm victimizations reported to police** | | |
| Number | 212,470 | 237,980 |
| Percent | 60.6% | 72.8% |

Note: Includes violent crimes in which the offender possessed, showed, or used a firearm. See appendix table 11 for standard errors.

*Comparison year.

[a]Rate is per 1,000 persons age 12 or older. See appendix table 19 for person populations.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## Incident estimates

An incident is a specific criminal act involving one or more victims.[3] In 2021, there were 4.4 million violent incidents involving victims age 12 or older in the United States.

### Persons ages 18 to 29 made up 18% of the population but were victims in 24% of violent incidents

Patterns varied in the demographic characteristics of victims and offenders (as perceived by victims) involved in violent incidents. In 2021, the share of violent incidents involving male or female victims did not differ from the share of males or females in the population (table 11). Males were victims in 52% of violent incidents and accounted for 49% of the population. Females were victims in 48% of violent incidents and accounted for 51% of the population. However, the percentage of violent incidents involving male offenders (77%) was about 1.6 times the percentage of males in the population (49%). The share of violent incidents involving female offenders (18%) was one-third the female percentage of the population (51%).

[3]Tables 11 through 13 present incident-level data on victims and offenders. Offender characteristics in the NCVS are based on victims' perceptions of offenders.

The shares of violent incidents involving white (60%), black (14%), and Hispanic (17%) victims were similar to the population percentages of white (61%), black (12%), and Hispanic (18%) persons in 2021. Asian and Native Hawaiian or Other Pacific Islander persons represented a smaller share of victims in violent incidents (4%) compared to their representation in the population (7%).

In 2021, the proportion of violent incidents involving white offenders (51%), based on victims' perceptions of the offender, was lower than the share of white persons in the population (61%). The share of Asian offenders and Native Hawaiian or Other Pacific Islander offenders (1%) was less than the share of Asian persons and Native Hawaiian or Other Pacific Islander persons in the population (7%). The share of violent incidents involving black offenders (29%) was greater than the population percentage of black persons (12%). There was no statistically significant difference between the percentage of violent incidents involving Hispanic offenders and the percentage of Hispanic persons in the population.

The percentage of violent incidents involving victims (24%) or offenders (25%) ages 18 to 29 was higher than this age group's representation in the population (18%). The proportion of violent incidents where victims (69%) or offenders (60%) were age 30 or older was lower than this age group's share of the population (73%).

## TABLE 11

**Number and percent of violent incidents, by demographic characteristics of population, victims, and offenders, 2021**

| | | Number of violent incidents | | | Percent of violent incidents | | Percent ratio | |
|---|---|---|---|---|---|---|---|---|
| | Population[a] | Victim | Offender[b] | Percent of population[a]* | Victim | Offender[b] | Victim-to-population | Offender-to-population |
| Total | 279,188,570 | 4,403,570 | 4,403,570 | 100% | 100% | 100% | 1.0 | 1.0 |
| **Sex** | | | | | | | | |
| Male | 135,863,650 | 2,287,640 | 3,191,960 | 48.7% | 51.9% | 77.4% † | 1.1 | 1.6 |
| Female | 143,324,920 | 2,115,930 | 724,210 | 51.3 | 48.1 | 17.6 † | 0.9 | 0.3 |
| Both male and female offenders | ~ | ~ | 208,810 | ~ | ~ | 5.1 | ~ | ~ |
| **Race/Hispanic origin** | | | | | | | | |
| White[c] | 171,158,580 | 2,641,720 | 1,892,700 | 61.3% | 60.0% | 51.1% † | 1.0 | 0.8 |
| Black[c] | 33,938,330 | 608,000 | 1,079,770 | 12.2 | 13.8 | 29.2 † | 1.1 | 2.4 |
| Hispanic[d] | 49,402,220 | 745,570 | 543,280 | 17.7 | 16.9 | 14.7 | 1.0 | 0.8 |
| Asian/Native Hawaiian/ Other Pacific Islander[c,e] | 19,293,190 | 168,990 | 44,570 | 6.9 | 3.8 † | 1.2 † | 0.6 | 0.2 |
| Other[c,f] | 5,396,250 | 239,290 | 109,080 | 1.9 | 5.4 † | 2.9 | 2.8 | 1.5 |
| Multiple offenders of various races[c] | ~ | ~ | 34,320 | ~ | ~ | 0.9 | ~ | ~ |
| **Age** | | | | | | | | |
| 11 or younger[g] | ~ | ~ | 51,270 ! | ~ | ~ | 1.4% ! | ~ | ~ |
| 12–17 | 24,905,640 | 317,850 | 291,140 | 8.9% | 7.2% | 7.7 | 0.8 | 0.9 |
| 18–29 | 51,499,130 | 1,065,970 | 948,720 | 18.4 | 24.2 † | 25.0 † | 1.3 | 1.4 |
| 30 or older | 202,783,810 | 3,019,750 | 2,287,020 | 72.6 | 68.6 † | 60.3 † | 0.9 | 0.8 |
| Multiple offenders of various ages | ~ | ~ | 214,790 | ~ | ~ | 5.7 | ~ | ~ |

Note: Details may not sum to totals due to rounding and missing data for offender characteristics. An incident is a specific criminal act involving one or more victims. Offender characteristics are based on victims' perceptions of offenders. See appendix table 12 for standard errors.

*Comparison group.

†Difference with comparison group is significant at the 95% confidence level.

~Not applicable.

! Interpret with caution. Estimate is based on 10 or fewer sample cases, or coefficient of variation is greater than 50%.

[a]The National Crime Victimization Survey (NCVS) population represents persons age 12 or older living in noninstitutionalized residential settings in the United States.

[b]Includes incidents in which the perceived offender characteristics were reported. Offender sex was unknown in 6% of incidents, race or Hispanic origin in 16%, and age in 14%.

[c]Excludes persons of Hispanic origin (e.g., "white" refers to non-Hispanic white persons and "black" refers to non-Hispanic black persons).

[d]If the victim perceived any of the offenders in a multiple-offender incident to be of Hispanic origin, the offenders were classified as Hispanic.

[e]Includes victims who identified or offenders who were perceived as Asian only or as Native Hawaiian or Other Pacific Islander only. Categories are not shown separately due to small numbers of sample cases.

[f]Includes victims who identified or offenders who were perceived as American Indian or Alaska Native only or as two or more races. Categories are not shown separately due to small numbers of sample cases.

[g]While the NCVS does not survey victims age 11 or younger, they may report the offender was age 11 or younger.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2021.

In 2021, about 3.2 million of the 4.4 million violent incidents in the United States involved male offenders, based on victims' perception of offenders' sex. Of violent incidents with male victims, a greater number involved male offenders (1,837,040 incidents) than female offenders (193,840) or both male and female offenders (78,540) (table 12). Of violent incidents with female victims, a higher number involved male offenders (1,354,920 incidents) than female offenders (530,370).

Based on victims' perceptions of offenders' race or Hispanic origin, more violent incidents involving white victims were committed by white offenders (1,495,440 incidents) than by offenders whose race or Hispanic origin differed from the victims' or was unknown (table 13). A greater number of incidents involving black victims were committed by offenders who were black (358,360 incidents) than by offenders who were white (69,850). There was no statistically significant difference in the number of incidents involving Hispanic victims that were committed by offenders who were white or Hispanic.

## TABLE 12
### Number of violent incidents, by sex of victims and offenders, 2021

| Victim sex | Total violent incidents | Offender sex | | | |
|---|---|---|---|---|---|
| | | Male* | Female | Both male and female | Unknown[a] |
| Male | 2,287,640 | 1,837,040 | 193,840 † | 78,540 † | 178,220 † |
| Female | 2,115,930 | 1,354,920 | 530,370 † | 130,270 † | 100,370 † |

Note: Details may not sum to totals due to rounding. An incident is a specific criminal act involving one or more victims. Offender sex is based on victims' perceptions of offenders. See appendix table 13 for standard errors.

*Comparison group.

†Difference with comparison group is significant at the 95% confidence level.

[a]Includes incidents in which the victim did not know the offender's sex.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2021.

## TABLE 13
### Number of violent incidents, by race or Hispanic origin of victims and offenders, 2021

| Victim race/ Hispanic origin[a] | Total violent incidents | Offender race/Hispanic origin | | | | |
|---|---|---|---|---|---|---|
| | | White[b]* | Black[b] | Hispanic[c] | Other[b,d] | Unknown[e] |
| White[b] | 2,641,720 | 1,495,440 | 480,030 † | 197,180 † | 93,090 † | 375,990 † |
| Black[b] | 608,000 | 69,850 | 358,360 † | 65,330 | 9,100 ! | 105,360 |
| Hispanic[c] | 745,570 | 202,640 | 135,630 | 194,830 | 33,560 ! | 178,920 |

Note: Details may not sum to totals due to rounding. An incident is a specific criminal act involving one or more victims. Offender race or Hispanic origin is based on victims' perceptions of offenders. Includes violent incidents in which offender race or Hispanic origin was reported. See appendix table 14 for standard errors.

! Interpret with caution. Estimate is based on 10 or fewer sample cases, or coefficient of variation is greater than 50%.

*Comparison group.

†Difference with comparison group is significant at the 95% confidence level.

[a]Some victim categories are not shown due to small numbers of sample cases. Of the 4,403,570 violent incidents in 2021, a total of 408,280 involved victims who identified as Asian only, Native Hawaiian or Other Pacific Islander only, American Indian or Alaska Native only, or two or more races.

[b]Excludes persons of Hispanic origin (e.g., "white" refers to non-Hispanic white persons and "black" refers to non-Hispanic black persons).

[c]If the victim perceived any of the offenders in a multiple-offender incident to be of Hispanic origin, the offenders were classified as Hispanic.

[d]Includes persons who were perceived as Asian only, Native Hawaiian or Other Pacific Islander only, American Indian or Alaska Native only, or two or more races; and persons in multiple-offender incidents perceived as various races. Categories are not shown separately due to small numbers of sample cases.

[e]Includes persons whose race or Hispanic origin was unknown to the victim.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2021.

## Prevalence estimates

Prevalence reflects the number or percentage of unique persons who were victims of crime, or of unique households that were victimized, at least once during a period. An estimated 0.98% (2.7 million) of persons age 12 or older experienced one or more violent crimes in 2021, compared to 2.93% (6.2 million) in 1993 (figure 2). This marked a 67% decrease in the percentage of people who experienced rape or sexual assault, robbery, aggravated assault, or simple assault at least once in a given year. From 1993 to 2010, the percentage of persons who experienced one or more violent crimes declined. Since that time, the prevalence of violent crime has fluctuated between 0.93% and 1.36%. The percentage of persons who experienced one or more violent crimes in 2020 was not statistically different from the percentage in 2021.

The decline in violent crime excluding simple assault was similar to the pattern of violent crime. The percentage of persons who experienced rape or sexual assault, robbery, or aggravated assault fell from 1.26% (2.7 million) in 1993 to 0.40% (1.1 million) in 2021, for an overall decline of 68%. The prevalence of violent crime excluding simple assault did not change significantly from 2020 to 2021.

**FIGURE 2**

**Percent of persons age 12 or older who were victims of violent crime and violent crime excluding simple assault, 1993–2021**




Note: See table 14 for definitions and appendix table 15 for estimates and standard errors. Estimates for 2006 should not be compared to other years. See *Criminal Victimization, 2007* (NCJ 224390, BJS, December 2008) for more information on changes to the 2006 National Crime Victimization Survey.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 1993–2021.

## About 2.7 million persons age 12 or older were victims of one or more violent crimes in 2021

In 2021, approximately 2.7 million (0.98%) persons age 12 or older in the United States were victims of one or more violent crimes (table 14). There were no statistically significant changes in the prevalence of any type of violent crime from 2020 to 2021.

From 2017 to 2021, the percentage of persons age 12 or older who were victims of violent crime declined from 1.14% to 0.98%. This was in part due to decreases in the percentage of persons who were victims of robbery (from 0.15% to 0.12%) and simple assault (from 0.74% to 0.63%) during this 5-year period.

**TABLE 14**

**Number and percent of persons who were victims of violent crime, by type of crime, 2017–2021**

| | Number of victims[a] | | | | | Percent of persons[b] | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Type of violent crime | 2017 | 2018 | 2019 | 2020 | 2021* | 2017 | 2018 | 2019 | 2020 | 2021* |
| **Total violent crime[c]** | 3,106,340 † | 3,254,250 † | 3,059,060 † | 2,599,620 | 2,734,700 | 1.14% † | 1.18% † | 1.10% † | 0.93% | 0.98% |
| Rape/sexual assault[d] | 208,960 | 347,090 † | 212,230 | 192,820 | 203,590 | 0.08 | 0.13 † | 0.08 | 0.07 | 0.07 |
| Robbery | 402,430 | 363,210 | 337,720 | 306,410 | 328,320 | 0.15 ‡ | 0.13 | 0.12 | 0.11 | 0.12 |
| Assault | 2,595,780 † | 2,668,820 † | 2,586,170 † | 2,176,320 | 2,276,090 | 0.95 † | 0.97 † | 0.93 † | 0.78 | 0.82 |
| Aggravated assault | 646,540 | 694,260 | 697,190 | 556,010 | 601,450 | 0.24 | 0.25 ‡ | 0.25 | 0.20 | 0.22 |
| Simple assault | 2,024,880 † | 2,058,870 † | 1,965,410 ‡ | 1,685,000 | 1,746,930 | 0.74 † | 0.75 † | 0.71 † | 0.61 | 0.63 |
| **Violent crime excluding simple assault[e]** | 1,225,800 | 1,367,270 † | 1,216,400 | 1,026,020 | 1,113,930 | 0.45% ‡ | 0.50% † | 0.44% | 0.37% | 0.40% |
| **Selected characteristics of violent crime[f]** | | | | | | | | | | |
| Domestic violence[g] | 559,820 | 636,540 † | 521,870 | 454,330 | 480,090 | 0.21% ‡ | 0.23% † | 0.19% | 0.16% | 0.17% |
| Intimate partner violence[h] | 308,560 | 368,980 † | 310,320 | 253,170 | 257,860 | 0.11 | 0.13 † | 0.11 | 0.09 | 0.09 |
| Stranger violence | 1,370,020 | 1,411,500 | 1,393,650 | 1,243,930 | 1,380,450 | 0.50 | 0.51 | 0.50 | 0.45 | 0.49 |
| Violent crime with an injury | 722,560 | 841,280 † | 735,430 | 667,230 | 636,030 | 0.27 ‡ | 0.31 † | 0.27 | 0.24 | 0.23 |
| Violent crime with a weapon | 776,770 | 838,630 † | 788,920 | 651,000 | 701,820 | 0.29 | 0.30 † | 0.28 | 0.23 | 0.25 |

Note: Details may not sum to totals because a person may experience multiple types of crime. See appendix table 16 for standard errors.
*Comparison year.
†Difference with comparison year is significant at the 95% confidence level.
‡Difference with comparison year is significant at the 90% confidence level.
[a]Number of persons age 12 or older who experienced at least one violent victimization during the year.
[b]Percentage of persons age 12 or older who experienced at least one violent victimization during the year. See appendix table 19 for person populations.
[c]Excludes homicide because the National Crime Victimization Survey (NCVS) is based on interviews with victims.
[d]See *Methodology* for details on the measurement of rape or sexual assault in the NCVS.
[e]Includes rape or sexual assault, robbery, and aggravated assault.
[f]Violent crime categories such as domestic violence and violent crime with an injury are not mutually exclusive from other violent crime categories or other selected characteristics.
[g]Includes the subset of violent victimizations that were committed by current or former intimate partners or family members.
[h]Includes the subset of violent victimizations that were committed by current or former spouses, boyfriends, or girlfriends.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

## A larger share of Hispanic persons experienced violent crime in 2021 than in 2020

In 2021, the prevalence of violent victimization was 1.07% among males and 0.89% among females (table 15). From 2020 to 2021, there was no statistically significant change in the prevalence of violent crime for males or females. The percentage of Hispanic persons who were victims rose from 0.86% in 2020 to 1.05% in 2021. For persons ages 12 to 17, the prevalence of violent victimization decreased from 1.03% to 0.78% during this period. About 0.94% of persons in households earning $50,000 to $99,999 annually experienced at least one violent crime in 2021, more than the 0.80% victimized in 2020.

**TABLE 15**

**Number and percent of persons who were victims of violent crime, by demographic characteristics of victims, 2020 and 2021**

| | Number of victims[a] | | Percent of persons[b] | |
|---|---|---|---|---|
| Victim demographic characteristic | 2020 | 2021* | 2020 | 2021* |
| Total | 2,599,620 | 2,734,700 | 0.93% | 0.98% |
| Sex | | | | |
| Male | 1,312,980 | 1,456,310 | 0.97% | 1.07% |
| Female | 1,286,640 | 1,278,390 | 0.90 | 0.89 |
| Race/Hispanic origin | | | | |
| White[c] | 1,593,170 | 1,610,000 | 0.93% | 0.94% |
| Black[c] | 361,940 | 384,210 | 1.07 | 1.13 |
| Hispanic | 417,570‡ | 516,860 | 0.86‡ | 1.05 |
| Asian/Native Hawaiian/Other Pacific Islander[c,d] | 80,100 | 102,650 | 0.42 | 0.53 |
| Other[c,e] | 146,840 | 120,980 | 2.61 | 2.24 |
| Age | | | | |
| 12–17 | 257,330‡ | 193,960 | 1.03% ‡ | 0.78% |
| 18–24 | 407,520 | 461,600 | 1.39 | 1.58 |
| 25–34 | 545,700 | 601,850 | 1.20 | 1.33 |
| 35–49 | 635,540 | 677,790 | 1.04 | 1.10 |
| 50–64 | 546,740 | 574,430 | 0.88 | 0.92 |
| 65 or older | 206,780 | 225,070 | 0.38 | 0.40 |
| Marital status | | | | |
| Never married | 1,300,620 | 1,386,590 | 1.31% | 1.36% |
| Married | 697,610 | 734,630 | 0.54 | 0.58 |
| Widowed | 75,910 | 74,100 | 0.49 | 0.47 |
| Divorced | 405,100 | 412,960 | 1.48 | 1.51 |
| Separated | 109,820 | 110,120 | 2.28 | 2.31 |
| Household income | | | | |
| Less than $25,000 | 652,420 | 693,750 | 1.56% | 1.66% |
| $25,000–$49,999 | 641,030 | 624,330 | 0.97 | 0.96 |
| $50,000–$99,999 | 712,520 † | 828,570 | 0.80 † | 0.94 |
| $100,000–$199,999 | 433,310 | 430,970 | 0.71 | 0.69 |
| $200,000 or more | 160,340 | 157,080 | 0.79 | 0.71 |

Note: Details may not sum to totals due to rounding and missing data. Violent crime includes rape or sexual assault, robbery, aggravated assault, and simple assault. See appendix table 17 for standard errors.

*Comparison year.

†Difference with comparison year is significant at the 95% confidence level.

‡Difference with comparison year is significant at the 90% confidence level.

[a]Number of persons age 12 or older who experienced at least one violent victimization during the year.

[b]Percentage of persons age 12 or older who experienced at least one violent victimization during the year. See appendix table 19 for person populations.

[c]Excludes persons of Hispanic origin (e.g., "white" refers to non-Hispanic white persons and "black" refers to non-Hispanic black persons).

[d]Includes persons who identified as Asian only or as Native Hawaiian only or Other Pacific Islander only. Categories are not shown separately due to small numbers of sample cases.

[e]Includes persons who identified as American Indian or Alaska Native only or as two or more races. Categories are not shown separately due to small numbers of sample cases.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

In 2021, about 6.25% (8.1 million) of households in the country experienced one or more property victimizations (burglary or trespassing, motor vehicle theft, or other household theft) (table 16). There was no statistically significant difference in the portion of households experiencing one or more property crimes in 2020 or 2021. There were no statistically significant changes in the prevalence of burglary, trespassing, motor vehicle theft, or other household theft during this period.

From 2017 to 2021, the percentage of households experiencing one or more property victimizations decreased from 7.43% to 6.25%. This was in part driven by a decrease in the prevalence of burglary from 1.03% to 0.64% of households during this 5-year period. The prevalence of trespassing also declined, from 0.52% to 0.36% of households, while other types of household theft decreased from 5.96% to 5.17%.

**TABLE 16**

**Number and percent of households that experienced property crime, by type of crime, 2017–2021**

| | Number of households victimized[a] | | | | | Percent of households victimized[b] | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Type of property crime | 2017 | 2018 | 2019 | 2020 | 2021* | 2017 | 2018 | 2019 | 2020 | 2021* |
| **Total property crime** | 9,145,690† | 9,080,490† | 8,545,770† | 7,915,500 | 8,087,070 | 7.43% † | 7.27% † | 6.76% † | 6.19% | 6.25% |
| **Burglary/trespassing[c]** | 1,842,730† | 1,851,420† | 1,537,190† | 1,239,860 | 1,266,590 | 1.50% † | 1.48% † | 1.22% † | 0.97% | 0.98% |
| Burglary[d] | 1,273,410† | 1,333,600† | 1,040,730† | 860,860 | 833,280 | 1.03 † | 1.07 † | 0.82 † | 0.67 | 0.64 |
| Trespassing[e] | 639,620† | 585,190† | 530,440 | 404,210 | 470,130 | 0.52 † | 0.47 † | 0.42 | 0.32 | 0.36 |
| **Motor vehicle theft** | 438,860 | 424,360 | 411,140‡ | 413,880 | 486,440 | 0.36% | 0.34% | 0.33% ‡ | 0.32% | 0.38% |
| **Other theft[f]** | 7,330,960† | 7,261,840† | 6,991,800 | 6,611,210 | 6,689,220 | 5.96% † | 5.82% † | 5.53% † | 5.17% | 5.17% |

Note: Details may not sum to totals because a household may experience multiple types of crime. See *Methodology* for details on how the household weighting adjustment changed in the National Crime Victimization Survey. See appendix table 18 for standard errors.

