IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN EARLE SULLIVAN,<br><br>        Plaintiff,<br><br>V.<br><br>JOEL A. FERRE; KATHRYN L. WHITE; LARON J. LIND; ALEXIS WALKER; CURTIS BRITLAND; HOUNG CHHOUR a/k/a HOUNG "KIM" CHHOUR; DEREK NELSON, in his or her individual and official capacities; OFFICE OF THE UTAH ATTORNEY GENERAL; and ADMINISTRATIVE OFFICE OF THE COURTS,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Case No. 2:26-cv-00704-JNP<br><br>Chief District Judge Jill N. Parrish |

On July 28, 2026, Plaintiff John Earle Sullivan filed suit against Defendants. *See* ECF No. 1. That same day, he moved for an ex parte emergency temporary restraining order ("TRO"). *See* ECF No. 9. For the following reasons, the court DENIES the motion for temporary restraining order.

## BACKGROUND

Plaintiff Sullivan, proceeding pro se, states he suffers from severe cognitive and physiological impairments that restrict his ability to process print documents, read small fonts, or navigate complex administrative systems. ECF No. 1 at 10.  He claims that there is a coordinated, bad-faith conspiracy orchestrated by Utah state prosecutors, a state district court judge, and court

clerical administrators to "systematically dismantle a disabled citizen's constitutional rights." ECF No. 1 at 5–6.

Much of the content of the current complaint derives from Plaintiff's interactions with the Utah State Tax Commission. According to Plaintiff, Defendant Chhour, a Tax Auditor of the Tax Commission, issued estimated Notices of Deficiency to Plaintiff sometime in 2025 or 2026. *Id.* at 17–18, 275. These notices alleged that Plaintiff owed outstanding income tax for 2021 and 2022. *Id.* Plaintiff asserts that the notices are based on "unsubstantiated" and "unverified" figures and third-party databases. *Id.* He claims that Defendants "willfully fabricated" these estimated income figures and "assessed individual income taxes against Plaintiff without any rational or factual foundation." *Id.* at 20.

In connection with these tax-related proceedings, Plaintiff claims Defendants have been working to stymie his ability to effectively participate in his defense. For example, Plaintiff alleges that other Defendants colluded to manipulate the state judicial electronic court docket to prevent Plaintiff from challenging various alleged violations and default filings. *Id.* at 21. He asserts he repeatedly demanded that Defendants serve all pleadings, notices, orders, and evidence in searchable, screen-readable digital formats to make them accessible to him given his disabilities. *Id.* at 22. He alleges that, instead, Defendant Judge Ferre and Defendant Clerk Walker banned electronic email filing and service channels for Plaintiff. *Id.* at 22. He alleges that Judge Ferre and Clerk Walker nevertheless allowed Defendants Dirkmaat, Lind, and White—who Plaintiff notes are white while he is Black—to "seamlessly file and serve pleadings electronically." *Id.* at 23. Plaintiff also alleges that Defendants systematically refused to provide accessible documents and records to him. *Id.* at 23.

Plaintiff also alleges that Defendant Dirkmaat, Assistant Attorney General in the Tax Division of the Office of the Utah Attorney General, altered one of Plaintiff's documents in the course of creating a meet-and-confer agenda by redacting certain information before filing the document on the docket. More specifically, he alleges that Defendant Dirkmaat "physically altered and spoliated court exhibits by whiting-out and deleting Plaintiff's explicit disability accommodation requests and clinical diagnostics . . . from the meet-and-confer agenda" that Plaintiff had sent to Dirkmaat. *Id.* at 23. This, he alleges, was part of a "bad-faith effort to conceal Plaintiff's documented impairments from the record." *Id.* at 27. He asserts that Defendant Dirkmaat sought to establish a "false narrative that the State had no notice of Plaintiff's disabilities, thereby setting up a procedural default and depriving Plaintiff of necessary [Americans with Disabilities Act ("ADA")] accommodations." *Id.* Relatedly, he also alleges that Defendants' use of internal conflict screening procedures also violated the ADA. *Id.* at 33. These internal conflict screens prevented some level of cross-communication, leading to his disability status not being universally known. *Id.*

In addition, Plaintiff alleges that his accommodation requests were ignored, forcing a procedural default. *Id.* at 34. He also alleges that Defendants deprived him of proper notice by sending certain documents to his address without requiring signature upon delivery and that Defendant Judge Ferre wrongfully continued to enter orders even after an automatic statutory stay began. *Id.* at 36–38. He alleges other procedural issues occurred as well. *See id.* at 43.