*Comparison year.

†Difference with comparison year is significant at the 95% confidence level.

‡Difference with comparison year is significant at the 90% confidence level.

[a]Number of households that experienced at least one property victimization during the year.

[b]Percentage of households that experienced at least one property victimization during the year. See appendix table 20 for household populations.

[c]Includes unlawful or forcible entry or attempted entry of places, including a permanent residence, other residence (e.g., a hotel room or vacation residence), or other structure (e.g., a garage or shed). Includes victimizations where the offender stole, attempted to steal, or did not attempt to steal. Excludes trespassing on land.

[d]Includes only crimes where the offender committed or attempted a theft.

[e]Includes crimes where the offender did not commit or attempt a theft. Excludes trespassing on land.

[f]Includes other unlawful taking or attempted unlawful taking of property or cash without personal contact with the victim.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

# Methodology

## Survey coverage

The Bureau of Justice Statistics' (BJS) National Crime Victimization Survey (NCVS) is an annual data collection carried out by the U.S. Census Bureau. The NCVS is a self-report survey that is administered annually from January 1 to December 31. Annual NCVS estimates are based on the number and characteristics of crimes that respondents experienced during the prior 6 months, excluding the month in which they were interviewed. Therefore, the 2021 survey covers crimes experienced from July 1, 2020 to November 30, 2021, with March 15, 2021 as the middle of the reference period. Crimes are classified by the year of the survey and not by the year of the crime.

The NCVS is administered to persons age 12 or older from a nationally representative sample of U.S. households. It collects information on nonfatal personal crimes (rape or sexual assault, robbery, aggravated assault, simple assault, and personal larceny (purse snatching and pocket picking)) and household property crimes (burglary or trespassing, motor vehicle theft, and other types of theft).

The survey collects information on threatened, attempted, and completed crimes. It collects data both on crimes reported and not reported to police. Unless specified otherwise, estimates in this report include threatened, attempted, and completed crimes. In addition to providing annual level and change estimates on criminal victimization, the NCVS is the primary source of information on the nature of criminal victimization incidents.

Survey respondents provide information about themselves (including age, sex, race, Hispanic origin, marital status, education level, and income) and whether they experienced a victimization. For each victimization incident, respondents report information about the offender (including age, sex, race, Hispanic origin, and victim-offender relationship), characteristics of the crime (including time and place of occurrence, use of weapons, nature of injury, and economic consequences), whether the crime was reported to police, reasons the crime was or was not reported, and experiences with the criminal justice system.

Household information, including household-level demographics (e.g., income) and property victimizations committed against the household (e.g., burglary or trespassing), is typically collected from the reference person. The reference person is any responsible adult (age 18 or older) member of the household who is unlikely to permanently leave the household. Because an owner or renter of the sampled housing unit is normally the most responsible and knowledgeable household member, this person is generally designated as the reference person and household respondent. However, a household respondent does not have to be one of the household members who owns or rents the unit.

In the NCVS, a household is defined as a group of persons who all reside at a sampled address. Persons are considered household members when the sampled address is their usual place of residence at the time of the interview and when they have no primary place of residence elsewhere. Once selected, households remain in the sample for 3.5 years, and all eligible persons in these households are interviewed every 6 months, either in person or over the phone, for a total of seven interviews.

First interviews are typically conducted in person, with subsequent interviews conducted either in person or by phone. New households rotate into the sample on an ongoing basis to replace outgoing households that have been in the sample for the full 3.5-year period. The sample includes persons living in group quarters, such as dormitories, rooming houses, and religious group dwellings, and excludes persons living on military bases or in institutional settings such as correctional or hospital facilities.

## Measurement of crime in the National Crime Victimization Survey

NCVS data can be used to produce several types of estimates, including victimization, incident, and prevalence rates. Victimization rates measure the extent to which violent and property victimizations occur in a specified population during a specified time. Victimization numbers show the total number of times that people or households are victimized by crime. For crimes affecting persons, NCVS victimization rates are estimated by dividing the number of victimizations that occur during a specified time (T) by the population at risk for those victimizations and then multiplying the rate by 1,000.

$$\text{Victimization rate}_T = \frac{\text{Number of victimizations experienced by a specified population}_T}{\text{Number of unique persons (or households) in the specified population}_T} \times 1{,}000$$

*For victimization rates,* each victimization represents one person (for personal crimes) or one household

(for property crimes) affected by a crime.[4] Every victimization experienced by a person or household during the year is counted. For example, if one person experiences two violent crimes during the year, both are counted in the victimization rate. If one household experiences two property crimes, both are counted in the victimization rate. Victimization estimates are presented in figure 1 and tables 1 through 10 in this report.

*Incident rates* are another measure of crime. The number of incidents is the number of specific criminal acts involving one or more victims. If every victimization had one victim, the number of incidents would be the same as the number of victimizations. If there was more than one victim, the incident estimate is adjusted to compensate for the possibility that the incident could be reported several times by multiple victims and thus be overcounted. For example, if two people were robbed during the same incident, this crime would be counted as one incident and two victimizations. Incident estimates are presented in tables 11 through 13 in this report.

*Prevalence rates* are a third measure that reflect a population's risk of experiencing one or more criminal victimizations. They describe the level of victimization, like victimization rates, but are based on the number of unique persons or households in the population experiencing at least one victimization during a specified time. Prevalence estimates are presented in figure 2 and tables 14 through 16.

The key distinction between a victimization rate and a prevalence rate is whether the numerator consists of the number of victimizations or the number of unique victims. For example, a person who experienced two robberies within the past year would be counted twice in the victimization rate but only once in the prevalence rate. Prevalence rates are estimated by dividing the number of unique victims or victimized households in the specified population by the total number of persons or households in the population and multiplying the rate by 100, yielding the percentage of the population victimized at least once in a period.

$$\text{Prevalence rate}_T = \frac{\text{Number of unique victims (or victimized households) in a specified population}_T}{\text{Number of unique persons (or households) in the specified population}_T} \times 100$$

[4]In the NCVS, personal crimes are personal larceny (purse snatching and pocket picking) and violent victimizations (rape or sexual assault, robbery, aggravated assault, and simple assault). Homicide is not included because the NCVS is based on interviews with victims. Property crimes are burglary or trespassing, motor vehicle theft, and other theft.

For more information about measuring prevalence in the NCVS, see the most recent version of *Measuring the Prevalence of Crime with the National Crime Victimization Survey* (NCJ 241656, BJS, September 2013).

## Nonresponse and weighting adjustments

The 2021 NCVS data file includes 150,138 household interviews. Overall, 67% of eligible households completed interviews. Within participating households, interviews with 238,043 persons were completed in 2021, representing an 82% unweighted response rate among eligible persons from responding households.

Victimizations that occurred outside of the United States were excluded from this report. In 2021, about 0.4% of the unweighted victimizations occurred outside of the United States.

NCVS data are weighted to produce annual estimates of victimization for persons age 12 or older living in U.S. households. Because the NCVS relies on a sample rather than a census of the entire U.S. population, weights are designed to adjust to known population totals and to compensate for survey nonresponse and other aspects of the complex sample design.

NCVS data files include person, household, victimization, and incident weights. Person weights provide an estimate of the population represented by each person in the sample. Household weights provide an estimate of the household population represented by each household in the sample. After proper adjustment, both person and household weights are also typically used to form the denominator in calculations of crime rates.

For personal crimes, the incident weight is derived by dividing the person weight of a victim by the total number of persons victimized during an incident, as reported by the respondent. For property crimes measured at the household level, the incident weight and the household weight are the same, because the victim of a property crime is considered to be the household as a whole. The incident weight is most frequently used to calculate estimates of offenders' and victims' demographics.

Victimization weights used in this report account for the number of persons victimized during an incident and for high-frequency repeat victimizations (i.e., series victimizations). Series victimizations are similar in type to one another but occur with such frequency that a victim is unable to recall each individual event or describe each event in detail. Survey procedures allow

NCVS interviewers to identify and classify these similar victimizations as series victimizations and to collect detailed information on only the most recent incident in the series.[5]

The weighting counts series victimizations as the actual number of victimizations reported by the victim, up to a maximum of 10. Doing so produces more reliable estimates of crime levels than counting such victimizations only once, while the cap at 10 minimizes the effect of extreme outliers on rates.

According to the 2021 data, series victimizations accounted for 1.1% of all victimizations and 2.9% of all violent victimizations. Additional information on the enumeration and survey procedures of series victimizations is detailed in the up-to-date report *Methods for Counting High-Frequency Repeat Victimizations in the National Crime Victimization Survey* (NCJ 237308, BJS, April 2012).

## Revised 2016 data file

For 2016, BJS increased the NCVS sample size to facilitate the ability to produce state-level victimization estimates for the 22 most populous states. At the same time, the sample was adjusted to reflect the U.S. population counts in the 2010 decennial census. These changes resulted in a historically large number of new households and first-time interviews in the first half of 2016 and produced challenges in comparing 2016 results to prior data years.

Working with the U.S. Census Bureau, BJS subsequently devised the methodology that was used to create the revised 2016 NCVS data file. The result was revised criminal victimization estimates that were nationally representative for 2016 and could be compared with prior and future years. For more information, see the *National Crime Victimization Survey revised 2016 estimates* text box (pp. 3–4) and *Methodology* (pp. 15–18) in *Criminal Victimization, 2016: Revised* (NCJ 252121, BJS, October 2018).

[5]The report *Methods for Counting High-Frequency Repeat Victimizations in the National Crime Victimization Survey* (NCJ 237308, BJS, April 2012) includes more information on series victimizations in the NCVS.

## Changes to the household weighting adjustment in 2017

The 2017 NCVS weights included a new adjustment so household weights reflect independent housing unit totals available internally at the U.S. Census Bureau. This new adjustment was applied only to household weights and does not affect person weights. Historically, the household weights were adjusted to reflect independent totals for the person population. This new weighting adjustment improves on the prior one and better aligns the number of estimated households in the NCVS with other U.S. Census Bureau household survey estimates.

Due to this new adjustment, the 2017 NCVS estimate for the number of households was about 8% lower than the 2016 NCVS estimate. As a result, the estimate of the number of households affected by property crime was also about 8% lower. When making comparisons of property crime at the household level between 2017 and prior years, compare victimization or prevalence rates. Rates are unaffected by this change in weighting methodology because both the numerator and denominator are equally affected.

Comparisons of the number of households that were victimized between 2017 and prior years are inappropriate due to this change in weighting methodology. For more information on weighting in the NCVS, see *Nonresponse and weighting adjustments* in this report and *National Crime Victimization Survey, 2016: Technical Documentation* (NCJ 251442, BJS, December 2017).

## Weighing adjustments in 2020

The 2020 NCVS weights include an additional adjustment to address the impact of modified field operations due to COVID-19. For more information on the weighting adjustments applied in 2020, see the *Source and Accuracy Statement for the 2020 National Crime Victimization Survey* in the NCVS 2020 Codebook (https://www.icpsr.umich.edu/web/NACJD/studies/38090/datadocumentation) and *National Crime Victimization Survey, 2016: Technical Documentation* (NCJ 251442, BJS, December 2017).

Beginning in 2020, BJS incorporated another factor to moderate the contribution of outlier weights on NCVS estimates. For more information on this methodology, see the *Source and Accuracy Statement for the 2020 National Crime Victimization Survey* in the NCVS 2020 Codebook (https://www.icpsr.umich.edu/web/NACJD/studies/38090/datadocumentation) and *National Crime Victimization Survey: Assessment of Outlier Weights* (NCJ 302186, BJS, October 2021).

## Standard error computations

When national estimates are derived from a sample, as with the NCVS, caution must be used when comparing one estimate to another or when comparing estimates over time. Although one estimate may be larger than another, estimates based on a sample have some degree of sampling error. The sampling error of an estimate depends on several factors, including the amount of variation in the responses and the size of the sample. When the sampling error around an estimate is taken into account, estimates that appear different may not be statistically significant.

One measure of the sampling error associated with an estimate is the standard error. The standard error may vary from one estimate to the next. Generally, an estimate with a smaller standard error provides a more reliable approximation of the true value than an estimate with a larger standard error. Estimates with relatively large standard errors have less precision and reliability and should be interpreted with caution.

For complex sample designs, there are several methods that can be used to generate standard errors around a point estimate (e.g., numbers, percentages, and rates). These include direct variance estimation and generalized variance function (GVF) parameters.

BJS uses a specialized version of Balanced Repeated Replication (BRR) estimation using Fay's method to generate standard errors around the victimization estimates.[6] BRR estimation is a type of direct replication variance estimation. Under replicate variance estimation, a set of replicate weights (e.g., the NCVS typically has a set consisting of 160 replicate weights) is used to capture the sampling variance. Fay's method is used for surveys that have rare outcomes in which the entire sample is necessary to properly estimate the variance. The standard errors for victimization and incident estimates in this report (see tables 1 through 13) were estimated using BRR and differ from those reported in prior *Criminal Victimization* bulletins, which used GVF parameters. Year-to-year statistically significant differences may also vary from previous reports.

For prevalence estimates, BJS uses BRR and Taylor Series Linearization (TSL) methods to generate standard errors around these estimates. The TSL method directly estimates variances through a linearized function by combining variance estimates from the stratum and primary sampling units (PSUs) used to sample households and persons.[7] In the NCVS, the design parameters used for computing TSL variances are PSEUDOSTRATA (stratum) and HALFSAMPLE (PSU). These design parameters are available for all years except the first half of 1993 and all of 2016; therefore, BRR methods were used for 2016 prevalence estimates. The standard errors for prevalence estimates in this report (see figure 2 and tables 14 through 16) were estimated using TSL.

Another method used to produce standard errors for NCVS estimates is through GVF parameters. The U.S. Census Bureau produces GVF parameters for BJS, which account for aspects of the NCVS's complex sample design and represent the curve fitted to a selection of individual standard errors, using a specialized version of BRR based on Fay's method. The standard errors for figure 1 were estimated using GVFs.

GVFs express the variance as a function of the expected value of the survey estimate.[8] The GVF parameters are generated by fitting estimates and their relative variance to a regression model, using an iterative weighted least-squares procedure where the weight is the inverse of the square of the predicted relative variance. For more information on GVFs, see the most recent version of the *National Crime Victimization Survey, 2016: Technical Documentation* (NCJ 251442, BJS, December 2017). GVF parameters are available in the codebooks published with the NCVS public use files through the National Archive of Criminal Justice Data (https://www.icpsr.umich.edu/web/NACJD/series/95).

Direct variance estimation—BRR and TSL—is generally considered more accurate than GVFs in terms of how closely the variance estimate approximates the true variance. With direct variance estimation, each estimate is generated based on the outcome being estimated rather than being generated based on a generalized function.

[6]Wolter, K. M. (2007). *Introduction to variance estimation* (2nd ed.). Springer.

[7]Ibid.

[8]Ibid.

BJS conducted statistical tests to determine whether differences in estimated numbers, percentages, and rates in this report were statistically significant once sampling error was taken into account. Using statistical analysis programs developed specifically for the NCVS, all comparisons in the text of this report were tested for significance. The primary test procedure was the Student's t-statistic, which tests the difference between two sample estimates. Findings described in this report as increases or decreases passed a test at either the 0.05 level (95% confidence level) or 0.10 level (90% confidence level) of significance. Figures and tables in this report should be referenced for testing on specific findings.

Estimates and standard errors of the estimates in this report may be used to generate a confidence interval around the estimate as a measure of the margin of error. The following example illustrates how standard errors may be used to generate confidence intervals:

> Based on the 2021 NCVS, the rate of violent victimization in 2021 was 16.5 victimizations per 1,000 persons age 12 or older. (See table 1.) Using the BRR method of direct variance estimation, BJS determined that the estimated victimization rate has a standard error of 0.73. (See appendix table 2.) A confidence interval around the estimate is generated by multiplying the standard error by ± 1.96 (the t-score of a normal, two-tailed distribution that excludes 2.5% at either end of the distribution). Therefore, the 95% confidence interval around the 16.5 estimate from 2021 is 16.5 ± (0.73 × 1.96) or (15.03 to 17.91). In other words, if BJS used the same sampling method to select different samples and computed an interval estimate for each sample, it would expect the true population parameter (rate of violent victimization) to fall within the interval estimates 95% of the time.

Confidence intervals for flagged estimates should be interpreted with caution, as large standard errors may result in a lower bound estimate of less than zero. For this report, BJS also calculated a coefficient of variation (CV) for all estimates, representing the ratio of the standard error to the estimate. CVs (not shown in tables) provide another measure of reliability and a means for comparing the precision of estimates across measures with differing levels or metrics.

## NCVS measurement of rape or sexual assault

The NCVS uses a two-stage measurement approach in the screening and classification of criminal victimization, including rape or sexual assault. In the first stage of screening, survey respondents are administered a series of short-cue screening questions designed to help respondents think about different experiences they may have had during the reference period. (See NCVS-1 at https://bjs.ojp.gov/data-collection/ncvs#surveys-0.)

This design improves respondents' recall of events, particularly for incidents that may not immediately come to mind as crimes, such as those committed by family members and acquaintances. Respondents who answer affirmatively to any of the short-cue screening items are subsequently administered a crime incident report (CIR) designed to classify incidents into specific crime types. (See NCVS-2 at https://bjs.ojp.gov/data-collection/ncvs#surveys-0.)

**First stage of measurement.** Two short-cue screening questions are specifically designed to target sexual victimization:

1. Other than any incidents already mentioned, has anyone attacked or threatened you in any of these ways—
   a. with any weapon, such as a gun or knife
   b. with anything like a baseball bat, frying pan, scissors, or stick
   c. by something thrown, such as a rock or bottle
   d. by grabbing, punching, or choking
   e. any rape, attempted rape, or other types of sexual attack
   f. any face-to-face threats
   g. any attack or threat or use of force by anyone at all? Please mention it even if you are not certain it was a crime.
2. Incidents involving forced or unwanted sexual acts are often difficult to talk about. Other than any incidents already mentioned, have you been forced or coerced to engage in unwanted sexual activity by—
   a. someone you did not know
   b. a casual acquaintance
   c. someone you know well?

With regard to sexual victimization, respondents may screen into a CIR if they respond affirmatively to other short-cue screening questions. For instance, a separate screening question cues respondents to think of attacks or threats that took place in specific locations, such as at home, work, or school. Respondents who recall a sexual victimization that occurred at home, work, or school and answer affirmatively would be administered a CIR even

if they did not respond affirmatively to the screening question targeting sexual victimization.

**Second stage of measurement.** The CIR is used to collect information on the attributes of each incident. The key attributes of sexual violence that are used to classify a victimization as a rape or sexual assault are the type of attack and physical injury suffered. Victims are asked if "the offender hit you, knock[ed] you down, or actually attack[ed] you in any way"; if "the offender TR[IED] to attack you"; or if "the offender THREATEN[ED] you with harm in any way?" The survey participant is classified as a victim of rape or sexual assault if they respond affirmatively to one of these three questions and then respond that the completed, attempted, or threatened attack was—

- rape
- attempted rape
- sexual assault other than rape or attempted rape
- verbal threat of rape
- verbal threat of sexual assault other than rape
- unwanted sexual contact with force (grabbing, fondling, etc.)
- unwanted sexual contact without force (grabbing, fondling, etc.).

If the victim selects one of the following response options to describe the attack, they are also classified as a victim of rape or sexual assault if the injuries suffered as a result of the incident are described as—

- raped
- attempted rape
- sexual assault other than rape or attempted rape.

**Coercion.** The CIR does not ask respondents if psychological coercion was used, nor make any explicit reference to the victim being unable to provide consent (e.g., in incidents involving drug or alcohol use). One screening question targeted to rape and sexual assault asks respondents if force or coercion was used to initiate unwanted sexual activity.

The final classification of incidents by the CIR results in the following definitions of rape and sexual assault used in the NCVS:

**Rape.** Coerced or forced sexual intercourse. Forced sexual intercourse means vaginal, anal, or oral penetration by the offender(s). This category could include incidents where the penetration was from a foreign object such as a bottle. It includes attempted rape, threatened rape, male and female victims, and incidents involving victims and offenders who are the same sex or different sexes.

**Sexual assault.** A wide range of victimizations, separate from rape, attempted rape, or threatened rape. These crimes include attacks or threatened attacks involving unwanted sexual contact between the victim and offender. Sexual assaults may or may not involve force and include such things as grabbing or fondling.

**Classification of rape and sexual assault in the National Crime Victimization Survey**

| Measure | Element of sexual violence |
|---|---|
| Completed rape | Type of attack = rape |
| | Type of injury = rape |
| Attempted rape | Type of attack = attempted rape |
| | Type of injury = attempted rape |
| | Type of threat = verbal threat of rape with weapon |
| Threatened rape | Type of attempted attack/threat = verbal threat of rape |
| Sexual assault | Type of attack = sexual assault other than rape or attempted rape |
| | Type of injury = sexual assault other than rape or attempted rape |
| | Type of attempted attack/threat = unwanted sexual contact with force |
| | Type of attempted attack/threat = unwanted sexual contact without force |
| | Type of attempted attack/threat = verbal threat of sexual assault other than rape |

Note: Victim is determined to be present in all measures of rape and sexual assault.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2021.

## APPENDIX TABLE 1

**Estimates and standard errors for figure 1: Rate of violent victimization and violent victimization reported to police, 1993–2021**

| | Total violent victimization | | | | Violent victimization reported to police | | | |
|---|---|---|---|---|---|---|---|---|
| | Rate per 1,000 persons age 12 or older | Standard error | 95% confidence interval | | Rate per 1,000 persons age 12 or older | Standard error | 95% confidence interval | |
| Year | | | Lower bound | Upper bound | | | Lower bound | Upper bound |
| 1993 | 79.8 | 2.93 | 74.02 | 85.51 | 33.8 | 2.02 | 29.88 | 37.81 |
| 1994 | 80.0 | 2.72 | 74.70 | 85.37 | 32.4 | 1.65 | 29.16 | 35.62 |
| 1995 | 70.7 | 2.41 | 65.96 | 75.40 | 28.9 | 1.58 | 25.82 | 32.02 |
| 1996 | 64.7 | 2.63 | 59.56 | 69.88 | 26.1 | 1.62 | 22.93 | 29.27 |
| 1997 | 61.1 | 2.78 | 55.61 | 66.52 | 25.6 | 1.74 | 22.19 | 29.03 |
| 1998 | 54.1 | 2.61 | 49.01 | 59.26 | 24.6 | 1.65 | 21.32 | 27.78 |
| 1999 | 47.2 | 2.34 | 42.61 | 51.80 | 20.3 | 1.49 | 17.40 | 23.24 |
| 2000 | 37.5 | 1.98 | 33.60 | 41.38 | 17.2 | 1.35 | 14.59 | 19.88 |
| 2001 | 32.6 | 1.67 | 29.35 | 35.88 | 16.0 | 1.15 | 13.73 | 18.22 |
| 2002 | 32.1 | 2.07 | 28.01 | 36.11 | 16.3 | 1.40 | 13.54 | 19.02 |
| 2003 | 32.1 | 1.68 | 28.79 | 35.39 | 15.2 | 1.21 | 12.87 | 17.62 |
| 2004 | 27.8 | 1.34 | 25.19 | 30.46 | 14.0 | 1.00 | 12.05 | 15.95 |
| 2005 | 28.4 | 1.63 | 25.21 | 31.62 | 13.0 | 1.07 | 10.90 | 15.11 |
| 2006 | -- | -- | -- | -- | -- | -- | -- | -- |
| 2007 | 27.2 | 1.55 | 24.18 | 30.26 | 12.2 | 1.11 | 10.06 | 14.40 |
| 2008 | 25.3 | 1.60 | 22.21 | 28.49 | 11.8 | 1.04 | 9.72 | 13.79 |
| 2009 | 22.3 | 1.31 | 19.74 | 24.88 | 9.8 | 1.03 | 7.82 | 11.86 |
| 2010 | 19.3 | 1.44 | 16.46 | 22.11 | 9.9 | 1.01 | 7.87 | 11.84 |
| 2011 | 22.6 | 1.38 | 19.86 | 25.28 | 11.1 | 0.97 | 9.16 | 12.95 |
| 2012 | 26.1 | 1.20 | 23.77 | 28.46 | 11.5 | 0.87 | 9.84 | 13.24 |
| 2013 | 23.2 | 1.62 | 20.00 | 26.34 | 10.6 | 1.08 | 8.46 | 12.68 |
| 2014 | 20.1 | 1.22 | 17.70 | 22.50 | 9.2 | 0.85 | 7.58 | 10.91 |
| 2015 | 18.6 | 1.16 | 16.31 | 20.85 | 8.6 | 0.84 | 6.99 | 10.29 |
| 2016 | 19.7 | 0.95 | 17.80 | 21.54 | 8.6 | 0.68 | 7.29 | 9.97 |
| 2017 | 20.6 | 1.03 | 18.59 | 22.61 | 9.2 | 0.71 | 7.85 | 10.63 |
| 2018 | 23.2 | 1.30 | 20.64 | 25.75 | 9.9 | 0.82 | 8.28 | 11.50 |
| 2019 | 21.0 | 1.15 | 18.74 | 23.25 | 8.6 | 0.72 | 7.17 | 9.99 |
| 2020 | 16.4 | 0.90 | 14.63 | 18.15 | 6.6 | 0.62 | 5.37 | 7.80 |
| 2021 | 16.5 | 0.82 | 14.86 | 18.08 | 7.5 | 0.59 | 6.37 | 8.67 |

--Estimates for 2006 should not be compared to other years. See *Criminal Victimization, 2007* (NCJ 224390, BJS, December 2008) for more information on changes to the 2006 National Crime Victimization Survey.

Note: See appendix table 19 for person populations.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 1993–2021.

## APPENDIX TABLE 2

**Standard errors for table 1: Number and rate of violent victimizations, by type of crime, 2017–2021**

| | 2017 | | 2018 | | 2019 | | 2020 | | 2021 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Type of violent crime | Number | Rate per 1,000 | Number | Rate per 1,000 | Number | Rate per 1,000 | Number | Rate per 1,000 | Number | Rate per 1,000 |
| **Total violent crime** | 252,760 | 0.93 | 343,745 | 1.25 | 295,287 | 1.07 | 219,870 | 0.79 | 204,884 | 0.73 |
| Rape/sexual assault | 63,031 | 0.23 | 76,473 | 0.28 | 70,656 | 0.26 | 50,445 | 0.18 | 38,791 | 0.14 |
| Robbery | 71,490 | 0.26 | 61,685 | 0.22 | 61,708 | 0.22 | 54,778 | 0.20 | 55,135 | 0.20 |
| Assault | 228,155 | 0.84 | 317,637 | 1.15 | 264,712 | 0.96 | 198,848 | 0.72 | 198,046 | 0.71 |
| Aggravated assault | 73,874 | 0.27 | 69,272 | 0.25 | 87,553 | 0.32 | 73,767 | 0.27 | 59,066 | 0.21 |
| Simple assault | 215,126 | 0.79 | 316,022 | 1.15 | 246,234 | 0.89 | 169,905 | 0.61 | 182,987 | 0.66 |
| **Violent crime excluding simple assault** | 118,460 | 0.44 | 126,295 | 0.46 | 128,935 | 0.47 | 105,983 | 0.38 | 82,925 | 0.30 |
| **Selected characteristics of violent crime** | | | | | | | | | | |
| Domestic violence | 118,258 | 0.43 | 105,891 | 0.39 | 138,056 | 0.50 | 95,903 | 0.34 | 93,801 | 0.34 |
| Intimate partner violence | 84,500 | 0.31 | 86,437 | 0.31 | 100,668 | 0.36 | 60,582 | 0.22 | 56,820 | 0.20 |
| Stranger violence | 124,632 | 0.46 | 235,794 | 0.86 | 147,625 | 0.53 | 141,274 | 0.51 | 117,001 | 0.42 |
| Violent crime with an injury | 108,114 | 0.40 | 115,009 | 0.42 | 117,551 | 0.42 | 148,513 | 0.53 | 84,792 | 0.30 |
| Violent crime with a weapon | 95,275 | 0.35 | 83,351 | 0.30 | 77,411 | 0.28 | 79,478 | 0.29 | 65,300 | 0.23 |

Note: Standard errors in this report may vary from previously published standard errors. See *Methodology*.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

## APPENDIX TABLE 3

**Standard errors for table 2: Number and rate of property victimizations, by type of crime, 2017–2021**

| | 2017 | | 2018 | | 2019 | | 2020 | | 2021 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Type of property crime | Number | Rate per 1,000 | Number | Rate per 1,000 | Number | Rate per 1,000 | Number | Rate per 1,000 | Number | Rate per 1,000 |
| **Total** | 247,507 | 1.97 | 246,035 | 1.90 | 256,412 | 1.96 | 269,002 | 2.12 | 234,445 | 1.77 |
| **Burglary/trespassing** | 107,144 | 0.88 | 111,336 | 0.89 | 96,471 | 0.76 | 85,621 | 0.67 | 80,585 | 0.63 |
| Burglary | 79,260 | 0.65 | 93,132 | 0.75 | 86,822 | 0.68 | 74,843 | 0.58 | 60,851 | 0.47 |
| Trespassing | 61,171 | 0.50 | 43,738 | 0.35 | 51,388 | 0.40 | 42,362 | 0.33 | 49,836 | 0.39 |
| **Motor vehicle theft** | 38,067 | 0.31 | 40,105 | 0.32 | 42,872 | 0.34 | 40,609 | 0.32 | 40,093 | 0.31 |
| **Other theft** | 199,547 | 1.58 | 202,949 | 1.56 | 221,561 | 1.70 | 235,643 | 1.86 | 206,654 | 1.55 |

Note: Standard errors in this report may vary from previously published standard errors. See *Methodology*.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

## APPENDIX TABLE 4
### Standard errors for table 3: Rate of violent victimization, by type of crime and demographic characteristics of victims, 2020 and 2021

| Victim demographic characteristic | Total violent crime | | Violent crime excluding simple assault | |
|---|---|---|---|---|
| | 2020 | 2021 | 2020 | 2021 |
| Total | 0.79 | 0.73 | 0.38 | 0.30 |
| Sex | | | | |
| Male | 1.15 | 1.13 | 0.44 | 0.39 |
| Female | 1.01 | 0.89 | 0.58 | 0.48 |
| Race/Hispanic origin | | | | |
| White | 0.98 | 0.93 | 0.48 | 0.44 |
| Black | 2.06 | 1.90 | 1.10 | 1.05 |
| Hispanic | 2.01 | 1.64 | 0.91 | 0.60 |
| Asian/Native Hawaiian/ Other Pacific Islander | 2.03 | 2.18 | 0.75 | 0.87 |
| Other | 8.64 | 14.71 | 5.50 | 2.72 |
| Age | | | | |
| 12–17 | 3.07 | 2.16 | 1.55 | 1.06 |
| 18–24 | 3.71 | 2.15 | 1.93 | 1.53 |
| 25–34 | 1.93 | 1.89 | 1.20 | 0.84 |
| 35–49 | 2.17 | 1.65 | 0.59 | 0.75 |
| 50–64 | 1.24 | 1.78 | 0.42 | 0.60 |
| 65 or older | 0.54 | 1.14 | 0.29 | 0.37 |
| Marital status | | | | |
| Never married | 1.70 | 1.25 | 0.89 | 0.58 |
| Married | 0.74 | 0.85 | 0.22 | 0.34 |
| Widowed | 1.16 | 3.72 | 0.69 | 1.00 |
| Divorced | 2.20 | 3.34 | 0.91 | 1.37 |
| Separated | 7.72 | 6.74 | 5.28 | 4.47 |
| Household income | | | | |
| Less than $25,000 | 2.42 | 2.91 | 1.20 | 1.29 |
| $25,000–$49,999 | 1.64 | 1.47 | 0.78 | 0.59 |
| $50,000–$99,999 | 1.63 | 1.31 | 0.64 | 0.52 |
| $100,000–$199,999 | 1.34 | 1.20 | 0.48 | 0.58 |
| $200,000 or more | 2.06 | 1.41 | 0.62 | 0.56 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## APPENDIX TABLE 5
### Standard errors for table 4: Percent of victimizations reported to police, by type of crime, 2020 and 2021

| Type of crime | 2020 | 2021 |
|---|---|---|
| Total violent crime | 2.36% | 2.06% |
| Rape/sexual assault | 5.13 | 4.48 |
| Robbery | 6.14 | 6.09 |
| Assault | 2.72 | 2.19 |
| Aggravated assault | 4.75 | 3.42 |
| Simple assault | 3.16 | 2.68 |
| Violent crime excluding simple assault | 3.20% | 2.90% |
| Selected characteristics of violent crime | | |
| Domestic violence | 5.05% | 4.98% |
| Intimate partner violence | 5.54 | 5.04 |
| Stranger violence | 3.07 | 2.87 |
| Violent crime with an injury | 6.06 | 4.07 |
| Violent crime with a weapon | 4.19 | 3.12 |
| Total property crime | 0.85% | 0.85% |
| Burglary/trespassing | 2.27 | 2.25 |
| Burglary | 2.80 | 2.86 |
| Trespassing | 4.10 | 3.95 |
| Motor vehicle theft | 3.96 | 3.07 |
| Other theft | 0.87 | 0.82 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## APPENDIX TABLE 6
### Standard errors for table 5: Rate of victimizations reported and not reported to police, by type of crime, 2020 and 2021

| Type of crime | Reported to police | | Not reported to police | |
|---|---|---|---|---|
| | 2020 | 2021 | 2020 | 2021 |
| Total violent crime | 0.43 | 0.49 | 0.67 | 0.53 |
| Rape/sexual assault | 0.06 | 0.06 | 0.17 | 0.12 |
| Robbery | 0.12 | 0.13 | 0.15 | 0.14 |
| Assault | 0.40 | 0.44 | 0.63 | 0.50 |
| Aggravated assault | 0.17 | 0.16 | 0.21 | 0.13 |
| Simple assault | 0.35 | 0.41 | 0.58 | 0.48 |
| Violent crime excluding simple assault | 0.23 | 0.22 | 0.29 | 0.22 |
| Selected characteristics of violent crime | | | | |
| Domestic violence | 0.16 | 0.19 | 0.30 | 0.27 |
| Intimate partner violence | 0.12 | 0.14 | 0.17 | 0.13 |
| Stranger violence | 0.34 | 0.32 | 0.32 | 0.27 |
| Violent crime with an injury | 0.22 | 0.20 | 0.48 | 0.21 |
| Violent crime with a weapon | 0.19 | 0.18 | 0.21 | 0.13 |
| Total property crime | 1.00 | 0.86 | 1.70 | 1.58 |
| Burglary/trespassing | 0.44 | 0.40 | 0.47 | 0.48 |
| Burglary | 0.36 | 0.32 | 0.43 | 0.36 |
| Trespassing | 0.23 | 0.27 | 0.24 | 0.28 |
| Motor vehicle theft | 0.25 | 0.28 | 0.18 | 0.14 |
| Other theft | 0.80 | 0.66 | 1.54 | 1.38 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## APPENDIX TABLE 7

**Standard errors for table 6: Percent and rate of violent victimizations reported to police, by demographic characteristics of victims, 2020 and 2021**

| Victim demographic characteristic | Percent 2020 | Percent 2021 | Rate per 1,000 2020 | Rate per 1,000 2021 |
|---|---|---|---|---|
| **Total** | 2.36% | 2.06% | 0.43 | 0.49 |
| **Sex** | | | | |
| Male | 3.54% | 2.77% | 0.60 | 0.65 |
| Female | 2.83 | 2.88 | 0.58 | 0.68 |
| **Race/Hispanic origin** | | | | |
| White | 3.26% | 2.68% | 0.54 | 0.65 |
| Black | 5.20 | 5.10 | 1.33 | 1.21 |
| Hispanic | 4.66 | 4.14 | 0.72 | 0.94 |
| Asian/Native Hawaiian/ Other Pacific Islander | 12.10 | 11.33 | 1.90 | 1.19 |
| Other | 6.78 | 15.79 | 3.98 | 8.97 |
| **Age** | | | | |
| 12–17 | 6.11% | 5.29% | 1.06 | 0.73 |
| 18–24 | 5.38 | 3.75 | 2.16 | 1.05 |
| 25–34 | 3.82 | 3.70 | 1.17 | 1.17 |
| 35–49 | 5.56 | 3.75 | 0.92 | 0.98 |
| 50–64 | 4.23 | 5.14 | 0.74 | 1.57 |
| 65 or older | 4.85 | 10.17 | 0.37 | 0.54 |
| **Marital status** | | | | |
| Never married | 3.48% | 2.89% | 0.79 | 0.91 |
| Married | 4.70 | 3.96 | 0.53 | 0.47 |
| Widowed | 7.78 | 13.91 | 0.82 | 0.95 |
| Divorced | 4.27 | 5.06 | 1.15 | 2.21 |
| Separated | 6.21 | 8.04 | 4.26 | 4.40 |
| **Household income** | | | | |
| Less than $25,000 | 3.69% | 4.52% | 1.14 | 1.97 |
| $25,000–$49,999 | 4.61 | 3.79 | 1.13 | 0.99 |
| $50,000–$99,999 | 4.65 | 4.40 | 0.60 | 0.87 |
| $100,000–$199,999 | 5.28 | 3.99 | 0.84 | 0.56 |
| $200,000 or more | 7.11 | 7.15 | 0.86 | 0.76 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## APPENDIX TABLE 8

**Standard errors for table 7: Number and rate of violent victimizations, by veteran and citizenship status of victims, 2020 and 2021**

| Victim veteran/ citizenship status | 2020 Number | 2020 Rate per 1,000 | 2021 Number | 2021 Rate per 1,000 |
|---|---|---|---|---|
| **Total violent victimizations** | 219,870 | 0.79 | 204,884 | 0.73 |
| **Veteran status** | | | | |
| Veteran | 47,555 | 2.63 | 36,988 | 2.18 |
| Nonveteran | 185,575 | 0.80 | 194,098 | 0.83 |
| **Citizenship status** | | | | |
| U.S. citizen | 216,837 | 0.83 | 203,694 | 0.78 |
| U.S.-born citizen | 215,345 | 0.91 | 192,217 | 0.80 |
| Naturalized U.S. citizen | 44,729 | 1.88 | 55,296 | 2.34 |
| Non-U.S. citizen | 34,036 | 2.39 | 23,300 | 1.58 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## APPENDIX TABLE 9

**Standard errors for table 8: Rate of victimization, by type of crime and location of residence, 2020 and 2021**

| Location of residence | Total violent crime 2020 | Total violent crime 2021 | Violent crime excluding simple assault 2020 | Violent crime excluding simple assault 2021 | Total property crime 2020 | Total property crime 2021 |
|---|---|---|---|---|---|---|
| Urban | 1.66 | 2.06 | 1.04 | 1.14 | 7.52 | 6.59 |
| Suburban | 0.95 | 1.00 | 0.45 | 0.38 | 2.21 | 1.96 |
| Rural | 1.90 | 1.29 | 0.87 | 0.79 | 4.34 | 3.81 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## APPENDIX TABLE 10

**Standard errors for table 9: Percent of violent victimizations for which victims received assistance from a victim service provider, by type of crime, 2020 and 2021**

| Type of violent crime | 2020 | 2021 |
|---|---|---|
| **Total violent crime** | 0.74% | 1.49% |
| Simple assault | 1.01 | 2.11 |
| **Violent crime excluding simple assault** | 0.97% | 1.38% |
| **Selected characteristics of violent crime** | | |
| Intimate partner violence | 3.18% | 4.17% |
| Violent crime with an injury | 1.72% | 2.73% |
| Violent crime with a weapon | 0.89% | 1.93% |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## APPENDIX TABLE 11

**Standard errors for table 10: Firearm violence, 2020 and 2021**

| | 2020 | 2021 |
|---|---|---|
| **Total violent victimizations** | 219,870 | 204,884 |
| **Firearm victimizations** | | |
| Number | 44,615 | 40,095 |
| Percent | 0.94% | 0.84% |
| Rate | 0.16 | 0.14 |
| **Firearm victimizations reported to police** | | |
| Number | 26,023 | 33,989 |
| Percent | 6.84% | 4.35% |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## APPENDIX TABLE 12

**Standard errors for table 11: Number and percent of violent incidents, by demographic characteristics of population, victims, and offenders, 2021**

| | Number of violent incidents | | Percent of violent incidents | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Victim | | | Offender | | |
| | | | | 95% confidence interval | | | 95% confidence interval | |
| Demographic characteristic | Victim | Offender | Standard error | Lower bound | Upper bound | Standard error | Lower bound | Upper bound |
| Total | 196,662 | 196,662 | ~ | ~ | ~ | ~ | ~ | ~ |
| Sex | | | | | | | | |
| Male | 148,293 | 162,109 | 2.14% | 47.76% | 56.14% | 2.10% | 73.26% | 81.50% |
| Female | 123,359 | 95,893 | 2.14 | 43.86 | 52.24 | 2.03 | 13.57 | 21.54 |
| Both male and female offenders | ~ | 29,127 | ~ | ~ | ~ | 0.70 | 3.69 | 6.43 |
| Race/Hispanic origin | | | | | | | | |
| White | 152,905 | 126,450 | 2.38% | 55.33% | 64.65% | 2.41% | 46.37% | 55.83% |
| Black | 63,953 | 79,677 | 1.53 | 10.82 | 16.80 | 1.97 | 25.30 | 33.01 |
| Hispanic | 79,059 | 73,362 | 1.64 | 13.72 | 20.14 | 1.78 | 11.19 | 18.15 |
| Asian/Native Hawaiian/Other Pacific Islander | 38,829 | 10,443 | 0.85 | 2.17 | 5.51 | 0.28 | 0.65 | 1.76 |
| Other | 78,822 | 48,734 | 1.69 | 2.13 | 8.74 | 1.25 | 0.50 | 5.39 |
| Multiple offenders of various races | ~ | 9,758 | ~ | ~ | ~ | 0.26 | 0.43 | 1.43 |
| Age | | | | | | | | |
| 11 or younger | ~ | 30,526 | ~ | ~ | ~ | 0.79% | -0.20% | 2.91% |
| 12–17 | 52,839 | 46,177 | 1.16% | 4.95% | 9.49% | 1.21 | 5.30 | 10.05 |
| 18–29 | 81,397 | 89,193 | 1.70 | 20.87 | 27.54 | 2.14 | 20.81 | 29.22 |
| 30 or older | 171,844 | 140,639 | 2.01 | 64.64 | 72.51 | 2.34 | 55.72 | 64.88 |
| Multiple offenders of various ages | ~ | 62,253 | ~ | ~ | ~ | 1.58 | 2.57 | 8.76 |

~Not applicable.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2021.

## APPENDIX TABLE 13

**Standard errors for table 12: Number of violent incidents, by sex of victims and offenders, 2021**

| | | Offender sex | | | |
|---|---|---|---|---|---|
| Victim sex | Total violent incidents | Male | Female | Both male and female | Unknown |
| Male | 148,293 | 141,524 | 37,474 | 20,368 | 31,608 |
| Female | 123,359 | 85,078 | 84,538 | 24,023 | 22,597 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2021.

## APPENDIX TABLE 14

**Standard errors for table 13: Number of violent incidents, by race or Hispanic origin of victims and offenders, 2021**

| | | Offender race/Hispanic origin | | | | |
|---|---|---|---|---|---|---|
| Victim race/ Hispanic origin | Total violent incidents | White | Black | Hispanic | Other | Unknown |
| White | 152,905 | 110,031 | 61,644 | 27,853 | 19,659 | 55,928 |
| Black | 63,953 | 18,514 | 49,358 | 20,821 | 4,988 | 22,325 |
| Hispanic | 79,059 | 44,069 | 24,585 | 31,956 | 19,112 | 37,940 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2021.

## APPENDIX TABLE 15

**Estimates and standard errors for figure 2: Percent of persons age 12 or older who were victims of violent crime and violent crime excluding simple assault, 1993–2021**

| | Total violent crime | | | | | | Violent crime excluding simple assault | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Number of persons | | Percent of persons | | | | Number of persons | | Percent of persons | | | |
| | | | | | 95% confidence interval | | | | | | 95% confidence interval | |
| Year | Estimate | Standard error | Estimate | Standard error | Lower bound | Upper bound | Estimate | Standard error | Estimate | Standard error | Lower bound | Upper bound |
| 1993 | 6,179,940 | 86,686 | 2.93% | 0.038% | 2.856% | 3.004% | 2,654,090 | 50,781 | 1.26% | 0.023% | 1.213% | 1.304% |
| 1994 | 6,990,270 | 182,244 | 3.28 | 0.075 | 3.133 | 3.427 | 2,965,900 | 90,291 | 1.39 | 0.040 | 1.313 | 1.470 |
| 1995 | 6,446,770 | 163,323 | 3.00 | 0.064 | 2.871 | 3.123 | 2,514,400 | 83,061 | 1.17 | 0.036 | 1.099 | 1.239 |
| 1996 | 5,889,910 | 150,960 | 2.71 | 0.059 | 2.596 | 2.827 | 2,278,270 | 82,498 | 1.05 | 0.035 | 0.979 | 1.118 |
| 1997 | 5,820,310 | 219,722 | 2.65 | 0.078 | 2.494 | 2.801 | 2,306,400 | 100,289 | 1.05 | 0.040 | 0.970 | 1.128 |
| 1998 | 5,429,610 | 204,271 | 2.45 | 0.082 | 2.286 | 2.608 | 2,022,980 | 104,805 | 0.91 | 0.043 | 0.827 | 0.997 |
| 1999 | 4,744,180 | 161,025 | 2.11 | 0.072 | 1.972 | 2.253 | 1,821,830 | 70,205 | 0.81 | 0.032 | 0.749 | 0.873 |
| 2000 | 4,263,640 | 173,859 | 1.88 | 0.071 | 1.741 | 2.019 | 1,622,850 | 82,634 | 0.72 | 0.035 | 0.648 | 0.783 |
| 2001 | 3,899,760 | 163,080 | 1.70 | 0.060 | 1.584 | 1.819 | 1,448,910 | 76,785 | 0.63 | 0.032 | 0.569 | 0.696 |
| 2002 | 3,593,690 | 145,715 | 1.55 | 0.055 | 1.445 | 1.659 | 1,222,940 | 61,350 | 0.53 | 0.025 | 0.479 | 0.577 |
| 2003 | 3,537,510 | 139,425 | 1.48 | 0.049 | 1.382 | 1.575 | 1,277,400 | 67,957 | 0.53 | 0.025 | 0.484 | 0.583 |
| 2004 | 3,478,620 | 157,411 | 1.44 | 0.057 | 1.328 | 1.551 | 1,276,560 | 77,171 | 0.53 | 0.031 | 0.468 | 0.588 |
| 2005 | 3,350,630 | 153,848 | 1.37 | 0.052 | 1.268 | 1.473 | 1,238,410 | 70,482 | 0.51 | 0.027 | 0.453 | 0.560 |
| 2006 | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| 2007 | 3,308,010 | 128,862 | 1.32 | 0.051 | 1.222 | 1.420 | 1,210,660 | 69,266 | 0.48 | 0.028 | 0.428 | 0.539 |
| 2008 | 3,298,910 | 119,940 | 1.31 | 0.045 | 1.219 | 1.396 | 1,210,980 | 64,122 | 0.48 | 0.026 | 0.429 | 0.531 |
| 2009 | 2,978,170 | 124,579 | 1.17 | 0.046 | 1.083 | 1.261 | 1,107,630 | 63,144 | 0.44 | 0.024 | 0.389 | 0.483 |
| 2010 | 2,753,160 | 128,035 | 1.08 | 0.049 | 0.980 | 1.172 | 1,094,280 | 74,952 | 0.43 | 0.029 | 0.371 | 0.484 |
| 2011 | 3,089,720 | 129,545 | 1.20 | 0.045 | 1.112 | 1.287 | 1,205,460 | 60,858 | 0.47 | 0.022 | 0.425 | 0.511 |
| 2012 | 3,575,900 | 130,914 | 1.36 | 0.047 | 1.274 | 1.456 | 1,271,770 | 74,512 | 0.49 | 0.027 | 0.432 | 0.539 |
| 2013 | 3,041,170 | 109,612 | 1.15 | 0.040 | 1.072 | 1.229 | 1,145,350 | 56,413 | 0.43 | 0.021 | 0.393 | 0.474 |
| 2014 | 2,948,540 | 112,590 | 1.11 | 0.042 | 1.024 | 1.188 | 1,235,290 | 66,223 | 0.46 | 0.025 | 0.415 | 0.512 |
| 2015 | 2,650,670 | 115,649 | 0.98 | 0.041 | 0.902 | 1.065 | 1,099,400 | 60,817 | 0.41 | 0.023 | 0.363 | 0.452 |
| 2016 | 2,882,320 | 98,610 | 1.06 | 0.036 | 0.988 | 1.130 | 1,123,190 | 59,666 | 0.41 | 0.022 | 0.370 | 0.456 |
| 2017 | 3,106,340 | 105,403 | 1.14 | 0.038 | 1.065 | 1.215 | 1,225,800 | 57,738 | 0.45 | 0.021 | 0.409 | 0.491 |
| 2018 | 3,254,250 | 106,453 | 1.18 | 0.037 | 1.110 | 1.254 | 1,367,270 | 65,626 | 0.50 | 0.023 | 0.451 | 0.542 |
| 2019 | 3,059,060 | 101,966 | 1.10 | 0.036 | 1.034 | 1.175 | 1,216,400 | 59,953 | 0.44 | 0.021 | 0.398 | 0.481 |
| 2020 | 2,599,620 | 108,881 | 0.93 | 0.040 | 0.856 | 1.013 | 1,026,020 | 66,478 | 0.37 | 0.024 | 0.321 | 0.416 |
| 2021 | 2,734,700 | 97,722 | 0.98 | 0.035 | 0.911 | 1.048 | 1,113,930 | 61,018 | 0.40 | 0.022 | 0.356 | 0.442 |

--Estimates for 2006 should not be compared to other years. See *Criminal Victimization, 2007* (NCJ 224390, BJS, December 2008) for more information on changes to the 2006 National Crime Victimization Survey.

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 1993–2021.

## APPENDIX TABLE 16

**Standard errors for table 14: Number and percent of persons who were victims of violent crime, by type of crime, 2017–2021**

| | Number of victims | | | | | Percent of persons | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Type of violent crime | 2017 | 2018 | 2019 | 2020 | 2021 | 2017 | 2018 | 2019 | 2020 | 2021 |
| **Total violent crime** | 105,403 | 106,453 | 101,966 | 108,881 | 97,722 | 0.038% | 0.037% | 0.036% | 0.040% | 0.035% |
| Rape/sexual assault | 18,642 | 33,619 | 22,482 | 24,065 | 25,591 | 0.007 | 0.012 | 0.008 | 0.009 | 0.009 |
| Robbery | 34,671 | 30,657 | 30,947 | 32,588 | 31,738 | 0.013 | 0.011 | 0.011 | 0.012 | 0.011 |
| Assault | 97,147 | 92,852 | 94,118 | 96,250 | 86,680 | 0.035 | 0.033 | 0.033 | 0.035 | 0.031 |
| Aggravated assault | 43,542 | 43,726 | 46,549 | 46,890 | 39,415 | 0.016 | 0.016 | 0.017 | 0.017 | 0.014 |
| Simple assault | 83,931 | 89,167 | 78,655 | 84,023 | 72,824 | 0.031 | 0.032 | 0.028 | 0.031 | 0.026 |
| **Violent crime excluding simple assault** | 57,738 | 65,626 | 59,953 | 66,478 | 61,018 | 0.021% | 0.023% | 0.021% | 0.024% | 0.022% |
| **Selected characteristics of violent crime** | | | | | | | | | | |
| Domestic violence | 36,762 | 44,973 | 36,583 | 40,970 | 37,936 | 0.013% | 0.016% | 0.013% | 0.015% | 0.014% |
| Intimate partner violence | 27,569 | 33,587 | 28,984 | 27,659 | 26,140 | 0.010 | 0.012 | 0.010 | 0.010 | 0.009 |
| Stranger violence | 71,404 | 70,402 | 69,343 | 76,962 | 66,889 | 0.027 | 0.025 | 0.025 | 0.028 | 0.024 |
| Violent crime with an injury | 41,379 | 47,606 | 49,955 | 47,154 | 42,454 | 0.015 | 0.017 | 0.018 | 0.017 | 0.015 |
| Violent crime with a weapon | 50,006 | 46,485 | 50,036 | 50,350 | 44,500 | 0.018 | 0.017 | 0.018 | 0.018 | 0.016 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

## APPENDIX TABLE 17

**Standard errors for table 15: Number and percent of persons who were victims of violent crime, by demographic characteristics of victims, 2020 and 2021**

| | Number of victims | | Percent of persons | |
|---|---|---|---|---|
| Victim demographic characteristic | 2020 | 2021 | 2020 | 2021 |
| **Total** | 108,881 | 97,722 | 0.040% | 0.035% |
| **Sex** | | | | |
| Male | 77,669 | 75,324 | 0.059% | 0.055% |
| Female | 69,214 | 59,742 | 0.048 | 0.041 |
| **Race/Hispanic origin** | | | | |
| White | 80,913 | 70,915 | 0.048% | 0.042% |
| Black | 38,158 | 35,208 | 0.111 | 0.105 |
| Hispanic | 41,534 | 43,181 | 0.086 | 0.086 |
| Asian/Native Hawaiian/Other Pacific Islander | 19,176 | 17,470 | 0.102 | 0.089 |
| Other | 22,716 | 22,667 | 0.395 | 0.386 |
| **Age** | | | | |
| 12–17 | 31,302 | 29,818 | 0.125% | 0.120% |
| 18–24 | 42,294 | 41,133 | 0.141 | 0.136 |
| 25–34 | 45,349 | 46,828 | 0.102 | 0.101 |
| 35–49 | 44,712 | 37,300 | 0.072 | 0.063 |
| 50–64 | 39,842 | 37,870 | 0.064 | 0.062 |
| 65 or older | 22,685 | 23,794 | 0.042 | 0.042 |
| **Marital status** | | | | |
| Never married | 77,760 | 73,926 | 0.077% | 0.071% |
| Married | 44,921 | 50,672 | 0.035 | 0.040 |
| Widowed | 13,334 | 11,189 | 0.087 | 0.070 |
| Divorced | 31,078 | 30,422 | 0.114 | 0.110 |
| Separated | 19,080 | 16,992 | 0.383 | 0.352 |
| **Household income** | | | | |
| Less than $25,000 | 41,879 | 43,469 | 0.096% | 0.100% |
| $25,000–$49,999 | 44,737 | 36,640 | 0.070 | 0.058 |
| $50,000–$99,999 | 48,504 | 47,381 | 0.054 | 0.054 |
| $100,000–$199,999 | 40,975 | 35,300 | 0.067 | 0.057 |
| $200,000 or more | 23,798 | 16,812 | 0.116 | 0.075 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2020 and 2021.

## APPENDIX TABLE 18
**Standard errors for table 16: Number and percent of households that experienced property crime, by type of crime, 2017–2021**

| Type of property crime | Number of households victimized 2017 | 2018 | 2019 | 2020 | 2021 | Percent of households victimized 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|---|---|
| Total property crime | 166,394 | 169,072 | 163,275 | 176,573 | 153,085 | 0.124% | 0.119% | 0.118% | 0.124% | 0.111% |
| Burglary/trespassing | 67,513 | 66,270 | 61,066 | 53,779 | 59,376 | 0.053% | 0.051% | 0.047% | 0.041% | 0.045% |
| Burglary | 58,760 | 58,052 | 50,120 | 44,286 | 46,271 | 0.047 | 0.046 | 0.039 | 0.034 | 0.036 |
| Trespassing | 32,638 | 30,960 | 32,806 | 28,553 | 36,326 | 0.026 | 0.024 | 0.026 | 0.022 | 0.028 |
| Motor vehicle theft | 31,188 | 29,684 | 30,870 | 33,842 | 30,151 | 0.025% | 0.024% | 0.024% | 0.026% | 0.023% |
| Other theft | 148,890 | 153,323 | 147,443 | 155,184 | 136,718 | 0.112% | 0.113% | 0.108% | 0.110% | 0.101% |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

## APPENDIX TABLE 19
**Population of persons age 12 or older, by demographic characteristics, 2017–2021**

| Demographic characteristic | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|
| Total | 272,468,480 | 275,325,390 | 276,872,470 | 278,082,260 | 279,188,570 |
| Sex | | | | | |
| Male | 132,432,710 | 133,907,500 | 134,693,660 | 135,260,190 | 135,863,650 |
| Female | 140,035,770 | 141,417,890 | 142,178,810 | 142,822,080 | 143,324,920 |
| Race/Hispanic origin | | | | | |
| White[a] | 171,454,370 | 171,493,180 | 171,423,480 | 171,267,760 | 171,158,580 |
| Black[a] | 32,699,520 | 33,132,390 | 33,397,100 | 33,688,820 | 33,938,330 |
| Hispanic | 45,481,910 | 46,997,610 | 47,890,870 | 48,640,170 | 49,402,220 |
| Asian/Native Hawaiian/Other Pacific Islander[a,b] | 17,472,290 | 18,094,710 | 18,335,230 | 18,867,300 | 19,293,190 |
| Other[a,c] | 5,360,390 | 5,607,500 | 5,825,790 | 5,618,230 | 5,396,250 |
| Age | | | | | |
| 12–17 | 24,911,170 | 24,917,160 | 24,941,440 | 24,992,970 | 24,905,640 |
| 18–24 | 29,883,550 | 29,838,720 | 29,646,500 | 29,353,220 | 29,130,230 |
| 25–34 | 44,327,500 | 44,946,880 | 45,289,720 | 45,294,090 | 45,260,400 |
| 35–49 | 60,878,870 | 61,429,050 | 61,483,410 | 61,393,010 | 61,448,170 |
| 50–64 | 62,955,630 | 62,940,810 | 62,643,880 | 62,477,170 | 62,284,210 |
| 65 or older | 49,511,760 | 51,252,780 | 52,867,520 | 54,571,810 | 56,159,930 |
| Marital status[d] | | | | | |
| Never married | 96,211,120 | 97,152,920 | 97,943,560 | 99,468,100 | 101,747,930 |
| Married | 127,923,650 | 128,744,200 | 129,699,090 | 129,399,370 | 127,458,620 |
| Widowed | 14,832,940 | 15,166,010 | 15,160,640 | 15,350,940 | 15,760,770 |
| Divorced | 26,776,260 | 27,360,570 | 27,184,390 | 27,280,860 | 27,374,380 |
| Separated | 4,937,300 | 5,129,600 | 4,970,250 | 4,810,270 | 4,770,190 |
| Household income | | | | | |
| Less than $25,000 | 52,946,960 | 50,629,410 | 47,213,950 | 41,849,120 | 41,846,630 |
| $25,000–$49,999 | 71,498,650 | 70,739,680 | 68,598,330 | 66,271,710 | 64,861,660 |
| $50,000–$99,999 | 92,095,730 | 90,829,470 | 91,124,780 | 88,752,540 | 88,155,100 |
| $100,000–$199,999 | 42,581,980 | 47,677,720 | 52,113,470 | 60,852,220 | 62,121,610 |
| $200,000 or more | 13,345,160 | 15,449,110 | 17,821,930 | 20,356,680 | 22,203,560 |

[a]Excludes persons of Hispanic origin (e.g., “white” refers to non-Hispanic white persons and “black” refers to non-Hispanic black persons).
[b]Includes persons who identified as Asian only or as Native Hawaiian or Other Pacific Islander only.
[c]Includes persons who identified as American Indian or Alaska Native only or as two or more races.
[d]Estimates do not sum to totals due to missing data on marital status.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

## APPENDIX TABLE 20
**Population of households, 2017–2021**

| | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|
| Total | 123,085,790 | 124,824,660 | 126,433,890 | 127,945,770 | 129,319,230 |

Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

The Bureau of Justice Statistics of the U.S. Department of Justice is the principal federal agency responsible for measuring crime, criminal victimization, criminal offenders, victims of crime, correlates of crime, and the operation of criminal and civil justice systems at the federal, state, tribal, and local levels. BJS collects, analyzes, and disseminates reliable statistics on crime and justice systems in the United States, supports improvements to state and local criminal justice information systems, and participates with national and international organizations to develop and recommend national standards for justice statistics. Alexis R. Piquero is the director.

This report was written by Alexandra Thompson and Susannah N. Tapp. Rachel E. Morgan contributed to this report. Erika Harrell verified the report.

Edrienne Su and Brigit Baron edited the report. Pei Miller produced the report.

September 2022, NCJ 305101

NCJ 305101

Office of Justice Programs
Building Solutions • Supporting Communities • Advancing Justice
www.ojp.gov

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 351**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**BJS VIOLENT VICTIMIZATION BY RACE REPORT**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Official Bureau of Justice Statistics (BJS) Report documenting statistically significant racial disparities in violent victimization, proving a 75% elevation in robbery rates (2.8 per 1,000) and a 25% elevation in serious violent crime rates (8.0 per 1,000) for Black individuals.***

SHA-256 : 30dd1c43be9f0dfe75de25180726f95a0c2f444a2c1ed53c3840929172f0442d
SHA3-512: df45728bccdf7dfbb353df4a7d4df1b23551c7ded30a5ccd824c06c7fba6d99a...
BLAKE3 : fce15a9b73724190e30c5ec1e5ad956aa0781157992180276166a9aca0d21342

**EXHIBIT 351**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<351<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

# Just the Stats

## Violent Victimization by Race or Hispanic Origin, 2008–2021

Alexandra Thompson and Susannah N. Tapp, PhD
*BJS Statisticians*

JULY 2023, NCJ 305262

From 2008 to 2021, the rate of overall violent victimization fell (**figure 1**). Over the same time period, the violent victimization rate fell for persons who identified as white, black, Hispanic, or another race (includes American Indian or Alaska Native or persons of two or more races).

**Figure 1. Rate of violent victimization, by race/Hispanic origin, 2008–2021**




This graphic is interactive. To access data points, hover over the line and select a year. To select multiple lines or years, press and hold ctrl on your keyboard and select desired lines or years.

Note: Rates are per 1,000 persons age 12 or older. Estimates are based on 2-year moving averages centered on the most recent year (e.g., a 2008 estimate includes data for 2007 and 2008). Therefore, estimates may differ from previously published reports where only 1 year was used for annual rates, rather than 2-year rolling averages. See appendix table 1 for estimates and standard errors.
[a]Excludes persons of Hispanic origin (e.g., "white" refers to non-Hispanic white persons and "black" refers to non-Hispanic black persons).
[b]Includes persons who identified as Asian only or as Native Hawaiian or Other Pacific Islander (NHOPI) only. Categories are not shown separately due to small numbers of sample cases.
[c]Includes persons who identified as American Indian or Alaska Native or persons of two or more races. Categories are not shown separately due to small numbers of sample cases.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2008–2021.

During the 5-year aggregate period of 2017–21, white persons (19.8 victimizations per 1,000 persons age 12 or older) experienced a higher rate of violent victimization than the rate for Asian, Native Hawaiian, or Other Pacific Islander persons (9.8 per 1,000) (**table 1**). This pattern held across all types of violent crime. The rate of robbery victimization for black (2.8 per 1,000) and Hispanic persons (2.5 per 1,000) was higher than for white persons (1.6 per 1,000), but the rate of simple assault was higher for white persons (13.3 per 1,000) than black (11.3 per 1,000) or Hispanic (10.6 per 1,000) persons.

**Table 1. Rate of violent victimization, by type of crime and victim race/Hispanic origin, 2017–21**

| | Rate per 1,000 persons age 12 or older | | | | | |
|---|---|---|---|---|---|---|
| Type of crime | Total | White*[a] | Black[a] | Hispanic | Asian/Native Hawaiian/ Other Pacific Islander[a,b] | Other[a,c] |
| **Total violent crime[d]** | 19.5 | 19.8 | 19.4 | 18.4 | 9.8† | 54.8† |
| Rape/sexual assault | 1.6 | 1.7 | 1.4 | 1.4 | 1.1† | 4.2† |
| Robbery | 1.9 | 1.6 | 2.8† | 2.5† | 0.9† | 5.3† |
| Assault | 16.0 | 16.5 | 15.2 | 14.5 | 7.7† | 45.3† |
| Aggravated assault | 3.4 | 3.2 | 3.8 | 3.8 | 1.1† | 8.5† |
| Simple assault | 12.6 | 13.3 | 11.3‡ | 10.6† | 6.7† | 36.9† |
| **Violent crime excluding simple assault[e]** | 6.9 | 6.4 | 8.0† | 7.8† | 3.1† | 18.0† |

Note: Details may not sum to totals due to rounding. Rate is per 1,000 persons age 12 or older. See appendix table 19 in *Criminal Victimization, 2021* (NCJ 305101, BJS, September 2022) for person populations. See appendix table 2 for standard errors.
*Comparison group.
†Significant difference from comparison group at the 95% confidence level.
‡Significant difference from comparison group at the 90% confidence level.
[a]Excludes persons of Hispanic origin (e.g., "white" refers to non-Hispanic white persons and "black" refers to non-Hispanic black persons).
[b]Includes persons who identified as Asian only or as Native Hawaiian or Other Pacific Islander only. Categories are not shown separately due to small numbers of sample cases.
[c]Includes persons who identified as American Indian or Alaska Native or as two or more races. Categories are not shown separately due to small numbers of sample cases.
[d]Excludes homicide because the National Crime Victimization Survey is based on interviews with victims.
[e]Includes rape or sexual assault, robbery, and aggravated assault.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

Download CSV (3K)

During 2017–21, a greater number of violent incidents with white victims involved white offenders (8,721,450 incidents) than offenders of any other race or Hispanic origin or whose race or Hispanic origin was unknown (**table 2**). More violent incidents with black victims involved black offenders (1,884,250 incidents) than white offenders (371,540). Similarly, a greater number of violent incidents with Hispanic victims involved Hispanic offenders (1,423,520 incidents) than white offenders (1,006,400).

**Table 2. Number of violent incidents, by victim and offender race/Hispanic origin, 2017–21**

| | | Offender race/Hispanic origin | | | | | |
|---|---|---|---|---|---|---|---|
| Victim race/ Hispanic origin | Total | White*[a] | Black[a] | Hispanic[b] | Asian/Native Hawaiian/ Other Pacific Islander[a,c] | Other[a,d] | Unknc |
| White[a] | 15,795,650 | 8,721,450 | 2,382,400† | 1,535,050† | 187,150† | 513,140† | 1,821,8 |
| Black[a] | 3,095,610 | 371,540 | 1,884,250† | 243,880‡ | 11,850! | 86,100† | 341,2 |
| Hispanic | 4,057,480 | 1,006,400 | 741,600† | 1,423,520† | 55,410† | 65,770† | 548,5 |
| Asian/Native Hawaiian/ Other Pacific Islander[a,c] | 829,570 | 219,520 | 191,970 | 57,530† | 113,220† | 5,760! | 122,6 |
| Other[a,d] | 1,412,090 | 681,920 | 234,750† | 127,740† | 27,830† | 178,530† | 139,7 |

Note: Details may not sum to totals due to rounding and because total includes incidents where the number of offenders was unknown. An incident is a specific criminal act involving one or more victims. Offender race/Hispanic origin is based on victims' perceptions of offenders. Includes violent incidents in which the perceived offender race/Hispanic origin was reported. See appendix table 3 for standard errors.
*Comparison group.
†Significant difference from comparison group at the 95% confidence level.
‡Significant difference from comparison group at the 90% confidence level.
! Interpret data with caution. Estimate is based on 10 or fewer sample cases, or coefficient of variation is greater than 50%.
[a]Excludes persons who identified as being (or, for offender categories, were perceived as) of Hispanic origin (e.g., "white" refers to non-Hispanic white persons and "black" refers to non-Hispanic black persons).
[b]If the victim perceived any of the offenders in a multiple offender incident to be of Hispanic origin, they are classified as Hispanic.
[c]Includes persons who identified as (or, for offender categories, were perceived as) Asian only or Native Hawaiian or Other Pacific Islander only. Categories are not shown separately due to small numbers of sample cases.
[d]Includes persons who identified as (or, for offender categories, were perceived as) American Indian or Alaska Native or as two or more races. Categories are not shown separately due to small numbers of sample cases.
[e]Includes incidents where the victim did not know the offender's race/Hispanic origin.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

Download CSV (3K)

Figure 1 features trend estimates of 2-year moving averages and standard errors by race and Hispanic origin. Offender characteristics in the NCVS are based on victims' perceptions of offenders. Tables 1 and 2 show an aggregate period of multiple data years. These approaches increase the reliability and stability of the estimates. For more information on the National Crime Victimization Survey (NCVS), see the *Methodology* section in *Criminal Victimization, 2021* (NCJ 305101, BJS, September 2022).

**Appendix Table 1. Estimates and standard errors for figure 1: Rate of violent victimization, 2008–2021**

| | Total | | | |
|---|---|---|---|---|
| | | | 95% Confidence interval | |
| Year | Rate per 1,000 | Standard error | Lower bound | Upper bound |
| 2008 | 26.3† | 1.45 | 23.44 | 29.12 |
| 2009 | 23.8† | 1.48 | 20.92 | 26.72 |
| 2010 | 20.8† | 1.32 | 18.20 | 23.38 |
| 2011 | 20.9† | 1.33 | 18.32 | 23.54 |
| 2012 | 24.4† | 1.22 | 21.97 | 26.75 |
| 2013 | 24.6† | 1.46 | 21.78 | 27.49 |
| 2014 | 21.6† | 1.22 | 19.24 | 24.02 |
| 2015 | 19.3† | 1.10 | 17.18 | 21.49 |
| 2016 | 19.1† | 1.02 | 17.12 | 21.13 |
| 2017 | 20.1† | 0.93 | 18.32 | 21.95 |
| 2018 | 21.9† | 0.92 | 20.10 | 23.71 |
| 2019 | 22.1† | 1.11 | 19.91 | 24.27 |
| 2020 | 18.7‡ | 0.92 | 16.89 | 20.49 |
| 2021* | 16.4 | 0.87 | 14.73 | 18.13 |

Note: Rates are per 1,000 persons age 12 or older. Standard errors were generated using generalized variance function parameters. For more information, see the Methodology section in *Criminal Victimization, 2021* (NCJ 305101, BJS, September 2022). Estimates are based on 2-year moving averages centered on the most recent year (e.g., a 2008 estimate includes data for 2007 and 2008). Therefore, estimates and standard errors may differ from previously published reports where only 1 year was used for annual rates.
*Comparison year.
†Significant difference from comparison year at the 95% confidence level.
‡Significant difference from comparison year at the 90% confidence level.
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2008–2021.

Download CSV (3K)

**Appendix Table 2. Standard errors for table 1: Rate of violent victimization, by type of crime and victim race/Hispanic origin, 2017–21**

| | Rate per 1,000 | | | | | |
|---|---|---|---|---|---|---|
| Type of crime | Total | White | Black | Hispanic | Asian/Native Hawaiian/ Other Pacific Islander | Other |
| **Total violent crime** | 0.58 | 0.81 | 1.30 | 1.12 | 1.02 | 4.49 |
| Rape/sexual assault | 0.09 | 0.12 | 0.19 | 0.17 | 0.21 | 0.75 |
| Robbery | 0.11 | 0.12 | 0.31 | 0.25 | 0.20 | 0.90 |
| Assault | 0.54 | 0.75 | 1.17 | 1.01 | 0.93 | 4.22 |
| Aggravated assault | 0.16 | 0.20 | 0.39 | 0.34 | 0.23 | 3.39 |
| Simple assault | 0.46 | 0.65 | 0.97 | 0.83 | 0.85 | 3.75 |
| **Violent crime excluding simple assault** | 0.24 | 0.30 | 0.59 | 0.51 | 0.40 | 1.83 |

Note: Standard errors were generated using generalized variance function parameters. For more information, see the *Methodology* section in *Criminal Victimization, 2021* (NCJ 305101, BJS, September 2022).
Source: Bureau of Justice Statistics, National Crime Victimization Survey, 2017–2021.

Download CSV (3K)

The Bureau of Justice Statistics of the U.S. Department of Justice is the principal federal agency responsible for measuring crime, criminal victimization, criminal offenders, victims of crime, correlates of crime, and the operation of criminal and civil justice systems at the federal, state, tribal, and local levels. BJS collects, analyzes, and disseminates reliable statistics on crime and justice systems in the United States, supports improvements to state and local criminal justice information systems, and participates with national and international organizations to develop and recommend national standards for justice statistics. Alexis R. Piquero, PhD, is the director.

This report was written by Alexandra Thompson and Susannah N. Tapp, PhD. Erika Harrell, PhD, verified the report.

Bright Baron edited the report. Priscilla Fauntleroy produced the web version of this report. John Popham and Priscilla Fauntleroy oversaw development of the interactive graphic.

July 2023, NCJ 305262

Date Created: July 3, 2023

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT 353**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**DOJ OCR COMPLIANCE REVIEW UTAH CCJJ**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Official U.S. Department of Justice Office for Civil Rights Compliance Review Report, dated February 24, 2010, entering formal administrative findings that the State of Utah failed to maintain mandatory complaint procedures and civil rights training programs for federally funded subrecipients, establishing early notice of systemic compliance defaults.***

SHA-256 : 07f892a9fd3f33243f830bcd073e454958c84a03f2f91136fa22108a077a1883
SHA3-512: 36a135ee07941536d9a2470ce6cc7964fe4b49b369735889ea5fb066e6c83d14...
BLAKE3 : bc06cc751651663fd488a3fc0197f5356785bd878e2315512547b678a6689a89

**EXHIBIT 353**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<353<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

U.S. Department of Justice

Office of Justice Programs

*Office for Civil Rights*

Washington, D.C. 20531

VIA CERTIFIED RETURN RECEIPT REQUESTED

February 24, 2010

Ronald Gordon
Executive Director
Utah Commission on Criminal and Juvenile Justice
Utah State Capitol Complex
East Office Building, Suite E330
PO Box 142330
Salt Lake City, Utah 84114-2330

**Re: Utah Commission on Criminal and Juvenile Justice Compliance Review (08-OCR-0390)**

Dear Mr. Gordon:

On June 18, 2007, the Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) initiated a compliance review of all State Administrative Agencies, including the Utah Commission on Criminal and Juvenile Justice (CCJJ), in accordance with federal regulation 28 C.F.R. § 42.206. The focus of the review was on the CCJJ's compliance with applicable federal civil right laws along with the CCJJ's monitoring procedures for ensuring its subrecipients' compliance with these laws. Of particular interest to the OCR was the CCJJ's implementation and monitoring of the Department of Justice's regulations, Equal Treatment for Faith-Based Organizations, 28 C.F.R. pt. 38 [hereinafter Equal Treatment Regulations].

On October 29, 2008, the OCR conducted an onsite visit to the CCJJ's office in Salt Lake City, Utah, to interview CCJJ's administrators and to conduct a training program on federal civil rights laws that the OCR enforces. On the same day, the OCR conducted an onsite visit to the Holy Cross Ministries (HCM), a CCJJ faith-based subrecipient.[1] The OCR would like to thank CCJJ staff, especially Doreen G. Weyland, Grant Specialist, for assisting OCR attorney [redacted] during the onsite visit.

[1] The Equal Treatment Regulations do not provide a definition for faith-based organization. The CCJJ's subrecipients self-identify their organizations as faith-based.

Based on the CCJJ's responses to our Data Request and the information we gathered onsite, the OCR concludes, concerning the limited scope of our review, that the CCJJ has taken steps to substantially comply with the federal civil rights laws that the OCR enforces. Nonetheless, we have reservations about whether the CCJJ has adequate complaint procedures in place to respond to service discrimination complaints from beneficiaries of CCJJ subrecipient programs. We are also concerned whether the CCJJ provides sufficient training to its subrecipients on applicable federal civil rights laws. The following Compliance Review Report includes recommendations for improving the CCJJ's methods for monitoring the civil rights compliance of subrecipients.

**Compliance Review Report: Overview and Recommendations**

## I. Overview

The Compliance Review Report first examines the CCJJ's monitoring of subrecipients compliance with the federal civil rights laws. The Report then focuses on the CCJJ's compliance with the DOJ's Equal Treatment Regulations.

Depending on the DOJ program, the CCJJ administers DOJ subawards through four CCJJ components: the Substance Abuse and Anti-Violence Coordinating Council Office (USAAV),[2] the Board of Juvenile Justice (JJ), the Office of Crime Victim Reparation (CVR), and the Office of Domestic and Sexual Assault (DMC). The USAAV administers the Justice Assistance Grants (JAG) and Residential Substance Abuse Treatment (RSAT) grants authorized under the Omnibus Crime Control and Safe Street Act (Safe Streets Act) of 1968, as amended (42 U.S.C. § 3711 *et seq.*). The JJ administers Title II formula grants and Title V Community Prevention grants authorized under the Juvenile Justice and Delinquency Prevention Act (JJDPA) of 1974, as amended (42 U.S.C. § 5672). The JJ also administers the Juvenile Accountability Block Grant (JABG) authorized pursuant to the Safe Streets Act. The DMC and the CVR administer Victim Compensation and Victim Assistance grants authorized by the Victims of Crime Act (42 U.S.C. § 1064(e)) and the Violence Against Women Act of 1994, as amended, (Pub. L. No. 109-162, § 105(a), 119 Stat. 2981).

### A. Monitoring Compliance with Applicable Federal Civil Rights Laws

Recipients of federal financial assistance from the OJP are responsible for certifying that contractors and subrecipients under DOJ programs comply with applicable federal civil rights laws. In reviewing the CCJJ's general efforts to ensure subrecipients' compliance with federal civil rights obligations, the OCR examined how the CCJJ used the following four tools: (1) standard assurances; (2) onsite visits and other monitoring methods; (3)

[2] The CCJJ has identified "USAAV" in various documents as the commonly used acronym for the Substance Abuse and Anti-Violence Coordinating Council Office.

training programs and technical assistance; and (4) procedures for receiving, investigating, and resolving complaints alleging discrimination in the delivery of services.

1. Standard Assurances of Civil Rights Obligations

The CCJJ has two standard assurances that address subrecipients' civil rights obligations: (1) paragraphs five, six, and eight of the Certified Assurances and (2) the Civil Rights Requirements form. The CCJJ requires subrecipients to sign both documents as a condition for receiving a grant.

a. Certified Assurances

Paragraph five of the Certified Assurances states that subrecipients must comply with applicable federal civil rights laws:

> The subgrantee assures that it will comply, and all of its contractors will comply, with the nondiscrimination requirements of the Omnibus Crime Control and Safe Streets Act of 1960 [sic] as amended; Title VI of the Civil Rights Act of 1964; Section 504 of the Rehabilitation Act of 1973 as amended; Title IX of the Education Amendments of 1972; the Age Discrimination Act of 1975; the Americans with Disabilities Act of 1990; the Department of Justice Nondiscriminating Regulations 28 CFR Part 42, Subparts C, D, E, and G; and their implementing regulations, 41 CFR Part 60.1 et seq., as applicable to construction contracts.

Paragraph six of the Certified Assurances states that subrecipients have an obligation to send findings of discrimination to the CCJJ:

> The subgrantee assures that in the event a Federal or State court of Federal or State administrative agency makes a finding of discrimination after a due process hearing on the grounds of race, color, religion, national origin, sex, or disability against a recipient of funds the recipient will forward a copy of the findings to the CCJJ.

Paragraph eight of the USAAV's Certified Assurances requires subrecipients to comply with the Equal Treatment Regulations[3] and other federal directives:

> The applicant assures that it will comply with the provision of 28 CFR applicable to grants and cooperative agreements, including Part II, Applicability of Office Management and Budget Circulars; . . . Part 38, Equal Treatment for Faith-Based Organizations . . . .

[3] Notably, only the USAAV's Certified Assurances have a reference to the Equal Treatment Regulations.

b. Civil Rights Requirements Form

The Civil Rights Requirements form states that subrecipients must comply with selected federal civil rights laws and notifies subrecipients of the regulatory obligation to prepare and submit workforce reports:

> The applicant agency assures that it will comply with the Civil Rights Act of 1964 as outlined in 28 CFR and the Americans with Disabilities Act of 1990 as outlined in 28 CFR Part 35 . . . .
>
> Equal Employment Opportunity Plan. The purpose of an Equal Employment Opportunity Plan (EEOP) is to insure full and equal participation of men and women regardless of race or national origin in the workforce of the recipient agency. An EEOP is a comprehensive document that analyzes that agency's workforce in comparison to its relevant labor market data and all agency employment practices to determine their impact on the basis of race, sex, or nation origin. Agencies that meet all of the following criteria are required to maintain an EEOP that complies with 28 CFR 42, subpart E:
>
> i. have 50 or more employees*; and
> ii. received a grant award of $25,000 or more; and
> iii. have 3 percent or more minorities in service population (if less than 3 percent minorities in service population, an EEOP must still be prepared, but must focus only on employment practices affecting women)
>
> *Example: A city police department will expend the grant funds. The applicant agency is the city, not the police department. An EEOP must be maintained if the city, not the police department, has 50 or more employees and meets the other two criteria.
>
> Educational, medical, and non-profit institutions or agencies, as well as Indian tribes are exempt from preparing or submitting EEOPs. However, these agencies must still comply with applicable anti-discrimination laws.
>
> Please note that a policy encouraging equal employment will not satisfy the EEOP requirement. If necessary, contact CCJJ for a seven-step guide to the design and development of an EEOP . . . .
>
> All agencies required to maintain an EEOP must submit a copy of the plan to CCJJ within 60 days of the grant award.

The OCR is not aware of any documents that the CCJJ provides to subrecipients that expressly refer to the obligation of taking reasonable steps to provide limited English proficient (LEP) beneficiaries meaningful access to programs or activities under Title VI of the Civil Rights Act of 1964 and related statutes.

2. Onsite Visits and Other Monitoring Methods

The CCJJ provided the OCR with limited information concerning onsite-monitoring visits of its subrecipients. The CCJJ explained that it conducts onsite-monitoring visits on a case-by-case basis, when a program manager spots an issue that requires attention in a subrecipient's quarterly report.

The CCJJ has a document, Financial Monitoring Checklist, which CCJJ program managers use for desk audits that focus on the financial management of grants. The Financial Monitoring Checklist includes the following two questions: "Do you have a written Equal Employment Opportunity Plan (EEOP)?" and "Have there been any adverse findings of discrimination by either a Federal or State Court or State Administrating Agency?"

According to the CCJJ's Data Request Response, every January, program managers review all open grants in the Grant Management System to examine whether the subrecipients that are required to prepare an EEOP have an updated one on file. If the subrecipient does not have a current plan on file, the CCJJ sends the subrecipient a letter or an e-mail explaining the need to submit a plan. According to the CCJJ's Data Request Response, the CCJJ staff holds payment of the award pending receipt of a current EEOP.

The CCJJ's Data Request response states that through desk audits the CCJJ staff has monitored (financially and programmatically) approximately seventy-three grants in FY2006, sixty-nine grants in FY2007, and ninety-two grants in FY2008.

3. Training and Technical Assistance

The CCJJ does not provide any annual comprehensive training to subrecipients on their federal civil rights obligations. In regard to developing an EEOP, the CCJJ staff states that it provides one-on-one training to subrecipients, upon request. Staff also states that they will direct subrecipients needing technical assistance with drafting EEOPs to the OCR's webpage http://www.ojp.usdoj.gov.ocr/.

During the onsite visit, however, the CCJJ staff stated that they rely on the Civil Rights Seven-Step Guide to the Design and Implementation of an Equal Employment Opportunity Plan (1998) [hereinafter Seven-Step Guide] to provide EEOP technical assistance to subrecipients. The Civil Rights Requirements form, discussed in Section I.A.1., also cites the Seven-Step Guide as a resource for use in preparing an EEOP. In

January 2008, however, the OCR replaced the Seven-Step Guide with a web-based EEOP tool accessible at http://www.ojp.usdoj.gov/about/ocr/eeop.htm.

In its Data Request Response, the CCJJ stated that it provides subrecipients general training packets (containing several printed Power Point slides along with an appendix). None of the slides in the training package addresses federal civil rights laws. In the appendix to the training packets, the CCJJ placed copies of the Certified Assurances and Civil Rights Requirements form discussed in Section I.A.1. of this Compliance Review Report.

4. Complaint Policies and Procedures

The State of Utah has a general employment discrimination policy applicable to CCJJ employees. The policy, R477-15, Workforce Harassment Policy and Procedure, states that "it is the State of Utah's policy to provide all employees a working environment that is free from unlawful discrimination and harassment based on race, religion, national origin, color, sex, age, disability, or protected activity under state or federal law." The policy has procedures for submitting and investigating employee discrimination complaints.

The CCJJ does not have, however, internal procedures or policies to receive, investigate, and resolve service discrimination complaints made by its beneficiaries or beneficiaries of subrecipient programs. In response to the OCR's Data Request, the CCJJ stated that beneficiaries who believe discrimination occurred in a CCJJ program or in a subrecipient's program can file a claim with the OCR by submitting the OCR's Complaint Verification Form. The CCJJ grant award documents, however, do not identify the OCR as a forum for resolving complaints from beneficiaries.

**B. Monitoring Compliance with the Equal Treatment Regulations**

The Equal Treatment Regulations ensure that "[r]eligious organizations are eligible, on the same basis as any other organizations, to participate in any [Justice] Department program for which they are otherwise eligible." 28 C.F.R. § 38.1(a). In evaluating the CCJJ's equitable treatment of faith-based organizations, this Compliance Review Report focuses on two issues: (1) the process for making awards to applicant faith-based organizations, and (2) the procedures for ensuring that funded faith-based organizations comply with applicable federal civil rights laws.

1. The Process for Making Awards to Applicant Faith-Based Organizations

In its Data Request Response, the CCJJ stated that it awards grants to religious organizations through the same process as non-religious organizations. The CCJJ staff with whom the OCR spoke explained that the CCJJ treats all organizations that apply for

government grants similarly and does not engage in preferential treatment of applicants based upon religious affiliation or status. The CCJJ staff explained that the CCJJ service area, which comprises the entire state, has several organizations affiliated with the Church of Jesus Christ of Latter-Day Saints. The CCJJ staff opined that although these organizations may be candidates for funding, they are not applying for grants because they are concerned that government funding may limit free exercise of religion.

The CCJJ solicits applicants for competitive grants through its website, http://www.justice.utah.gov/Grants/default.htm. The CCJJ staff with whom the OCR spoke stated that CCJJ program managers prescreen competitive grant applications to ensure that applications are complete. After the prescreening, the CCJJ Review Committee reads and scores the remaining applications. The CCJJ staff explained that the CCJJ Review Committee is a body of neutral staff members, usually comprised of staff outside of the program office administering the grant. According to the CCJJ, one of the criteria that program managers use in selecting committee members is expertise in reviewing grant applications.

In FY2006, FY2007, and FY2008, through the competitive grant award process, the CCJJ funded only one faith-based organization, HCM. The HCM received funding under the STOP Violence Against Women formula grant program [hereinafter STOP Grant], which the CVR administers. In FY2006, HCM received approximately $35,000; in FY2007, HCM received approximately $19,000.[4]

The CCJJ does not require non-profit organizations to obtain federal tax-exempt status in order to be eligible to receive funding.

2. Procedures for Ensuring that Faith-Based Organizations Comply with Applicable Federal Civil Rights Laws

The CCJJ does not have separate procedures for monitoring subrecipient compliance with the Equal Treatment Regulations. The CCJJ staff with whom the OCR spoke stated that faith-based organizations undergo the same monitoring as other CCJJ programs.

The OCR conducted an onsite monitoring visit to the HCM and met with HCM's Executive Director, who is a member of a Roman Catholic religious order of women, and the HCM's Immigration Director.

The HCM's mission statement states that it is, "committed to sharing resources given to us by our loving God. We reach out to those in need—the poor, the underserved, the oppressed, the forgotten—and offer our hands and hearts to minister to their health and

[4] At the time the OCR conducted the site visit to the CCJJ, the CCJJ had not awarded the FY2008 grants. The CCJJ, however, has confirmed that HCM has received FY2008 funding.

well being." Holy Cross Ministries Mission, http://www.holycrossministries.org/Mission/Mission.html (last visited Dec. 8, 2008).

The HCM uses the STOP Grant to fund a program that provides legal counsel to U and T Visa applicants. Through the U Visa program, noncitizen victims of domestic violence, who agree to assist government officials in the investigation or prosecution of their assailants, receive visas. Through the T Visa program, individuals trafficked into the United States for illegal purposes, receive an opportunity to obtain temporary lawful status.

The HCM administrators explained that the HCM does not consider religious affiliation when hiring staff. They also said that the HCM does not take the religion of participants in the U and T Visa counseling programs into consideration when providing services. The HCM does not inquire into the religious affiliation of its Board of Trustees or require its members to be any certain religious affiliation.

During the onsite visit, the OCR did not observe the HCM engaging in inherently religious activities, such as worship, religious instruction, or proselytization, in DOJ-funded programs or activities. Based on the information provided in response to the OCR's Data Request and observed during the onsite visit, the OCR finds no evidence that the HCM uses federal funds for inherently religious purposes.

## II. Recommendations

The OCR offers the CCJJ the following six recommendations to incorporate into its administration of the DOJ grants to ensure compliance with federal civil rights laws: (1) develop a comprehensive policy, including the establishment of written procedures, for addressing discrimination complaints, especially in the delivery of services; (2) add a citation referring to DOJ's Equal Treatment Regulations in all of its Certified Assurances for subrecipients; (3) modify and update the nondiscrimination provisions in all of its certified assurances; (4) use a federal civil rights laws compliance checklist when conducting desk audits or onsite visits; (5) provide training to subrecipients on their obligations to comply with federal civil rights laws; and (6) update the information on EEOP technical assistance in the Civil Rights Requirement form.

### A. Develop Comprehensive Complaint Procedures

The CCJJ should adopt a policy for addressing discrimination complaints that include, at a minimum, the following elements:

1. Designating a coordinator who is responsible for overseeing a complaint process and reviewing initial complaints;[5]
2. Notifying subrecipient employees and subrecipient beneficiaries of prohibited discrimination in the programs or activities of recipients receiving federal funds;
3. Establishing procedures for handling complaints alleging discrimination in DOJ-funded programs or activities from not only CCJJ employees and beneficiaries but also for employees and beneficiaries of the CCJJ's subrecipients;
4. Referring each complainant to the appropriate agency for investigation and resolution, such as the U.S. Equal Employment Opportunity Commission or the Antidiscrimination & Labor Division, Labor Commission of Utah, or referring the complainant to the OCR to review the complaint and work with the CCJJ to resolve it;
5. Notifying the OCR in writing when the CCJJ refers a discrimination complaint to the EEOC or state agency responsible for handling employment or services complaints; and
6. Training CCJJ program staff members on their responsibility to refer discrimination complaints, or potential discrimination issues, to the CCJJ's complaint coordinator for processing as soon as alleged discrimination comes to their attention.

The OCR has enclosed a sample complaint template to assist the CCJJ in developing its complaint policy. The OCR's website, www.ojp.usdoj.gov/ocr/crc, has additional information about applicable laws, complaint forms, and the investigative process. Developing a comprehensive policy for addressing discrimination complaints should be a top priority for the CCJJ.

**B. Ensure that a Reference to the Equal Treatment Regulations is in the CCJJ Grant Agreement**

Although the Certified Assurances of the grants administered by the CCJJ's USAAV office contain a reference to the Equal Treatment Regulations, 28 C.F.R. pt. 38, the CCJJ should ensure that all Certified Assurances for each of its other program offices has a reference to the DOJ's Equal Treatment Regulations. The CCJJ staff may also wish to include a discussion of the Equal Treatment Regulations in its solicitation documents so that subrecipients are aware of the obligation to comply with these regulations.

[5] *See* 28 C.F.R. § 31.202(a)(1) (instructing state administrative agencies receiving formula grants under the Juvenile Accountability Block Grants to designate a contact person responsible for meeting all civil rights requirements and serving as a liaison with the OCR).

### C. Modify and Correct the Nondiscrimination Provisions in all of its Certified Assurances

In its Certified Assurances, the CCJJ staff should edit and correct some references to the federal civil rights laws. For review, we have enclosed a copy of the OJP's Standard Assurances that OJP recipients sign prior to receiving an award; paragraph 6 of the OJP Standard Assurances correctly cites the federal civil rights laws required for compliance by recipients and subrecipients. The CCJJ staff should also edit all its Certified Assurances to require subrecipients to send findings of discrimination not only to the CCJJ, but also to the OCR. The CCJJ staff may want to consider adding a sentence to its Certified Assurances stating that in accordance with federal civil rights laws, the subrecipient shall not retaliate against individuals for taking action or participating in action to secure rights protected by these laws. Finally, the CCJJ may wish to add an additional section on compliance with the Justice Department's guidance for providing services to LEP beneficiaries. *See* U.S. Department of Justice, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41455 (2002).

### D. Using A Federal Civil Rights Laws Checklist for Monitoring

The CCJJ should add a civil rights component to its monitoring procedures beyond the questions pertaining to whether the subrecipient has submitted an EEOP or any adverse findings of discrimination. The CCJJ may wish to develop a Federal Civil Rights Laws Compliance Checklist for this purpose. The OCR has enclosed a sample checklist.

### E. Provide Comprehensive Training on Federal Civil Rights Laws

The CCJJ should provide mandatory civil rights training for every subrecipient at least once during a grant cycle, whether the CCJJ staff provides training in person, by teleconference, or through other means. The CCJJ should ensure that subrecipients are aware of their obligations under federal civil rights laws such as the obligations to comply with the DOJ's Equal Treatment Regulations; to provide services to LEP individuals; and to provide the OCR with adverse findings of discrimination issued by a federal or state court or federal or state administrative agency based on race, color, religion, national origin, or sex. The OCR is available to provide the CCJJ with technical assistance in developing training programs.

### F. Update the Civil Rights Requirement Form

The CCJJ should update its Civil Rights Requirements form by deleting the following sentence: "If necessary, contact the CCJJ for a seven-step guide to the design and development of an EEOP" (*see supra* Part I.A.1.b, penultimate paragraph) and replace it

with a reference to http://www.ojp.usdoj.gov/about/ocr/eeop.htm, the online tool that has superseded the Seven-Step Guide.

The CCJJ should also modify its Civil Rights Requirements form by adding a statement that grantees with fifty or more employees, that have three percent or more minorities in their service population, and receive a single award of $500,000 or more, must submit an EEOP to the OCR.

## III. Conclusion

We find that the CCJJ has taken steps to substantially comply with the federal civil rights laws that the OCR enforces. On request, the OCR has resources available to provide technical assistance to the CCJJ in addressing the concerns raised in this Compliance Review Report. Immediately, upon receipt of this letter, we ask that a responsible CCJJ official contact [redacted] to develop a timeline and goals for implementing the OCR's recommendations.

Thank you for your cooperation and the assistance of your staff throughout the compliance review process. If you have any questions, please contact [redacted] at [redacted]

Sincerely,

Michael L. Alston
Director

Enclosures

| | |
|---|---|
| **Subject:** Procedures for Responding to Discrimination Complaints from Clients, Customers, Program Participants, or Consumers of the [State Administering Agency] and the [State Administering Agency's] Subrecipients | |
| **Policy Number:** | |
| **Effective Date:** | |

## I. Purpose

[The State Administering Agency (SAA) should explain the purpose of this document, i.e., to establish written procedures for SAA employees to follow when they receive a complaint alleging discrimination from clients, customers, program participants, or consumers of the SAA or of a SAA subrecipient implementing funding from the U.S. Department of Justice (DOJ).]

## II. Policy

[The SAA should explain its policy regarding discrimination against clients, customers, program participants, or consumers of the SAA or the SAA's subrecipients, such as a statement that all individuals have the right to participate in programs and activities operated by the SAA and SAA subrecipients regardless of race, color, national origin, sex, religion, disability, and age. The SAA may wish to state that it will ensure that the SAA and its subrecipients are in compliance with the following statutes and regulations:

- Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color or national origin in the delivery of services (42 U.S.C. § 2000d), and the DOJ implementing regulations at 28 C.F.R. Part 42, Subpart C;

- The Omnibus Crime Control and Safe Streets Act of 1968, which prohibits discrimination on the basis of race, color, national origin, religion, or sex in the delivery of services and employment practices (42 U.S.C. § 3789d(c)(1)), and the DOJ implementing regulations at 28 C.F.R. Part 42, Subpart D;

- Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability in the delivery of services and employment practices (29 U.S.C. § 794), and the DOJ implementing regulations at 28 C.F.R. Part 42, Subpart G;

- Title II of the Americans with Disabilities Act of 1990, which prohibits discrimination on the basis of disability in the delivery of services and employment practices (42 U.S.C. § 12132), and the DOJ implementing regulations at 28 C.F.R. Part 35;

- Title IX of the Education Amendments of 1972, which prohibit discrimination on the basis of sex in educational programs (20 U.S.C. § 1681), and the DOJ implementing regulations at 28 C.F.R. Part 54; and

- The Age Discrimination Act of 1975, which prohibits discrimination on the basis of age in the delivery of services (42 U.S.C. § 6102), and the DOJ implementing regulations at 28 C.F.R. Part 42, Subpart I.

- The DOJ regulations on the Equal Treatment for Faith-Based Organizations, which prohibit discrimination on the basis of religion in the delivery of services and prohibit organizations from using DOJ funding on inherently religious activities (28 C.F.R. Part 38).

The SAA may also wish to include a statement that these laws prohibit agencies from retaliating against an individual for taking action or participating in action to secure rights protected by these laws.]

## III. Definitions

[The SAA may wish to include definitions of relevant terms, such as "discrimination" and "complaint coordinator."]

## IV. Complaint Procedures

[The SAA should clearly explain its procedures for accepting and responding to discrimination complaints from clients, customers, program participants, or consumers of the SAA and SAA subrecipients. These procedures should include, at a minimum: 1) a designation of the SAA employee who is responsible for coordinating the series of actions described in these procedures; 2) an explanation of how a client, customer, program participant, or consumer may file a complaint of discrimination (i.e. on a specific complaint form, in a letter, in an email, in person, or over the phone); 3) an explanation of how a SAA employee receiving a complaint of discrimination should forward the complaint to the employee who is responsible for coordinating the series of actions described in these procedures; 4) an explanation of whether the SAA will provide the client, customer, program participant, or consumer with any written acknowledgement of the complaint, and how the SAA will correspond with the complainant throughout the investigation; and 5) an explanation of how the SAA will investigate and resolve the complaint, such as whether the SAA will conduct an internal investigation of the complaint, or whether it will refer the complaint to an appropriate external agency for investigation, such as a local or state human rights commission, or the Office for Civil Rights (OCR), Office of Justice Programs, DOJ.

If the SAA's procedures involve referring the complaint to another agency or agencies for investigation and resolution, the SAA should clearly explain the necessary steps for making this referral. If the SAA's procedures involve investigating the complaint internally or referring the complaint to an external agency other than the OCR, such as a

local or state human rights commission, the SAA should list the procedures for notifying the OCR in writing of the referral and for notifying the beneficiary that he or she may also file a complaint with the OCR. If the SAA chooses to investigate these complaints internally, the SAA should explain what office or division of the SAA will have responsibility for investigating the complaint and how the SAA will conduct the investigation.

In this section, the SAA should also explain how it will notify clients, customers, program participants, or consumers of the SAA and SAA subrecipients of prohibited discrimination, along with the procedures for filing a discrimination complaint with the SAA and the OCR. Notification may include placing posters in SAA facilities, including reference in program materials, or providing clients, customers, program participants, or consumers with a copy of these complaint procedures. The SAA should also explain how it will ensure that subrecipients have procedures in place for responding to discrimination complaints that clients, customers, program participants, or consumers of a subrecipient file directly with the subrecipient. At a minimum, these procedures should include forwarding the complaint to the SAA, the OCR, or another appropriate external agency, such as a local or state human rights commission; notifying the SAA of any discrimination complaints that the subrecipient does not refer to the SAA; and notifying the complainant that he or she may file a complaint of discrimination directly with the SAA or with the OCR.]

## V. Training

[The SAA should describe its procedures for providing periodic training for agency employees on these complaint procedures, including an employee's responsibility to refer discrimination complaints from clients, customers, program participants, or consumers to the employee responsible for coordinating the series of actions described in these procedures. The SAA shall also describe in this section how it will disseminate these procedures to agency employees, such as by posting the procedures on the agency intranet website, providing a copy of the procedures to employees during the training sessions, distributing the procedures to all new employees during orientation, etc.]

| | |
|---|---|
| **Subject:** Procedures for Responding to Discrimination Complaints from Employees of the [State Administering Agency's] Subrecipients under U.S. Department of Justice Grant Programs | |
| **Policy Number:** | |
| **Effective Date:** | |

## I. Purpose

[Note: Most often, a State Administering Agency (SAA) will already have procedures in place to address discrimination complaints from its own employees and applicants. Therefore, these template complaint procedures are limited to discrimination complaints from employees of the SAA's subrecipients. If the SAA does not already have procedures in place for addressing discrimination complaints from its own employees, it should ensure that these procedures cover complaints from SAA employees as well.

In this section, the SAA should explain the purpose of this document, such as to establish written procedures for SAA employees to follow when they receive a complaint alleging employment discrimination from an employee of a SAA subrecipient implementing funding from the U.S. Department of Justice (DOJ).]

## II. Policy

[The SAA should explain its policy regarding employment discrimination by subrecipients, such as a statement that all employees and applicants of the SAA's subrecipients shall be treated equally regardless of race, color, national origin, sex, religion, and disability. The SAA may wish to state that it will ensure that subrecipients comply with all applicable federal laws regarding employment discrimination.]

## III. Definitions

[The SAA may wish to include definitions of relevant terms, such as "discrimination," "complaint coordinator," and "retaliation."]

## IV. Complaint Procedures

[The SAA should explain its procedures for responding to employment discrimination complaints against SAA subrecipients. These procedures should include, at a minimum: 1) a designation of the SAA employee who is responsible for coordinating the series of actions described in these procedures; 2) an explanation of how a SAA employee receiving a discrimination complaint from an employee or applicant of a SAA subrecipient should forward the complaint to the employee responsible for coordinating the series of actions described in these procedures; 3) an explanation that the employee responsible for coordinating the series of actions described in these procedures should

refer employment discrimination complaints against SAA subrecipients to the U.S. Equal Employment Opportunity Commission (EEOC) or the appropriate state or local fair employment practices agency or human rights commission; and 4) a requirement that the employee responsible for coordinating the series of actions described in these procedures notify the Office for Civil Rights (OCR), Office of Justice Programs, DOJ, in writing when the employee refers a complaint to the EEOC or a state or local fair employment practices agency or human rights commission. Other options for responding to employment discrimination complaints against SAA subrecipients include the SAA investigating these complaints and notifying the OCR of the investigation and outcome, or referring the complaints to the OCR.

In this section, the SAA should also explain how it will ensure that subrecipients have procedures in place for responding to discrimination complaints that employees or applicants file directly with the subrecipient. At a minimum, these procedures should include forwarding the complaint to the EEOC or a state or local fair employment practices agency or human rights commission and notifying the SAA of this referral.]

## V. Training

[The SAA should describe its procedures for providing periodic training for agency employees on these complaint procedures, including an employee's responsibility to refer discrimination complaints from employees or applicants of SAA subrecipients to the employee responsible for coordinating the series of actions described in these procedures. The SAA shall also describe in this section how it will disseminate these procedures to agency employees, such as by posting the procedures on the agency intranet website, providing a copy of the procedures to employees during the training sessions, distributing the procedures to all new employees during orientation, etc.]

**Federal Civil Rights Compliance Checklist**

1. If the subrecipient is required to prepare an Equal Employment Opportunity Plan (EEOP) in accordance with 28 C.F.R. §§ 42.301-.308, does the subrecipient have an EEOP on file for review?

   ☐ Yes ☐ No

   If yes, on what date did the subrecipient prepare the EEOP?

2. Has the subrecipient submitted an EEOP Short Form to the Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ), if required by 28 C.F.R. §§ 42.301-.308? If the subrecipient is not required to submit an EEOP Short Form to the OCR, has it submitted a certification form to the OCR claiming a partial or complete exemption from the EEOP requirements?

   ☐ Yes – submitted an EEOP Short Form ☐ Yes – submitted a certification ☐ No

   If the subrecipient prepared an EEOP Short Form, on what date did the subrecipient prepare it?

3. How does the subrecipient notify program participants and beneficiaries that it does not discriminate on the basis of race, color, national origin, religion, sex, disability, and age in the delivery of services (e.g. posters, inclusion in brochures or other program materials, etc.)?

   Comments:

4. How does the subrecipient notify employees that it does not discriminate on the basis of race, color, national origin, religion, sex, and disability in employment practices (e.g. posters, dissemination of relevant orders or policies, inclusion in recruitment materials, etc.)?

   Comments:

5. Does the subrecipient have written policies or procedures in place for notifying program beneficiaries how to file complaints alleging discrimination by the subrecipient with the [State Administering Agency] or the OCR?

☐ Yes ☐ No

If yes, an explanation of these policies and procedures:

6. If the subrecipient has 50 or more employees and receives DOJ funding of $25,000 or more, has the subrecipient taken the following actions:

a. Adopted grievance procedures that incorporate due process standards and provide for the prompt and equitable resolution of complaints alleging a violation of the DOJ regulations implementing Section 504 of the Rehabilitation Act of 1973, found at 28 C.F.R. Part 42, Subpart G, which prohibit discrimination on the basis of a disability in employment practices and the delivery of services.

☐ Yes ☐ No

b. Designated a person to coordinate compliance with the prohibitions against disability discrimination contained in 28 C.F.R. Part 42, Subpart G.

☐ Yes ☐ No

c. Notified participants, beneficiaries, employees, applicants, and others that the subrecipient does not discriminate on the basis of disability.

☐ Yes ☐ No

Comments:

7. If the subrecipient operates an education program or activity, has the subrecipient taken the following actions:

a. Adopted grievance procedures that provide for the prompt and equitable resolution of complaints alleging a violation of the DOJ regulations implementing Title IX of the Education Amendments of 1972, found at 28 C.F.R. Part 54, which prohibit discrimination on the basis of sex.

☐ Yes ☐ No

b. Designated a person to coordinate compliance with the prohibitions against sex discrimination contained in 28 C.F.R. Part 54.

☐ Yes ☐ No

c. Notified applicants for admission and employment, employees, students, parents, and others that the subrecipient does not discriminate on the basis of sex in its educational programs or activities.

☐ Yes ☐ No

Comments:

8. Has the subrecipient complied with the requirement to submit to the OCR any findings of discrimination against the subrecipient issued by a federal or state court or federal or state administrative agency on the grounds of race, color, religion, national origin, or sex?

☐ Yes ☐ No

Comments:

9. What steps has the subrecipient taken to provide meaningful access to its programs and activities to persons who have limited English proficiency (LEP)?

Comments, including an indication of whether the subrecipient has developed a written policy on providing language access services to LEP persons:

10. Does the subrecipient conduct any training for its employees on the requirements under federal civil rights laws?

☐ Yes ☐ No

Comments:

11. If the subrecipient conducts religious activities as part of its programs or services, does the subrecipient do the following:

a. Provide services to everyone regardless of religion or religious belief.

☐ Yes ☐ No

b. Ensure that it does not use federal funds to conduct inherently religious activities, such as prayer, religious instruction, or proselytization, and that such activities are kept separate in time or place from federally-funded activities.

☐ Yes ☐ No

c. Ensure that participation in religious activities is voluntary for beneficiaries of federally-funded programs.

☐ Yes ☐ No

Comments:

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

JOHN EARLE SULLIVAN

EXHIBIT IDENTIFIER

EXHIBIT A 1

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

CERTIFICATE OF ORGANIZATION

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of Utah Department of Commerce Certificate of Organization for Dirkmaat Law PLLC.***

SHA-256 : 4616766670b68c65e17a4d913c05175361c72699add13b955ce501177e178c6f
SHA3-512: 06d945cd98687421508036172fc7403a12f754d9b961ed9197d01c426e394f92...
BLAKE3 : 01d5b7ed16f93cf6462d567ea1de68b4738fea44d3e7c8a17c2a896549e88d70

EXHIBIT A 1

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<A<1<8USA9407187M3001016<<<<<<<<<<<<<<

SCAN · VERIFY

[redacted]

# *State of Utah*
## *Department of Commerce*
## *Division of Corporations and Commercial Code*

**Domestic Limited Liability Company - Certificate of Organization**

**ENTITY INFORMATION**

Entity Name: Dirkmaat Law PLLC
Entity Number: 14515141-0162
Effective Date: November 26, 2024
Effective Time: 12:01 AM

**BUSINESS DETAILS**

**Duration Date:** Perpetual

**FILING DETAILS**
**Purpose Statement:**
Engage in the provision of legal services

**PRINCIPAL OFFICE INFORMATION:**
**Principal Office Address:** 1774 Oakcrest Dr, Orem, UT 84097
**Mailing Address:** 1774 Oakcrest Dr, Orem, UT 84097

**REGISTERED AGENT**
**Agent Type:** Individual
**Name:** Paul Dirkmaat
**Address:** 1774 OAKCREST DR, Orem, UT 84097

**ACTIVE PRINCIPAL INFORMATION**
**Title:** Organizer
**Name:** Paul Dirkmaat
**Address:** 1774 Oakcrest Dr, Orem, UT 84097

**SUPORTING DOCUMENTATION**

The Purpose of the Company is to engage in the provision of legal services

Additional Documentation

10292024161007408PM.pdf

Additional Documentation

10292024161219366PM.pdf

**REQUIRED SIGNATURES**

- **Electronic Signature:**Paul J. Dirkmaat
  **Title/Capacity:**Organizer

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT A 2**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**STATEMENT OF DISSOLUTION**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of Utah Department of Commerce Statement of Dissolution for Dirkmaat Law PLLC.***

SHA-256 : a034f830f7077512ea9ba170231cdf8262b458cd742f31aa8ea144581c3faf9b

SHA3-512: 9d7e3d246a25fea0d1a7ff4627767489d46ed3fcf00e0813a58b850f1b9e12d3...

BLAKE3 : b6eea2a1d209e302fb21e93581f0c567af41e5aeb9041b8b38aeb0536923614a

**EXHIBIT A 2**

**P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<**

**EXHIBIT<A<2<8USA9407187M3001016<<<<<<<<<<<<<**

SCAN · VERIFY

[redacted]

# State of Utah
## Department of Commerce
## Division of Corporations and Commercial Code

**Domestic Limited Liability Company - Statement of Dissolution**

**ENTITY INFORMATION**

Entity Name: Dirkmaat Law PLLC
Entity Number: 14515141-0162
Effective Date: October 15, 2025
Effective Time: 09:34 PM

**BUSINESS DETAILS**

**SERVICE OF PROCESS ADDRESS**
**Name:** Paul Dirkmaat
**Address:** 1774 Oakcrest Dr Orem UT 84097

**REQUIRED SIGNATURES**

- I declare that the information contained in this electronic submission is true and accurate.
- I affirm that I am legally authorized to sign this document.
- I acknowledge receipt of the below information:
    - The information provided in this form will be used by the Division to evaluate and complete your request. Failure to provide complete information as requested will result in the denial of your request as incomplete.
    - Information provided in this form is retained in accordance with state record retention laws. For specific information about the records retention for this form, please visit https://corporations.utah.gov/records/.
    - In order to comply with legal and regulatory requirements, we may share information provided in this form with authorized parties such as other government agencies, national licensing databases, contracted vendors, etc. Additionally, many items collected by the Division are classified as “public” under the Government Records Access and Management Act, Utah Code § 63G-2-101 et seq.
    - For more information on how the information you provide is shared, please refer to https://corporations.utah.gov/records/.
- The limited liability company is dissolved.

- **Electronic Signature:** Paul Dirkmaat
  **Title/Capacity:** Authorized Agent

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT A 3**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**UTAH STATE BAR MEMBERSHIP RECORD**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of Utah State Bar Membership lookup record confirming Respondent's active private firm designation.***

SHA-256 : 649095a8995ad0e98dec2bd4e3efb068eaccad9482b7a53479eb6b712e5cd9f4
SHA3-512: 826a4765d4b81d0b3537d237b98a6db315584ca0f2445a7704b1119e11ff589c...
BLAKE3 : bc2f7165e781e6e354e187088498532e3331933339f02134768845ed8562dee6

**EXHIBIT A 3**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<A<3<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

# Paul Dirkmaat

## Basic Information

| | |
|---|---|
| **Prefix** | Mr. |
| **First Name** | Paul |
| **Last Name** | Dirkmaat |
| **Bar Number** | 19508 |
| **Type** | Active Attorney |
| **Status** | Paid |
| **Date Admitted** | 10/3/2024 |
| **Law School** | George Washington University |

## Business Contact Information

| | |
|---|---|
| **Organization** | Dirkmaat Law PLLC |
| **Mailing Address** | 8028 S Telford Way |
| **City** | Sandy |
| **State/Province** | UT |
| **Zip/Postal Code** | 84093-6312 |
| **Country** | United States |
| **Work Phone** | (801) 376-3012 |

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT B**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**MULTISTATE TAX COMMISSION SPOKANE ATTENDANCE REPORT**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Multistate Tax Commission Spokane training attendee manifest (2025) listing Paul Dirkmaat.***

SHA-256 : 8a3ab8051d88de2178b4a8663e5e5b002d78acb8feac417f9b43b4d7e8c86a40
SHA3-512: c696af95ba4d255080eae8bfdf34f0a8a02f1f2b45a3c7394dc3d6d42bad5a1f...
BLAKE3 : 159b718e4c951d1bf1e682e34d2daec8d8fc108b4c9636b44ef1d277f930df05

**EXHIBIT B**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<B<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

# MTC Attorney Training - Spokane Attendee List (2025)

**In Person Attorney Attendees (30)**

| Full Name | Email Address | Company Name | Title |
|---|---|---|---|
| Barber, Chris | cbarber@mtc.gov | Multistate Tax Commission | Counsel |
| Brandt, Shannon | shannon.brandt@cpa.texas.gov | Texas Comptroller of Public Accounts | Tax Policy Counsel |
| Cram, Richard | rcram@mtc.gov | Multistate Tax Commission | Director, National Nexus Program |
| Dendy, Charles | cdendy@nd.gov | ND Office of State Tax Commissioner | General Counsel |
| Disque, Lila | ldisque@mtc.gov | Multistate Tax Commission | Commission Counsel |
| Erlandsen, Dana | dana.erlandsen@wisconsin.gov | Wisconsin Department of Revenue | Chief Counsel |
| Fort, Bruce | bfort@mtc.gov | Multistate Tax Commission | Senior Counsel |
| Gohsler, Thomas | tgohsler@pa.gov | Pa Dept of Revenue, Office of General Counsel | Chief Counsel |
| Hamer, Brian | bhamer@mtc.gov | Multistate Tax Commission | Counsel |
| Hecht, Helen | hhecht@mtc.gov | Multistate Tax Commission | Uniformity Counsel |
| Jasper, Kirsten | kirsten.jasper@state.sd.us | South Dakota Department of Revenue | Chief Legal Counsel |
| Jennrich, Timothy | TimJe@DOR.WA.GOV | Washington Department of Revenue | Sr. Assistant Director of Tax Policy |
| Langenberg, Ray | ray.langenberg@cpa.texas.gov | Texas Comptroller of Public Accounts | Special Counsel |

| | | | |
|---|---|---|---|
| Mahler, Eric | eric.mahler@tax.idaho.gov | Idaho State Tax Commission | Deputy Attorney General |
| McElhatton, Laurie | laurie.mcelhatton@ftb.ca.gov | California Franchise Tax Board | Attorney V |
| Moore, Mark | mark.moore@cpa.texas.gov | Texas Comptroller | Tax Policy Analyst |
| Patterson, Noah | noah.patterson@coag.gov | Colorado Attorney General's Office | First Assistant Attorney General |
| Pens, Josh | josh.pens@state.co.us | Colorado Department of Revenue | Director of Tax Policy |
| Reed, Elliott | elliott.reed@cpa.texas.gov | Comptroller of Public Accounts | Attorney |
| Reed, Scott | scott.reed@ks.gov | Kansas Department of Revenue | Attorney |
| Reese, Brendon | brendon.reese@state.co.us | Colorado Department of Revenue | Senior Director |
| Schaefbauer, Ali | Ali.Schaefbauer@state.sd.us | South Dakota Department of Revenue | Staff Attorney |
| Skinner, Phil | phil.skinner@ag.idaho.gov | Office of the Attorney General; Idaho State Tax Commission | Chief of Staff |
| Slaney, Tiana | tiana.slaney@iowa.gov | Iowa Department of Revenue | Attorney |
| Stosberg, Jennifer | jstosberg@mtc.gov | Multistate Tax Commission | Counsel |
| Van Wyke, Debbie | deborah.vanwyke@state.co.us | CO Dept of Revenue | Director of Tax Conferee |
| Waggoner, Timothy | timothy.s.waggoner@wv.gov | West Virginia State Tax Division | Attorney |
| Wald, Donnita | donnita.wald@tax.nm.gov | NM Taxation & Revenue Department | Chief Legal Counsel |
| White, Jonathan | jwhite@mtc.gov | Multistate Tax Commission | Counsel |

| | | | |
|---|---|---|---|
| Zalesky, Chuck | chuck.zalesky@atg.wa.gov | Washington Attorney General's Office | Assistant Attorney General |

**In Person Other State Employee Afternoon Attendees (18)**

| Full Name | Email Address | Company Name | Title |
|---|---|---|---|
| Bofenkamp, Eric | ericb@dor.wa.gov | Washington Department of Revenue | Field Audit Manager |
| Broussard, Keith | kbroussard@mt.gov | Montana Department of Revenue | Bureau Chief - Natural Resources & Corporation Tax Bureau |
| Coleman, Derrick | derrick.coleman@revenue.alabama.gov | Alabama Department of Revenue | Deputy Commissioner |
| Coon, Holly | hcoon@mtc.gov | Multistate Tax Commission | Audit Program Director |
| Galewaler, Veronica | veronica.galewaler@tax.nm.gov | NM Taxation and Revenue Department | Department Tax Audit Supervisor |
| Hales, Frank | fhales@utah.gov | Utah State Tax Commission | Senior Director - Tax and Revenue |
| Harper, Spencer | spencerh@dor.wa.gov | Washington Department of Revenue | Senior Revenue Auditor |
| Jordan, Joanne | joannej@dor.wa.gov | Washington DOR | Auditor |
| Lolley, Katie | Katie.M.LOLLEY@dor.oregon.gov | Oregon Department of Revenue | Business Administrator |
| McCurdy, Jane | jmccurdy@pa.gov | Pennsylvania Department of Revenue | Director |
| Merrien, David | dmerrien@mtc.gov | MTC | Tax Specialist |
| Peyerl, Matthew | mpeyerl@nd.gov | North Dakota Office of State Tax Commissioner | Associate Director, Tax Admin. |

| | | | |
|---|---|---|---|
| Sarah Roberts | sarahk.roberts@state.co.us | State of Colorado | Tax Manager |
| Robinson, Shelley | srobinson@utah.gov | Utah State Tax Commission | Division Director |
| Schoenfeld, Mark | mschoenfeld@mt.gov | Montana Department of Revenue | Unit Manager, Corporate Income Tax |
| Shinder, Larry | Lshinder@mtc.gov | MTC | Supervisor |
| Tidwell, Matt | matt.tidwell@revenue.alabama.gov | Alabama Department of Revenue | Asst. Director - Income Tax Audit & Appeals |
| Yost, Aaron | aaron.yost@tax.idaho.gov | Idaho State Tax Commission | Government Affairs Manager |

**Virtual Attendees (57)**

| **Full Name** | **Email Address** | **Company Name** | **Title** |
|---|---|---|---|
| Alexander, Morgan | morgan.alexander@ag.state.mn.us | Minnesota Attorney General's Office | Assistant Attorney General |
| Barrett, Callie | callie.barrett@atg.wa.gov | Washington State Attorney General's Office | Assistant Attorney General |
| Beretta, John | john.a.beretta@tax.ri.gov | Rhode Island Division of Taxation | Deputy Chief of Legal Services |
| Beteta, Douglas | Douglas.Beteta@doj.ca.gov | California Office of the Attorney General | Deputy Attorney General |
| Branson, Aaron | aaron.branson@iowa.gov | Iowa Department of Revenue | Exec Asst |
| Brooks, Peter | peter.brooks@cpa.texas.gov | Texas Comptroller of Public Accounts | Tax Policy Counsel |
| Chang, Vivian | vchang@azdor.gov | Arizona Dept of Revenue | Disclosure Officer |
| Chase, Kathleen | kathleen.chase@tax.ny.gov | New York State Department of Taxation and Finance | Associate Attorney |

| | | | |
|---|---|---|---|
| Cotter, Ryan | ryan.cotter@cpa.texas.gov | Texas Comptroller of Public Accounts | Tax Policy Counsel |
| Cristy, Matt | [redacted] | Georgia Department of Revenue | Managing Attorney |
| Danielson, Matthew | mfdanielson@nd.gov | North Dakota Office of State Tax Commissioner | Special Assistant Attorney General |
| Davis, Lee | leedavis@agutah.gov | Utah Attorney General | Assistant Attorney General |
| Deshaies, Cheryl | cheryl.c.deshaies@dra.nh.gov | NH Dept. of Revenue Administration | Assistant Revenue Counsel |
| Dirkmaat, Paul | pdirkmaat@agutah.gov | Office of the Attorney General of Utah | Assistant Attorney General |
| Elrod, Charles | [redacted] | [redacted] OR | Deputy GC |
| Forbes, Scott | scott.forbes@atg.wa.gov | State of Washington Office of the Attorney General | Assistant Attorney General |
| Frank, Kathryn | kathryn.frank@ftb.ca.gov | Franchise Tax Board | Attorney Supervisor |
| Gagnon, Lawrence | lawrence.p.gagnon@dra.nh.gov | NH Department of Revenue Administration | Revenue Counsel |
| Gao, Jarter | [redacted] | Georgia Department of Revenue | Attorney |
| Garrison, Emma | emma.garrison@coag.gov | Colorado Department of Law | Senior Assistant Attorney General I |
| Goldberg, Brett | goldbergb@dor.state.ma.us | MA Department of Revenue | Tax Counsel |
| Hall, Bob | rhall@azdor.gov | Arizona Department of Revenue | Appeals Administrator |
| He, Wei | wei.he@atg.wa.gov | Washington State Office of Attorney General | Assistant Attorney General |
| Hezel. Flora | fhezel@oag.state.va.us | Virginia Attorney General | Senior Assistant Attorney General |

| | | | |
|---|---|---|---|
| Hoeppner, Nathan | nathan.hoeppner@ks.gov | Kansas Department of Revenue | Attorney |
| Hoffmann-Polk, Lorraine | [redacted] | Georgia Department of Revenue | General Counsel |
| Johnson, Adam | adam.johnson@lrc.ky.gov | Kentucky Legislative Research Commission | Committee Analyst |
| Lind, Laron | llind@agutah.gov | Utah Attorney General's Office | Assistant Attorney General |
| Magnuson, Elisa | elisa.magnuson@tax.idaho.gov | Idaho State Tax Commission | Lead Deputy Attorney General |
| Lombardi, Michelle | mlombardi@agutah.gov | Utah Office of the Attorney General | Assistant Utah Attorney General |
| Mittle, David | david.mittle@tax.nm.gov | NM Taxation and Revenue Department | Attorney |
| Mokhemar, Miriam | [redacted] | Georgia Department of Revenue | Attorney |
| Morrissey, Heather | Heather.Morrissey@wisconsin.gov | Wisconsin Department of Revenue | Attorney |
| Mosca, Carrie | carrie.mosca@tax.ri.gov | Rhode Island Division of Taxation | Chief of Staff |
| Muldowney, Anna | amuldowney@azdor.gov | Arizona Department of Revenue | Specialty Tax Counsel |
| Pashos, Michael | [redacted] | State of Georgia Dept of Finance | Attorney |
| Pellerin, Nicole | Nicole.Pellerin@wisconsin.gov | Wisconsin Department of Revenue | Attorney |
| Pener, Richard | richard.pener@tax.nm.gov | New Mexico Taxation and Revenue Department | Attorney Supervisor |
| Phillips, Matthew | matthew.phillips@vermont.gov | Office of the Vermont Attorney General | Assistant Attorney General |

| | | | |
|---|---|---|---|
| Pousson Garcia, Janee | jpgarcia@azdor.gov | Arizona Department of Revenue | Attorney 3 |
| Ralston, Mike | mralston@dor.in.gov | Indiana Department of Revenue | Special Policy Counsel |
| Repella, Grace | [redacted] | Georgia Department of Revenue | Attorney |
| Ribar, Marko | marko.ribar@nebraska.gov | Nebraska Department of Revenue | Attorney |
| Roth, Peter | peter.c.roth@dra.nh.gov | State of New Hampshire Department of Revenue Administration | Attorney |
| Scroggins, Miranda | miranda.scroggins@la.gov | Louisiana Department of Revenue | Attorney |
| Siegel, Kara | Kara.Siegel@doj.ca.gov | California Department of Justice, Office of the Attorney General | Deputy Attorney General |
| Smith, Emilee | emilee.smith@nebraska.gov | Nebraska Department of Revenue | Attorney |
| South, Mallory | [redacted] | Georgia Department of Revenue | Attorney |
| Stohlmeyer, Amy | amy.stohlmeyer@iowa.gov | Iowa Department of Revenue | Exec Asst |
| Talley, Katherine | ktalley@mt.gov | Montana Department of Revenue | Attorney |
| Teasdale, Scot | Scot.Teasdale@azag.gov | Arizona Attorney General | Sr. Procurement Spec. |
| Wainwright, Mark | mwainwright@agutah.gov | Utah Attorney General's Office | Assistant Attorney General |
| Weber, Alex | alexander.j.weber@maine.gov | Maine Revenue Services, State of Maine | General Counsel |

| | | | |
|---|---|---|---|
| Weirnick, Darren | Darren.Weirnick@doj.oregon.gov | Oregon Department of Justice | Senior Assistant Attorney General |
| White, Glen | glen.white@nebraska.gov | Nebraska Department of Revenue | Deputy Tax Commissioner |
| White, Kathryn | kathrynwhite@agutah.gov | Utah Attorney General's Office | Assistant Attorney General |
| Wiedner, Caleb | Caleb.Wiedner@dor.mo.gov | Department of Revenue, General Counsel's Office | Associate Counsel |
| Williamson, Matthew | Matthew.Williamson@tax.ri.gov | Rhode Island Department of Revenue Division of Taxation | Legal Counsel |
| Yoder, Jesse | jesse.yoder@atg.wa.gov | Washington Office of the Attorney General | Assistant Attorney General |
| Zimmer, Mark | Mark.Zimmer@wisconsin.gov | Wisconsin Department of Revenue | Attorney |

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT D 1**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**UTAH VALLEY UNIVERSITY FACULTY DIRECTORY**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of Utah Valley University Faculty Directory listing Paul Dirkmaat as Adjunct Instructor.***

SHA-256 : 827c3e3a514b6efa2253c34af954b8c4ac7d85147f2e87fe1fc1e30e1eafa49f
SHA3-512: c95dcb17780021f427662e17c924bbfd59ef300500a1a1143d08c65be4918109...
BLAKE3 : e8dfcec1ea31919a8154ce6656ba7bdb2187e3a2a14bd09ccb044fde4e513740

**EXHIBIT D 1**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<D<1<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

Organizational Leadership Directory Page

# Organizational Leadership

*Directory Page*

**Location:** KB 327

**Phone:** 801-863-8134

**Mailstop:** MS 2

**Website:** https://www.uvu.edu/woodbury/organizational-leadership/ (https://www.uvu.edu/woodbury/organizational-leadership/)

## Employees

### Full Time Employees

**Maureen Andrade**
Professor - Organizational Leadership
Message Maureen Andrade (/directory/message/?id=NFhUTGo0MUQ3dkY5Y1JUL2NETHdJQT09)
Professional Profile »

**Jessica Ballard**
Professional in Residence - Hospitality Management/Event Planning
Message Jessica Ballard (/directory/message/?id=ZmFYeFRXOHRMNi83eGNKblZ4WVNGZz09)
Professional Profile »

**Don Capener**
Dean's Executive in Residence
Message Don Capener (/directory/message/?id=Um5qWStaUFZMS0laWid1dEg3NEJLQT09)
Professional Profile »

**Jared Chapman**
Associate Professor of Organizational Leadership
Message Jared Chapman (/directory/message/?id=VDNNWDFoMl1aTlZeDNFeDlvMGlPdz09)
Professional Profile »

**Silvia Clark**
Assistant Professor - Human Resources Management
Message Silvia Clark (/directory/message/?id=WHJLZW1oSkgwUmdCU1ViK2F3emVUZz09)
Professional Profile »

**Tabatha Davis**
Assistant Director- WARM Program
Message Tabatha Davis (/directory/message/?id=ZXRKa25vOU9mMEZUL0U1cDlXVlIKZz09)
Professional Profile »

**LynnAnn Erickson**
Professional in Residence - Human Resources Management
Message LynnAnn Erickson (/directory/message/?id=SmE1TkRsRzRnL3F6WldoRzluNhBdz09)
Professional Profile »

**Carolyn Howard**
Associate Professor - Organizational Leadership
Message Carolyn Howard (/directory/message/?id=UTFzZFhibkNQTVNNOE9VUvtUbkdRZz09)
Professional Profile »

UVU(/) DIRECTORY(/DIRECTORY)

APPLY TO UVU (/ADMISSIONS/#DEGREE-TYPE) MYUVU (HTTPS://MY.UVU.EDU)

DIRECTORY SEARCH(/DIRECTORY/) LIST OF DEPARTMENTS(/DIRECTORY/DEPARTMENT

QUESTIONS? ASK WILSON

**Angela Jackson**
Assistant Professor - Organizational Leadership
Message Angela Jackson (/directory/message/?id=ZVFoTC9jZU1ZTWRDTVZzR3FFc2krUT09)
Professional Profile »

**Russell Johnson**
Professional in Residence - Business Management
Message Russell Johnson (/directory/message/?id=V0xhUHd2Sk04STJvbHZSMWpZVzFUdz09)
Professional Profile »

**Rod Lacey**
Professional in Residence
Message Rod Lacey (/directory/message/?id=ZzFCcjU4cWQxREEvd0ZXL3kzL29NQT09)
Professional Profile »

**Justine Lee**
Lecturer - OrgL
Message Justine Lee (/directory/message/?id=dFpreGZWMzdEMkE5NUZtNThTMUtzZz09)
Professional Profile »

**Doug Miller**
Professor - Hospitality Management
Message Doug Miller (/directory/message/?id=VG1KTUVBeVdPMGxBVndaNkR0VU1rZz09)
Professional Profile »

**Dana Oaks**
Professional in Residence - Healthcare Administration
Message Dana Oaks (/directory/message/?id=cnM2MUVIUWF5VzVSekgyNnBiUE5DZz09)
Professional Profile »

**Jeff Peterson**
Associate Professor - Organizational Leadership
Message Jeff Peterson (/directory/message/?id=MEFpRHBUVHYvMWRkenI0SkZTMTJyZz09)
Professional Profile »

**Eugene Seeley**
Professor, International Business
Message Eugene Seeley (/directory/message/?id=ckhEVmFSZDljcW9kMnRLYU9aWEpMdz09)
Professional Profile »

**Summer Valente**
Professional in Residence - Organizational Leadership
Message Summer Valente (/directory/message/?id=RGtxY1FURFNtVzFFMkd0RkInQUVJUT09)
Professional Profile »

**Jonathan Westover**
Professor, Organizational Leadership and Change
Message Jonathan Westover (/directory/message/?id=aFl6VXZQU0Nab3dWU3B3bEhrelhSQT09)
Professional Profile »

**Jonathon Wood**
Lecturer - Organizational Leadership
Message Jonathon Wood (/directory/message/?id=bGFlRDVxQTNEeUVIUkVnL2I1bDIoUT09)
Professional Profile »

## Part Time Employees

UVU(/) DIRECTORY(/DIRECTORY)

APPLY TO UVU (/ADMISSIONS/#DEGREE-TYPE) MYUVU (HTTPS://MY.UVU.EDU)

DIRECTORY SEARCH(/DIRECTORY/) LIST OF DEPARTMENTS(/DIRECTORY/DEPARTMENT/LIST.HTML)

**Corie Adams**
Adjunct Instructor
Message Corie Adams (/directory/message/?id=NHFsOzdGb0lRK2swNTNmNjhUeXBUUT09)
Professional Profile »

**Liz Anderson**
Adjunct Instructor
Message Liz Anderson (/directory/message/?id=eVpUc2cxMHVCUEFiTHlQU2REM3d1UT09)
Professional Profile »

**William Arellano-Burga**
Adjunct Instructor
Message William Arellano-Burga (/directory/message/?id=bUdESmVsejE5VTdYcFNudjYvbWV5QT09)
Professional Profile »

**Kurt Ashworth**
Adjunct Instructor
Message Kurt Ashworth (/directory/message/?id=MWFqSmRYbzVDc3cweWdyeXpWcWpldz09)
Professional Profile »

**Matthew Burgon**
Special Fee Instruction Hourly
Message Matthew Burgon (/directory/message/?id=UnFpUnE2dUxPRTYxRXJzaVJUTnpRUT09)
Professional Profile »

**Cesar Castro Villagran**
Adjunct Instructor
Message Cesar Castro Villagran (/directory/message/?id=NE9Cc3dJcDVyVDR5anZ5OC9tYzJlZz09)
Professional Profile »

**Alisa Chen**
Research Assistant - Business Impact Lab
Message Alisa Chen (/directory/message/?id=WiswTjhlaEdpcmRqamR0ZExJQ3ArZz09)
Professional Profile »

**Cory Chlarson**
Adjunct Instructor
Message Cory Chlarson (/directory/message/?id=NG5DNUNQQ3BkdThBME1vNHZQK3NiUT09)
Professional Profile »

**Paul Dirkmaat**
Adjunct Instructor
Message Paul Dirkmaat (/directory/message/?id=WEwvdjFGNWNPOFpBSkpMME8wZDNPUT09)
Professional Profile »

**Jason Ford**
Adjunct Instructor
Message Jason Ford (/directory/message/?id=aDFiWkNMZEkwQ0c1dHVTWTBMcVV1Zz09)
Professional Profile »

**Jared Harding**
Adjunct Instructor
Message Jared Harding (/directory/message/?id=WHB2MnUrNW51a3ZmUVoycnRSR3hldz09)
Professional Profile »

**Tonya Hoopes**
Adjunct Instructor
Message Tonya Hoopes (/directory/message/?id=ekZ1NXJVc0RCOU44WThreGF2NzVNUT09)
Professional Profile »

**Ryan Jenkins**
Dr. K. Ryan Jenkins
Message Ryan Jenkins (/directory/message/?id=bUoxdDVWbDFyUGZFdW1Fd1VBcGtoZz09)
Professional Profile »

**Damon Larsen**
Adjunct Instructor
Message Damon Larsen (/directory/message/?id=djRYUTFzdVlEcG9TRjE5QTBaWC9oUT09)
Professional Profile »

**Nathan Lonergan**
Adjunct Instructor
Message Nathan Lonergan (/directory/message/?id=aW5YaHp4NnRFZ0ZRZDhrdzdVREErQT09)
Professional Profile »

**Tony Makris**
Dean Executive in Residence
Message Tony Makris (/directory/message/?id=bUVaK0BrY2dmRFBqZ2doRncrTFBpUT09)
Professional Profile »

**Richard Morrey**
Adjunct Instructor
Message Richard Morrey (/directory/message/?id=bUlYV3J2YmJ0UWg0V2NyVENHQ0VXZz09)
Professional Profile »

**Christopher Nukaya**
Adjunct Instructor
Message Christopher Nukaya (/directory/message/?id=SlBhYlR6QnQyV0owajlhVnFhNzlhQT09)
Professional Profile »

UVU (/) DIRECTORY(/DIRECTORY)

APPLY TO UVU (/ADMISSIONS/#DEGREE-TYPE) MYUVU (HTTPS://MY.UVU.EDU)

DIRECTORY SEARCH(/DIRECTORY/) LIST OF DEPARTMENTS(/DIRECTORY/DEPARTMENT/LIST.HTML)

**David Preece**
Adjunct Instructor

**Meagan Ricks**
Adjunct Instructor

**Amy Takeno**
Adjunct Instructor

Message David Preece (/directory/message/?id=TG9DbXFmSmhLcmlqUnVWQTJDSHo4dz09)

Professional Profile »

Message Meagan Ricks (/directory/message/?id=cXRsTllrZk90UDVTd2xQNlZITkNmZz09)

Professional Profile »

Message Amy Takeno (/directory/message/?id=RTRQR25EWjg3ajNaTUtLOGlFQjdLQT09)

Professional Profile »

**Matt Warner**
Adjunct Instructor

Message Matt Warner (/directory/message/?id=Y3NuZzA0NW8reWJYa0RlNEJkSWZPQT09)

Professional Profile »

**Danny Wheeler**
Adjunct Instructor

Message Danny Wheeler (/directory/message/?id=VlEva0FPNU05QXB3QlhzZ0xjcGlBQT09)

Professional Profile »

**Gordon Whitehead**
Dr.

Message Gordon Whitehead (/directory/message/?id=VmhiNzhWbDFuTUdKWnhlbjVZOFkvZz09)

Professional Profile »

**Irene Whittier**
Adjunct Instructor

Message Irene Whittier (/directory/message/?id=dUdkc1hlc3g0eTk0NWJOb2lMVmlwUT09)

Professional Profile »

**Angie Wolthuis**
Adjunct Instructor

Message Angie Wolthuis (/directory/message/?id=WFkxRkNjdVFHS2RxbHRIRUlxZXV3Zz09)

Professional Profile »

## Student Employees

**Isaac Lehman**
Student Employee

Message Isaac Lehman (/directory/message/?id=NFpXQ210Z25XbDlxMkdtVTFLTHpFdz09)

Professional Profile »

**Rachael Newkirk**
Student Employee

Message Rachael Newkirk (/directory/message/?id=YXgzZjQ0Mnp0YzRlVVByRmV1ZEh3UT09)

Professional Profile »

**Chloe Peine**
Student Employee

Message Chloe Peine (/directory/message/?id=K3ljYlBGaXFzV01PQGdtMXZnbGE0UT09)

Professional Profile »

**Rachel Richardson**
Student Employee

Message Rachel Richardson (/directory/message/?id=NHQ2U0c2ZnVlTU1uK0UvT1ZQQlRoQT09)

Professional Profile »

**Jillian Steck**
Student Employee

Message Jillian Steck (/directory/message/?id=ckYycmFqQXp2MWJ0dlRYYmFXYzU4dz09)

Professional Profile »

**STUDENT**

ADMISSIONS (/ADMISSIONS/)
CAMPUS LIFE (/CAMPUS-LIFE/INDEX.HTML)
CURRENT STUDENT (/STUDENTS/)
ACCREDITATION (/ACCREDITATION-ACADEMIC-ASSESSMENT/INDEX.HTML)

**EMPLOYEES**

CAREER OPPORTUNITIES (/PEOPLEANDCULTURE/JOBS/INDEX.HTML)
EMPLOYEE RESOURCES (/FACSTAFF/)
DIRECTORY (/DIRECTORY/)
PEOPLE & CULTURE (/PEOPLEANDCULTURE/)

**COMMUNITY**

ATHLETICS (HTTPS://GOUVU.COM/)
VISITORS & COMMUNITY (/VISITORS/)
OFFICE OF THE PRESIDENT (/PRESIDENT/)
ABOUT UVU / HISTORY (/VISITORS/HISTORY.HTML)
ALUMNI (HTTPS://ALUMNI.UVU.EDU/)
ENGAGEMENT & EFFECTIVENESS (/ENGAGEMENT-AND-EFFECTIVENESS/INDEX.HTML)
GIVE TO UVU (/GIVE/INDEX.HTML)
CONTACT US (/VISITORS/CONTACT.HTML)

**UTILITY**

MAPS / PARKING (/MAPS/)
SERVICE DESK (/SERVICEDESK/)
EMERGENCY (/EMERGENCYMANAGEMENT/INDEX.HTML)
POLICE (/POLICE/)
GET HELP (/SERVICEDESK/)
SEARCH (/SEARCH/)
ACCESSIBILITY (/ACCESSIBILITY-SERVICES/INDEX.HTML)
TITLE IX / EQUAL OPPORTUNITY (/EQUITYANDTITLEIX/INDEX.HTML)



BATES: PDJF-BRIE-3059-202607271234-796ECFDE-5C694FA5-0478 | PAGE 478 OF 485

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT D 2**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**UTAH VALLEY UNIVERSITY FACULTY PROFILE**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of Utah Valley University Faculty Profile confirming teaching assignment of MGMT 3300G for Spring 2026.***

SHA-256 : 3726c5b34af2356ab5c49bdf14d4a556bc7fe383807b9fc5f61eacc969ae10d7
SHA3-512: 464206d8f53af52b4127cc2d486d9b2de46922dd7af0701031c11f72249c95a7...
BLAKE3 : a2cc11d832a5978f07f92bc16b132ce7640df385166c149bdd9a6135ebf08699

**EXHIBIT D 2**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<D<2<8USA9407187M3001016<<<<<<<<<<<<<

SCAN · VERIFY

Faculty Member

# PAUL DIRKMAAT

Send a Message (/directory/message/?id=WEwvdjFGNWNPOFpBSkpMME8wZDNPUT09)

Phone: 801-863-8134 (tel:801-863-8134)

Teaching

## TEACHING

**MGMT 3300G**
Survey of International Business, Spring 2026

••• View more teaching

UVU Directory : websupport@uvu.edu (mailto:websupport@uvu.edu)



800 WEST UNIVERSITY PARKWAY, OREM, UT 84058 (HTTPS://GOO.GL/MAPS/...) • (801) 863-8000 • © UTAH VALLEY UNIVERSITY (/LEGAL/COPYRIGHT/)

QUESTIONS? ASK WILSON

UVU(/) DIRECTORY(/DIRECTORY)

APPLY TO UVU (/ADMISSIONS/#DEGREE-TYPE) MYUVU (HTTPS://MY.UVU.EDU)

DIRECTORY SEARCH(/DIRECTORY/) LIST OF DEPARTMENTS(/DIRECTORY/DEPARTMENT/LIST.HTML)

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT F**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**RECEIPT FOR PROPERTY SEIZED BY FBI**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Federal Bureau of Investigation Receipt for Property Seized on January 14, 2021, establishing seizure of all personal computers, USB drives, and financial accounting assets, proving impossibility of income generation in 2021?2022.***

SHA-256 : cc85d37825f367a21354e6210805387f1ae382f24b48cb1335104320a0cffcb5
SHA3-512: 1b79f6a957fa7a86d9c04a9e762019dcab3bbdf776192456cd39d68588927828...
BLAKE3 : 23c6ff71e4236c7f2d01a97fa998693b36ea2619222c77dbfd706a68dacfe61e

**EXHIBIT F**

P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<
EXHIBIT<F<8USA9407187M3001016<<<<<<<<<<<<<<0

SCAN · VERIFY

FD-597 (Rev 8-11-94)



# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # [illegible]

On (date) 14 January 2021

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☐ Seized

(Name) ____

(Street Address) [illegible]

(City) [illegible]

Description of Item(s): [illegible] ... SSD with card, computer tower with cord ... [illegible]

Received By: [illegible signature] (Signature)

Received From: ____ (Signature)

# FORMAL EVIDENTIARY RECORD

SUBMITTING ENTITY / CLAIMANT IDENTIFIER

**JOHN EARLE SULLIVAN**

EXHIBIT IDENTIFIER

**EXHIBIT I**

EVIDENTIARY DESCRIPTION & RECORD CONTEXT

**MYCASE COURT PORTAL DOCKET**

## STATUTORY STATEMENT OF RECORD / EVIDENTIARY CONTEXT

***Certified parent copy of the MyCase court portal docket printout, showing the case history and electronic notification logs.***

SHA-256 : a5093f631e48678a67afaa6d8e65235b472ab7ca651d00e6639e6f407a7a2863
SHA3-512: ba12edc2b4c384374d968682fda6e275c96c78bc733f3c6275a5b7998963b804...
BLAKE3 : 95114cb9478d7a262d7eec1776175fb063aa669ad14c91ac8eca19c41eaafe6c

**EXHIBIT I**

**P<USAJOHN<EARLE<SULLIVAN<<<<<<<<<<<<<<<<<<<<**
**EXHIBIT<I<8USA9407187M3001016<<<<<<<<<<<<<<0**

SCAN · VERIFY

260903520 - SULLIVAN, JOHN EARLE vs. UTAH STATE TAX COMMISSION

JOHN EARLE SULLIVAN

1221 WEST ERDA WAY
ERDA, UT 84074

johne.sullivan@outlook.com

SULLIVAN, JOHN EARLE vs. UTAH STATE TAX COMMISSION

THIRD JUDICIAL DISTRICT - SALT LAKE COUNTY DISTRICT COURT

Administrative Ag Case

| | |
|---|---|
| Case Number: | 260903520 |
| File Date: | 05-08-2026 |
| Assigned Judge: | JOEL FERRE |
| Next Hearing: | N/A |

## Parties

| Type | Party | Represented By |
|---|---|---|
| Plaintiff | JOHN EARLE SULLIVAN | - |
| Defendant | UTAH STATE TAX COMMISSION | LARON LIND |
| Defendant | UTAH STATE TAX COMMISSION | PAUL DIRKMAAT |

## Account

Make a Payment

| | | | |
|---|---|---|---|
| Total Restitution Amount Due: | $0.00 | Total Restitution Amount Paid: | $0.00 |
| Total Non-Restitution Amount Due: | $0.00 | Total Non-Restitution Amount Paid: | $0.00 |
| Total Bail/Bond Accounts Posted: | $0.00 | Total Bail/Bond Accounts Undisposed: | $0.00 |
| Total Credits Applied for All Accounts: | $0.00 | Recommended Bail: | $0.00 |
| Community Service Amount and Units: | | Last Transaction Date: | |
| Fee Waiver Request: | | Last Payment Date: | |

## Filed Documents

Search Document

| Description | File Date |
|---|---|
| Filed: Return of Electronic Notification | 06-26-2026 |
| Filed: Return of Electronic Notification | 06-25-2026 |
| Filed: Order Statement of Discovery Issues | 06-25-2026 |
| Filed: Return of Electronic Notification | 06-25-2026 |
| Filed: Response to Motion for Evidentiary Hearing and Request to Submit | 06-25-2026 |
| Filed: ***PROPOSED*** Order Denying Respondent's Statement of Discovery Issues | 06-25-2026 |
| Filed: Certificate of Service | 06-25-2026 |
| Filed: Objection to Respondent's Statement of Discovery Issues | 06-25-2026 |
| Filed: Return of Electronic Notification | 06-25-2026 |
| Filed: ***PROPOSED*** ORDER GRANTING PETITIONER'S MOTION FOR EVIDENTIARY HEARING AND SCHEDULING ORAL TESTIMONY | 06-22-2026 |

1 to 10 of 63 documents