Ultimately, he alleges that Defendants "actively blockaded electronic filing channels, whited-out and concealed digital medical disability notices, manipulated docket queues, executed signature-evasion mailing loops, and entered void judicial orders to force administrative default." *Id.* at 6. He claims that Defendants "forged this conspiracy to shield and enforce a fabricated,

estimated tax deficiency assessment that the Utah State Tax Commission . . . issued without a single base income record." *Id.*

Plaintiff filed a motion for an ex parte temporary restraining order on the same day that he filed his complaint. Because it is an ex parte motion, the court considers the motion without any briefing from Defendants.

**LEGAL STANDARD**

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah Oct. 9, 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). An ex parte temporary restraining order, meaning one issued without notice to the other side, is even more extraordinary. "[S]uch ex parte relief [is] reserved for circumstances where the applicant would face immediate and irreparable harm if the court waited for the preliminary injunction proceeding." *Geiger v. Epsy*, 885 F. Supp. 231, 232 (D. Kan. 1995).

To win preliminary relief, a party must show that (1) it "is substantially likely to succeed on the merits"; (2) it "will suffer irreparable injury if the injunction is denied"; (3) its "threatened injury outweighs the injury the opposing party will suffer under the injunction"; and (4) "the injunction would not be adverse to the public interest." *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). An ex parte temporary restraining order should issue only if the movant "*clearly show[s]* that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A) (emphasis added).

## ANALYSIS

Plaintiff seeks the ex parte temporary restraining order to "preserve the status quo of critical digital evidence." ECF No. 9 at 5. He specifically asks the court to enjoin Defendants and their agents from "retroactively altering records retention schedules, executing manual database overrides, or deleting system transaction logs for the GenTax, VADRS, and CORIS database systems during the pendency of this federal action." *Id.*

In his emergency motion, Plaintiff states that his complaint "documents a pattern of administrative misconduct, including ex parte docket manipulation, stay violations, and service backdating." *Id.* He asserts that "the physical proof of these actions resides entirely within the transaction tables, configuration histories, and access logs of the State of Utah's database infrastructure." *Id.*

He alleges that there is currently a concrete and imminent "threat of retroactive database alteration and spoliation." *Id.* He alleges that Utah State Tax Commission Records Manager Jessica Priskos confirmed that database retention policies are subject to active modification by state records committees, including for the "primary tax and licensing databases . . . GenTax . . . and VADRS." *Id.* at 6. These systems allegedly "track every transaction, user access, and manual override executed by state employees." *Id.*

He alleges that on July 20, 2026, the Records Management Committee held a public hearing to review the Tax Commission's proposal to retroactively change the retention schedule of GenTax vendor systems to 30 years to authorize database purging. *Id.* at 5, 6–7. As he alleges, "Defendants, through the Division of Technology Services (DTS), are actively preparing to execute these retroactive database modifications." *Id.* at 7. He states that "[o]nce these databases

undergo schema modifications or retention schedule overrides, the raw audit trails will be permanently and irreparably overwritten." *Id.* at 7.

The court concludes that Plaintiff has not met his heightened burden in showing that the extraordinary relief of an ex parte temporary restraining order is necessary. *See Geiger v. Espy*, 885 F. Supp. 231, 233 (D. Kan. 1995) ("At the outset . . ., the court must satisfy itself that an ex parte TRO is necessary to preserve the status quo and prevent the irreparable harm that would occur if the court were to wait for notice to the other side and for a preliminary injunction hearing."). First, in the emergency motion, Plaintiff provides extremely limited argument on why he is likely to succeed on the merits of his claims. He simply notes that Defendants' alleged actions "represent clear violations" of the Due Process Clause and Title II of the ADA. *Id.* at 9.

But more importantly, Plaintiff has not clearly demonstrated that he faces immediate and irreparable harm. *See* Fed. R. Civ. P. 65(b)(1)(A). He notes that the Records Management Committee has held a public hearing recently, but he has not demonstrated that any decision or action is actually imminent. Moreover, even if a decision is made soon, he has not convincingly demonstrated that the Tax Commission would move to immediately implement those changes or that any evidence would be immediately destroyed if those changes did take place. Instead, he only conclusorily states as much.

Plaintiff attempts to bolster his allegation of imminent irreparable harm through his claims that Defendants have thus far acted in bad-faith. *See* ECF No. 9 at 7. However, while Plaintiff states he has provided extensive evidence showcasing bad-faith, the court is as of yet unable to come to the same conclusion.

Furthermore, the court finds that an ex parte temporary restraining order would be against the public interest here. As Plaintiff alleges, the state committee is actively engaging in a public

consultation process. If the court were to intervene, it would not only be a federal imposition into a state process but also an imposition into the public's ability to influence and engage with their state administrative bodies. The court declines to do so at this point.

## CONCLUSION AND ORDER

For the above reasons, the court hereby orders the ex parte motion for temporary restraining order is **DENIED**. *See* ECF No. 9.

Signed August 5, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge